Joseph W. Cotchett (36324)
Steven N. Williams (175489)
Adam J. Zapala (245748)
Elizabeth Tran (280502)
Joyce Chang (300780)
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: 650-697-6000  / Fax: 650-697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
etran@cpmlegal.com
jchang@cpmlegal.com

*Interim Lead Counsel for the Indirect Purchaser Plaintiffs*

Jeff D. Friedman (173886)
Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Tel: (510) 725-3000 / Fax:  (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel: (206) 623-7292 / Fax:  (206) 623-0594
steve@hbsslaw.com

Kit A. Pierson (*pro hac vice*)
Daniel A. Small (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 500, West Tower
Washington, DC 20005
Tel: (202) 408-4600
kpierson@cohenmilstein.com
dsmall@cohenmilstein.com

*Co-Lead Counsel for Direct Purchaser Plaintiffs*
[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE RESISTORS ANTITRUST LITIGATION | Case No. 5:15-cv-03820-JD |
| This Documents Relates to:<br><br>ALL ACTIONS | JOINT CASE MANAGEMENT CONFERENCE STATEMENT<br><br>Date: August 10, 2016<br>Time:  1:30 pm<br>Courtroom: Court Room 11 – 19th Floor<br>Judge: Hon.  James Donato |

1   Plaintiffs in the above-captioned Direct Purchaser and Indirect Purchaser actions (hereinafter

2   "Plaintiffs") and Defendants Hokuriku Electric Industry Co., HDK America, Inc., Panasonic

3   Corporation, Panasonic Corporation of North America, Kamaya, Inc., KOA Corporation, KOA

4   Speer Electronics, Inc., ROHM Co., Ltd., and ROHM Semiconductor USA LLC ("Defendants")[1]

5   respectfully submit this Joint Statement in advance of the Case Management Conference scheduled

6   for August 10, 2016.

## I.   JURISDICTION AND SERVICE

### A.   PLAINTIFFS' STATEMENT

This litigation comprises two proposed class actions alleging anticompetitive conduct relating to linear resistors. All Defendants have been served or have agreed to waive service of summons by the Direct Purchaser Plaintiffs. Kamaya Electric Co. has agreed to waive service of summons by the Direct Purchaser Plaintiffs. Despite this agreement, Kamaya Electric Co. refused to participate in the conference pursuant to Fed. R. Civ. P. 26(f) on grounds that the waiver form is not due to be returned until sixty days after it was sent on July 7, 2016.  The Indirect Purchaser Plaintiffs have served all Defendants, with the sole exception of Kamaya Electric Co., the Japanese Kamaya entity. Kamaya Electric Co. has agreed to waive service of summons by the Indirect Purchaser Plaintiffs. All Defendants participating in the Rule 26(f) conference stated that they do not intend to challenge personal jurisdiction or venue.

This Court has subject matter jurisdiction over the Direct Purchaser class action pursuant to the Clayton Act § 16 (15 U.S.C. § 26), the Sherman Act § 1 (15 U.S.C. § 1), and 28 U.S.C. §§ 1331, 1337. This Court has subject matter jurisdiction over the Indirect Purchaser class action pursuant to Clayton Act § 16 (15 U.S.C. § 26), the Sherman Act § 1 (15 U.S.C. § 1), and 28 U.S.C. §§ 1331, 1337 and pursuant to 28 U.S.C. §§ 1332(d), 1711, *et seq*.

---

[1] Lead counsel for the undersigned Defendants are making every effort to attend the case management conference in person.  Lead counsel for Panasonic Corporation and Panasonic Corporation of North America (together, the "Panasonic Defendants") will be unable to attend the conference due to a pre-existing obligation.  These defendants will be represented at the conference by other counsel of record, who will be fully prepared to address any issues that arise.

1

2

**B.      DEFENDANTS' STATEMENT**

3

4

Defendants reserve the right to challenge subject matter jurisdiction, including on the ground that the complaints fail to assert claims that implicate trade or commerce in the United States.

5

Plaintiffs' criticism of Kamaya Electric for not participating in the Rule 26(f) conference is

6

unjustified.  Defendants Kamaya Electric and Kamaya, Inc. were named as Defendants for the first

7

time on May 27, 2016.  Defendant Kamaya Electric is headquartered and operates in Japan.  It is

8

subject to service in Japan under the Hague Convention on the Service Abroad of Judicial and

9

Extrajudicial Documents in Civil or Commercial Matters.  Direct and Indirect Purchasers asked

10

Kamaya Electric to waive service, and Defendant Kamaya Electric proposed that the parties stipulate

11

to a reasonable extension of time to respond to the Complaints in exchange for a waiver of service.

12

The parties failed to reach an agreement, and so Kamaya Electric informed Plaintiffs that it would

13

agree to waive service pursuant to the Rules of Federal Civil Procedure, which provide Kamaya

14

Electric with 60 days to sign and return a service waiver request and 90 days to respond to the

15

Complaints.[2]  Fed. R. Civ. P. 4(d)(1)(F).  Direct Purchaser Plaintiffs did not send Kamaya Electric a

16

request for waiver of service until July 7, 2016,  and Indirect Purchaser Plaintiffs sent theirs on July

17

29, 2016 (the day of the Rule 26(f) conference).  Kamaya Electric has until September 7, 2016  and

18

September 27, 2016, respectively, to return these requests for waiver of service.

19

**II.      FACTS**

20

**A.      PLAINTIFFS' STATEMENT**

21

22

This case challenges a decade-long conspiracy to fix and stabilize the prices of resistors.

Plaintiffs allege that Defendants, among the world's largest manufacturers of resistors, agreed no

23

later than July 2003 to fix, raise and maintain the prices of resistors sold into the United States above

24

competitive levels. Defendants conspired in private meetings hosted by industry associations as well

25

26

_____

[2] However, Kamaya Electric has not asked for a separate briefing schedule on the Motions to Dismiss.

27

28

JOINT CASE MANAGEMENT CONFERENCE STATEMENT -
No.: 15-cv-03820-JD
010554-11 880457 V1

-2-

as in one-on-one meetings between Defendants and their co-conspirators.  These repeated collusive discussions involved Defendants' prices, output, manufacturing capacity, current and projected sales, and other competitively sensitive information, enabling Defendants to coordinate their market behavior and illegally fix, raise, and maintain prices.

Defendants' conspiracy worked. Plaintiffs allege that the prices of linear resistor producers increased by 20-25% over the class period and even increased during the 2008 financial crisis due to Defendants' successful coordination.  As a result of Defendants' successful efforts to maintain and increase prices, the prices of linear resistors were sustained at supra-competitive levels, and Plaintiffs paid these supra-competitive prices for at least a decade. Plaintiffs in the Direct Purchaser Action therefore seek damages and injunctive relief for violations of the Sherman Act § 1 (15 U.S.C. § 1), and Plaintiffs in the Indirect Purchaser Action seek injunctive relief under the Sherman Act § 1 and damages for violations of state antitrust and consumer protection statutes.

**B.     DEFENDANTS' STATEMENT**

Plaintiffs do not allege facts sufficient to plead a plausible antitrust conspiracy within the applicable statute of limitations periods despite access to documents previously produced to the U.S. Department of Justice ("DOJ") in connection with its now closed grand jury investigation regarding linear resistors.  Unlike in other cases, such as *Capacitors*, *Lithium Ion Batteries*, *Cathode Ray Tube*, *TFT-LCD (Flat Panel), Optical Disk Drives,* and *Graphics Processing Units*, where parallel grand jury investigations resulted in guilty pleas and criminal prosecutions, in this case the DOJ has confirmed that it has closed its linear resistors investigation involving the Defendants, and as a result, there will be no plea agreements or indictments involving any of the Defendants.

