1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3                         SAN JOSE DIVISION

4

5

6    IN RE RESISTORS ANTITRUST          )  C-15-03820 RMW
     LITIGATION,                        )
                                        )  SAN JOSE, CALIFORNIA
7    _____    )
                                        )  JANUARY 29, 2016
8    THIS DOCUMENT RELATES TO:          )
                                        )  PAGES 1-42
9    ALL ACTIONS.                       )
                                        )
10   ═══════════════════════════════    )

11

12                   TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE RONALD M. WHYTE
13                 UNITED STATES DISTRICT JUDGE

14   A P P E A R A N C E S :

15   FOR THE DIRECT          HAGENS, BERMAN, SOBOL, SHAPIRO LLP
     PURCHASER               BY:  JEFF D. FRIEDMAN
16   PLAINTIFFS:             715 HEARST AVENUE, SUITE 202
                             BERKELEY, CALIFORNIA  94710
17

18   FOR THE INDIRECT        COTCHETT, PITRE & MCCARTHY LLP
     PURCHASER               BY:  STEVEN N.  WILLIAMS
19   PLAINTIFFS:             840 MALCOLM ROAD, SUITE 200
                             BURLINGAME, CALIFORNIA  94010
20

21               APPEARANCES CONTINUED ON NEXT PAGE

22

23   OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                 CERTIFICATE NUMBER 9595
24

25           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER

```
 1      APPEARANCES (CONTINUED)

 2                              STEYER, LOWENTHAL, BOODROOKAS
                                ALVAREZ & SMITH LLP
 3                              BY:  ALLAN STEYER
                                ONE CALIFORNIA STREET, SUITE 300
 4                              SAN FRANCISCO, CALIFORNIA  94111

 5      FOR DEFENDANT           CROWELL & MORING
        KOA SPEER               BY:  JASON C. MURRAY
 6      ELECTRONICS:            515 SOUTH FLOWER STREET, 40TH FLOOR
                                LOS ANGELES, CALIFORNIA  90071
 7

 8      FOR DEFENDANT           WINSTON & STRAWN
        PANASONIC:              BY:  JEFFREY L. KESSLER
 9                              200 PARK AVENUE
                                NEW YORK, NY  10166
10

11      FOR DEFENDANT           FREITAS ANGELL & WEINBERG
        YAGEO:                  BY:  ROBERT E. FREITAS
12                              350 MARINE PARKWAY, SUITE 200
                                REDWOOD SHORES, CALIFORNIA  94065
13

14      FOR DEFENDANT           MORGAN, LEWIS & BOCKIUS
        TDK:                    BY:  SCOTT A. STEMPEL
15                              1111 PENNSYLVANIA AVENUE N.W.
                                WASHINGTON, D.C.  20004
16

17      FOR DEFENDANT           PEPPER HAMILTON LLP
        VISHAY:                 BY:  DANIEL J. BOLAND
18                              3000 TWO LOGAN SQUARE
                                EIGHTEENTH AND ARCH STREETS
19                              PHILADELPHIA, PENNSYLVANIA  19103

20      FOR DEFENDANT           MINTZ, LEVIN, COHN, FERRIS,
        AVX:                    GLOVSKY AND POPEO
21                              BY:  EVAN NADEL
                                701 PENNSYLVANIA AVENUE NW, SUITE 900
22                              WASHINGTON, D.C.  20004

23      FOR INTERVENOR          U.S. DEPARTMENT OF JUSTICE
        UNITED STATES:          ANTITRUST DIVISION
24                              BY:  ANDREW K.M. ROSA
                                209 SOUTH LASALLE STREET, SUITE 600
25                              CHICAGO, ILLINOIS  60604
```

```
 1        SAN JOSE, CALIFORNIA                JANUARY 29, 2016

 2                    P R O C E E D I N G S

 3        (COURT CONVENED AT 10:48 A.M.)

 4            THE CLERK:  CALLING CASE 15-CV-3820, MICROSYSTEMS

 5   DEVELOPMENT TECHNOLOGIES, INC., VERSUS PANASONIC CORP., ET AL,

 6   IN RE: RESISTORS ANTITRUST LITIGATION, FURTHER CASE MANAGEMENT

 7   CONFERENCE, AND ALL RELATED CASES.

 8            COUNSEL, PLEASE MAKE YOUR APPEARANCES FOR THE RECORD.

 9            MR. FRIEDMAN:  GOOD MORNING, YOUR HONOR.

10        JEFF FRIEDMAN FROM HAGENS BERMAN ON BEHALF OF THE SCHUTEN

11   PLAINTIFF, FOR THE DIRECT PURCHASER PLAINTIFFS.

12            MR. WILLIAMS:  AND GOOD MORNING, YOUR HONOR.

13        STEVE WILLIAMS, COTCHETT, PITRE & MCCARTHY ON BEHALF OF

14   THE INDIRECT PURCHASER PLAINTIFFS.

15            MR. STEYER:  ALLAN STEYER, GOOD MORNING, YOUR HONOR,

16   STEYER LOWENTHAL, ON BEHALF OF THE INDIRECT PURCHASER

17   PLAINTIFFS.

18            MR. MURRAY:  GOOD MORNING, YOUR HONOR.

19        JASON MURRAY OF CROWELL & MORING ON BEHALF OF KOA SPEER

20   ELECTRONICS, DEFENDANT.

21            MR. KESSLER:  GOOD MORNING, YOUR HONOR.

22        JEFFREY KESSLER FROM WINSTON & STRAWN ON BEHALF OF THE

23   PANASONIC DEFENDANTS.  THANK YOU.

24            MR. FREITAS:  GOOD MORNING, YOUR HONOR.

25        BOB FREITAS OF FREITAS, ANGELL & WEINBERG FOR YAGEO AND
```

```
 1        YAGEO AMERICA.

 2                MR. STEMPEL:  GOOD MORNING, YOUR HONOR.

 3            SCOTT STEMPEL FROM MORGAN, LEWIS & BOCKIUS ON BEHALF OF

 4     THE TDK DEFENDANTS.

 5                MR. BOLAND:  GOOD MORNING, YOUR HONOR.

 6            DANIEL BOLAND FROM PEPPER HAMILTON FOR VISHAY

 7     INTERTECHNOLOGY.

 8                MR. NADEL:  GOOD MORNING, YOUR HONOR.

 9            EVAN NADEL FROM THE MINTZ LEVIN FIRM ON BEHALF OF

10     DEFENDANT AVX.

11                MR. ROSA:  GOOD MORNING, YOUR HONOR.

12            ANDREW ROSA FROM THE ANTITRUST DIVISION FOR INTERVENOR

13     UNITED STATES.

14                THE COURT:  GOOD MORNING.

15            AFTER -- THOSE OF YOU WHO AREN'T SPEAKING ARE WELCOME TO

16     SIT DOWN.

17            AFTER YOU SUBMITTED THE PAPERS FOR THIS CONFERENCE, DID

18     YOU HAVE ANY FURTHER DISCUSSIONS ABOUT A DISCOVERY PLAN?

19                MR. FRIEDMAN:  JEFF FRIEDMAN FOR THE DIRECT PURCHASER

20     PLAINTIFFS, YOUR HONOR.

21            NO, WE HAVE NOT.

22                MR. MURRAY:  JASON MURRAY FOR THE DEFENDANTS.

23            THAT'S CORRECT, YOUR HONOR.

24                MR. ROSA:  THAT'S CORRECT, YOUR HONOR.

25                THE COURT:  ALL RIGHT.  IT SEEMS THAT THE BASIC ISSUE
```