At best, the only actual agreement that Plaintiffs allege among the Defendants occurred more than *thirteen years ago*, in July 2003.  Within the limitations period—i.e., since August 24, 2011—the only claimed contacts among Defendants were nothing but regular meetings of the Japan Electronics and Information Technology Industries Association ("JEITA"), a legitimate and publicly-known trade organization, and a single instance of a purported informal information exchange—and Plaintiffs do not plead any facts that support an inference that an unlawful agreement

was actually reached at any of these few meetings.  Indeed, the latest date that Plaintiffs claim, in

conclusory fashion, that Defendants engaged in "collusive discussions" was August 2008—more

than three years prior to the start of the limitations period.  Moreover, the facts alleged in the

Complaints show that Plaintiffs—who allege they are participants in the market for stand-alone

linear resistors—were on inquiry notice of any purported conspiracy no later than 2008, because

Plaintiffs allege that the prices of linear resistors increased during times that they claim market

conditions should have led to price decreases.

### III.   LEGAL ISSUES

### A.   PLAINTIFFS' STATEMENT

The primary legal issues in these actions include:

a. Whether Defendants conspired to fix, raise, stabilize, or maintain the prices of resistors

sold in the United States and/or to reduce output of resistors sold in the United States;

b. Whether Defendants' alleged conspiracy to fix, raise, stabilize, or maintain the prices of

resistors sold in the United States and/or to reduce output of resistors sold in the United States

violated the Sherman Act and state antitrust and consumer protection statutes;

c. Whether the conduct of Defendants and their co-conspirators caused injury to the business

or property of Plaintiffs and the members of the alleged classes;

d. The extent of damages suffered by Plaintiffs as a result of the alleged conspiracy;

g. Whether the proposed classes should be certified under Fed. R. Civ. P. 23(a), (b)(2), and

(b)(3); and

h. The appropriate punitive, actual, and trebled statutory damages, costs, attorneys' fees, pre-

and post-judgment interest, declaratory relief, equitable relief, and any other relief provided for by

federal and state law.

### B.   DEFENDANTS' STATEMENT

The primary legal issues in these actions include:

a. Whether the Direct Purchaser Plaintiffs' claims are subject to arbitration based on provisions contained in agreements with one or more defendants.

b. Whether Plaintiffs have standing to assert their claims.

c. Whether the applicable statute of limitations bars Plaintiffs' claims for damages accruing prior to the statute of limitations period.

d. Whether Plaintiffs' complaints should be dismissed, in total or with respect to certain entities, because they fail to allege sufficient facts under Fed. R. Civ. P. 8(a), as it has been interpreted by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), within the statutory limitations period.

e. Whether Plaintiffs have pled sufficient facts to satisfy the standard for fraudulent concealment in order to toll the statute of limitations.

f. Whether Indirect Purchaser Plaintiffs' claims under California's Unfair Competition Law must be dismissed because they have failed to allege an unfair, unlawful, or fraudulent act.

g. Whether Indirect Purchaser Plaintiffs' claims under the New York consumer protection statute must be dismissed for failure to allege misrepresentations or deceptive conduct targeted at consumers. *See Paltre v. Gen. Motors Corp.*, 26 A.D.3d 481, 483 (N.Y. App. Div. 2006).

h. Whether Indirect Purchaser Plaintiffs' claims under the Florida consumer protection statute must be dismissed because Plaintiffs do not allege conduct occurring within the state of Florida, *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1330 (S.D. Fla. 2012), and because their claimed injuries are too "remote or speculative" to satisfy the statute's causation requirements. *Lombardo v. Johnson & Johnson Consumer Companies, Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015).

i. Whether the requirements of Fed. R. Civ. Proc. 23(a) have been met, and whether there are common factual and legal issues that predominate over individualized issues sufficient to certify classes of direct purchaser or indirect purchasers under Fed. R. Civ. Proc. 23(b)(3) and, if so, the definitions of the class(es).

j. Whether the Defendants reached agreements or understandings among and between themselves to fix, raise or stabilize the prices of linear resistors purchased directly or indirectly by Plaintiffs in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

k. Whether Plaintiffs' claims are barred in whole or in part by the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a.

l. Whether the Plaintiffs have sustained an antitrust injury proximately caused by Defendants' actions as required by Section 4 of the Clayton Act, 15 U.S.C. § 15(a).

m. Whether a permanent injunction should issues to the extent Defendants' alleged conduct has not concluded.

n. Whether Plaintiffs have suffered damages, and if so, the appropriate measure of damage.

o. Whether Defendants state or can prove cognizable affirmative defenses.

## IV.    MOTIONS

Plaintiffs filed their respective Consolidated Amended Class Action Complaints ("CACs") under seal on May 27, 2016. (ECF No. 126). On June 22, 2016, the Court ordered Plaintiffs to file unredacted copies of their respective CACs on the public docket, which Plaintiffs did on June 24. (ECF Nos. 139-40).  Plaintiffs entered into stipulations governing the deadlines for the Panasonic, HDK, Rohm, and KOA Defendants to file their responses to the CACs, setting a deadline of June 15, 2016, for these Defendants' responses. (ECF Nos. 135 & 149). IPPs stipulated separately with Defendant Kamaya, Inc. to file its response to IPPs' CAC on June 15, 2016. (ECF No. 163). The Court vacated all pending deadlines on July 8, 2016 for responses to the CACs and terminated as moot the parties' stipulations for extensions of the deadlines to respond. (ECF No. 165).

## A.    RESPONSES TO THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINTS

The parties propose the following schedule for briefing of any motions to dismiss filed by Defendants:

a.      Deadline for Defendants' Motions: August 24, 2016

b.      Deadline for Plaintiffs' Oppositions: September 26, 2016

c.      Deadline for Defendants' Replies: October 11, 2016

d.      Hearing on Defendants' Motions: October 26, 2016 or at a time convenient for the Court.

Regarding the form of Defendants' motions and Plaintiffs' oppositions, the parties agree that the following page limits are appropriate in this case.

1.      With regard to the DPP Complaint, Defendants may file a single opening brief of 25 pages, Direct Purchaser Plaintiffs may file an opposition brief of 25 pages, and Defendants may file a reply brief of 12 pages.

2.      With regard to the IPP Complaint, Defendants may file a single opening brief of 40 pages, Indirect Purchaser Plaintiffs may file an opposition brief of 40 pages, and Defendants may file a reply brief of 20 pages.

3.      To the extent that any individual defendant (or related defendant group) believes it is necessary to submit a separate brief addressing distinct reasons for dismissal under Rule 12(b)(6) relating to that defendant or group not addressed in Defendants' consolidated brief, the Defendants will file two additional consolidated briefs (one each for the DPP and IPP cases) combining all arguments that are being made separately for a particular defendant or defendant group. These two additional briefs, if any, will not repeat any of the arguments or background contained in the joint motion and may contain up to five pages of argument per defendant (or defendant group).  The Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs, respectively, may each submit a consolidated brief addressing all of the issues raised in Defendants' consolidated briefs, in which event the Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs, respectively, may have up to five pages for each individual defendant or defendant group brief to which they are responding.  To the extent that any reply brief is filed, the brief will similarly consolidate all arguments and be limited to five pages per defendant.

B.     OTHER MOTIONS

     1.     **Plaintiffs' Statement**

DPPs and IPPs anticipate filing separate motions for certification of the Classes proposed in their respective Consolidated Amended Class Action Complaints.

     2.     **Defendants' Statement**

Defendants intend to move to dismiss the Consolidated Amended Complaints, as discussed above.  If Plaintiffs' claims survive the pleading stage, Defendants anticipate filing motions for summary judgment.

## V.     AMENDMENT OF PLEADINGS

The parties will determine whether to amend the pleadings and, if so, a proposed schedule for doing so, after the Court issues its order on the Defendants' motions to dismiss.  Defendants will not be required to file their answers until the deadline for any such amendments has passed.