1     IS WHETHER OR NOT DISCOVERY OUGHT TO GO FORWARD PRIOR TO THE

2     PLAINTIFFS SURVIVING A MOTION TO DISMISS.  I MEAN -- YEAH.

3          I'M VERY INCLINED TO SAY WE SHOULD MOVE FORWARD, SO I'M

4     NOT, AT THIS POINT, PREPARED TO STAY THE CASE PENDING

5     SETTLEMENT OF THE PLEADINGS.

6          WITH THAT BEING SAID, IT SEEMS TO ME THAT BASICALLY A STAY

7     WITH THE -- OR DISCOVERY -- DOCUMENT DISCOVERY SHOULD GO

8     FORWARD SUBJECT TO THE STAY AS TO THE DISCOVERY THAT WOULD

9     IMPACT THE D.O.J. PROCEEDINGS, AND I THINK THAT THE D.O.J. HAS

10    BASICALLY DESCRIBED WHAT IT'S CONCERNED ABOUT, BUT WE COULD PUT

11    IN AN ORDER AND THE -- I'M A LITTLE BIT CONCERNED ABOUT THE

12    DESCRIPTIONS OF WHAT CAN BE DISCOVERED AND WHAT CAN'T BE

13    BECAUSE THEY MAY BE A LITTLE BIT SUBJECT TO INTERPRETATION.

14         BUT I THINK IF THE DISCOVERY REQUESTS ARE COPIED TO THE

15    GOVERNMENT, IT COULD THEN OBJECT IF IT FELT SOMETHING WAS NOT

16    IN ACCORD WITH WHAT THEY HAD PROPOSED AND I HAD AGREED TO.

17         SO WITH THAT -- WITH THOSE BASIC COMMENTS, I'M HAPPY TO

18    HEAR BRIEF COMMENTS FROM THE PARTIES.

19              MR. FRIEDMAN:  GOOD MORNING, AGAIN, YOUR HONOR.

20         JEFF FRIEDMAN FOR THE DIRECT PURCHASER PLAINTIFFS.

21         FIRST, I'D LIKE TO SEE IF I CAN FOCUS IN ON THE COURT'S

22    INDICATED RULING.

23         IS THE COURT INDICATING THAT IT IS INCLINED TO STAY THE

24    PLAINTIFFS' ABILITY TO RECEIVE THE DEPARTMENT -- THE DOCUMENTS

25    THAT ARE IN THE DEFENDANTS' POSSESSION FROM THE DEFENDANTS THAT

1    THEY PRODUCED TO THE DEPARTMENT OF JUSTICE?

2        THE COURT:  I'M CONCERNED ABOUT A REQUEST THAT SAYS,

3    "GIVE ME WHAT YOU GOT FROM THE DEFENDANTS."  OR TO THE

4    DEFENDANTS, "GIVE ME WHAT YOU GAVE TO THE GOVERNMENT."

5       BUT I'M NOT PRECLUDING YOUR ASKING FOR DOCUMENTS THAT ARE

6    ONES THAT THE GOVERNMENT MAY WELL HAVE RECEIVED.

7       IS THAT CLEAR?

8        MR. FRIEDMAN:  I BELIEVE SO.

9       SO LET ME GO FORWARD WITH THAT, WHICH IS IF I UNDERSTAND

10    THE COURT, A REQUEST FRAMED FOR DOCUMENTS THAT MAY ENCOMPASS,

11    FOR EXAMPLE, DISCUSSIONS AMONG THE DEFENDANTS THAT ARE -- THAT

12    REVEAL CONSPIRATORIAL CONDUCT, BUT IS NOT FRAMED IN TERMS OF

13    SAYING "JUST GIVE US WHAT YOU GAVE TO D.O.J." WOULD BE

14    SOMETHING THAT WOULD FALL WITHIN THE PERMISSIBLE SCOPE, IF I

15    UNDERSTAND IT.  AGAIN --

16        THE COURT:  SAY THAT AGAIN.

17        MR. FRIEDMAN:  SURE.  SO IF WE PROPOUNDED A DISCOVERY

18    REQUEST THAT WAS FRAMED, "PROVIDE US ALL COMMUNICATIONS OR

19    DOCUMENTS THAT REVEAL DISCUSSION AMONGST THE DEFENDANTS," AND

20    WE FRAME IT THAT WAY, AS OPPOSED TO FRAMING IT, "GIVE US THE

21    DOCUMENTS YOU PRODUCED TO THE DEPARTMENT OF JUSTICE," THE WAY

22    THAT IT WAS FRAMED IN THE FORMER WOULD BE PERMISSIBLE WITHIN

23    WHAT THE COURT IS CONTEMPLATING IF I UNDERSTAND IT.

24        THE COURT:  I THINK THAT'S CORRECT IF I UNDERSTAND

25    YOU, EXCEPT THAT I WOULDN'T WANT COMMUNICATIONS THAT INVOLVE

```
 1        D.O.J. AND THE DEFENDANTS WHEN THEY'RE TALKING ABOUT DEALING

 2        WITH D.O.J.

 3               MR. FRIEDMAN:  UNDERSTOOD.

 4               THE COURT:  BUT IF YOU WANTED TO -- WHAT'S THE

 5        TIMEFRAME OF THE ALLEGED CONSPIRATORIAL ACTS?

 6               MR. FRIEDMAN:  YOUR HONOR, IT VARIES.

 7               THE COURT:  JUST PICK A DATE THAT'S WITHIN --

 8               MR. FRIEDMAN:  WITHIN, YOU KNOW, LET'S SAY IN THE

 9        TIME PERIOD BETWEEN 2002 AND 2009.

10               THE COURT:  IF YOU SENT A REQUEST FOR DOCUMENTS

11        REFLECTING A MEETING WITH X DURING 2005, IT WOULD HAVE TO BE

12        MORE SPECIFIC THAN THAT, BUT THAT WOULD BE OKAY GIVEN THE WAY

13        I'M THINKING CURRENTLY.

14               MR. FRIEDMAN:  AND I UNDERSTAND, AND SO I WANT --

15        BECAUSE WE WANT TO MAKE SURE THAT WE'RE CLEAR IN TERMS OF WHEN

16        WE INITIALLY PROPOUND THIS, AND SO WE WOULD NOT FRAME IT IN

17        TERMS OF, AND WE CAN SPECIFICALLY EXCLUDE, COMMUNICATIONS WITH

18        THE DEPARTMENT OF JUSTICE.  I UNDERSTAND THAT CLEARLY.

19           BUT I WANT TO MAKE SURE THAT WHEN WE'RE PROPOUNDING THE

20        REQUEST THAT IS SEEKING WHAT I TYPICALLY CALL CONDUCT DOCUMENTS

21        FROM THE DEFENDANTS FOR THEIR MEETINGS OR REFLECTION OF THEIR

22        DISCUSSIONS WITH DEFENDANTS AMONGST EACH OTHER, THAT THAT -- IT

23        SOUNDS TO ME THAT THAT IS CONSISTENT WITH WHAT THE COURT IS

24        CURRENTLY THINKING.

25               THE COURT:  I THINK THAT'S CORRECT.
```