## VI.     EVIDENCE PRESERVATION

A.     PLAINTIFFS' STATEMENT

Counsel for Plaintiffs have directed their clients to preserve evidence relevant to the issues reasonably evident in this action and are collecting documents and ESI from their clients. The parties discussed preservation of evidence at the 26(f) conference and are currently negotiating a stipulation for the production of ESI, which the parties intend to file once final agreement is reached.

     1.     **Time Period for Preservation**

Pursuant to paragraph 8 of this Court's Standing Order for Civil Cases, Plaintiffs submit that all parties to this action should "take the necessary, affirmative steps to preserve evidence related to the issues presented by the action," as to all documents created or stored from January 1, 1999 until the conclusion of this litigation.  Direct Purchaser Plaintiffs' Consolidated Amended Complaint alleges that "Defendants agreed to restrain competition" "[n]o later than 2003, if not earlier[.]" Consolidated Amend. Class Action Compl. ¶ 71 (ECF No. 139). The Complaint further alleges that structured meetings among Defendants facilitated collusion in 2003. *Id.* ¶ 73. Given the existence of

1    organized meetings among Defendants as early as 2003, it is highly probable that Defendants'

2    collusion began earlier than 2003. Defendants' existing productions are inadequate to rule out that

3    the conspiracy began well before 2003.  The Panasonic and Rohm Defendants have collectively

4    produced no more than 101 documents between them, the HDK and Kamaya Defendants have

5    produced no documents at all, and the scope and limitations on the KOA Defendants' productions to

6    the Department of Justice is unknown to Plaintiffs. Further, no Defendant has produced documents

7    dated before 2005 in this litigation. Accordingly, all parties should be ordered to continue preserving

8    evidence relevant to the conspiracy alleged in the Consolidated Amended Complaints.

9         To the extent that the Court agrees that a preservation period beginning in 1999 is appropriate

10   for ordinary course of business documents, Plaintiffs request that the preservation period for

11   transactional data be 1997 to present.  This will permit Plaintiffs to obtain sufficient data prior to the

12   conspiracy.

13   **B.      DEFENDANTS' STATEMENT**

14        Counsel for Defendants have directed their clients to preserve evidence relevant to the issues

15   reasonably evident in this action and will continue to meet and confer with Plaintiffs with respect to

16   a stipulation for the production of ESI.

17        Plaintiffs' proposal for an open-ended document preservation obligation that would require

18   Defendants to preserve even the ESI created in the present day pertaining to their resistors business is

19   overly-burdensome and disproportionate to the needs of the case.  Defendants propose that the

20   preservation should relate to evidence created or received between January 2003 and December

21   2014.  December 2014 is a reasonable end-date for the preservation of evidence as it corresponds

22   with when the U.S. Department of Justice served subpoenas to certain Defendants in connection with

23   its investigation into resistors, which has now been closed.

24

25

26

27

28

# VII.   DISCLOSURES

## A.   PLAINTIFFS' STATEMENT

The parties will make initial disclosures of the discovery materials required by Rule 26(a)(1)(A)(i)-(iv) within fourteen days of the Rule 26(f) conference, by August 12, 2016, in accordance with Fed. R. Civ. P. 26(a)(1)(C).

## B.   DEFENDANTS' STATEMENT

Defendants proposed a two-week extension to file initial disclosures, which Plaintiffs refused.  Defendants maintain that August 26, 2016 would be an appropriate date to file the initial disclosures especially taking into account August holidays in Japan, where many defendants are located.

# VIII.   DISCOVERY

### a.   Participation in Rule 26(f) Conference

**Plaintiffs' Statement:**

On July 7, 2016, this Court ordered the parties to meet and confer "as required by Fed. R. Civ. P. 26(f) prior to the Case Management Conference . . . ." Reassignment Order (ECF No. 156.) Previously, on June 30, 2016, counsel for DPPs requested all parties to provide dates during the weeks of July 11 and July 18, 2016, when the parties would be available for a conference pursuant to Fed. R. Civ. P. 26(f). The parties were unable to identify a date when all parties were available for the conference before July 29, 2016. All parties met and conferred pursuant to the Court's Order on July 29, 2016, with the exception of Kamaya Electric Co. Kamaya Electric Co. agreed to waive formal service of the DPP Complaint by email from its counsel dated July 6, 2016, and DPPs' counsel provided Kamaya Electric with waiver forms the next day. However, Kamaya Electric Co. refused to participate in the Rule 26(f) conference.

DPPs' position is that Kamaya Electric Co.'s failure to appear for the Rule 26(f) conference is unjustified since Kamaya Electric Co. agreed to *waive* service. The same counsel represents both Kamaya Inc. and Kamaya Electric Co. and attended the Rule 26(f) conference on behalf of Kamaya Inc., the United States subsidiary of Kamaya Electric Co. Kamaya Electric Co. was fully apprised of

the content of the Conference and able to participate in the Conference through its counsel. Accordingly, this case should proceed as to Kamaya Electric Co on the same basis and according to the same schedule as the remaining Defendants.

**Defendants' Statement:**

Plaintiffs' objections are misplaced because Kamaya Electric's schedule has been delayed because of their own doing.  Plaintiffs also fail to acknowledge that Kamaya Electric has agreed not to revisit or re-open any topics discussed at the Rule 26(f) conference.  However, Plaintiffs' proposed discovery schedule is unreasonable as to Kamaya Electric given that it does not have a DOJ production and all discovery requests to Kamaya Electric will be new discovery requests.

     b.  **No Stay of Discovery is Warranted**

**<u>Plaintiffs' Statement:</u>**

Discovery has already begun and should continue without a stay. The stay previously imposed in this litigation was lifted on April 29, 2016.[3]  The parties already briefed Defendants' request for a blanket stay of discovery before Judge Whyte, with Defendants citing many of the same authorities they now cite to in this statement.  Judge Whyte rejected Defendants' request for a blanket stay and instead issued an order imposing only a narrow stay  until October 18, 2016, which prohibits discovery "*only* of documents produced solely to the United States or the grand jury in connection with the grand jury located in the Northern District of California that refer" to resistors."[4] Defendants did not request reconsideration of that ruling.

Defendants KOA, ROHM, and Panasonic responded on April 29, 2016 to Plaintiffs' First Set of Requests for Production of Documents to all Defendants by producing a limited set of documents provided to the United States Department of Justice. DPPs served additional Requests for Production of Documents to all Defendants and Interrogatories to all Defendants after the Rule 26(f) conference on July 29, 2016. Defendants' contention that discovery should be further stayed is contrary to the

---

[3] Stipulation and Order for Limited Discovery Stay ¶ 1 (ECF No. 120) ("The DOJ Discovery Stay in this matter is lifted as of April 18, 2016, except as specified in this Stipulation and Order.").

[4] *Id.* ¶ 2.

Federal Rules of Civil Procedure, including recent revisions to those Rules permitting the beginning of discovery even sooner, which require the parties to confer "as soon as practicable" after the filing of the complaint and permit discovery to begin after the Rule 26(f) conference,[5] as well as the Local Rules of this Court, which require issuance of a case management order setting a deadline for the Rule 26(f) conference upon the filing of the complaint.[6] Plaintiffs note that this Court's Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information does not recommend conducting discovery in phases, rather, it includes phased discovery of ESI as one out of dozens of potential topics to discuss during the Rule 26(f) conference.  Defendants' position is also at odds with the weight of authority in the Northern District.  *See, e.g., Mlejnecky v. Olympus Imaging Am. Inc.*, No. 2:10-cv-02630-JAM-KJN, 2011 U.S. Dist. LEXIS 16128, *18 (E.D. Cal. Feb. 11, 2011) ("[T]he Federal Rules of Civil Procedure do[] not provide for an automatic or blanket stays of discovery when a potentially dispositive motion is pending. Indeed, district courts look unfavorably on such blanket stays of discovery."); *In re Apple In-App Purchase Litig.*, No 5:11-cv-01758-EJD, 2012 U.S. Dist. LEXIS 18970, *3 (N.D. Cal., Feb. 15, 2012) (rejecting a stay of discovery on a dispositive motion and finding discovery stays "are disfavored because . . . [they] . . . interfere with judicial efficiency . . . . [B]efore a stay can be issued, the moving party must meet a ***heavy burden*** of making a strong showing why discovery should be denied.") (emphasis added)  Moreover, discovery obtained during the pendency of the motion to dismiss may be used to amend the allegations should the operative complaint be dismissed without prejudice. Accordingly, Plaintiffs propose that discovery proceed as delineated in the following sections.