1            MR. FRIEDMAN:  OKAY.  YOUR HONOR, THE -- WHAT I

2      ANTICIPATE MR. KESSLER -- YOU KNOW, AND, AGAIN, THIS WOULD BE

3      THEIR ARGUMENT -- BUT WHAT I ANTICIPATE DEFENDANTS WILL SAY IS

4      THAT THIS REQUEST, WHICH IS BROADER, AND I UNDERSTAND WHY THE

5      COURT -- I BELIEVE I UNDERSTAND WHY THE COURT IS FASHIONING AN

6      ACCEPTABLE REQUEST THAT WAY, BECAUSE IT THEREFORE DOES NOT

7      TARGET AND FOCUS IN ON SPECIFICALLY WHAT WAS PROVIDED TO THE

8      DEPARTMENT OF JUSTICE, I BELIEVE WHAT THEY WILL TURN AND SAY IS

9      THAT THAT BROADER POTENTIAL REQUEST WILL RESULT IN THEM HAVING

10     A GREATER BURDEN THAN THEY OTHERWISE WOULD IF THEY WOULD JUST

11     PRODUCE THE DEPARTMENT -- THE DOCUMENTS THEY PRODUCED TO THE

12     DEPARTMENT OF JUSTICE.

13          NOW, THAT MAY BE THEIR PROBLEM AND THAT'S THEIR ARGUMENT.

14          THE ONLY THING I WANT TO HIGHLIGHT FOR THE COURT IN TERMS

15     OF THIS DISCUSSION, WHICH IS THE FOLLOWING, AND I'LL MAKE IT

16     BRIEF BECAUSE I UNDERSTAND THE COURT'S INDICATED RULING.

17          THE -- ALL WE, AS THE DIRECT PURCHASER PLAINTIFFS, ARE

18     SEEKING IN OUR STAY AT THIS POINT -- AGAIN, WHICH IS MORE

19     NARROW THAN WHAT THE COURT IS ACTUALLY PERMITTING US -- ALL WE

20     ARE SEEKING AT THIS POINT WOULD BE THE DOCUMENTS IN DEFENDANTS'

21     POSSESSION THAT DEFENDANTS KNOW -- EACH DEFENDANT KNOWS, YOUR

22     HONOR, WHAT EACH DEFENDANT'S DOCUMENTS SAY THAT THEY TURNED

23     OVER TO THE DEPARTMENT OF JUSTICE.

24          THE ARGUMENT THE DEPARTMENT OF JUSTICE IS MAKING, JUST

25     WITH RESPECT TO THESE DOCUMENTS, NOT COMMUNICATIONS WITH

1    DEPARTMENT OF JUSTICE, BUT JUST WITH THESE PREEXISTING

2    DOCUMENTS THAT ARE NOT 60 DOCUMENTS, THE ARGUMENT BY THE

3    DEPARTMENT OF JUSTICE, IF I UNDERSTAND IT, IS EFFECTIVELY BY

4    THESE DEFENDANTS KNOWING WHAT THE OTHER DEFENDANTS' DOCUMENTS

5    SAY, THAT MAY HELP THEM IN TERMS OF CONSTRUCTING THEIR DEFENSE

6    IN THE CRIMINAL CASE.

7           THAT'S THE CORE OF THE RESPONSE TO WHAT WE ARE SEEKING.

8           AND WHAT I'D SAY IS THE FOLLOWING, AND IF I'M NOT BEING

9    CLEAR, I WILL TRY AND RECAST IT FOR THE COURT.

10          SO THEY KNOW WHAT'S IN EACH OTHER'S DOCUMENTS, IN EACH OF

11   THEIR -- DEFENDANT 1 KNOWS WHAT'S IN DEFENDANT 1'S DOCUMENTS.

12   DEFENDANT 2 KNOWS WHAT'S IN DEFENDANT 2'S DOCUMENTS.  IT'S

13   DEFENDANT 1 LEARNING ABOUT WHAT'S IN DEFENDANT 2'S DOCUMENTS

14   AND DEFENDANT 2 LEARNING WHAT'S IN DEFENDANT 1'S DOCUMENTS THAT

15   APPEARS TO BE THE DEPARTMENT'S CONCERN.

16          WHAT I'D HIGHLIGHT IS THIS:  NUMBER ONE, THIS IS A

17   CONSPIRACY CASE.  THE DEFENDANTS, TO THE EXTENT THAT THERE ARE

18   CONSPIRATORIAL COMMUNICATIONS IN DEFENDANT 1'S DOCUMENTS ABOUT

19   DEFENDANT 2 AND THE DISCUSSIONS GOING ON BETWEEN DEFENDANT 1

20   AND DEFENDANT 2, THEY KNOW THIS ALREADY.  THEY PARTICIPATED IN

21   THE ALLEGED CONSPIRACY.

22          SO THE FACT THAT IT WAS MEMORIALIZED IN AN E-MAIL THAT'S

23   IN THE POSSESSION OF DEFENDANT 2, THE PEOPLE WHO PARTICIPATED

24   ALREADY KNOW WHAT HAPPENED.  THAT'S THE FIRST COMMENT.

25          SO IT IS NOT A REVELATION TO DEFENDANT 2 TO GET

1    DEFENDANT 1'S DOCUMENTS.  THAT -- IN THIS CONTEXT, SPECIFICALLY

2    IN THIS CONTEXT.

3         THE SECOND POINT I WOULD MAKE, YOUR HONOR, IN THIS CONTEXT

4    IS THERE IS NOTHING IN THE LAW OR IN THE DEPARTMENT OF

5    JUSTICE'S STAY REQUEST THAT PROHIBITS OR CAN PROHIBIT THESE

6    DEFENDANTS' LAWYERS FROM HAVING THE VERY DISCUSSIONS AMONGST

7    THEMSELVES AS TO THE STATE OF THE EVIDENCE FOR EACH OF THEIR

8    RESPECTIVE CLIENTS WITHIN A JOINT DEFENSE AGREEMENT.  THERE'S

9    NOTHING THAT PRECLUDES THAT AT THIS POINT.

10         AND, IN FACT, IT IS EXTREMELY COMMON IN ALL OF THE

11   CONSPIRACY CASES THAT WE'VE BEEN LEAD IN IN THIS DISTRICT,

12   OPTICAL DISK DRIVES IN FRONT OF JUDGE SEEBORG, THE LITHIUM ION

13   BATTERIES CASE IN FRONT OF JUDGE GONZALEZ ROGERS, AND SEVERAL

14   OF THE OTHER ONES, THAT DEFENDANTS ARE IN A JOINT DEFENSE

15   AGREEMENT.

16              THE COURT:  THAT'S LOGICAL TO ASSUME.

17              MR. FRIEDMAN:  I THINK IT IS.

18         AND SO THERE -- WITH THE NARROWNESS OF WHAT WE ARE

19   SEEKING -- AND IT'S TARGETED TO LIMIT THE BURDEN ARGUMENTS THAT

20   THEY MAY MAKE -- WE DON'T THINK THAT THERE IS A REAL RISK IN

21   REALITY, IN PRACTICAL TERMS, IN THIS SPECIFIC CONTEXT OF

22   INCREMENTAL INFORMATION BEING PROVIDED TO EACH OTHER THAT IS A

23   REAL SUBSTANTIAL THREAT TO THE DEPARTMENT.

24         NOW, THE DEPARTMENT MAY HAVE SUBMITTED TO YOU SOMETHING IN

25   CAMERA OR UNDER SEAL THAT OBVIOUSLY WE HAVEN'T SEEN, BUT IT

1    WASN'T USED IN REFERENCE TO THEIR SUBMISSION TO YOU IN SUPPORT

2    OF A CONCRETIZED, SPECIFIC CONCERN IN THIS CONTEXT THAT WOULD

3    SUPPORT NOT PRODUCING THOSE DOCUMENTS.

4         AND SO I ONLY HIGHLIGHT THAT BECAUSE OF WHAT I ANTICIPATE

5    IS GOING TO BE THE ARGUMENT IN RESPONSE TO YOUR HONOR, WHICH IS

6    NOW THERE'S ALL THIS BURDEN, IT'S GOING TO TAKE ALL THIS TIME

7    TO PRODUCE MUCH BROADER DISCOVERY IN THIS CASE.

8         AND I OFFER THAT IN JUXTAPOSITION TO WHAT THEY'RE GOING TO

9    SAY, THAT TWOMBLY PRECLUDES ALL OF THIS DISCOVERY FROM GOING

10   FORWARD IN THE INTERIM, AND THIS WHOLE POINT OF TWOMBLY IS TO

11   NOT BURDEN THEM UNTIL YOU HAVE A COMPLAINT SUSTAINED, ET

12   CETERA.

13        AND SO I'M JUST HIGHLIGHTING THAT FOR THE COURT IN TERMS

14   OF ITS ULTIMATE CONSIDERATION ON WHERE THIS COMES OUT.

15        IF WE ARE -- IF WE'RE LEFT WITH THE ISSUE OF, YOU KNOW, WE

16   CAN GO FOR FULL BLOWN DOCUMENT DISCOVERY AND PROPOUND IT, WE

17   WILL, OF COURSE, DO IT.

18        WE'RE TRYING TO DO IT IN A TARGETED, PHASED WAY TO

19   MINIMIZE BURDEN BECAUSE WE THINK THAT'S HOW -- I'LL SPEAK FOR

20   MYSELF -- WE THINK IT'S A RESPONSIBLE WAY IN TERMS OF BEING

21   ABLE TO PROCEED WITH THE PLEADINGS, GETTING THEM SETTLED

22   QUICKLY, AND MOVING THE CASE ALONG EFFICIENTLY.

23             THE COURT:  SO IF I UNDERSTAND WHAT YOU'RE SAYING,

24    YOU'RE SAYING THAT BASICALLY YOU WOULD LIKE TO BE ABLE TO DO --

25    YOU WOULD LIKE TO ASK THE DEFENDANTS FOR DOCUMENTS THAT THEY

1    SUPPLIED TO THE GOVERNMENT, BUT NOT DOCUMENTS THAT REFLECT

2    TRANSMISSIONS TO THE GOVERNMENT OR DISCUSSIONS WITH THE

3    GOVERNMENT.

4              MR. FRIEDMAN:  CORRECT.  AND, AGAIN, YOU KNOW, YOUR

5    HONOR, IF -- I'M NOT OBJECTING TO THE COURT'S -- TO OUR ABILITY

6    TO DO A BROADER ISSUE, BUT I WAS SIMPLY ASSERTING TO THE COURT

7    THAT I UNDERSTAND THAT IT -- HAVING A BROADER REQUEST, THEY CAN

8    MIX IN THE DOCUMENTS THAT THEY PRODUCED TO THE DEPARTMENT OF

9    JUSTICE AND THE ONES THEY DIDN'T AND, THEREFORE, IT'S A BIGGER

10   TROVE AND, THEREFORE, YOU CAN'T PUT TOGETHER THE PIECES OF WHAT

11   THEY COLLECTED AND PRODUCED TO THE DEPARTMENT, AND I UNDERSTAND

12   THAT IS ONE SOLUTION AND IF THAT'S THE SOLUTION, WE'RE HAPPY TO

13   ACCEPT IT.

14        I WAS JUST TRYING TO OFFER --

15              THE COURT:  OKAY.

16              MR. FRIEDMAN:  -- THE COUNTER IN TERMS OF HOW IT MAY

17   BE EQUAL OR MORE EFFICIENT TO DO WHAT WE'RE SAYING.

18              THE COURT:  OKAY.  YOU HAVE A VALID POINT.

19              MR. WILLIAMS:  STEVE WILLIAMS FOR THE INDIRECT

20   PURCHASERS, AND I'LL BE VERY BRIEF.

21        I WOULD WANT TO RESPOND TO THE DEPARTMENT OR THE

22   DEFENDANTS WHEN THEY SPEAK, BUT I DO WANT TO INDICATE THAT THE

23   INDIRECT PURCHASERS THINK THAT THE INDICATED RESOLUTION THAT

24   THE COURT SUGGESTED IS THE APPROPRIATE RESOLUTION OF THE

25   MATTERS BEFORE THE COURT CONCERNING WHEN AND WHAT DISCOVERY

1    SHOULD PROCEED.

2         MR. KESSLER:  JEFFREY KESSLER, YOUR HONOR, FOR THE

3    PANASONIC DEFENDANTS, BUT I'LL SPEAK AT LEAST INITIALLY FOR THE

4    DEFENSE GROUP ON THIS ISSUE.

5         YOUR HONOR, FIRST OF ALL, THE BROAD SOLUTION OF JUST

6    LETTING THEM PROPOUND REQUESTS FOR ALL DOCUMENTS OF COMPETITOR

7    MEETINGS, FOR AN EIGHT YEAR PERIOD OR A NINE YEAR PERIOD, ET

8    CETERA, IN ALL THE OTHER CASES WE'VE BEEN IN, LITERALLY CAN

9    TAKE SIX TO EIGHT MONTHS.  AND THE REASON FOR THAT IS WE HAVE

10   TO NEGOTIATE SEARCH PROTOCOLS, WE HAVE TO NEGOTIATE CUSTODIANS,

11   WE HAVE TO TRANSLATE ALL THE DOCUMENTS FOR OURSELVES FOR

12   REVIEW.  THESE ARE ALL FOREIGN LANGUAGE DOCUMENTS.  IN SOME

13   CASES NOT ALL THE PARTIES HAVE EVEN BEEN PROPERLY SERVED.

14        SO TO MY KNOWLEDGE, IN ALL THE MDL'S IN THIS DISTRICT, NOT

15   A SINGLE ONE HAS HAD THAT DISCOVERY GO FORWARD BEFORE THERE HAS

16   BEEN A RESOLUTION AS TO WHETHER THERE'S A PROPER COMPLAINT TO

17   GO FORWARD.

18        THERE HAVE BEEN JUDGES WHO HAVE SPLIT ON THE ISSUE OF THE

19   MORE NARROW REQUEST THAT WAS ARTICULATED BY MR. FRIEDMAN, WHICH

20   IS JUST FOCUSSING ON WHAT HAS BEEN GIVEN TO THE DEPARTMENT OF

21   JUSTICE BECAUSE, AT LEAST IN THE PLAINTIFFS' VIEW, THAT DOES

22   NOT INVOLVE IDENTIFYING CUSTODIANS, SEARCH TERMS, ANY OF THAT

23   BECAUSE WHATEVER HAS BEEN GIVEN HAS BEEN GIVEN.

24        SO I WOULD SAY, AT LEAST -- AND MR. FRIEDMAN PROBABLY

25   EXPECTED ME TO SAY THIS -- IF YOU'RE GOING TO PERMIT ANY

1    DISCOVERY NOW BEFORE -- ON THOSE TYPES OF ISSUES, IT SHOULD BE

2    LIMITED TO THAT BECAUSE THAT'S THE ONLY THING THAT MAKES SENSE

3    ON THE CASE EFFICIENCY.

4         BUT I WOULD LIKE TO ADDRESS THE FUNDAMENTAL ISSUE, WHICH

5    IS THAT RIGHT NOW, WE'RE GOING TO GET A CONSOLIDATED COMPLAINT.

6    THIS IS NOT THE OPERATIVE COMPLAINT FOR BOTH THE INDIRECTS AND

7    FOR THE DIRECTS.

8         WHAT WE WERE SUGGESTING, AND WE THINK IS THE PROPER WAY TO

9    GO, IS TO SET A SCHEDULE FOR THEM TO FILE THOSE COMPLAINTS,

10   BECAUSE ONCE WE HAVE THOSE COMPLAINTS, THEN WE CAN ASSESS, FOR

11   EXAMPLE, WHAT'S THE PROPER SCOPE?  RIGHT NOW WE DON'T KNOW IF

12   IT'S 2002 TO 2009 OR IF THAT PERIOD IS TOTALLY GOING TO CHANGE.

13   WE DON'T KNOW IF IT'S GOING TO BE THE SAME DEFINITION OF

14   PRODUCT OR NOT.  WE'RE DEALING COMPLETELY BLINDLY.

15        SO WHAT WE BELIEVE THE BETTER COURSE IS, AND WHAT WE

16   PROPOSED, IS NOT HAVE A DELAY IN THIS CASE.  WE'RE AGAINST

17   DELAY.  WHAT WE'D LIKE TO SEE IS FOR THEM TO FILE THEIR

18   CONSOLIDATED COMPLAINT 30 DAYS FROM NOW, THEN WE CAN MEET AND

19   CONFER WITH THEM AND THE DEPARTMENT OF JUSTICE ON THE PROPER

20   SCOPE OF DISCOVERY THAT COULD GO FORWARD BASED ON THE NEW

21   CONSOLIDATED AMENDED COMPLAINT.

22        BUT WHAT SHOULD NOT BE THE PROCEDURE IS TO FIRST HAVE THEM

23   DO DISCOVERY, IN EFFECT ON A FISHING EXPEDITION, TO THEN FIGURE

24   OUT WHAT KIND OF CASE CAN THEY CRAFT.  I MEAN, THEY'RE SUPPOSED

25   TO HAVE A CASE --

```
 1                    THE COURT:  I AGREE.

 2                    MR. KESSLER:  -- WHEN THEY FILED IT.

 3                    THE COURT:  I AGREE.

 4                    MR. KESSLER:  SO THAT WOULD BE OUR SUGGESTION.

 5               SO WE EITHER WOULD PROPOSE THAT WE COME BACK TO THIS AFTER

 6      THEY FILE THE CONSOLIDATED AMENDED COMPLAINT, AND PERHAPS SOME

 7      DISCOVERY WOULD BE APPROPRIATE THEN, AND THAT'S SOMETHING WE

 8      COULD TRY TO WORK OUT WITH THEM AND WE'LL KNOW MORE ABOUT WHERE

 9      WE ARE.

10               THAT ALSO, BY THE WAY, WILL TAKE US CLOSER TO THE APRIL 1

11      DEADLINE, WHICH THE GOVERNMENT WOULD LIKE TO HAVE FOR THIS STAY

12      ON ALL OF THIS IN TERMS OF -- THE GOVERNMENT'S REQUEST, AT

13      LEAST AS I UNDERSTAND IT, WOULD COVER ANY COMPETITOR

14      COMMUNICATIONS NOW, BUT THE GOVERNMENT CAN SPEAK FOR

15      THEMSELVES.

16               SO IF THEY FILE THEIR CONSOLIDATED COMPLAINT, LET'S SAY

17      EVEN APRIL 1, WHICH IS THE END OF THE GOVERNMENT'S STAY, IT'S

18      NOW ONLY TWO MONTHS AWAY, THEN WE CAN SEE -- THE GOVERNMENT

19      WILL SEE IF THEY HAVE ANYTHING FURTHER TO SAY, WE CAN DISCUSS

20      DISCOVERY AND COME UP WITH SOMETHING SENSIBLE.

21               BUT AT A MINIMUM, IF YOU WERE GOING TO ALLOW DISCOVERY

22      NOW, WE WOULD URGE YOU, PLEASE, NOT TO ALLOW THE VERY BROAD

23      DISCOVERY THAT, FRANKLY, IS GOING TO PUT OFF THIS CASE FOR HALF

24      A YEAR AND WE DON'T EVEN KNOW WHAT THE COMPLAINT IS YET.

25               SO THANK YOU, YOUR HONOR.
```

```
 1              THE COURT:  THANK YOU.

 2              MR. ROSA:  YOUR HONOR, MAY I BE HEARD?

 3              THE COURT:  YES.

 4              MR. ROSA:  I'M NOT ENTIRELY CERTAIN I UNDERSTAND WHAT

 5       THE COURT HAS SAID WOULD BE ALLOWABLE.

 6          IS THE COURT SAYING THE PLAINTIFFS MAY REQUEST DOCUMENTS

 7       THAT HAVE BEEN PRODUCED TO THE UNITED STATES OR THE GRAND JURY?

 8       OR JUST THE BROADER REQUEST FOR DOCUMENTS THAT REFLECT MEETINGS

 9       BETWEEN THE DEFENDANTS?

10              THE COURT:  I WASN'T -- I'M PERSUADED BY THE DEFENSE

11       THAT MY INITIAL SUGGESTION IS TOO BROAD.

12          BUT I WAS NOT SUGGESTING THAT THE DEFENSE WOULD BE

13       ENTITLED TO FIND OUT WHETHER SOMETHING HAD BEEN SUBMITTED TO

14       THE GRAND JURY OR NOT.

15          BUT THE QUESTION I THINK THE DEFENDANTS ARE SAYING, AND

16       THAT I AM INTERESTED TO HEAR YOUR RESPONSE ON, THAT THEY

17       COULD -- THAT A REQUEST FOR DOCUMENTS THAT HAVE BEEN PROVIDED

18       TO THE GOVERNMENT, BUT AREN'T THE TYPE OF DOCUMENTS THAT THE

19       GOVERNMENT IS CONCERNED ABOUT AS SHOWING WHAT THE GOVERNMENT'S

20       THINKING IS OR WHAT IT'S PROVIDED TO THE GRAND JURY WOULD NOT

21       BE PRODUCED.

22          BUT IF THERE WAS JUST SOME UNDERLYING DOCUMENT ON PRICING

23       OR --

24              MR. ROSA:  I SEE, YOUR HONOR.  THE GOVERNMENT'S

25       CURRENT PROPOSED --
```