**Defendants' Statement:**

Defendants do not seek an extended stay of discovery.  However, discovery should proceed in a phased manner to minimize the disproportionate burden on Defendants, as explained in Section XVIII.d, *infra*.

---

[5] *See* Fed. R. Civ. P. 26(f)(1) & 26(d)(1).

[6] *See* Civ. L.R. 16-2(a).

c.     **Production of Documents and Interrogatories**

**Plaintiffs' Statement:**

On February 2, 2016, the Court ordered the ROHM, KOA, and Panasonic Defendants to produce by April 29, 2016 the documents they had previously produced to the U.S. Department of Justice in connection with a closed grand jury investigation located in the Northern District of California. (ECF No. 112.) At the same time, Defendants were not ordered to produce documents that had been presented to a separate grand jury investigation. *Id.* On April 29, these Defendants produced documents in the following quantities:

| Defendant | Number of Documents |
|---|---|
| Panasonic Corporation & Panasonic Corporation of North America | 76 |
| Rohm Co., Ltd. | 35 |
| KOA Speer Electronics Corporation | 106,261 |

DPPs served their Second and Third Sets of Requests for Production of Documents to all Defendants and their First Set of Interrogatories to all Defendants on July 29, 2016. Defendants' responses are currently due August 29, 2016.

**Defendants' Statement:**

In accordance with Fed. R. Civ. P. 6(d), it is Defendants' position that responses to DPPs' Second and Third Sets of Requests for Production of Documents and First Set of Interrogatories, which were served via e-mail on July 29, 2016, are due September 1, 2016. Pursuant to Fed. R. Civ. P. 6(d), three days are added after the period would otherwise expire under Rule 6(a) when service is made by electronic means.

d.     **Discovery Plan**

**Plaintiffs' Statement:**

Plaintiffs propose the following procedure and deadlines for the parties to negotiate a protocol concerning an initial list of the custodians and search terms to be used in responding to requests for production of documents:

By no later than September 7, 2016, the Parties will complete negotiations of an Initial Custodian List and the locations of non-custodial files in which Defendants will search for responsive documents. The Initial Custodian List must include employees (current and former) and agents (current and former) whom each Party proposes will be included as document custodians in the action. For each employee and agent, the List must identify the custodian by the following information: (i) the person's name; (ii) the person's employer and city, state, and country of employment; (iii) the person's current title, if any; and (iv) a brief statement explaining the reason the person is proposed as a custodian.

By no later than September 9, 2016, the parties will complete negotiation of an Initial Search Term List, which will include the search terms to be used in completing searches for responsive documents and electronically stored information. If the parties are unable to agree upon an Initial Custodian List, locations of non-custodial files, Search Term Protocol, or Initial Search Term List, the parties will meet and confer in an attempt to resolve their disagreement, and in the absence of agreement, submit the dispute to the Court for resolution by September 16, 2016.

**Defendants' Statement:**

Defendants do not seek an extended stay of discovery.  However, discovery should proceed in a phased manner to minimize the disproportionate burden on Defendants, as contemplated by the 2015 amendments to the Federal Rules of Civil Procedure.  In accordance with Section VI of the Northern District of California Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information, Defendants believe that "it is appropriate to conduct discovery of ESI in phases":

**Phase I:**  <u>COMPLETED</u>.  The Panasonic, ROHM, and KOA Speer Defendants have produced all pre-existing business documents previously produced to the DOJ in connection with its closed grand jury investigation concerning linear resistors.  Plaintiffs had the benefit of all of those documents prior to filing their Consolidated Amended Complaints.

**Phase II:**  The parties will meet and confer to negotiate and resolve the terms of the various discovery protocols and agreements necessary for discovery to proceed in a reasonable manner that minimizes unnecessary burdens on the parties.  Defendants agree with Plaintiffs that it is necessary to reach agreement on (i) custodian lists; (ii) a search term or predictive coding protocol; (iii) an ESI protocol; (iv) deposition limits; (v) interrogatory limits, and (vi) an expert protocol.  Because these issues bear directly on how discovery is conducted, the details of these agreements must be resolved prior to commencing with the review and production of documents.

Defendants have agreed to an aggressive schedule to brief and present their motions to dismiss to the Court, and Defendants commit to finalizing the discovery protocols and agreements listed in the preceding paragraph prior to the Court issuing a decision on Defendants' motions to dismiss.

Defendants' position is that document discovery and depositions should not proceed further until the Court resolves their motions to dismiss because, as the 2015 Amendment to Rule 26 makes clear, the scope of discovery must be "proportional to the needs of the case, considering . . . the parties' relative access to relevant information . . . , the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  The expansive discovery sought by Plaintiffs is not proportional to the needs of the case at this time, and would unnecessarily impose substantial burdens and expenses on Defendants.  Notably, Direct Purchaser Plaintiffs are seeking discovery on all finished products containing linear resistors, which would amount to almost every product that Defendants and their customers manufacture, over a 17-year period.  Responding to such exceedingly broad discovery would impose tremendous burdens on Defendants, especially because most if not all discovery into Defendants' finished products business would be irrelevant to the allegations in the Complaints.  To

1    the extent that discovery does proceed, it should therefore be limited to stand-alone linear resistors

2    and the relevant time period set forth in the Complaints.

3        Defendants Panasonic, ROHM, and KOA Speer have already produced all of the pre-existing

4    business documents that they provided to the DOJ.  Accordingly, in drafting the Consolidated

5    Amended Complaints, Plaintiffs have already had the benefit of documents that the DOJ found to be

6    sufficient to resolve and close its investigation into the Defendants' conduct relating to linear

7    resistors.  Thus, there is no asymmetry in "the parties relative access to relevant information,"

8    because the discovery necessary for "resolving the issues" currently before the Court—i.e., whether

9    Plaintiffs have alleged a plausible antitrust conspiracy that survives the statute of limitations bar—

10   has been completed.  *See* Fed. R. Civ. P. 26(b)(1).

11       In contrast, collection, review, and production of additional custodial files and transactional

12   data from Defendants would unnecessarily impose substantial burdens and expenses on Defendants.

13   The discovery Plaintiffs seek would, for example, require the Defendants to review the e-mails and

14   other documents created and received by their document custodians over almost a decade and a

15   half—the overwhelming majority of which are in Japanese.  Japanese-language document review is

16   incredibly expensive.  Some of the Defendants therefore know from experience that document

17   review can cost many hundreds of thousands of dollars-per-month.  This is a disproportionately high

18   burden relative to the needs of the case at this time, because Defendants' motions to dismiss—which

19   Defendants have committed to present to the Court on an expedited basis—have the potential to

20   resolve the case entirely or, at the very least, narrow the issues and relieve Defendants of some of the

21   expenses of foreign-language document review.