1          THE COURT:  OR MARKET SHARE OR THINGS LIKE THAT.

2          MR. ROSA:  YEAH.  THE GOVERNMENT'S PROPOSED ORDER, IN

3     PARAGRAPH 2 THAT WE SUBMITTED ON THE 22ND, PRECLUDES DOCUMENT

4     DISCOVERY PRIOR TO THE 18TH OF APRIL -- NOT THE 1ST OF APRIL,

5     THE 18TH -- UNDERSTANDABLE MISTAKE, BUT IT'S THE 18TH -- THAT

6     REFERS, REFLECTS, OR RELATES TO ANY UNDERSTANDINGS, AGREEMENTS,

7     CONTACTS, MEETINGS AND SO FORTH, THAT'S MEANT TO COVER THE

8     ANTICOMPETITIVE -- ANY ANTICOMPETITIVE CONTACTS OR

9     COMMUNICATIONS, POTENTIALLY CRIMINAL COMMUNICATIONS BETWEEN THE

10    DEFENDANTS.  SO WE VIEW THOSE AS BEING EXCLUDED BY OUR CURRENT

11    PROPOSED ORDER.

12         BUT THE -- AND ALL PARTIES HAVE AGREED, AS I UNDERSTAND

13    IT, TO THAT PARTICULAR CLAUSE.

14         NOW, THERE'S AVOIDANCE OF DOUBT THAT SAYS YOU CAN GET -- A

15    CLAUSE AFTER THAT THAT SAYS YOU CAN GET DOCUMENTS THAT REFLECT

16    THINGS SUCH AS SALE, PRICING, PRODUCTION, VOLUME, MARKET SHARE,

17    CUSTOMERS, CAPACITY, OR DISTRIBUTION OF RESISTORS MAY BE

18    PRODUCED PRIOR TO APRIL 18TH.  SO THAT'S WHERE I'M A LITTLE

19    UNSURE WHERE THE COURT IS GOING.

20         THE COURT:  I THINK THAT'S UNCLEAR AS TO WHAT'S THE

21    DISTINCTION YOU'RE MAKING BETWEEN DOCUMENTS THAT CANNOT BE

22    PRODUCED, OR THAT YOU DON'T WANT PRODUCED IN PARAGRAPH 1, AND

23    THOSE THAT YOU'RE SAYING CAN BE PRODUCED.

24         MR. ROSA:  I SEE.  THE PARAGRAPH 1 IS DOCUMENTS THAT

25    REFLECT COMMUNICATIONS WITH THE UNITED STATES OR THE GRAND JURY

1    AND THAT WE HAVE REQUESTED A, YOU KNOW, A STAY ON INDEFINITELY.

2    WE COULD REVISIT THAT WITH THE COURT AND THE PARTIES IF

3    NECESSARY.

4         OTHERS ARE JUST PREEXISTING BUSINESS DOCUMENTS THAT, YOU

5    KNOW, THERE'S A SUBSET OF THOSE THAT REFLECT CONTACTS OF

6    CONCERN TO THE GOVERNMENT THAT WE'RE SAYING SHOULD BE STAYED TO

7    APRIL 18TH.

8         SO COMMUNICATIONS ARE THINGS OTHER THAN PREEXISTING

9    BUSINESS DOCUMENTS.

10        THE COURT:  I'M SORRY.  SAY THAT AGAIN.

11        MR. ROSA:  COMMUNICATIONS WOULD BE SOMETHING OTHER

12   THAN PREEXISTING BUSINESS DOCUMENTS THE WAY I READ THIS, AND

13   THAT'S ONE CATEGORY OF DOCUMENTS.

14        AND THEN THERE'S -- PARAGRAPH 2 MOVES ON TO THE

15   PREEXISTING DOCUMENTS.

16        THE COURT:  SO WHAT ARE YOU SAYING CAN BE THE SUBJECT

17   OF DISCOVERY BEFORE APRIL 18TH?

18        MR. ROSA:  DOCUMENTS THAT REFLECT TRANSACTIONAL DATA,

19   ORGANIZATIONAL STRUCTURE, FINANCES, BUSINESS PLANS, AND PRICING

20   POLICIES.  IT'S A -- IF YOU LOOK AT PARAGRAPH 2 OF OUR

21   SUBMISSION, I DON'T HAVE THE DOCKET NUMBER HANDY, OUR PROPOSED

22   PARAGRAPH 2.

23        THE COURT:  OKAY.  AND YOU WOULD NOT BE -- DOCUMENTS

24   THAT MAY BE REQUESTED AND PRODUCED PRIOR TO APRIL 18TH, 2016,

25   PURSUANT TO THIS PARAGRAPH, INCLUDE, BUT ARE NOT LIMITED TO,

```
1    DOCUMENTS CONCERNING DEFENDANTS' TRANSACTIONAL DATA,

2    ORGANIZATIONAL STRUCTURE, FINANCES, BUSINESS PLANS, AND PRICING

3    POLICY?

4              MR. ROSA:  YES, YOUR HONOR.

5              THE COURT:  THOSE COULD BE PRODUCED?

6              MR. ROSA:  YES, YOUR HONOR.

7              THE COURT:  COULD THEY BE PRODUCED BY A REQUEST TO

8    ONE OF THE DEFENDANTS TO SUPPLY THE DOCUMENTS CONCERNING

9    DEFENDANTS' TRANSACTIONAL DATA, ORGANIZATIONAL STRUCTURE,

10   FINANCES, BUSINESS PLANS, AND PRICING POLICIES THAT WERE

11   SUPPLIED TO THE DEPARTMENT OF JUSTICE?

12             MR. ROSA:  WE WOULD NOT -- WE WOULD OPPOSE THAT, YOUR

13   HONOR.

14             THE COURT:  AND WHY IS THAT?

15             MR. ROSA:  BECAUSE IT WOULD REVEAL PARTICULAR

16   COMPANIES THAT ARE THE SUBJECT OF THE GRAND JURY INVESTIGATION,

17   YOUR HONOR.

18             THE COURT:  SO YOU'RE SAYING REQUESTS FOR THAT TYPE

19   OF DOCUMENT WOULD HAVE TO GO TO -- FROM PLAINTIFF TO DEFENDANT

20   AND THEN THE DEFENDANT WOULD HAVE TO PRODUCE IT, IF IT FELL

21   UNDER THAT DESCRIPTION, WHETHER OR NOT IT WAS PRODUCED TO THE

22   GOVERNMENT?

23             MR. ROSA:  YES, YOUR HONOR.  THAT WAS LANGUAGE -- I

24   BELIEVE PLAINTIFFS SUGGESTED THAT LANGUAGE IN RESPONSE TO OUR

25   ORIGINAL ORDER AND WE ADOPTED IT.
```

1          IS THAT NOT SO?

2          I CAN CERTAINLY LOOK AT THE -- YES, THAT WAS LANGUAGE

3     PROPOSED BY PLAINTIFFS, THE FOR AVOIDANCE OF DOUBT CLAUSE, AND

4     THEN THE FOLLOWING PARAGRAPH, FOLLOWING THAT SENTENCE,

5     DOCUMENTS THAT MAY BE REQUESTED AND PRODUCED PRIOR TO

6     APRIL 18TH, PURSUANT TO THIS PARAGRAPH, INCLUDE, BUT ARE NOT

7     LIMITED TO.

8          BY WAY OF DOCUMENT 101, WHICH IS THE IPP'S PROPOSAL, IT

9     WOULD BE THEIR PARAGRAPH 3 RED LINED AGAINST THE UNITED STATES'

10    ORIGINAL SUGGESTION.

11              THE COURT:  WHERE IS THE AVOIDANCE PARAGRAPH?

12              MR. ROSA:  THAT WOULD BE LOOKING AT THE IPP'S

13    SUGGESTION, SUBMISSION, WHICH IS DOCUMENT 101, PARAGRAPH 3 OF

14    THEIR LANGUAGE.  IT'S THE RED LINED SECTION THAT BEGINS WITH

15    "FOR THE AVOIDANCE OF DOUBT."

16         AND THEN OUR RESPONSE TO THEIR SUBMISSION IS DOCUMENT 106.

17    WE QUOTE THE PARAGRAPH AS WE PROPOSE IT TO BE IN A MODIFIED

18    ORDER.  THAT WOULD BE PAGE 8 OF DOCUMENT 106.

19              THE COURT:  SO IF I UNDERSTAND CORRECTLY, YOUR

20    POSITION IS CONSISTENT WITH THE DEFENDANTS' POSITION, EXCEPT

21    THAT DEFENDANTS WANT TO BE ABLE TO GET THE TYPE OF DOCUMENT

22    THAT YOU'VE AGREED IS SUBJECT TO DISCOVERY FROM THE DEFENDANT

23    BY ASKING FOR THAT TYPE OF DOCUMENT THAT WAS PRODUCED TO THE

24    GOVERNMENT, AND YOU'RE SAYING THAT THEY SHOULDN'T BE ABLE TO DO

25    THAT?

```
1              IS THAT -- AM I SAYING THAT CORRECTLY?

2              MR. ROSA:  THE UNITED STATES WOULD BE TROUBLED BY ANY

3     REFERENCE TO THE TYPE OF DOCUMENTS OR THE DOCUMENTS THAT WERE

4     PRODUCED TO THE GOVERNMENT OR THE GRAND JURY, YOUR HONOR.

5              THE COURT:  OKAY.  LET ME HEAR FROM THE DEFENDANT

6     AGAIN ON THAT.

7              MR. MURRAY:  YOU WANT TO HEAR FROM THE DEFENDANTS,

8     YOUR HONOR?

9              THE COURT:  I JUST WANT TO GET A CLEAR UNDERSTANDING

10    OF WHAT YOUR POSITION IS.

11             MR. MURRAY:  IF IT WOULD BE HELPFUL, BECAUSE I WAS

12    TRYING TO FOLLOW THE BOUNCING BALL THAT MR. ROSA LAID OUT, I

13    THINK WHERE WE DIFFER IS THAT THE D.O.J. WOULD NOT OBJECT TO

14    DOCUMENT DISCOVERY REGARDING THE DEFENDANTS' TRANSACTIONAL

15    DATA, ORGANIZATIONAL STRUCTURE, FINANCES, BUSINESS PLANS, AND

16    PRICING POLICIES.

17             THE COURT:  RIGHT, I UNDERSTAND THAT.

18             MR. MURRAY:  OKAY.

19             THE COURT:  BUT -- NOW I DO.

20        BUT THE QUESTION IS HOW YOU COULD GO ABOUT GETTING THAT

21    DOCUMENT.  YOU WOULD NOT BE ALLOWED, IF THE GOVERNMENT HAD ITS

22    WAY, TO SEND A DOCUMENT REQUEST TO -- OR THE PLAINTIFF WOULD

23    NOT BE ABLE TO SEND A DOCUMENT REQUEST TO YOU THAT SAYS,

24    "SUPPLY A PARTICULAR DOCUMENT THAT YOU'VE SAID FALLS UNDER THE

25    CATEGORY OF PERMISSIBLE DISCOVERY THAT YOU PROVIDED TO THE
```