22       Moreover, while the 2015 amendments to Rule 26 now make the proportionality requirement

23   clear, there is a long history of courts in this Circuit temporarily staying discovery pending

24   determinations of motions to dismiss.  *See, e.g., Hall v. Tilton*, No. C 07-3233 RMW (PR), 2010 WL

25   539679, at *2 (N.D. Cal. Feb. 9, 2010) (staying discovery pending disposition of motion to dismiss

26   under two-part test: "First a pending motion must be potentially dispositive of the entire case, or at

27   least dispositive on the issue at which discovery is directed.  Second, the court must determine

28

whether the pending dispositive motion can be decided absent additional discovery."); *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987) ("[S]ince the appellants' complaint did not raise factual issues that required discovery for their resolution, the district court did not abuse its discretion in staying discovery pending a hearing on the motion to dismiss.").

A temporary stay of discovery is particularly appropriate in complex antitrust cases such as this one, where the burden of requiring Defendants to engage in costly and invasive discovery should only be shouldered if this Court determines that Plaintiffs can plead a viable claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558-60 (2007) (directing courts to "avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence to support a § 1 claim") (internal quotation omitted). Consistent with *Twombly*, courts have regularly stayed discovery in antitrust cases until after resolution of motions to dismiss. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("The purpose of F.R.Civ.P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery. In antitrust cases this procedure especially makes sense because the costs of discovery in such actions are prohibitive."); *In re Graphics Processing Units Antitrust Litig.*, No. C 06-07417 WHA, 2007 WL 2127577, at *5 (N.D. Cal., Jul. 24, 2007) (granting motion to stay discovery pending resolution of motions to dismiss); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 909 (6th Cir. 2009) ("Pursuant to *Twombly*, district courts must assess the plausibility of an alleged illegal agreement before parties are forced to engage in protracted litigation and bear excessive discovery costs.") (emphasis in original).

**Phase III:** Pre-class certification priority fact discovery open after the determination of the appropriate scope of discovery.

**Phase IV:** Additional fact discovery completes after class certification motions decided.

e.  **Search Term Protocol**

**Plaintiffs' Statement:**

Plaintiffs propose the following steps for the application and testing of search terms.

1.  Plaintiffs agree to an immediate simultaneous exchange of search terms.

1      2. Each defendant will collect documents and information in the possession, custody or

2  control of each custodian proposed in its Discovery Plan and additional locations (such as shared

3  drives or departmental files) identified in its Discovery Plan immediately upon the expiration of the

4  meet and confer period of September 9, 2016.

5      3. To the extent the parties can agree on additional locations and custodians after the meet

6  and confer process is complete, additional documents and information will be collected from these

7  custodians and locations immediately upon the expiration of the meet and confer period (September

8  9, 2016). Documents from this subset will be reviewed and produced on a rolling basis, with

9  production of Defendants' cost and sales data from centralized files to be completed no later than

10  October 14, 2016, any and all disputes concerning the cost and sales data produced by defendants

11  from centralized files to be submitted to the Court by no later than November 11, 2016, and

12  production of documents from Defendants' custodial files to be completed no later than December 2,

13  2016.

14      4. Each defendant will proceed with the application of (i) their own proposed search terms;

15  and (ii) search terms from plaintiffs' proposed search term list to which the defendant does not object

16  (collectively, the Agreed Search Terms). The defendant will remove the population returned by the

17  Agreed Search Terms from its database and begin reviewing that subgroup of documents.

18      5. The defendant will then search for plaintiffs' terms in the remaining group of documents in

19  its database (i.e., those documents that did not contain any hits from the Agreed Search Terms).

20      6. Each defendant will then disclose to plaintiffs the number of aggregate and unique hits for

21  each of the Agreed Search Terms and each of plaintiffs' proposed search terms.

22      7. The parties will then meet and confer to discuss the utility of adding each of plaintiffs'

23  terms (or adding the terms in a modified form). For those terms that the parties cannot agree on, each

24  defendant will pull a random sample of documents with unique hits so that the parties can better

25  discuss the utility of adding that particular term. The parties will, in good faith, attempt to reach

26  agreement on the appropriate sample size.

27

28

8. At the end of this process, if there are some of plaintiffs' proposed search terms that the parties still cannot agree upon, the parties will submit those terms to the Court with discussion of the relevance and/or burden associated with those search terms.

All parties in *In re Lithium Ion Batteries Antitrust Litigation* (N.D. Cal.) have adhered to a similar protocol. No motions were filed in connection with use of the protocol, and no defendant sought a protective order regarding search terms. Plaintiffs submit that, given cooperation, the parties are capable of expeditiously negotiating search terms according to this procedure. Alternatively, Plaintiffs are willing to utilize predictive coding if the parties agree to provide the requisite level of transparency and abide by a strict schedule for implementing the procedure. Despite Defendants' protestations that they only received the Search Term Protocol Proposal on July 28, 2016—one day before the Rule 26(f) Conference—they propose no actual protocol below and instead simply criticize Plaintiffs' proposal. Defendants did not propose anything substantive regarding a search methodology during the parties Rule 26(f) conference.

**Defendants' Statement:**

Defendants received Plaintiffs' foregoing Search Term Protocol Proposal on July 28, 2016 and the parties were not able to complete the meet and confer process to come to an agreement prior to the filing of this Case Management Statement. Defendants agree that it is appropriate to stipulate to a protocol for searches of custodial files. Defendants note that the Plaintiffs' proposal is substantively identical to the protocol used in the *In re Lithium Ion Batteries Antitrust Litigation*, which proved to be unworkable as final search terms took nearly a year to negotiate. Further, Plaintiffs' proposal does not contemplate the use of modern search technologies such as predictive coding, which have the potential to substantially reduce the burdens and expenses of discovery.

f.      **Electronically Stored Information (ESI)**

The parties met and conferred during the Rule 26(f) conference regarding production of ESI and are negotiating a stipulated protocol for the discovery of ESI and hard copy documents.

g.       **Discovery Shared with All Parties**

Except as otherwise provided by applicable stipulation, law, rule, or order: (1) Parties who produce discovery in any of the actions must promptly make it available to all other parties who did not seek the discovery and are entitled to receive the discovery under the operative Protective Order; (2) If a non-party produces discovery to a party in any of the actions, the receiving party must promptly make it available to all other parties who are entitled to receive the discovery under the operative Protective Order. Any party who did not seek the discovery but wishes to obtain a copy of discovery pursuant to this provision shall reimburse the providing party for the costs of its copy. For purposes of this provision if either the Direct Purchaser Plaintiffs or Indirect Purchaser Plaintiffs seek discovery on a matter, the other Plaintiffs will be deemed to have done so as well, and if any of the Defendants seek discovery on a matter, the other Defendants will be deemed to have done so as well.

h.       **Cross-Use of Discovery**

All initial disclosures and discovery produced in response to a discovery request or subpoena in any of the actions, including deposition testimony, is deemed produced in and may be used, subject to the Federal Rules of Evidence and the Federal Rules of Civil Procedure, in the other actions. This provision applies only to actions that the Court has found to be related to the above-captioned *In re Resistors Antitrust Litigation*, No. 15-cv-03820-JD (N.D. Cal.), and the initial disclosures and discovery discussed in this paragraph may not be used for any other purposes or in any other actions.

i.       **Court's Jurisdiction**

To the full extent allowed by law and in the interests of an efficient use of time and resources, Plaintiffs request that this Court exercise jurisdiction to hear any discovery disputes regarding non-party subpoenas served in connection with the actions, including motions to quash or modify and motions to compel, provided that the subpoenaed non-party does not object to this Court's jurisdiction or seek a protective order.

j.    **Depositions**

**Plaintiffs' Statement:**

(i) Parties noticing a deposition must make reasonable efforts to propose a date for the deposition that is convenient for the witness and, when possible, all attending parties.

(ii) Parties that receive a request for a deposition date have one week to provide dates for a deposition, which absent extenuating circumstances, shall be no more than 30 days after the request for a deposition date.