1    GOVERNMENT."

2              MR. MURRAY:  CORRECT, YOUR HONOR.

3              THE COURT:  IT COULD NOT DO THAT?

4              MR. MURRAY:  AS I UNDERSTAND MR. ROSA'S POSITION, WE

5    COULD NOT.

6              THE COURT:  AND YOU'RE SUGGESTING THAT YOU SHOULD BE

7    ABLE TO DO THAT?

8              MR. MURRAY:  NO, YOUR HONOR.

9         JUST TO BE CLEAR, AGAIN JASON MURRAY FOR THE KOA

10   DEFENDANTS.

11        WE -- AS MR. KESSLER SAID EARLIER, WE OBJECT TO EVEN THAT

12   NARROWER CATEGORY OF DISCOVERY AS BEING EXTREMELY BURDENSOME.

13        IF YOU THINK ABOUT THE PERIOD ALLEGED HERE, WHETHER IT'S

14   EIGHT, TEN YEARS, WHATEVER IT IS, DEFENDANTS' TRANSACTIONAL

15   DATA, FINANCES, I MEAN, THOSE ARE -- TO DO THAT NOW WOULD

16   IMPOSE A TREMENDOUS EXPENSE, WOULD BE TIME CONSUMING, AND WE

17   BELIEVE WOULD BE UNFAIR IN LIGHT OF THE MINIMAL BURDEN OF DOING

18   NOTHING UNTIL APRIL 18TH AND SEEING WHETHER THE PLEADINGS ARE

19   SETTLED.

20             THE COURT:  WHAT DID YOU UNDERSTAND YOUR COLLEAGUE TO

21   SAY, IF I WERE NOT WILLING TO STAY DISCOVERY, THAT YOU SHOULD

22   BE LIMITED TO PRODUCING?

23             MR. MURRAY:  THAT THIS WOULD BE EXTREMELY TIME

24   CONSUMING, WOULD TAKE --

25             THE COURT:  NO, NO.

1          MR. MURRAY:  -- A TREMENDOUS AMOUNT OF MONEY.

2          THE COURT:  NOT WHY, BUT WHAT?  I UNDERSTOOD, AND

3    MAYBE --

4          MR. MURRAY:  I'M SORRY.

5          THE COURT:  MAYBE I'M JUST BEING DENSE THIS MORNING.

6    IT'S BEEN A ROUGH MORNING FOR ME.

7          MR. MURRAY:  NO PROBLEM, YOUR HONOR.  AND I'M SORRY.

8    LET ME -- I'M SURE I'M NOT BEING CLEAR.

9          WHAT I UNDERSTOOD MR. KESSLER TO BE TALKING ABOUT EARLIER

10   WAS THERE'S SORT OF TWO BUCKETS, WHAT WE PRODUCED TO THE

11   D.O.J., OBVIOUSLY WE KNOW WHAT THAT IS.

12         THERE'S THIS SECOND ENORMOUS BUCKET OF ALL TRANSACTIONAL

13   DATA, FINANCES, ET CETERA, THAT WOULD BE BURDENSOME, TIME

14   CONSUMING, ET CETERA.

15         AND I UNDERSTAND MR. ROSA TO SAY THE GOVERNMENT DOES NOT

16   WANT US TO PRODUCT THAT FIRST BUCKET, AT LEAST UNTIL AFTER

17   APRIL 18TH.

18         MR. KESSLER:  YOUR HONOR, IF I COULD CLARIFY?

19         SO, YES, WHAT I WAS SAYING IS THAT WHAT SEEMS TO MAKE THE

20   MOST SENSE TO RECONCILE THE INTERESTS OF THE GOVERNMENT, THE

21   DEFENDANTS, AND THE PLAINTIFFS, WOULD BE TO NOT HAVE DISCOVERY

22   UNTIL APRIL 18TH BECAUSE THE MOST SENSIBLE DISCOVERY, IF

23   THERE'S GOING TO BE ANY NOW, WOULD BE OF WHAT WAS GIVEN TO THE

24   GOVERNMENT BECAUSE THAT DOESN'T INVOLVE THIS ENORMOUS BURDEN.

25         AND THE GOVERNMENT DOESN'T WANT THAT TO HAPPEN UNTIL

```
 1        OCTOBER -- UNTIL APRIL 18TH.

 2             SO WE WOULD THINK WAITING THOSE FEW MONTHS, OKAY -- WHICH

 3        IS NOT THAT LONG IN THE LIFE OF THIS CASE UNFORTUNATELY BECAUSE

 4        THESE CASES TEND TO TAKE QUITE A BIT OF TIME TO LITIGATE -- SO

 5        THAT WAY THE GOVERNMENT WILL BE SATISFIED.

 6             BUT ANY OTHER PART OF THE OTHER BUCKET, EVEN IF IT'S

 7        TRANSACTIONAL DATA -- AND, AGAIN, MR. FRIEDMAN AND OTHERS KNOW

 8        THIS VERY WELL -- IT TAKES MONTHS IN THESE CASES FOR DEFENDANTS

 9        AND PLAINTIFFS TO AGREE ON HOW TO PRODUCE THE TRANSACTIONAL

10        DATA BECAUSE THESE THINGS DON'T EXIST WHEN YOU'RE TALKING ABOUT

11        2002/2003 ALL OVER THE WORLD.  IT'S NOT LIKE SOMEONE PUSHES A

12        BUTTON AND THE TRANSACTIONAL DATA COMES OUT.

13             IT'S AN ENORMOUS TASK TO FIGURE OUT EVEN HOW TO GO ABOUT

14        GETTING THAT.

15             AND THE TRANSACTIONAL DATA IS USELESS TO THEM IN PUTTING

16        TOGETHER THEIR COMPLAINT.

17             SO IF THE IDEA IS DOING THIS INITIAL DISCOVERY, YOU KNOW,

18        SO THAT IT HAS SOME MEANING TO THEM, TRANSACTIONAL DATA IS VERY

19        NECESSARY WHEN YOU GET TO THE ISSUE OF CLASS CERTIFICATION, AND

20        THAT'S TYPICALLY WHEN THAT PROCESS TAKES PLACE, AFTER THE

21        MOTIONS TO DISMISS AND AFTER WE SEE IF WE HAVE A CASE.

22             SO I WOULD THINK THE SIMPLE WAY HERE JUST WOULD BE OUR

23        SUGGESTION, IS STAY THE DISCOVERY UNTIL APRIL 18TH; ON

24        APRIL 18TH, WE SHOULD ALSO HAVE A SCHEDULE FOR THEM TO FILE

25        THEIR COMPLAINT; AND THEN AFTER THAT, IF THERE'S GOING TO BE
```