(iii) In the event of multiple notices for the same deposition, the noticing parties will meet and confer to determine the order of examination.

(iv) An objection or motion to strike made by any party at a deposition will be preserved for all other parties and need not be explicitly joined.

(v) The DPPs and the IPPs together may notice the depositions of up to 15-party fact witnesses of each Defendant family pursuant to Federal Rule of Civil Procedure 30(b)(1). A Defendant family is defined as each separately represented group of Defendants. As to the taking of depositions pursuant to Federal Rule of Civil Procedure 30(b)(6), Direct Purchaser Plaintiffs propose that the DPPs and IPPs together may notice 5-party 30(b)(6) notices for each Defendant family, irrespective of the number of topics noticed. These deposition numbers are exclusive of experts and third party depositions.

Again, Defendants offer nothing more than a critique of Plaintiffs' proposal without offering any substantive alternative.  Defendants also fail to explain why the foregoing deposition limits were appropriate in the *In re Capacitors Antitrust Litigation*, Case No. 14-cv-03264-JD—another price-fixing case with a similar class period regarding passive electronic components—but inappropriate in this litigation.

**Defendants' Statement:**

Defendants received Plaintiffs' foregoing deposition proposal on July 28, 2016 and the parties were not able to complete the meet and confer process to come to an agreement prior to the filing of this Case Management Statement.  Defendants agree that it is appropriate to stipulate to

deposition limits and provisions on the conduct of depositions, but the proposal presented by Plaintiffs is disproportionate to the needs of the case and would impose unnecessary burdens and expenses on Defendants.

Although Plaintiffs contend that the limits they propose are consistent with those set forth in *Capacitors*, what Plaintiffs propose here is, in fact, far more burdensome.  In *Capacitors*, the parties agreed to only ten percipient witness depositions per defendant family group (and there were 20 defendant family groups, in contrast to the only 5 defendant family groups at issue in this litigation), a total number of 135 fact depositions, and fifteen total 30(b)(6) topics per plaintiff group. Moreover, the scope of the conspiracy alleged in *Capacitors* is far broader than that alleged in the instant case, even prior to the decisions on motions to dismiss which may potentially limit the scope even further.  Accordingly, it is appropriate to have a more limited number of depositions here.

## k. **Interrogatories**

**Plaintiffs' Statement:**

Plaintiffs propose that DPPs and the IPPs will each be permitted to propound up to 50 non-duplicative interrogatories of each Defendant family. Each Defendant family will be limited to propounding 35 non-duplicative interrogatories.

**Defendants' Statement**:

Although Defendants believe the interrogatory limits under Fed. R. Civ. P. 33 are appropriate, in an effort to compromise, Defendants proposed that DPPs and IPPs would each be permitted to propound up to 35 non-duplicative interrogatories of each Defendant family, each Defendant family will be limited to 35 non-duplicative interrogatories, and that each sub part will be counted as an individual interrogatory.

Plaintiffs set forth no reason for the necessity of up to 50 interrogatories, far exceeding the number of interrogatories contemplated by the Federal Rules of Civil Procedure.  The unreasonably large amount of interrogatories sought by Plaintiffs is not proportional to the needs of the case, and would unnecessarily impose substantial burdens and expenses on Defendants.

1.    **Electronic Service**

**Plaintiffs' Statement:**

Plaintiffs propose that, pursuant to Federal Rule of Civil Procedure 5(2)(E), electronic service via e-mail on counsel shall be deemed equivalent to service by U.S. mail and is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served. Service via other means (U.S. mail or overnight mail) will not be necessary. The provisions of Fed. R. Civ. P. 6(d) shall not apply to electronic service via e-mail on counsel of record for the parties.

**Defendants' Statement:**

Defendants agree to electronic service.  Defendants maintain that the provisions of Fed. R. Civ. P. 6(d) apply to electronic service via e-mail on counsel of record for the parties.  Accordingly, the Defendants' responses to Plaintiffs' discovery served by e-mail on July 28, 2016 are due September 1, 2016.

m.    **Expert Evidence**

**Plaintiffs' Statement:**

(i) Within three (3) business days of any party serving any expert reports and/or expert declarations in this case pursuant to Fed. R. Civ. P. 26(a)(2)(B), the party or parties proffering the expert witness shall produce: the data or other information relied upon by the witness in forming the expert's opinions; any exhibits that will be used to summarize or support the expert's opinions; the witness's qualifications, including a list of all publications authored in the previous 10 years; a list of all other cases in which, during the previous four years, the witness has testified as an expert at trial or by deposition; a statement of the compensation to be paid for the study and testimony in the case. Data or other information relied upon shall include, but is not limited to, raw data, spreadsheets, computerized regression analyses and/or other underlying reports and schedules sufficient to reconstruct the expert's work, calculations, and/or analyses. Information can be produced electronically (via email or disc) where appropriate. Where documents have previously been produced as part of the discovery in this case, a list of such documents by Bates number is sufficient.

As to other documents relied on by the expert, those documents should be produced except where widely-available publicly without undue expense (such as on the internet, or in major university libraries).

(ii) The following types of information shall not be the subject of discovery: (1) the content of communications among and between: (a) counsel and expert; (b) experts and other experts or consultants; and/or (c) experts and their respective staff, and (2) notes, all drafts (including draft reports and draft report exhibits), written communications or other types of preliminary work created by, or for, experts. The foregoing exclusions from discovery will not apply to any communications or documents upon which the experts rely as a basis for their opinions/reports.

**Defendants' Statement:**

Defendants received Plaintiffs' foregoing expert evidence Proposal on July 28, 2016 and the parties were not able to complete the meet and confer process to come to an agreement prior to the filing of this Case Management Statement.  Defendants agree that it is appropriate to stipulate to a protocol concerning expert discovery generally consistent with what Plaintiffs propose, and the parties will meet and confer concerning the details of such a stipulation.

## IX.    CLASS ACTIONS

The cases before the Court are proposed class actions.

A.    **PLAINTIFFS' STATEMENT**

1.    **Specific Paragraphs of Fed. R. Civ. P. 23 Under Which the Actions Are Maintainable as Class Actions**

Plaintiffs intend to move for class certification pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

2.    **Description of Classes in Whose Behalf the Actions Are Brought**

Plaintiffs in the Direct Purchaser class action bring claims on behalf of:

All persons in the United States who purchased linear resistors (including through controlled subsidiary, agents, affiliates or joint-ventures), directly from any of the Defendants, their subsidiaries, agents, affiliates, or joint ventures from July 9, 2003 through August 1, 2014.

Plaintiffs in the Indirect Purchaser class action bring damages claims on behalf of
All persons and entities that, as residents of California, Florida, Iowa,
Michigan, Minnesota, Nebraska or New York , indirectly purchased
one or more resistors from a distributor that a defendant or co-
conspirator manufactured during the Class Period.

### 3.	Maintain the Action Under Fed. R. Civ. P. 23(a) and (b)

Discovery commenced with the Rule 26(f) conference held on July 29, 2016. DPPs served

Requests for Production of Documents and Interrogatories to all Defendants on July 29, 2016.

Defendants' responses to these Requests and Interrogatories are due on August 29, 2016. Plaintiffs

anticipate that through discovery, Plaintiffs will gain more facts supporting their anticipated motions

for class certification. For facts showing that Plaintiffs are entitled to maintain their actions under

Fed. R. Civ. P. 23(a) and (b), Plaintiffs refer this Court to paragraphs 178 to 187 of the Direct

Purchaser Plaintiff Consolidated Amended Complaint (ECF No. 257) and paragraphs 163 to 174 of

the Indirect Purchaser Plaintiff Consolidated Amended Complaint. (ECF No. 141).