1    DISCOVERY AT THAT POINT, THE MOST SENSIBLE ONE WOULD BE TO

2    START OUT WITH WHAT WE'VE GIVEN TO THE GOVERNMENT, NOT

3    COMMUNICATIONS WITH THE GOVERNMENT, NOT TRANSLATIONS TO THE

4    GOVERNMENT, NOTHING THAT THE GOVERNMENT WOULD BE UPSET ABOUT,

5    BUT JUST THE UNDERLYING BUSINESS DOCUMENTS GIVEN, BECAUSE THAT

6    AT LEAST IS A MINIMAL BURDEN COMPARED TO THE BROADER DISCOVERY,

7    AND I THINK IT'S REALLY WHAT MR. FRIEDMAN WANTS ANYWAY.

8         MR. FRIEDMAN:  CAN I MAKE A SUGGESTION, YOUR HONOR?

9    IT'S RARE THAT I TRY AND PLAY SOLOMON, BUT I'M GOING TO GIVE IT

10   A SHOT AND SEE IF THEY WILL IN ANY WAY MOVE TO THE MIDDLE ON

11   THIS.

12        SO, LOOK, CUTTING THROUGH TO WHAT THE ISSUE IS, THE HEART

13   OF THIS, THE HEART OF THIS IS THAT THERE'S A CORE SET OF

14   DOCUMENTS THAT CERTAINLY THERE'S ENOUGH CONCERN THAT'S BEEN

15   ARTICULATED BY THE UNITED STATES ABOUT WHAT'S IN THOSE

16   DOCUMENTS THAT, AS THE COURT -- THERE'S A FAIR INFERENCE THAT

17   THERE'S INCRIMINATORY CONDUCT IN THOSE DOCUMENTS.

18        THOSE DOCUMENTS HELP SHAPE NOT JUST THE COMPLAINT AND WHAT

19   THE OPPOSITION AND ALL THAT WILL BE, BUT IT'S GOING TO SHAPE

20   THE CASE, AS WELL AS THE COURT'S -- ULTIMATELY WHAT IT'S GOING

21   TO HAVE TO WRESTLE WITH ON A MOTION TO DISMISS EVENTUALLY.

22        AND WHAT ALMOST EVERY COURT, YOUR HONOR, IN DECIDING THE

23   MOTION TO DISMISS ULTIMATELY AND SETTLING THE PLEADINGS, THE

24   PLAINTIFFS HAVE HAD THOSE DOCUMENTS IN EVERY ONE OF THE CASES.

25   SOME OF THEM HAVE BEEN BEFORE YOU FILE THE AMENDED COMPLAINT,

1    SOME OF THEM HAVE BEEN AFTER THE AMENDED COMPLAINT BUT BEFORE

2    THE PLEADINGS HAVE BEEN SETTLED.  AND WHAT HAS HAPPENED IN SOME

3    OF THOSE CASES, YOUR HONOR -- WHICH CANDIDLY MAKES NO SENSE

4    OTHER THAN LAWYER JOCKEYING, BECAUSE IT DOESN'T HELP THE

5    COURT -- WHAT HAPPENS IN THOSE CASES, YOUR HONOR, WHEN IT COMES

6    AFTERWARDS IS THEN ANOTHER AMENDED COMPLAINT IS FILED, MOTION

7    TO DISMISS BECOMES -- THAT THE COURT AND ITS STAFF HAS WORKED

8    UP AND ANALYZED BECOMES A WASTE FOR THE COURT AND ITS

9    RESOURCES.

10        AND THE JUDGES -- EXCUSE ME.  THE COURTS SEEM TO HAVE BEEN

11   LEARNING FROM THIS, THEREFORE, THAT HAVING THE CORE SET OF

12   DOCUMENTS, GIVEN THAT THERE'S NO BURDEN FOR THE DEFENDANTS,

13   ONCE THE DEPARTMENT OF JUSTICE'S ISSUES AND SENSITIVITIES ARE

14   ALLEVIATED, FOR THE PLAINTIFFS TO HAVE MAKES CASE MANAGEMENT

15   SENSE, FAIRNESS SENSE, RULE OF CIVIL PROCEDURE 1 SENSE.

16        SO THIS IS WHAT I WOULD PROPOSE FOR THE COURT TO CONSIDER:

17   APRIL 18TH IS THE DATE ON WHICH THE UNITED STATES SAID THAT

18   THEY ONLY WANT THE STAY TO LAST TO.

19        WHAT I WOULD PROPOSE, YOUR HONOR, IS THAT WE PUT IN AN

20   ANTICIPATED SCHEDULE OF THE FOLLOWING, AND I WILL TELL YOU WHAT

21   GUIDED OUR THINKING ON THE SCHEDULE.

22        MR. KESSLER AND HIS COLLEAGUES STIPULATED IN OCTOBER, I

23   BELIEVE IT WAS OCTOBER 23RD, YOUR HONOR, STIPULATED TO A

24   BRIEFING SCHEDULE THAT THE COURT SIGNED OFF ON IN THE CHIP-TECH

25   ACTION.

1        THAT STIPULATED SCHEDULE, YOUR HONOR, WOULD HAVE RESULTED

2    IN THE BRIEFING BEING COMPLETED ON OCTOBER 13TH, 2016, IN THIS

3    CASE.

4        I WANT THE COURT TO CONSIDER, RESPECTFULLY, A SCHEDULE

5    THAT WOULD ACTUALLY HAVE THE PLEADING, THE MOTION PRACTICE

6    SUBMITTED TO THE COURT TWO MONTHS PRIOR TO THAT.  SO WE'LL

7    ACTUALLY HAVE A FASTER SCHEDULE, AND HERE'S WHAT IT WOULD BE:

8        THAT WOULD BE THAT ON -- BY APRIL 29TH, 2016, DEFENDANTS

9    PRODUCE THE D.O.J. DOCUMENTS -- NOT THE COMMUNICATIONS, YOUR

10    HONOR.  THE COMMUNICATIONS -- JUST TO BE CLEAR, WE'RE TALKING

11    ABOUT NON-COMMUNICATIONS -- BUT JUST THE PREEXISTING BUSINESS

12    RECORDS, WHICH INCLUDES WHETHER THEY'RE SPREADSHEETS, E-MAILS,

13    WHAT HAVE YOU, IT'S THE NON-COMMUNICATIONS IN PARAGRAPH 1,

14    THOSE ARE OUT, BUT IT WOULD BE THE CONDUCT IN PARAGRAPH 2,

15    DOCUMENTS ON APRIL 29TH.

16        WE WOULD FILE OUR AMENDED COMPLAINT ON MAY 27TH, 2016, 30

17    DAYS AFTER, YOUR HONOR.

18        THEY WOULD FILE THEIR MOTIONS TO DISMISS ON JUNE 27TH,

19    2016, 30 DAYS AFTER.

20        WE WOULD OPPOSE ON JULY 27TH, 2016, 30 DAYS AFTER THEIR

21    MOTION.

22        AND THEY WOULD REPLY 15 DAYS THEREAFTER, ON AUGUST 11TH,

23    2016.

24        THAT SCHEDULE, YOUR HONOR, WOULD ADVANCE THE SCHEDULE BY

25    TWO MONTHS COMPARED TO THE SCHEDULE DEFENDANTS STIPULATED TO.

1   IF D.O.J., ON APRIL 18TH, HAS AN ISSUE, FOR WHATEVER

2   REASON, IN TERMS OF THE PRODUCTION OF THE DOCUMENTS AT THAT

3   POINT, THEN THE DEPARTMENT OF JUSTICE WOULD BE ENTITLED, OF

4   COURSE, TO COME IN AND MAKE ITS CASE TO THE COURT THAT THE STAY

5   SHOULD CONTINUE AND WE WOULD ADDRESS IT AT THAT POINT IN TIME.

6        MR. WILLIAMS:  YOUR HONOR, STEVE WILLIAMS FOR THE

7    INDIRECT PLAINTIFFS.

8        I JOIN IN AND AGREE WITH THE PROPOSED SCHEDULE.

9        AND I JUST WANT TO RESPOND TO A COUPLE OF POINTS THAT BEAR

10  ON THE SCHEDULE THAT WERE SUGGESTED BY DEFENSE COUNSEL, WHICH

11  IS THAT IF WE WERE TO SEEK THESE DOCUMENTS, IT WOULD TAKE SOME

12  PROTRACTED PERIOD TO NEGOTIATE CUSTODIANS AND SEARCH TERMS, ET

13  CETERA.

14      AT LEAST AS TO THOSE DOCUMENTS THAT HAVE ALREADY BEEN

15  COLLECTED, WE DON'T HAVE TO REQUEST THEM AS "GIVE US WHAT YOU

16  GAVE THE DEPARTMENT."

17      BUT IF WE WERE TO SAY, "WE'D LIKE TO SEE DOCUMENTS

18  REFLECTING MEETINGS AND COMMUNICATIONS BETWEEN DEFENDANTS ABOUT

19  THE PRICING OF RESISTORS," A SET OF THOSE HAS ALREADY BEEN

20  COLLECTED.  A SET OF THOSE RESIDES AT EACH DEFENSE COUNSEL'S

21  OFFICE IN A DRIVE THAT IS EASILY AND READILY PRODUCED TO THE

22  PLAINTIFFS.

23      AND AS MR. FRIEDMAN SAID -- AND I AGREE WITH THIS BECAUSE

24  I'VE BEEN IN EVERY ONE OF THESE CASES -- IN EACH OF THE MDL

25  ANTITRUST CASES THAT HAVE GONE FORWARD IN THIS DISTRICT, THE

```
 1    PLAINTIFFS WERE PROVIDED WITH THESE DOCUMENTS BEFORE COMPLAINTS

 2    WERE UPHELD, AND THERE'S NO REASON THAT THIS CASE SHOULD

 3    PROCEED ANY DIFFERENTLY FROM THOSE CASES.

 4         MR. KESSLER:  YOUR HONOR, LET ME SAY, FOR THE

 5    DEFENDANTS, THAT IF YOU RULE AGAINST US ON SORT OF THIS

 6    THRESHOLD ISSUE AS TO WHETHER THERE SHOULD BE DISCOVERY BEFORE

 7    THE CONSOLIDATED COMPLAINT, THEN THE SCHEDULE PROPOSED IS NOT

 8    OBJECTIONABLE TO US.  IN OTHER WORDS, THE SCHEDULE IS FINE.

 9         WHAT -- THE ONLY POINT I WOULD TAKE ISSUE WITH IS

10    TWO-FOLD.  ONE IS MR. WILLIAMS IS NOT CORRECT THAT EVERY COURT

11    IN THE MDL'S HERE HAS PERMITTED THIS DISCOVERY BEFORE THE

12    CONSOLIDATED AMENDED COMPLAINT.  SOME HAVE.  SOME HAVEN'T.  IN

13    OUR PAPERS, THE JUDGES HAVE SPLIT ON THIS ISSUE.  THAT'S THE --

14         THE COURT:  IF I'VE LEARNED ONE THING FROM BEING IN

15    THIS JOB, IT'S THAT IT'S NOT TO ACCEPT THE REPRESENTATIONS THAT

16    OTHER COURTS HAVE DONE IT, ALWAYS DO IT THIS WAY.

17         (LAUGHTER.)

18         MR. KESSLER:  OKAY.  IN ANY EVENT, YOUR HONOR, IT IS

19    DISCRETIONARY WITH THE COURT AND, IN FACT, THERE ARE JUDGES

20    THAT SAY THEY TAKE THE TWOMBLY ADMONITION SERIOUSLY AND THE

21    PLAINTIFF SHOULD HAVE TO STATE THEIR CASE FIRST BEFORE DOING

22    THIS; AND THERE HAVE BEEN OTHER JUDGES WHO HAVE ADOPTED

23    MR. FRIEDMAN'S APPROACH.

24         SO IT'S A QUESTION OF WHERE YOUR HONOR COMES OUT ON THAT

25    POINT.
```