### 4.	Proposed Date for the Court to Consider Whether the Case Can Be Maintained as a Class Action

As described in Section XVII below, Plaintiffs submit that it is premature to set a date for the

Court to consider Plaintiffs' anticipated motions for class certification before any transactional data

has been produced by Defendants. Plaintiffs submit that the parties should submit to the Court a

proposed schedule for class certification after Defendants have completed production of all

transactional data and any disputes as to Defendants' production have been resolved.

## B.	DEFENDANTS' STATEMENT

### 1.	The Proposed Classes Do Not Meet the Requirements of Fed. R. Civ. Proc. 23

As explained above, Defendants anticipate moving to dismiss the consolidated amended

complaints for failure to state a claim upon which relief can be granted.  Should any of Plaintiffs'

claims survive motions to dismiss, Defendants agree that motions for class certification should be

filed by August 4, 2017, as set forth in Plaintiffs' proposed schedule below, and Defendants will

oppose class certification, among other reasons, on the ground that the proposed classes do not meet the requirements of Fed. R. Civ. Proc. 23.

<b>X.   RELATED CASES</b>

This case was related with other pending cases on September 18, 2015. (ECF No. 28). There are no other related cases pending.

<b>XI.   RELIEF</b>

**A.   PLAINTIFFS' STATEMENT**

Plaintiffs seek injunctive relief, treble damages to the maximum extent allowed under the applicable statutes, pre- and post-judgment interest, costs of suit including reasonable attorneys' fees, and such other and further relief as the case may require and the Court may deem just and proper.

**B.   DEFENDANTS' STATEMENT**

Defendants dispute that any Plaintiff or any member of the putative class has been injured or harmed in any way or is entitled to damages or any other relief.

<b>XII.   SETTLEMENT AND ADR</b>

**A.   PLAINTIFFS' STATEMENT**

Settlement is premature in light of the preliminary stage of the litigation. Plaintiffs request that the Court direct all parties to participate in a settlement conference at an appropriate time in the litigation. Plaintiffs are ready and willing to engage in ADR with any Defendant that is interested in doing so, provided Plaintiffs have sufficient information to make the process meaningful.

**B.   DEFENDANTS' STATEMENT**

Defendants have complied, or will shortly comply, with ADR L.R. 3-5, and will consider settlement and ADR options as provided in the local rules.

<b>XIII.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES</b>

The parties do not consent to proceed before a magistrate judge for all purposes.

# XIV.   OTHER REFERENCES

This case is not suitable for reference to binding arbitration.

# XV.   NARROWING ISSUES

## A.   PLAINTIFFS' STATEMENT

Plaintiffs submit that efficiency would be best served by allowing full discovery without bifurcation between class and merits issues.

## B.   DEFENDANTS' STATEMENT

As explained more fully above, Defendants' position is that discovery should proceed in phases, as contemplated by the Northern District of California Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information.

# XVI.   EXPEDITED SCHEDULE AND TRIAL PROCEDURE

## A.   PLAINTIFFS' STATEMENT

Plaintiffs submit that the most practical means of expediting this litigation would be to order full discovery to proceed promptly without delay resulting from challenges to the pleadings, as provided by Federal Rule of Civil Procedure 26(f) and Civ. L.R. 16-2(a).  These actions are not suitable for handling under the Expedited Trial Procedure of General Order No. 64 Attachment A.

## B.   DEFENDANTS' STATEMENT

Defendants' position is that these actions are not suitable for handling under the Expedited Trial Procedure of General Order No. 64 Attachment A, and that the case should proceed with phased discovery as Defendants described in Section VIII, *supra*.

# XVII.   SCHEDULING

## A.   PLAINTIFFS' STATEMENT

Plaintiffs submit that setting a deadline for class certification, dispositive motions, and trial will be premature until Defendants have produced the transactional (i.e., cost and sales) data that will inform Plaintiffs' anticipated motions for class certification. After Defendants have produced all

requested transactional data and the parties have resolved any disputes regarding Defendants'

production, the parties will meet and confer and submit a proposed schedule for class certification

and subsequent deadlines for consideration by the Court at a subsequent Case Management

Conference.

Plaintiffs request that the Court establish a schedule now for briefing of Defendants' motions

to dismiss and deadlines for Defendants' productions in response to Plaintiffs' outstanding discovery

requests, as follows:

| EVENT | TIMING |
|---|---|
| Initial Disclosures | August 12, 2016 |
| Defendants' motions to dismiss filed | August 24, 2016 |
| Parties complete negotiations regarding Defendants' document custodians | September 7, 2016 |
| Parties complete negotiations regarding search terms | September 9, 2016 |
| Parties submit any disputes regarding custodians, search locations, or search terms to the Court | September 16, 2016 |
| Plaintiffs' oppositions to Defendants' motions to dismiss | September 26, 2016 |
| Defendants complete production of cost and sales data from centralized files | September 30, 2016 |
| Defendants' replies in support of motions to dismiss | October 11, 2016 |
| Hearing on Defendants' motions to dismiss | October 26, 2016 |
| Disputes regarding production of cost and sales data to be submitted to the Court | November 11, 2016 |
| Defendants complete production from custodial files | December 2, 2016 |
| Deadline for parties to submit further case management proposal to the Court | December 7, 2016 |
| Case Management Conference | December 14, 2016 |

## B.   DEFENDANTS' STATEMENT

Defendants agree to the proposed schedule for briefing and oral argument of Defendants'

motions to dismiss.  Defendants' position is that Plaintiffs' schedule with respect to the remaining

deadlines is unworkable and the case should proceed in phases as Defendants set forth in Section VIII, *supra*.  Compiling and producing the vast categories of transactional sales data that Plaintiffs seek for a period of more than ten years will be an extremely burdensome and expensive undertaking for Defendants.  Given the expansive scope of Plaintiffs' claims, custodial data will also be difficult, burdensome, and expensive to collect and review.  As discussed above, under the amended discovery rules in the Federal Rules of Civil Procedure, discovery should be proportional to the needs of the case.  The wide-ranging discovery plaintiffs seek at this preliminary stage of the case is not proportional to the needs of the case, particularly here where Defendants contend that Plaintiffs have failed to state viable claims that survive the statute of limitations. Discovery and the case schedule should proceed in a reasonable manner taking into account Defendants' burdens in collecting, reviewing, and producing documents and data going back many years, and should not be constrained by deadlines that are impossible to meet. Such deadlines will inevitably result in unnecessary time and expense spent negotiating and arguing extensions in order to implement realistic deadlines the parties can actually strive to meet.

Although Defendants maintain it is premature to determine a detailed schedule, Defendants agree with Plaintiffs that late 2018 is an appropriate time to target for trial, and that August 4, 2017 is a reasonable deadline for the filing of class certification motions in order to reach trial in late 2018.

### XVIII. TRIAL

**A.    PLAINTIFFS' STATEMENT**

Plaintiffs in the Direct Purchaser and Indirect Purchaser actions have requested jury trials. Plaintiffs anticipate such trials to last approximately six weeks.

**B.    DEFENDANTS' POSITION**

Defendants believe that class-wide trials are unmanageable and even allowing several weeks for the trials does not cure the manageability problems.

## XIX.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Plaintiff Schuten Electronics, Inc. filed its Disclosure of Non-party Interested Entities or Persons in Case No. 5:15-cv-04878-RMW, which this Court related on November 10, 2015. As set forth in its Disclosure Statement, Schuten Electronics, Inc. has no parent company, and no publicly held corporation owns more than 10% of the stock of Schuten Electronics, Inc.

Defendants Panasonic Corporation and Panasonic Corporation of North America filed their Disclosure of Non-party Interested Entities or Persons in Case No. 5:15-cv-04878-RMW on September 29, 2015.  ECF No. 40.  As set forth in its Disclosure Statement, Panasonic Corporation does not have a parent corporation, and no publicly-held corporation owns more than 10% of Panasonic Corporation's stock.  Panasonic Corporation is the parent corporation of Panasonic Corporation of North America and owns more than 10% of Panasonic Corporation of North America's stock.