1          WHAT I WOULD SAY IS IN THIS PARTICULAR CASE WHERE THERE'S

2     BEEN NO GOVERNMENT ACTION YET -- MANY OF THESE CASES ARE FILED

3     AFTER THERE'S GOVERNMENT ACTION IN THE SENSE THAT THERE'S BEEN

4     A PLEA AGREEMENT OR AN INDICTMENT.

5          THIS PARTICULAR CASE WHERE THERE'S BEEN NO GOVERNMENT

6     ACTION -- AND THERE MAY NEVER BE A GOVERNMENT ACTION, WE DON'T

7     KNOW THAT AT THIS POINT -- WE THINK SHOULD FIT INTO THE

8     CATEGORY WHERE WE CANNOT PRESUME ANY TYPE OF CRIMINALITY, AS

9     MR. FRIEDMAN SAID.  THERE MIGHT NOT BE ANYTHING HERE AND THE

10    NORMAL PLEADING RULES SHOULD APPLY.

11         BUT WE LEAVE IT TO THE COURT'S DISCRETION TO LOOK AT THE

12    COMPLAINT, SEE IF YOU FEEL THIS IS A CASE WHERE IT'S

13    APPROPRIATE TO MAKE THEM PLEAD OW, OR IT IS BETTER TO LET THEM

14    HAVE THE DISCOVERY FIRST.

15         IF YOU COME OUT THE FIRST WAY, WE WOULD BE HAPPY.  IF YOU

16    COME OUT THE SECOND WAY, WE DON'T OBJECT TO MR. FRIEDMAN'S

17    SCHEDULE.

18              MR. WILLIAMS:  YOUR HONOR, MAY I SPEAK VERY BRIEFLY?

19         I WANT TO BE VERY, VERY CLEAR ABOUT WHAT I SAID, AND WHAT

20    I SAID IS THAT IN ALL OF THE CASES THAT I REFERENCED, BEFORE

21    THE COMPLAINT WAS UPHELD, THE COURT MADE THESE DOCUMENTS

22    AVAILABLE TO THE PLAINTIFFS.

23         I WILL SAY, IN MOST OF THESE CASES, THE COURTS MADE THE

24    DOCUMENTS AVAILABLE BEFORE THE CONSOLIDATED COMPLAINT WAS EVEN

25    FILED.  AND THE REASON THE POINT IS IMPORTANT IS WHAT

1    MR. FRIEDMAN REFERRED TO, IS THAT THE EXPERIENCE OF THESE

2    COURTS HAS BEEN WE GO THROUGH REPEATED ROUNDS OF MOTION TO

3    DISMISS BRIEFING THAT DOES NOT MEANINGFULLY ADVANCE THE CASE,

4    AND THEN THE DOCUMENTS ARE PRODUCED TO AMEND AND THEN THE

5    COMPLAINTS ARE UPHELD.

6        THERE'S NO REASON HERE TO GO THROUGH THAT WASTE OF MONTHS

7    OF BRIEFING AND COURT RESOURCES TO GET TO WHAT THE END POINT

8    LOGICALLY WILL BE.

9        THE COURT:  IS THE GOVERNMENT CONCERNED WITH, AFTER

10    THE STAY ENDS ON APRIL 18TH, WITH A DISCOVERY REQUEST BY THE

11    PLAINTIFF TO ONE OF THE DEFENDANTS THAT SAYS, "PRODUCE FOR ME

12    THE UNDERLYING BUSINESS RECORDS," OBVIOUSLY MAYBE PHRASED MORE

13    NARROWLY THAN THAT, "THAT YOU PROVIDED TO THE GOVERNMENT"?

14        MR. ROSA:  I DON'T KNOW, YOUR HONOR, BECAUSE THAT

15    WOULD DEPEND ON THE FACTS ON THE GROUND ON APRIL 18TH.

16        OBVIOUSLY THE GOVERNMENT DIDN'T PICK THAT DATE RANDOMLY.

17        AND THIS IS COMPLICATED BY THE FACT, AS THE COURT KNOWS,

18    THAT THERE ARE MULTIPLE GRAND JURIES INVOLVED HERE.

19        IT WOULD DEPEND, YOUR HONOR, AND I CAN'T REALLY SAY MUCH

20    MORE IN OPEN COURT ON THAT.

21        CERTAINLY IF WE WERE TO SEEK AN EXTENSION OF THE STAY, I

22    THINK THAT A SUPPLEMENTAL UNDER SEAL DECLARATION WOULD BE IN

23    ORDER TO UPDATE THE COURT ON WHERE THINGS ARE.

24        I CAN'T CATEGORICALLY SAY ONE WAY OR THE OTHER AT THIS

25    POINT, YOUR HONOR.  I CAN ENVISION FACTS THAT WOULD GO IN

1    EITHER DIRECTION ON THAT POINT.

2        IT IS NOT THE CASE THAT THE GOVERNMENT ALWAYS OPPOSES SUCH

3    A REQUEST.

4            THE COURT:  IN YOUR ALTERNATIVE SCHEDULE, THE

5    DEFENSE -- OR PLAINTIFFS, YOUR SCHEDULE, AS OF THE END OF THE

6    STAY, IF -- EVEN THOUGH IT'S STAYED TO THE 18TH, IF THE

7    GOVERNMENT DID NOT AGREE AND THE COURT DIDN'T ORDER THE

8    GOVERNMENT TO -- OR LET ME BACK UP.

9        IF THE COURT WERE TO PRECLUDE THE DISCOVERY REQUEST THAT

10   SAID, "GIVE US WHAT WAS SENT TO THE GOVERNMENT OF YOUR

11   UNDERLYING BUSINESS DOCUMENTS," YOU WOULD THEN BE FREE TO

12   UNDERTAKE THE DISCOVERY THAT WOULD INVOLVE DETERMINING

13   CUSTODIANS AND FULL FLEDGED DISCOVERY, ESSENTIALLY; CORRECT?

14           MR. FRIEDMAN:  WE WOULD, YOUR HONOR.

15       AGAIN, I THINK IT WOULD BE SUBJECT TO POTENTIAL ARGUMENT

16   BY DEFENDANTS, ET CETERA, BUT I THINK THAT WOULD BE THE CASE

17   AND WE WOULD BE TRYING TO FASHION DISCOVERY IN A WAY THAT WAS

18   EFFICIENT AND WORKING WITH DEFENDANTS, BECAUSE THEY'RE THE ONES

19   THAT WOULD BE CREATING THE SIZE OF THOSE BUCKETS AS OPPOSED

20   TO -- YOU KNOW, IF THEY WERE COOPERATIVE, YOUR HONOR, WHICH

21   UNFORTUNATELY, IT'S DIFFICULT BECAUSE IT'S NOT IN THEIR

22   INTEREST, BUT IF THEY WERE COOPERATIVE, WE COULD THREAD THAT

23   NEEDLE STILL IN TRYING TO STAGE DISCOVERY EFFICIENTLY.

24           THE COURT:  WHAT -- ON YOUR SCHEDULE, WHEN IS THE

25   AMENDED -- CONSOLIDATED AMENDED COMPLAINT DUE?

1      MR. FRIEDMAN:  YOUR HONOR, IN OUR SCHEDULE, IT WOULD

2    BE MAY 27TH, AND THAT'S ANTICIPATING HAVING THE D.O.J.

3    DOCUMENTS PRODUCED 11 DAYS AFTER THE STAY EXPIRES.  AND THEY

4    ARE, AGAIN, ON A HARD DRIVE, SO IT WOULD NOT TAKE EFFORT BY

5    THEM, SO THEY WOULD HAVE 11 DAYS.

6      AND THEN WE WOULD HAVE 30 DAYS FROM GETTING THE DOCUMENTS.

7      MR. KESSLER:  YOUR HONOR, I WOULD SUGGEST THAT IF

8    YOUR HONOR IS INCLINED TO GO THIS PATH, THAT THIS COULD BE THE

9    SCHEDULE -- IF THIS IS THE PATH, THAT YOU WOULD LIKE TO HAVE

10   THE DISCOVERY FIRST, AND IF THE GOVERNMENT HAS A CONTINUED

11   REQUEST FOR STAY ON APRIL 18TH, THEN THEY WOULD FILE A

12   SUBMISSION TO THE COURT AND ASK FOR A STAY OF THE SCHEDULE AT

13   THAT POINT.

14     BUT I THINK IT'S IMPOSSIBLE TO JUDGE NOW WHAT THAT REQUEST

15   WILL BE, OR EVEN HOW BROAD THAT REQUEST WOULD BE.

16     BUT, AGAIN, I WOULD -- I WOULD URGE AGAINST ANY SCHEDULE

17   WHICH WOULD SAY THE ALTERNATIVE IS FULL FLEDGED DISCOVERY

18   BEFORE WE GET A CONSOLIDATED AMENDED COMPLAINT WHICH, AGAIN, I

19   DON'T THINK ANY COURT THAT I'VE EVER EXPERIENCED WOULD GO THAT

20   WAY BECAUSE, AGAIN, UNDER THAT SCENARIO, WE WOULDN'T GET A

21   CONSOLIDATED AMENDED COMPLAINT FOR -- UNTIL WE'RE SIGNIFICANTLY

22   INTO THIS CASE, WHICH MAKES NO SENSE BECAUSE THE JUDGE AND THE

23   SPECIAL MASTER CAN'T EVEN WEIGH BURDEN/RELEVANCE QUESTIONS IN

24   FULL DISCOVERY UNTIL YOU KNOW WHAT THE ACTUAL CLAIMS ARE.

25     SO -- AND I THINK BOTH MR. FRIEDMAN AND I PROBABLY AGREE

```
 1    ON THAT, YOU KNOW, AS A WAY OF PROCEEDING ONCE WE GET TO THAT

 2    POINT.

 3             MR. FRIEDMAN:  YOUR HONOR, JUST LET ME -- AND I

 4    APPRECIATE YOUR PATIENCE, BUT LET ME JUST MAKE ONE POINT ON

 5    THAT, WHICH IS THE FOLLOWING, AND THIS WAS IN MY RESPONSE TO

 6    YOU, WHICH IS, YOUR HONOR, WE -- AND I'LL SPEAK FOR MYSELF, AND

 7    I KNOW FROM WORKING WITH MR. WILLIAMS THAT HE HAS A SIMILAR

 8    MINDSET -- I HAVE NO INTEREST IN PUTTING THEM TO A GREATER

 9    BURDEN THAN NECESSARY AT AN EARLIER STAGE IN THE PROCEEDINGS.

10             BUT IT TAKES COOPERATION TO DEAL WITH THE PROBLEM AT HAND.

11             AND SO TO THE EXTENT D.O.J. CAME IN -- AND AGAIN, THIS IS

12    HYPOTHETICAL -- ON APRIL 18TH AND SAID "WE HAVE CONCERNS AND

13    THERE'S ONGOING REASONS FOR THE STAY," MY VIEW OF IT, YOUR

14    HONOR, AS IT IS TODAY, IS THAT IF THEY ARE COOPERATIVE, IF THE

15    DEFENDANTS ARE COOPERATIVE -- AND THEIR CONCERNS ARE TO BE

16    TAKEN AT FACE VALUE IN TERMS OF THE BURDEN OF MASSIVE

17    DISCOVERY -- WE CAN BE -- WE CAN COOPERATE IN TERMS OF STILL

18    GETTING THE UNDERLYING DISCOVERY IN A NARROW WAY THAT DOESN'T

19    NECESSARILY REVEAL THE ISSUES THE D.O.J. IS CONCERNED ABOUT.

20             THAT CAN BE DONE, I HAVE NO DOUBT, IF THERE'S COOPERATION

21    BY THE THREE PARTIES.  THAT CAN BE DONE, YOUR HONOR.

22             MR. KESSLER:  WE ARE CERTAINLY WILLING TO MEET AND

23    CONFER AND WORK IN GOOD FAITH AFTER APRIL 18TH IF NECESSARY.

24    THIS MAY NOT BE NECESSARY BECAUSE THE GOVERNMENT MAY NOT SEEK A

25    FURTHER STAY.
```