Defendants Hokuriku Electric Industry, Co., Ltd. and HDK America, Inc. filed their Disclosure of Non-party Interested Entities or Persons on July 8, 2016. As set forth in its Disclosure Statement, Defendant HDK America, Inc. is the wholly owned subsidiary of Defendant Hokuriku Electric Industry, Co., Ltd., a Japanese publically-held corporation and no publically-held corporation owns 10% or more stock in Defendant Hokuriku Electric Industry, Co., Ltd.

Defendant KOA Corporation filed its Disclosure of Non-party Interested Entities or Persons in Case No. 3:15-cv-03820-JD on August 3, 2016.  ECF No. 176. As set forth in its Disclosure Statement, KOA Corporation is a Japanese publically-held corporation and does not have a parent corporation, and no publically-held corporation owns more than 10% of KOA Corporation's stock.

Defendant KOA Speer Electronics, Inc. ("KSE") filed its Disclosure of Non-party Interested Entities or Persons in Case No. 3:15-cv-03820-JD on September 23, 2015.  ECF No. 30. As set forth in its Disclosure Statement, KOA Speer Holding Corp. is its parent company and KSE is a wholly-owned subsidiary.

Defendants ROHM Co. Ltd. and ROHM Semiconductor U.S.A., LLC filed their Certification of Interested Entities or Persons in Case No. 5:15-cv-03820-RMW on December 16, 2015.  As set

1    forth in its Disclosure Statement, ROHM Co. Ltd. has no parent corporation, and no publicly-held

2    corporation owns more than 10% of ROHM Co.'s stock.  ROHM U.S.A. Inc. is the parent

3    corporation of ROHM Semiconductor U.S.A., and is the only entity with a 10% or greater ownership

4    interest in ROHM Semiconductor U.S.A., LLC.

5            Defendant Kamaya, Inc. filed its Disclosure of Non-party Interested Entities or Persons in

6    Case No. 3:15-cv-03820-JD on July 7, 2016.  ECF No. 161. As set forth in its Disclosure Statement,

7    Kamaya Electric Co., Ltd. is its parent company.

8                              XX.    **PROFESSIONAL CONDUCT**

9
10           The attorneys of record for Plaintiffs and Defendants have reviewed the Guidelines for

     Professional Conduct for the Northern District of California.
11
12   DATED: August 3, 2016                    HAGENS BERMAN SOBOL SHAPIRO LLP

13
                                              By _____/s/ Jeff D. Friedman_____
14
                                                       JEFF D. FRIEDMAN
15                                            Shana E. Scarlett (217895)
                                              715 Hearst Avenue, Suite 202
16                                            Berkeley, CA 94710
                                              Telephone: (510) 725-3000
17                                            Facsimile:  (510) 725-3001
                                              jefff@hbsslaw.com
18                                            shanas@hbsslaw.com

19                                            Steve W. Berman (*pro hac vice*)
                                              HAGENS BERMAN SOBOL SHAPIRO LLP
20                                            1918 Eighth Avenue, Suite 3300
                                              Seattle, WA 98101
21                                            Telephone: (206) 623-7292
                                              Facsimile:  (206) 623-0594
22                                            steve@hbsslaw.com

23

24

25

26

27

28
     JOINT CASE MANAGEMENT CONFERENCE STATEMENT -
     No.: 15-cv-03820-JD                              -31-
     010554-11 880457 V1

Kit A. Pierson (*pro hac vice*)
Daniel A. Small (*pro hac vice*)
Emmy L. Levens (*pro hac vice*)
Laura Alexander (*pro hac vice*)
Robert A. Braun (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
kpierson@cohenmilstein.com
dsmall@cohenmilstein.com
elevens@cohenmilstein.com
lalexander@cohenmilstein.com
rbraun@cohenmilstein.com

*Co-Lead Counsel for Direct Purchaser Plaintiffs*

COTCHETT, PITRE & McCARTHY, LLP


By:   /s/ Steven N. Williams
         STEVEN N. WILLIAMS

Joseph W. Cotchett (36324)
Steven N. Williams (175489)
Adam J. Zapala (245748)
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
Facsimile: 650-697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com

*Interim Lead Counsel for the Indirect Purchaser Plaintiffs*

WINSTON & STRAWN LLP


By:   /s/ Jeffrey L. Kessler
         JEFFREY L. KESSLER

Eva W. Cole
Erica C. Smilevski
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jkessler@winston.com
ewcole@winston.com

1

esmilevski@winston.com

2

Ian L. Papendick (275648)
WINSTON & STRAWN LLP
101 California Street

3

San Francisco, CA 94111
Telephone: (415) 591-6905

4

Facsimile: (415) 591-1400
ipapendick@winston.com

5

6

Brandon W Duke
WINSTON & STRAWN LLP

7

1111 Louisiana Street
25th Floor

8

Houston, TX 77002
Telephone: (713) 651-2636

9

bduke@winston.com

10

*Counsel for Panasonic Corp. and Panasonic Corp. of
North America*

11

CROWELL & MORING LLP

12

13

By:    _____/s/ Jason C. Murray_____
         JASON C. MURRAY

14

15

Robert McNary
Emily Tomoko Kuwahara
Jordan Lee Ludwig

16

CROWELL & MORING LLP
515 South Flower Street , 40th Floor

17

Los Angeles, CA 90071
Telephone: (213) 622-4750

18

Facsimile: (213) 622-2690
jmurray@crowell.com

19

rmcnary@crowell.com
ekuwahara@crowell.com

20

jludwig@crowell.com

21

Katie Michelle Yablonka
CROWELL & MORING LLP

22

275 Battery St., 23rd Floor
San Francisco, CA 94111

23

Telephone: (415) 365-7250
kyablonka@crowell.com

24

*Counsel for KOA Corp. and KOA Speer Electronics,
Inc.*

25

26

27

28

JOINT CASE MANAGEMENT CONFERENCE STATEMENT -
No.: 15-cv-03820-JD
                                          -33-
010554-11 880457 V1

O'MELVENY & MYERS LLP


By:  ___/s/ Michael F. Tubach_____
     MICHAEL FREDERICK TUBACH

Two Embarcadero Center , 28th Floor
San Francisco, CA 94111-3305
Telephone: (415) 984-8700
Facsimile: (415) 984-8701
mtubach@omm.com

Kenneth Ryan O'Rourke
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
korourke@omm.com

*Counsel for Rohm Co. Ltd. and Rohm Semiconductor U.S.A., LLC*

BARNES & THORNBURG LLP


By:  _____/s/ Kendall Millard_____
     KENDALL MILLARD

Todd Dixon
Bradley R. Love
11 South Meridian Street
Indianapolis, In 46204-3535
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
Kendall.Millard@Btlaw.Com
Tdixon@Btlaw.Com
Blove@Btlaw.Com

Roya Rahmanpour
BARNES & THORNBURG LLP
2029 Century Park East, Suite 300
Los Angeles, Ca 90067
Telephone: (310) 284-3892
Facsimile: (310) 284-3894
Rrahmanpour@Btlaw.Com

*Counsel for Hokuriku Electric Industry Co., and HDK America, Inc.*

LATHAM & WATKINS LLP

By: _____/s/ Belinda S. Lee_____
        BELINDA S LEE

Ashley M. Bauer
505 Montgomery Street, Suite 2000
San Francisco, Ca 94111-6538
Telephone: (415) 395-8138
Belinda.Lee@Lw.Com
Ashley.Bauer@Lw.Com

*Counsel for Kamaya Inc.*

# E-FILING ATTESTATION

I, Jeff Friedman, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

_____/s/ Jeff D. Friedman_____
        JEFF D. FRIEDMAN