1          BUT IF THEY DO, WE'LL THEN BE ABLE TO SIT DOWN WITH THE

2     GOVERNMENT AND THE PLAINTIFFS AND HOPEFULLY FIND THE PATH

3     FORWARD AT THAT POINT; OR IF NOT, WE'LL BE BACK BEFORE THE

4     COURT.

5          BUT WE'LL CERTAINLY WORK COOPERATIVELY TO TRY TO FIND A

6     WAY.

7          AGAIN, THE DEFENDANTS HAVE NO INTEREST IN DELAY.  IN FACT,

8     I'M PREDICTING WE'RE GOING TO BE COMING IN, AS WE GO FORWARD IN

9     THIS CASE, AND ASKING THE COURT TO SET CLASS CERTIFICATION

10    SCHEDULES AND THINGS LIKE THAT, AND WE'RE GOING TO BE ASKING

11    FOR DATES QUICKER AND MR. FRIEDMAN IS GOING TO SAY THEN, "NO, I

12    NEED ALL THIS TIME TO STUDY ALL THIS INFORMATION."

13         SO WE HAVE NO -- WE HAVE NO DESIRE TO DELAY THIS CASE.

14         BUT WE ALSO WANT TO BE SENSITIVE TO THE GOVERNMENT AND WE

15    ALSO WANT TO MAKE SURE THAT WE'RE NOT UNDERTAKING BURDENS WHICH

16    WE CAN'T EVEN ASSESS UNTIL THERE IS AN OPERATIVE COMPLAINT.

17    THAT'S ALL.

18              THE COURT:  GIVE ME YOUR SCHEDULE ONE MORE TIME

19     AGAIN.

20              MR. FRIEDMAN:  YOUR HONOR, I HAVE IT WRITTEN DOWN.

21     WOULD THAT BE HELPFUL?

22              THE COURT:  SURE.

23              MR. FRIEDMAN:  THANK YOU VERY MUCH (HANDING).

24         SO, YOUR HONOR, IT'S THE SECOND DOWN, DIRECT PURCHASER

25     PLAINTIFFS' PROPOSED SCHEDULE.

```
 1              (PAUSE IN PROCEEDINGS.)

 2          THE COURT:  I'M OKAY WITH THIS SCHEDULE BASED ON ALL

 3    I'VE HEARD AND THOUGHT ABOUT, EXCEPT THAT I AM CONCERNED ABOUT

 4    APRIL 29TH IF THE D.O.J. DOCUMENTS ARE NOT PRODUCED TO THE

 5    PLAINTIFFS BECAUSE THE D.O.J. HAS AN OBJECTION FOR SOME REASON

 6    TO PRODUCING THOSE.  I SUPPOSE THAT THEN THE QUESTION IS

 7    WHETHER I COULD ORDER THEM TO DO SO.

 8          MR. KESSLER:  YOUR HONOR, PERHAPS YOU COULD SET A

 9    CASE MANAGEMENT CONFERENCE FOR THE FIRST WEEK IN APRIL IF THE

10    D.O.J. FILES A REQUEST FOR AN ADDITIONAL STAY.

11          SO IF YOU SET APRIL 1, FOR EXAMPLE, AS A DATE FOR THE

12    D.O.J. TO DECIDE IF THEY WANTED AN ADDITIONAL STAY, AND IF THEY

13    DON'T, THEN THERE'S NO NEED TO HAVE A CASE MANAGEMENT

14    CONFERENCE, WE'LL PROCEED WITH THE SCHEDULE.

15          AND IF THEY SAID THEY DID WANT A STAY BY APRIL 1 AND FILE

16    PAPERS, THEN WE COULD HAVE A MEET AND CONFER WITH THEM AND TRY

17    TO WORK IT OUT AND, IF NOT, THERE WOULD BE A CASE MANAGEMENT

18    CONFERENCE TO DECIDE HOW THE DATES NEEDED TO BE ADJUSTED.

19          THE COURT:  THAT MAKES -- THAT HAS APPEAL TO ME.

20          MR. FRIEDMAN:  THAT'S FINE WITH THE PLAINTIFFS, YOUR

21    HONOR, OF COURSE ASSUMING THE DEPARTMENT OF JUSTICE HAS NO

22    ISSUE WITH THAT AS WELL.

23          MR. ROSA:  ARE WE -- I CONFESS, THE DEPARTMENT IS A

24    LITTLE UNCLEAR ABOUT WHAT THE NATURE OF THE STAY IS.  ARE WE

25    SAYING A COMPLETE STAY OF DISCOVERY UNTIL APRIL 18TH, YOUR
```

```
1      HONOR?

2                THE COURT:  YES.

3                MR. ROSA:  I SEE.  AND THEN --

4                THE COURT:  AND THEN YOU WOULD ADVISE, BY THE 1ST OF

5      APRIL, AS TO WHETHER OR NOT YOU WANTED TO EXTEND THE STAY PAST

6      THE 18TH.

7           AND I THINK ALONG WITH THAT THERE WOULD BE A DISCUSSION AS

8      TO WHETHER OR NOT YOU WOULD HAVE ANY OBJECTION TO PRODUCING --

9      OR TO ALLOWING DISCOVERY BY THE PLAINTIFFS OF DOCUMENTS THAT

10     HAD BEEN PRODUCED TO THE D.O.J.

11               MR. ROSA:  SO AS I UNDERSTAND IT, YOUR HONOR, A

12     COMPLETE STAY OF DISCOVERY UNTIL THE 18TH OF APRIL; AND BY THE

13     1ST OF APRIL WE NEED TO NOTICE THE COURT, AND OF COURSE THE

14     PARTIES, WHETHER WE INTEND TO PETITION FOR AN EXTENSION OF THAT

15     STAY?

16               THE COURT:  RIGHT.

17               MR. ROSA:  AND WOULD THAT BE A CASE MANAGEMENT

18     CONFERENCE ON APRIL 1ST?

19               THE COURT:  NO, BECAUSE HOPEFULLY YOU WOULDN'T --

20               MR. ROSA:  YES, YOUR HONOR.

21               THE COURT:  YOU WOULDN'T NEED IT.

22               MR. ROSA:  YES.  ALL RIGHT.  THAT SOUNDS ACCEPTABLE

23     TO THE UNITED STATES, YOUR HONOR.

24               THE COURT:  OKAY.  I SUPPOSE WE SHOULD SET A DATE

25     FOR --
```

```
1              MR. ROSA:  THE 8TH?

2              THE COURT:  I SUPPOSE WE COULD HAVE IT ON THE 29TH AS

3     TO WHAT'S GOING TO BE DONE ABOUT DISCOVERY IF THE PARTIES

4     HAVEN'T WORKED IT OUT.  DOES THAT MAKE SENSE?

5              MR. FRIEDMAN:  THE 29TH OF WHICH MONTH, YOUR HONOR?

6              THE COURT:  APRIL.

7              MR. FRIEDMAN:  OKAY.

8              MR. ROSA:  MY ONLY OBSERVATION THERE, YOUR HONOR,

9     WOULD BE THAT THE 29TH IS GOOD FRIDAY -- OR ACTUALLY, NO, IT'S

10    GOOD FRIDAY ON -- THAT'S THE WRONG CALENDAR.  THAT'S THE

11    ORTHODOX CALENDAR, NOT THE OTHER ONE.

12         THAT LOOKS FINE TO ME, YOUR HONOR.

13             MR. KESSLER:  YOUR HONOR, WOULD IT BE POSSIBLE TO DO

14    THE 22ND INSTEAD?

15             THE COURT:  SURE.  THAT'S PROBABLY BETTER.

16             MR. KESSLER:  AND THAT'S A LITTLE QUICKER.  THAT

17    STILL SHOULD GIVE US ENOUGH TIME.  BECAUSE ON THE 29TH I HAPPEN

18    TO HAVE A CONFLICT.  APRIL 22ND IS A FRIDAY.

19             MR. STEMPEL:  I WAS GOING TO ASK IF THAT'S --

20             MR. ROSA:  PASSOVER BEGINS THE 22ND, YES.

21             MR. KESSLER:  OH, YES.  THANK YOU FOR POINTING THAT

22    OUT.

23         COULD WE SAY -- COULD WE SAY MAY 6TH?  IS THAT TOO LATE?

24    MAYBE WE WON'T -- THAT WOULD ALSO GIVE THE PARTIES TIME TO MEET

25    AND CONFER AND PERHAPS WE COULD WORK IT OUT AND WE WOULDN'T
```

```
1        EVEN, YOU KNOW, HAVE TO BURDEN THE COURT.

2              THE COURT:  WELL, THE NOTICE IS BY THE 1ST.  YOU

3     CERTAINLY OUGHT TO KNOW WELL BEFORE THE 29TH AS TO WHETHER

4     THERE'S AN AGREEMENT.

5              MR. WILLIAMS:  YOUR HONOR, PERHAPS --

6              THE COURT:  SO I WOULD BE INCLINED TO MOVE IT UP

7     EARLIER FROM THE 22ND.

8              MR. WILLIAMS:  PERHAPS THE 15TH.  IF NOTICE IS GIVEN

9     ON THE 1ST, THAT WOULD GIVE US TWO WEEKS TO TALK AND THEN IT

10    WOULD LET US ADJUST FOR THE REMAINING DATES IN THE SCHEDULE.

11             MR. KESSLER:  I THINK THAT WOULD BE FINE FOR THE

12    DEFENDANTS.  THE 15TH WOULD BE FINE FOR US.

13             MR. MURRAY:  IT IS TAX DAY, YOUR HONOR.

14             THE COURT:  YOU STILL PAY THOSE THINGS?

15        (LAUGHTER.)

16             MR. KESSLER:  STILL FINE WITH THE DEFENDANTS, I

17    THINK.

18             THE COURT:  OKAY.

19             MR. ROSA:  THAT'S FINE WITH THE GOVERNMENT, YOUR

20    HONOR.

21             THE COURT:  OKAY.  SO --

22             THE CLERK:  SO CAN WE HAVE A RECAP?  THEN IT'S CLEAR

23    FOR THE RECORD.

24             THE COURT:  YEAH.  APRIL 18TH, 2016, THE D.O.J. STAY

25    EXPIRES, AND THEN PUT IN PARENTHESES, UNLESS MODIFIED.
```

1          THAT ON -- AFTER THAT, APRIL 18TH -- I'M SORRY.  AFTER --

2     ON APRIL 1ST -- I GUESS I DIDN'T PUT THAT VERY WELL.

3          APRIL 1ST, 2016, THE D.O.J. WOULD ADVISE AS TO WHETHER IT

4     IS GOING TO REQUEST THAT THE STAY EXPIRE AT A LATER DATE THAN

5     THE SCHEDULED APRIL 18TH EXPIRATION DATE, AND WHETHER IT HAS

6     ANY OBJECTION TO UNDERLYING BUSINESS DOCUMENTS THAT HAVE BEEN

7     PRODUCED TO THE DEPARTMENT OF JUSTICE BE PRODUCED BY THE

8     DEFENDANTS TO THE PLAINTIFFS; THAT THERE BE A CASE MANAGEMENT

9     CONFERENCE ON APRIL 15TH, 2016, TO DEFINE WHAT DISCOVERY MAY

10    PROCEED AS OF THAT TIME IF THE PARTIES HAVE NOT ALREADY AGREED

11    ON WHAT COULD PROCEED; THAT APRIL 29TH, THE DEFENDANTS WILL

12    PRODUCE TO PLAINTIFF THE DEPARTMENT OF JUSTICE DOCUMENTS THAT

13    HAD BEEN PROVIDED -- PRODUCE THE DOCUMENTS THAT HAD BEEN

14    PROVIDED TO THE D.O.J. BY THE DEFENDANTS; THAT THE CONSOLIDATED

15    AMENDED COMPLAINT BE FILED BY MAY 27TH; MOTIONS TO DISMISS

16    FILED BY JUNE 27TH; OPPOSITIONS TO MOTIONS TO DISMISS, JULY 27;

17    REPLIES, AUGUST 11TH; AND WE'D HAVE A HEARING DATE, SAY, ON THE

18    25TH OF AUGUST.

19         IS THAT A FRIDAY?

20             THE CLERK:  THE 26TH.

21             THE COURT:  THE 26TH, OKAY.

22             THE CLERK:  AUGUST 26TH AT 9:00 A.M.

23             THE COURT:  THIS SCHEDULE, JUST TO MAKE SURE I'M ON

24    THE SAME LEVEL, THE DOCUMENTS PRODUCED TO THE D.O.J. BY THE

25    DEFENDANTS, THE UNDERLYING BUSINESS DOCUMENTS, WOULD BE

1    VOLUNTARILY PRODUCED ON THE 29TH.

2         HAVE I STATED WHAT YOU THOUGHT --

3              MR. WILLIAMS:  YES, YOUR HONOR.

4         I HAVE ONE QUESTION TO CLARIFY, WHICH IS IF, ON APRIL 1ST,

5    THE DEPARTMENT WERE TO SAY IT DOES NOT SEEK TO EXTEND THE STAY,

6    DO WE THEN NOT GO FORWARD WITH THE CASE MANAGEMENT CONFERENCE

7    ON THE 15TH?

8              THE COURT:  CORRECT.

9              MR. WILLIAMS:  THANK YOU.

10             THE COURT:  OKAY.  EVERYBODY SIGN OFF ON THIS?

11             MR. KESSLER:  YES, YOUR HONOR.

12             MR. ROSA:  I UNDERSTAND, YES, YOUR HONOR.

13             MR. FRIEDMAN:  YES, YOUR HONOR.  FOR THE PLAINTIFFS,

14   YES.

15             MR. ROSA:  AND, AGAIN, THAT'S SUBJECT TO OUR -- ANY

16   OBJECTION WE MAY HAVE ABOUT THOSE DOCUMENTS?

17             THE COURT:  YES.

18             MR. ROSA:  YES, YOUR HONOR.

19             MR. FRIEDMAN:  THANK YOU, YOUR HONOR.

20             THE COURT:  YOU WANT TO PUT THIS IN THE FORM OF AN

21   ORDER?

22             MR. FRIEDMAN:  SURE, YOUR HONOR.

23             THE COURT:  OKAY.  ANYTHING ELSE?

24             MR. KESSLER:  NOT FROM DEFENDANTS, YOUR HONOR.

25             THE COURT:  OKAY.  THANK YOU.

1            MR. WILLIAMS:  THANK YOU, YOUR HONOR.

2            MR. FRIEDMAN:  THANK YOU, YOUR HONOR.  APPRECIATE IT.

3            MR. ROSA:  THANK YOU, YOUR HONOR.

4        (THE PROCEEDINGS WERE CONCLUDED AT 12:07 P.M.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                           CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____

17   LEE-ANNE SHORTRIDGE, CSR, CRR
     CERTIFICATE NUMBER 9595

18       DATED:  AUGUST 4, 2016

19

20

21

22

23

24

25