1  Jeffrey L. Kessler (*pro hac vice*)
   jkessler@winston.com
2  Eva W. Cole (*pro hac vice*)
   ewcole@winston.com
3  Erica C. Smilevski (*pro hac vice*)
   esmilevski@winston.com
4  WINSTON & STRAWN LLP
   200 Park Avenue
5  New York, NY 10166-4193
   Telephone: (212) 294-6700
6  Facsimile: (212) 294-4700

7  Ian L. Papendick (SBN 275648)
   ipapendick@winston.com
8  WINSTON & STRAWN LLP
   101 California Street
9  San Francisco, CA 94111
   Telephone: (415) 591-1000
10 Facsimile: (415) 591-1400

11 Brandon W. Duke (*pro hac vice*)
   bduke@winston.com
12 WINSTON & STRAWN LLP
   1111 Louisiana Street, 25th Floor
13 Houston, TX 77002
   Telephone: (713) 651-2636
14 Facsimile: (713) 651-2700

15 *Counsel for Defendants Panasonic Corporation and*
   *Panasonic Corporation of North America.*
16
   Counsel for other moving Defendants
17 listed on signature page

18                **UNITED STATES DISTRICT COURT**

19              **NORTHERN DISTRICT OF CALIFORNIA**

20                   **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 21 *In re Resistors Antitrust Litigation* | Case No. 3:15-cv-03820-JD |
| 22 | |
| 23 | **DEFENDANTS' MOTION TO DISMISS DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| 24 This Document Relates To: | |
| 25 ALL DIRECT PURCHASER ACTIONS | **ORAL ARGUMENT REQUESTED** |
| 26 | Date: October 27, 2016 |
| 27 | Time: 1:30 PM |
| | Judge: Honorable James Donato |
| 28 | Location: San Francisco Courthouse Courtroom 11 – 19th Floor |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

RELIEF REQUESTED ............................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 2

INTRODUCTION ....................................................................................................................... 2

SUMMARY OF ALLEGATIONS .............................................................................................. 3

      A.     The Only Allegations Plausibly Approaching an Agreement by
            Defendants Pre-date the Statute of Limitations Period ..................................... 3

      B.     The Alleged Conduct Occurring Within the Limitations Period Does
            Not Plausibly Suggest Any Conspiracy and Is Wholly Conclusory ................ 5

      C.     Plaintiffs' Remaining Allegations About Market Structure and
            Government Investigations Do Not Plausibly Suggest a Conspiracy ............... 7

      D.     Plaintiffs' Allegations Do Not Plausibly Suggest Fraudulent
            Concealment, and Fail to Describe Reasonable Due Diligence by
            Plaintiffs ........................................................................................................... 8

ARGUMENT ............................................................................................................................... 9

    I.     PLAINTIFFS' ALLEGATIONS REGARDING A CONSPIRACY FROM
          JULY 2003 TO AUGUST 24, 2011 ARE BARRED BY THE STATUTE OF
          LIMITATIONS ................................................................................................. 9

      A.     Plaintiffs Fail to Plead a Continuing Violation Within the Statute of
            Limitations ....................................................................................................... 9

    II.    PLAINTIFFS FAIL TO STATE A CLAIM OF AN ANTITRUST
          VIOLATION THAT IS WITHIN THE LIMITATIONS PERIOD ......................... 11

      A.     Plaintiffs Fail to Allege Sufficient Facts in Support of Their
            Conspiracy Claims Within the Limitations Period ......................................... 11

      B.     Plaintiffs Cannot Satisfy Their *Twombly* Obligation to Plead Facts
            Plausibly Supporting a Conspiracy Claim During the Limitations
            Period by Referring to the Existence of Government Investigations and
            Unrelated Litigations ..................................................................................... 14

    III.   PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF
          PLEADING FRAUDULENT CONCEALMENT WITH THE REQUIRED
          PARTICULARITY .......................................................................................... 15

      A.     Plaintiffs Fail to Sufficiently Plead "Due Diligence" .................................... 16

      B.     Plaintiffs Fail to Sufficiently Plead "Affirmative Concealment" .................. 17

CONCLUSION ......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airweld, Inc. v. Airco, Inc.*,
  742 F.2d 1184 (9th Cir. 1984) ..................................................................10

*In re Animation Workers Antitrust Litig.*,
  87 F. Supp. 3d 1195 (N.D. Cal. 2015) ........................................................18

*In re Animation Workers Litig.*,
  123 F. Supp. 3d 1175 (N.D. Cal. 2015) ......................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................11

*Aurora Enters., Inc. v. Nat'l Broad. Co.*,
  688 F.2d 689 (9th Cir. 1982) ................................................................10, 11

*In re Baby Food Antitrust Litig.*,
  166 F.3d 112 (3d Cir. 1999).........................................................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................... *passim*

*In re Capacitors Antitrust Litig.*,
  106 F. Supp. 3d 1051 (N.D. Cal. 2015) ........................................... *passim*

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  738 F. Supp. 2d 1011 (N.D. Cal. 2010) ......................................................14

*Chip Tech, Ltd. v. AVX Corp., et al.*,
  No. 3:15-cv-03868 (N.D. Cal. Aug. 24, 2015) .............................................9

*In re Citric Acid Litig.*,
  191 F.3d 1090 (9th Cir. 1999) ......................................................................9

*Conerly v. Westinghouse Elec. Corp.*,
  623 F.2d 117 (9th Cir. 1980) ......................................................................17

*Coppinger-Martin v. Solis*,
  627 F.3d 745 (9th Cir. 2010) ......................................................................18

*Dobard v. S.F. Bay Area Rapid Transit Dist.*,
  No. C-92-3563-DLJ, 1993 WL 372256 (N.D. Cal. Sept. 7, 1993)..............10

ii

DEFS.' MOT. TO DISMISS DIRECT PURCHASER
PLS.' CONSOLIDATED AM. CLASS ACTION COMPL.

CASE NO. 3:15-cv-03820-JD

*Electroglas, Inc. v. Dynatex Corp.*,
    497 F. Supp. 97 (N.D. Cal. 1980) .............................................................................10

*Garrison v. Oracle Corp.*,
    No. 14-CV-04592-LHK, 2016 WL 393527 (N.D. Cal. Feb. 2, 2016).............................16, 19, 20

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ................................................. *passim*

*In re Hawaiian & Guamanian Cabotage Antitrust Litig.*,
    647 F. Supp. 2d 1250 (W.D. Wash. 2009).................................................................11

*In re Intelligroup Sec. Litig.*,
    527 F. Supp. 2d 262 (D.N.J. 2007) .............................................................................3

*Jablon v. Dean Witter & Co.*,
    614 F.2d 677 (9th Cir. 1980) .............................................................................9, 11

*The Jeanery, Inc. v. James Jeans, Inc.*,
    849 F.2d 1148 (9th Cir. 1988) .............................................................................12

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997).............................................................................10

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) .............................................................................4

*Lee v. Wells Fargo Bank*,
    No. 5:12-cv-02820 EJD, 2013 WL 1117866 (N.D. Cal. Mar. 18, 2013) .................5, 17

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 13-MD-2420-YGR, 2014 WL 309192 (N.D. Cal. Jan. 21, 2014) ...............3, 14, 19

*Maple Flooring Mfrs. Ass'n v. United States*,
    268 U.S. 563 (1925).............................................................................6

*Napier v. United States*,
    No. 1:12-CV-1308 AWI DLB, 2012 WL 5499629 (E.D. Cal. Nov. 13, 2012).............................3

*In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*,
    997 F. Supp. 2d 526 (N.D. Tex. 2014) .............................................................................7

*In re Optical Disk Drive Antitrust Litig.*,
    No. 3:10-md-2143 RS, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011)...................13, 14

*Ralph C. Wilson Indus., Inc. v. Chronicle Broad. Co.*,
    794 F.2d 1359 (9th Cir. 1986) .............................................................................12, 13

*Rambus Inc. v. Samsung Elecs. Co., Ltd.*,
 No. C-05-02298 RMW, 2007 WL 39374 (N.D. Cal. Jan. 4, 2007)............................20

*Rutledge v. Boston Woven Hose & Rubber Co.*,
 576 F.2d 248 (9th Cir. 1978) ...........................................................15, 16, 17, 20

*Ryan v. Microsoft Corp.*,
 147 F. Supp. 3d 868 (N.D. Cal. 2015) ............................................16, 19, 20

*Schwartz v. KPMG LLP*,
 476 F.3d 756 (9th Cir. 2007) .............................................................16

*In re Static Random Access Memory Antitrust Litig.*,
 580 F. Supp. 2d 896 (N.D. Cal. 2008) ..................................................15

*Superior Offshore Int'l v. Bristow Grp.*,
 738 F. Supp. 2d 505 (D. Del. 2010).............................................11, 13, 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
 Nos. M 07-1827 SI, C09-4997 SI, 2010 WL 2609434 (N.D. Cal. Jun. 28, 2010) ........14

*Thorman v. Am. Seafoods Co.*,
 421 F.3d 1090 (9th Cir. 2005) ........................................................18, 20

*In re Transpac. Passenger Air Transp. Antitrust Litig.*,
 No. C 07-05634 CRB, 2011 WL 1753738 (N.D. Cal. May 9, 2011) ....................15, 16

*In re Travel Agent Comm'n Antitrust Litig.*,
 583 F.3d 896 (6th Cir. 2009) .........................................................12, 13

*In re Travel Agent Comm'n Antitrust Litig.*,
 No. 1:03 CV 30000, 2007 WL 3171675 (N.D. Ohio Oct. 29, 2007)...........................15

*United States v. Container Corp. of Am.*,
 393 U.S. 333 (1969)...................................................................9

*Volk v. D.A. Davidson & Co.*,
 816 F.2d 1406 (9th Cir. 1987) ........................................................18

*Western Mining Council v. Watt*,
 643 F.2d 618 (9th Cir. 1981) .........................................................16

*Williamson Oil Co. v. Philip Morris USA*,
 346 F.3d 1287 (11th Cir. 2003) .......................................................12

*Zenith Radio Corp. v. Hazeltine Research*,
 401 U.S. 321 (1971)...................................................................10

iv

**Statutes & Rules**

15 U.S.C. § 1 (2004) ...................................................................................................12

15 U.S.C. § 15b .............................................................................................1, 9, 10

Antitrust Criminal Penalty Enhancement and Reform Act of 2004,
Pub. L. No. 108-237, tit. II (2004) ..............................................................................8

Fed. R. Civ. P. 8(a) ........................................................................................................1

Fed. R. Civ. P. 9(b) ..............................................................................................*passim*

Fed. R. Civ. P. 12(b)(6)............................................................................................1, 9

**Other Authorities**

2 Areeda & Hovenkamp, *Antitrust Law* § 320c6 (4th ed. 2015) ........................................10

JEITA – About JEITA,
    http://www.jeita.or.jp/english/about/what/index.htm (last visited Aug. 22, 2016) ........................4

JEITA – Members,
    http://www.jeita.or.jp/cgi-bin/member/list.cgi?l=en&k=0 (last visited Aug. 22,
    2016) ..................................................................................................................4

JEITA – Publications,
    http://www.jeita.or.jp/english/public_standard/ (last visited Aug.  22, 2016)................................4

v

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on October 27, 2016, at 1:30 p.m., or as soon thereafter as the matter may be heard, the undersigned Defendants will and hereby do move the Court, pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing the Direct Purchaser Plaintiffs' ("DPPs" or "Plaintiffs") Consolidated Amended Class Action Complaint (the "DPP-CAC" or "Complaint") for: (1) failure to state a claim within the limitations period that satisfies the pleading standards of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); and (2) failure to allege facts that would toll the applicable statute of limitations for fraudulent concealment. This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the complete files and records in these consolidated actions, oral argument of counsel, and such other and further materials and arguments as the Court may consider.

## RELIEF REQUESTED

Defendants request that the Court dismiss DPPs' Complaint for: (1) failure to state a claim within the relevant statute of limitations that satisfies the pleading standards of *Twombly*, 550 U.S. 544; and (2) failure to allege facts that would toll the applicable statute of limitations for fraudulent concealment.

## STATEMENT OF ISSUES TO BE DECIDED

1.  Whether the applicable statute of limitations bars DPPs' claims for damages accruing before four years prior to complaint filing (August 24, 2011), where DPPs' factual allegations do not plausibly suggest the existence of a single continuing conspiracy to fix prices of linear resistors spanning into the limitations period.

2.  Whether DPPs' factual allegations fail to state a claim for relief under *Twombly*, 550 U.S. 544, within the statutory limitations period (August 24, 2011 through August 2015), 15 U.S.C. § 15b.

3.  Whether DPPs have pled facts with the particularity required to satisfy the standard for fraudulent concealment in order to toll the statute of limitations, which bars claims accruing before four years prior to complaint filing (August 24, 2011).

DEFS.' MOT. TO DISMISS DIRECT PURCHASER
PLS.' CONSOLIDATED AM. CLASS ACTION COMPL.

CASE NO. 3:15-cv-03820-JD

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Although DPPs attempt to plead a conspiracy involving nine different Defendants[1] and eight co-conspirators[2] spanning from July 9, 2003 through August 1, 2014, when the allegations are analyzed, it is clear that the **only** meeting where DPPs allege that some sort of agreement was purportedly reached took place on ***July 9, 2003***. *See, e.g.*, DPP-CAC ¶¶ 3, 73. All of the remaining factual allegations amount to either legitimate information exchanges at regularly scheduled trade association meetings or related events (which constitute the vast majority of the alleged meetings), vague allegations of other purported information exchanges involving certain subsets of Defendants, or conclusory statements about purportedly collusive meetings unmoored from any facts that could plausibly support an antitrust violation.

Indeed, reading the Complaint in the light most favorable to DPPs reveals that, at best, DPPs have alleged a conspiracy period of July 2003 to September 2008—the latest date that DPPs allege at least some facts of arguably "collusive discussions" by any Defendant. DPP-CAC ¶¶ 3, 86, 104. Fatally, DPPs have not alleged any plausible conspiratorial acts by Defendants within the statute of limitations period—and therefore their claims based on conduct before that date cannot survive under the "continuing violation" exception into the statute of limitations. In fact, during the limitations period, DPPs allege nothing but regular meetings of the Japan Electronics and Information Technology Industries Association ("JEITA"), a legitimate and publicly-known trade organization, and one instance of a purported informal information exchange among two defendants—but DPPs allege no agreement and no facts sufficient to state a plausible antitrust

---

[1] The Complaint names the following entities as Defendants: Hokuriku Electric Industry Co. Ltd.; HDK America, Inc.; KOA Corporation; KOA Speer Electronics, Inc.; Panasonic Corporation; Panasonic Corporation of North America; ROHM Co.; ROHM Semiconductor U.S.A., LLC; Kamaya Electric Co., Ltd.; and Kamaya, Inc. DPP-CAC ¶¶ 13-28. Although originally named in the Complaint, Panasonic Electronic Devices Co. Ltd.; Panasonic Industrial Devices Sales Company of America; SANYO Electric Co., Ltd.; SANYO North America Corporation; and HDK Micro Devices Co., Ltd. have since been dismissed. ECF Nos. 147, 148.

[2] The Complaint names the following entities as co-conspirators: Alps Electric Co., Ltd.; Alps Electric (North America) Inc.; Midori Precisions Co., Ltd.; Midori America Corp.; Susumu Co., Ltd.; Susumu International (USA) Inc.; Tokyo Cosmos Electric Co.; and TOCOS America. DPP-CAC ¶¶ 30-37.

conspiracy claim under *Twombly* within the later limitations time period. *See* DPP-CAC ¶¶ 96-101. DPPs have also failed to allege sufficient acts of fraudulent concealment by Defendants under the particularized pleading requirements of Rule 9(b) to avoid the statute of limitations bar for the conduct alleged before the relevant statute of limitations period. *See* DPP-CAC ¶¶ 160-75.

And, while DPPs make much of a purported investigation of the resistors industry by the United States Department of Justice ("DOJ"), this Court has previously observed that the existence of a government investigation has no bearing on whether a complaint in a private action should survive a motion to dismiss. Regardless, unlike in other cases where parallel grand jury investigations resulted in guilty pleas, in this case, the DOJ has informed the Court that it has already closed its investigation concerning activities in the resistors industry involving the Defendants in this litigation, and there will be no prosecutions.[3] Significantly, in drafting the Complaint, DPPs had access to more than 339,000 documents produced to the DOJ in connection with its resistors investigation. Given the DOJ's conclusion, it is unsurprising that DPPs have been unable to plead facts sufficient to state a plausible claim that survives the statute of limitations bar. The Complaint—in its entirety—should be dismissed for this reason.

## SUMMARY OF ALLEGATIONS

### A.     The Only Allegations Plausibly Approaching an Agreement by Defendants Pre-date the Statute of Limitations Period

The only facts that DPPs allege of an actual agreement by Defendants date back to 2003—more than **13 years ago**. DPP-CAC ¶ 73 ("At the [July 9, 2003 meeting of JEITA's Passive Components Business Committee], participants agreed on a procedure for facilitating coordination

---

[3] *See* Aug. 4, 2016 Ltr. from the DOJ to the Court, ECF No. 181 ("Moreover, the United States has very recently ended the last of its criminal antitrust investigations that are impacted by this civil litigation, and corporate subjects have been notified."); *cf.*, *e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420-YGR, 2014 WL 309192, at *2, 4-5 (N.D. Cal. Jan. 21, 2014) (two companies had pleaded guilty by the filing of amended complaints), *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1064 (N.D. Cal. 2015) (DOJ investigation was active when amended complaints were filed and an ACPERA (defined below) application was made). The Court may take judicial notice of the DOJ Letter to the Court. *Napier v. United States*, No. 1:12-CV-1308 AWI DLB, 2012 WL 5499629, at *1 (E.D. Cal. Nov. 13, 2012) (granting judicial notice of letter from DOJ stating that it had received a tort claim form from the plaintiff under Rule 12(b)(1)); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 273-74 (D.N.J. 2007) (taking judicial notice of an SEC no-action letter for the fact that the SEC investigation was terminated without any enforcement action).

of industry behavior in their subsequent meetings.").

The vast majority of the remaining allegations of conduct between July 2003 and the start of the limitations period in August 2011[4] consist of regularly scheduled JEITA meetings. DPP-CAC ¶¶ 74-75, 78-79, 81, 83, 87, 89, 91-95. JEITA is a widely known trade association for companies in Japan that participate in the electronic and information technology industries, the lawful objective of which is to "promote the healthy manufacturing, international trade and consumption of electronics products and components in order to contribute to the overall development of the electronics and information technology (IT) industries," while also "actively promoting environmental preservation countermeasures, including those to combat global warming." *See* JEITA – About JEITA, http://www.jeita.or.jp/english/about/what/index.htm (last visited Aug. 22, 2016).[5] JEITA maintains (and has maintained throughout the purported class period) a public website listing its members and regularly publishes industry statistics and other reports. *See* JEITA – Members, http://www.jeita.or.jp/cgi-bin/member/list.cgi?l=en&k=0 (last visited Aug. 22, 2016); *see also* JEITA – Publications, http://www.jeita.or.jp/english/public_standard/ (last visited Aug. 22, 2016). Indeed, with respect to seventeen of the nineteen JEITA meetings alleged before the limitations period, DPPs simply allege that Defendants met and, at most, exchanged general market information. DPP-CAC ¶¶ 74-75, 78-79, 81, 83, 87, 89, 91-95. As for the only two JEITA meetings or related events that DPPs claim involved "collusive discussions," the Complaint does not allege any actual agreements among the Defendants—and those meetings occurred in 2007 and 2008, respectively, well outside of the limitations period, in any event. *See* DPP-CAC ¶ 104; *see also id.* ¶¶ 80 (Nov. 30–Dec. 1, 2007), 110-112 (Aug. 27, 2008).

Beyond these trade association meetings, the Complaint only includes a few allegations of scattered bilateral meetings between certain Defendants that purportedly took place in furtherance of

---

[4] Defendants Kamaya and HDK were first named in the amended complaint filed on May 27, 2016. Therefore, for those Defendants, the four-year limitations period dates back to May 27, 2012, not August 2011.

[5] The Court may take judicial notice of JEITA's website. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (granting motion to dismiss after taking judicial notice of the contents of web pages); *see, e.g.*, DPP-CAC ¶¶ 74-75, 78-81, 83, 87, 89, 91-95.

the alleged July 2003 agreement to exchange information. However, none of these alleged bilateral meetings took place within the limitations period either. *See, e.g.*, DPP-CAC ¶¶ 75-77 (Jan. 2006–Apr. 2007), 82 (Apr. 22, 2008), 84 (July 31, 2008), 86 (Sept. 1, 2008), 90 (May 8, 2010). Other than DPPs' conclusory allegations that some of these bilateral meetings were "in furtherance" of the purported conspiracy, DPPs make no allegations of facts to support a claim that the alleged July 9, 2003 agreement continued through August 2011, let alone through August 2014. *Id.* ¶¶ 70-101.

Finally, even the "concealing" facts DPPs allege to try to avoid their statute of limitations problems occurred prior to the beginning of the statutory period, involved only **one** of the nine Defendants, and are, on their face, insufficient to support a claim of fraudulent concealment with the required particularity and plausibility. *See* DPP-CAC ¶¶ 161-66; *Lee v. Wells Fargo Bank*, No. 5:12-cv-02820 EJD, 2013 WL 1117866, at *3 (N.D. Cal. Mar. 18, 2013).

## B. The Alleged Conduct Occurring Within the Limitations Period Does Not Plausibly Suggest Any Conspiracy and Is Wholly Conclusory

DPPs have failed to allege any agreements or any specific, collusive conduct after August 2011, the start of the limitations period. Rather, they point to only five purported meetings during this entire statutory time period—four regular JEITA trade association meetings with innocuous discussions of general industry and benchmarking information, and a single bilateral discussion of only one manufacturer's production information—and independent action by JEITA concerning its own "antitrust compliance structure":

- JEITA Meeting No. 1: In August, 2011, certain Defendants attended a JEITA Passive Components Committee meeting, and allegedly discussed sales information such as that "resistor sales to the European automotive end-markets were favorable" for one manufacturer, "sales had worsened" for another, and "sales were struggling" for a third, with information compiled in charts "as a percentage of the previous period."[6] DPP-CAC ¶ 95.

- JEITA Meeting No. 2: On January 26, 2012, certain Defendants attended another JEITA

---

[6] It is unclear from the Complaint whether the August 2011 meeting was before or after the start of the August 24, 2011 limitations period, but, in either event, the August 2011 allegations fail to plausibly support a conspiracy.

DEFS.' MOT. TO DISMISS DIRECT PURCHASER
PLS.' CONSOLIDATED AM. CLASS ACTION COMPL.

CASE NO. 3:15-cv-03820-JD

Passive Components Committee meeting and allegedly discussed an "intention to target the vehicle and smartphone end-markets," and disclosed "outlook for resistor sales during the coming fiscal year as compared to previous years, and the effect of recent flooding in Thailand . . . ." *Id.* ¶ 96.

- JEITA Meeting No. 3: On May 18, 2012, certain Defendants attended another JEITA Passive Components Committee meeting and allegedly discussed historic sales and P&L information, "current sales information, breaking out current performance data by end product type, effects of the 2012 earthquake in Japan," and the "effect of exchange rates on sales . . . ." *Id.* ¶ 97.

- JEITA Meeting No. 4: On July 31, 2013, certain Defendants attended another JEITA Passive Components Committee meeting and allegedly discussed historic "second-quarter sales performance in comparison to the previous period . . . ." *Id.* ¶ 98.

- Meeting No. 5: On October 23, 2013, two Defendants allegedly met and one of them "shared its total capacity and orders received . . . ." *Id.* ¶ 99.

- JEITA Handout: "By July 2014, JEITA's leadership also had become aware that its activities violated the antitrust laws. During that month, JEITA distributed a handout to its members (including Panasonic) announcing an internal investigation into creating an antitrust compliance structure." *Id.* ¶ 101.

In those meetings where information was allegedly discussed or disclosed, DPPs merely make conclusory assertions that the exchange of sales and production (not price) information at these trade association meetings took place, without setting forth any plausible facts to support a claim of any agreements to limit competition. *See id.* ¶¶ 95-98. DPPs allege nothing beyond the exchange of general industry or "benchmarking" type information that is a common and legal function of a trade association such as JEITA. *See, e.g.*, *Maple Flooring Mfrs. Ass'n v. United States*, 268 U.S. 563, 584 (1925) (finding the sharing of such information by a trade association lawful). DPPs also claim that JEITA itself distributed a handout announcing an internal investigation regarding its "antitrust compliance structure," but nothing plausibly suggesting that Defendants did anything wrong. DPP-

DEFS.' MOT. TO DISMISS DIRECT PURCHASER
PLS.' CONSOLIDATED AM. CLASS ACTION COMPL.

CASE NO. 3:15-cv-03820-JD

CAC ¶ 101.

Similarly, the single bilateral contact (Meeting No. 5) alleged during this time frame does not include any plausible factual allegations of agreement, but rather only includes a wholly conclusory statement of purported coordination. *Id.* ¶ 99 (alleging a meeting between Kamaya Electric and Panasonic Corporation occurring on October 23, 2013). And, as with the allegations from July 2003 through August 2011, DPPs do not allege any facts that could plausibly support the assertion that the agreement allegedly made on July 9, 2003 was still operative into the limitations period after 2011. *Id.* ¶¶ 96-101.

### C. Plaintiffs' Remaining Allegations About Market Structure and Government Investigations Do Not Plausibly Suggest a Conspiracy

DPPs attempt to fill in their Complaint with general allegations about the structure of the linear resistors industry. For example, DPPs allege that "the structure of the resistors market is particularly conducive to a price-fixing agreement," due to factors such as a highly concentrated market, high barriers to entry, inelastic demand, interchangeability of the product, declining demand, excess manufacturing capacity, and opportunities for conspiring and sharing information, rendering allegations of collusion "particularly plausible." They spend forty-eight paragraphs describing the alleged history of the resistors industry and characteristics of the resistors market. DPP CAC ¶¶ 51-69, 125-53. None of these boilerplate allegations, however, even taken together with the rest of the Complaint, are sufficient to support the Complaint's conclusory allegations of a conspiracy extending into the limitations period.

In a further effort to beef up their insufficient allegations, DPPs point to several unrelated government investigations, outside of the resistors industry, that involved one or more of the Defendants.[7] DPP-CAC ¶¶ 154-59. Such irrelevant allegations of investigations of other products simply have no bearing here. *See, e.g.*, *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 540 (N.D. Tex. 2014).

---

[7] Some Defendants, such as HDK and Kamaya, were not alleged to be involved in any such investigations.

DEFS.' MOT. TO DISMISS DIRECT PURCHASER
PLS.' CONSOLIDATED AM. CLASS ACTION COMPL.

CASE NO. 3:15-cv-03820-JD

The only U.S. government investigation arguably relevant to the instant action was a DOJ investigation into Japanese resistor suppliers—which, as noted above, has been closed by the DOJ and resulted in no indictments of or guilty pleas by any company.[8]  *See* ECF No. 181.  In addition, there have been no charges filed against any Defendants or alleged co-conspirators by any other foreign jurisdiction or competition authority involving the resistors industry.  Prior to filing their Amended Complaint, DPPs had access to over 339,000 documents produced by Defendants and Yageo America Corporation (an entity named as a defendant in the original complaint) during the DOJ's now-closed resistors investigation, and still have been unable to come forward with plausible factual allegations of any agreement by Defendants within the statute of limitations.

### D.   Plaintiffs' Allegations Do Not Plausibly Suggest Fraudulent Concealment, and Fail to Describe Reasonable Due Diligence by Plaintiffs

DPPs allege that they did not discover, and could not have discovered through reasonable diligence, the existence of the alleged conspiracy until July 2015 because of Defendants' allegedly self-concealing conduct.  DPP-CAC ¶ 160.  Though DPPs include allegations that Defendants' conspiracy was purportedly apparent from publicly available industry information, DPPs do not assert a single allegation of any steps taken in reasonable due diligence to discover the alleged conspiracy during the limitations period.  *Id.* ¶¶ 160-75.  Instead, they baldly claim that none of the information available to DPPs, "*if* investigated with reasonable diligence, could or would have led to discovery of the conspiracy alleged[.]"  *See id.* ¶ 172 (emphasis added).

DPPs also allege that Defendants concealed their activities by (1) holding JEITA meetings in private; (2) "warning each other to treat collusive discussions as 'confidential,'" and to "not distribute evidence of their competitive information exchanges," and (3) "referring to co-conspirators with code words."  *Id.* ¶¶ 161-62.  However, in support of these allegations, DPPs point to no evidence to plausibly indicate, with particularity, that any of this conduct was done as part of a fraudulent effort to conceal Defendants' purportedly anticompetitive behavior from anyone.  *See id.*

---

[8]  Indeed, Plaintiffs have not had the benefit of a cooperating party under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA"), Pub. L. No. 108-237, tit. II (2004), which would have admitted to unlawful conduct, because that statute is inapplicable here where the DOJ has closed its investigation without action.  ECF No. 181; *c.f. In re Capacitors*, 106 F. Supp. 3d at 1064.

¶¶ 162-65.  For example, DPPs reference only two instances where an employee of Defendant Panasonic Corporation referred to Defendant ROHM as "R Co." and three emails where an employee of Defendant Panasonic Corporation writes that recipients should "handle with care" information or not "forward it to others."  *See id.* ¶¶ 162-65.  They offer no allegations to discount the likelihood that these uses of a company letter abbreviation (rather than spelling out its full corporate name) or requests for confidential handling were undertaken for legitimate reasons having nothing to do with any fraudulent concealment.

## ARGUMENT

## I.  PLAINTIFFS' ALLEGATIONS REGARDING A CONSPIRACY FROM JULY 2003 TO AUGUST 24, 2011 ARE BARRED BY THE STATUTE OF LIMITATIONS

The Clayton Act bars DPPs' damages claims based on conduct occurring more than four years before the filing of their initial complaint on August 24, 2015.  15 U.S.C. § 15b (1976); Class Action Complaint, *Chip Tech, Ltd. v. AVX Corp., et al.*, No. 3:15-cv-03868 (N.D. Cal. Aug. 24, 2015), ECF No. 1.  Pursuant to Rule 12(b)(6), time-barred claims are ripe for dismissal where the running of the statute of limitations is apparent on the complaint's face.  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  Accordingly, unless DPPs can plead some exception to the statute of limitations—which they have not done—claims relating to conduct pre-dating August 24, 2011 are time-barred.

### A.  Plaintiffs Fail to Plead a Continuing Violation Within the Statute of Limitations

Despite having access to over three hundred thousand documents produced during the DOJ's now-closed resistors investigation, DPPs have only one allegation of an agreement that was allegedly reached in 2003,[9] and, at best, three additional factually specific allegations of arguably collusive behavior—one in 2006, one in 2007, and one in 2008.  DPP-CAC ¶ 104.  As discussed in

---

[9] Plaintiffs' allegations regarding the July 2003 meeting amount at most to an alleged agreement to agree to exchange information at some point in the future.  *See* DPP-CAC ¶ 73.  Such an agreement to exchange information—as opposed to an agreement to fix prices, which Plaintiffs do not allege—does not give rise to a claim for a *per se* antitrust violation, and should this case proceed past the motion to dismiss stage, Plaintiffs will have the burden to prove that the alleged agreement to exchange information unreasonably restrained trade in the relevant market.  *See Container Corp. of Am.*, 393 U.S. at 338; *In re Citric Acid Litig.*, 191 F.3d at 1106 (9th Cir. 1999).

DEFS.' MOT. TO DISMISS DIRECT PURCHASER PLS.' CONSOLIDATED AM. CLASS ACTION COMPL.

CASE NO. 3:15-cv-03820-JD

greater detail below, there are no plausible *facts* pled of post-2011 conspiratorial conduct during the alleged Meetings Nos. 1-5 (or relating to the JEITA handout), and thus DPPs **cannot** avoid the statute of limitations bar merely by characterizing their claims as part of a broad conspiracy that continues into the limitations period. *See, e.g.*, *Dobard v. S.F. Bay Area Rapid Transit Dist.*, No. C-92-3563-DLJ, 1993 WL 372256, at *6-7 (N.D. Cal. Sept. 7, 1993) (finding mere assertions that a conspiracy existed for an extended period of time are insufficient to support a claim of an ongoing civil conspiracy); *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 338 (1971) (holding that plaintiffs cannot avoid the statute of limitations bar merely by characterizing each claim as part of a broad ongoing conspiracy continuing into the limitations period).

Rather, to state a continuing violation of the antitrust laws as an exception to the four-year statute of limitations, a plaintiff must allege facts that plausibly show that the defendants completed an overt act in furtherance of the allegedly continuing conspiracy during the limitations period. And that overt act must meet two criteria: (1) it must be a new and independent act that is not merely a reaffirmation of a previous act (2) that inflicted new and accumulating antitrust injury on the plaintiffs. 15 U.S.C. § 15b; *Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184, 1190 (9th Cir. 1984).[10] Indeed, "not every act by an antitrust defendant is sufficient to restart the statute of limitations." *Aurora Enters., Inc. v. Nat'l Broad. Co.*, 688 F.2d 689, 694 (9th Cir. 1982). Rather, the court must determine whether the purported act renews the antitrust injury. *Id.*; *see also Electroglas, Inc. v. Dynatex Corp.*, 497 F. Supp. 97, 105 (N.D. Cal. 1980) ("[A] continuation of harm to plaintiffs alone will not keep the cause of action alive without some overt act or continuing conduct of defendants during the limitations period.").

DPPs do not meet that standard here as a matter of law. As discussed in the Summary of Allegations, *supra*, and below, the only specific conduct alleged to have occurred within the

---

[10] Even if Plaintiffs alleged that Defendants did commit a separate new overt act—which they did not—the commission of a new act, as part of an alleged continuing violation, **does not** permit a plaintiff to recover for an injury caused by old overt acts outside the limitations period. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997). It only permits the plaintiff to seek damages accruing in the past four years. *Id.*; *see also* 2 Areeda & Hovenkamp, *Antitrust Law* § 320c6 (4th ed. 2015). For Defendants Kamaya and HDK, not named until May 27, 2016, such damages would be limited to post May 2012.

limitations period—four trade association meetings that are "presumed legitimate," *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007) ("*GPU*"), and a single bilateral meeting where no competitively sensitive price information was allegedly exchanged, let alone an agreement reached—is not sufficient to plead a plausible antitrust conspiracy claim extending into the limitations period. *See Superior Offshore Int'l v. Bristow Grp.*, 738 F. Supp. 2d 505, 512-17 (D. Del. 2010); *In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 647 F. Supp. 2d 1250, 1256-62 (W.D. Wash. 2009) (finding allegations of information exchanges through trade associations insufficient to plead a violation of the Sherman Act). DPPs' conclusory assertion that some of these trade association meetings during the limitations period were "in furtherance of their scheme to facilitate coordination and reduce competition" is unsupported by any plausible factual allegations and simply insufficient to support a claim of an overarching twelve-year conspiracy continuing into the statutory period. *See, e.g.*, DPP-CAC ¶ 99. Accordingly, DPPs have failed to allege any plausible facts to permit them to pursue claims based on conduct alleged to have occurred prior to the limitations period. *See Aurora Enters*, 688 F.2d at 693-94. DPPs' claims regarding any alleged agreement from before August 24, 2011 are therefore barred by the four-year statute of limitations and must be dismissed. *See Jablon*, 614 F.2d at 682.

## II. PLAINTIFFS FAIL TO STATE A CLAIM OF AN ANTITRUST VIOLATION THAT IS WITHIN THE LIMITATIONS PERIOD

### A. Plaintiffs Fail to Allege Sufficient Facts in Support of Their Conspiracy Claims Within the Limitations Period

DPPs' limited factual allegations from within the four-year statutory limitations period fall far short of what is required to state an antitrust conspiracy claim under *Twombly*. 550 U.S. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). To plead an antitrust conspiracy, a complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. This requires DPPs to allege the "specific time, place or person involved in the alleged conspiracies." *Id.* at 565 n.10. "The Court's task is to determine whether the facts alleged in the complaint rise above mere speculation, even if the Court has doubts about them[.]" *In re Capacitors*, 106 F. Supp. 3d at 1063 (citing *Twombly*, 550 U.S. at 555-56). The Complaint's

DEFS.' MOT. TO DISMISS DIRECT PURCHASER
PLS.' CONSOLIDATED AM. CLASS ACTION COMPL.

CASE NO. 3:15-cv-03820-JD

allegations of conduct during the limitations period do not pass this test because the only conduct alleged to have occurred during the four years of the limitations period are four JEITA trade association meetings that are presumed legitimate, distribution of an informational handout regarding JEITA's compliance efforts, and a single bilateral meeting where no competitively sensitive price information was allegedly exchanged, nor any agreement allegedly reached. *See*, *supra*, Summary of Allegations; DPP-CAC ¶¶ 96-101. These facts are not sufficient to plausibly support a conspiracy claim during the limitations period.

A "common scheme" or "meeting of minds" is a prerequisite to state a conspiracy claim under Section 1 of the Sherman Act, 15 U.S.C. § 1 (2004). *The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1155 (9th Cir. 1988) (citations omitted); *Ralph C. Wilson Indus., Inc. v. Chronicle Broad. Co.*, 794 F.2d 1359, 1365-66 (9th Cir. 1986); *see also In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009) ("*Travel Agent Comm'n II*") (allegations that defendants' executives "met frequently during the period of cuts and caps . . . aver only an opportunity to conspire, which does not necessarily support an inference of illegal agreement") (internal quotations omitted). There are simply no allegations of any *agreements* among the alleged co-conspirators after August 2011, and the allegations of five competitor meetings during this four-year period—without more—do not state a claim because the mere "opportunity to fix prices without any showing that [defendants] *actually* conspired" is insufficient to plead an antitrust conspiracy. *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1319 (11th Cir. 2003) (emphasis in original); *see also GPU*, 527 F. Supp. 2d at 1024-25. Furthermore, there is nothing suggesting an agreement by virtue of a trade association handing out compliance-related information. In fact, trade associations regularly engage in compliance and self-monitoring activities.

In total, of the five competitor meetings that are alleged to have occurred after August 24, 2011, four were JEITA meetings in 2012, 2013, and 2014.[11] DPPs do not allege that any agreements were reached at any of these meetings. *See* DPP-CAC ¶¶ 96-98, 101. The remaining competitor

---

[11] Two of these four alleged meetings did not occur during the limitations period for Defendants Kamaya or HDK, as the two meetings in 2012 are alleged to have taken place before May 27, 2012, when Kamaya and HDK were first named as Defendants. *See* DPP-CAC ¶¶ 96-97.

meeting allegedly occurring during the limitations period was a single bilateral meeting between Kamaya Electric and Panasonic Corporation in 2013, where no agreement was alleged to have been reached. DPPs allege merely that Kamaya Electric shared past production and order information, and not even any information about future pricing intentions, let alone any agreement about anything. *See* DPP-CAC ¶ 99.

Accordingly, DPPs' allegations of competitor meetings within the limitations period amount to nothing more than lawful information exchanges that are not sufficient as a matter of law to state a conspiracy claim under Section 1 of the Sherman Act. *See Ralph C. Wilson Indus.*, 749 F.2d at 1365-66; *Travel Agent Comm'n II*, 583 F.3d at 905; *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 126 (3d Cir. 1999) ("communications between competitors do not permit an inference of an agreement to fix prices unless those communications rise to the level of an agreement, tacit or otherwise") (citations omitted). Absent facts that plausibly support a claim of an actual agreement, even the regular exchange of industry information is not sufficient as a matter of law to state a claim during the limitations period. *Superior Offshore Int'l*, 738 F. Supp. 2d at 513-14 (allegations that particular "market gave Defendants a motive to conspire, afforded them ample opportunities to conspire under cover of legitimate business and professional pursuits, and allowed them to consciously share information with their co-competitors" does not allow an inference of a conspiracy); *see also In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143 RS, 2011 WL 3894376, at *9 (N.D. Cal. Aug. 3, 2011) ("*ODD*") (participation in industry trade associations and attendance at trade shows "represent particularly weak support for the existence of any conspiracy"); *GPU*, 527 F. Supp. 2d at 1023 (attendance at trade association meetings is "presumed legitimate").

The additional allegations that fill the Complaint regarding alleged structural characteristics of the resistors industry do not cure DPPs' failure to allege plausible facts of unlawful agreements among the Defendants during the limitations period. *See* DPP-CAC ¶¶ 125-53. Indeed, allegations that an industry is "highly concentrated[,]" that market concentration has been "increasing as the result of certain acquisitions and joint ventures[,]" that there are "high barriers to entry into the market," that the products are "highly standardized, permitting consumers to view them as

DEFS.' MOT. TO DISMISS DIRECT PURCHASER
PLS.' CONSOLIDATED AM. CLASS ACTION COMPL.

CASE NO. 3:15-cv-03820-JD

interchangeable," and other similar allegations, have repeatedly been found insufficient to plausibly allege a conspiracy claim. *ODD*, 2011 WL 3894376, at \*3-4; *see also Superior Offshore Int'l*, 738 F. Supp. 2d at 514 ("Even assuming that there was a downturn in demand and Defendants increased their prices in a parallel fashion, these allegations do not support an inference of an agreement to fix prices."). While industry allegations "may very well be necessary predicates to showing that defendants had the *power* to fix prices, [] they do not show that defendants in fact did so." *ODD*, 2011 WL 3894376, at \*9 (emphasis in original).

### B. Plaintiffs Cannot Satisfy Their *Twombly* Obligation to Plead Facts Plausibly Supporting a Conspiracy Claim During the Limitations Period by Referring to the Existence of Government Investigations and Unrelated Litigations

DPPs also attempt to rely on allegations of government investigations regarding resistors to support the plausibility of the alleged conspiracy. DPP-CAC ¶¶ 154-59. But these allegations do not cure the Complaint's failure to plead facts plausibly alleging a conspiracy within the limitations period. This is particularly true here since the DOJ has closed its resistors investigation with respect to all of the Defendants and no indictments or plea agreements have resulted with any company or person. *See* ECF No. 181. As the *GPU* court explained, even where "[i]t is unknown whether the investigation will result in indictments or nothing at all[,]" "the scope of the investigation is pure speculation." Indeed, "[i]t may be broader or narrower than the allegations at issue . . . . *The grand jury investigation is a non-factor*." *GPU*, 527 F. Supp. 2d at 1024 (emphasis added); *see also In re Capacitors*, 106 F. Supp. 3d at 1064 ("The Court makes clear, however, that the government investigations alleged by plaintiffs carry no weight in [its] holistic analysis.").

Indeed, because there is no active grand jury or plea agreements here, this is a very different situation from recent cases including, for example, *In re Capacitors*, 106 F. Supp. 3d 1051; *In re Lithium Ion Batteries*, 2014 WL 309192; *ODD*, 2011 WL 3894376; *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011 (N.D. Cal. 2010); and *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07-1827 SI, C09-4997 SI, 2010 WL 2609434 (N.D. Cal. Jun. 28, 2010), where a DOJ investigation led to plea agreements and indictments. *See In re Lithium Ion Batteries*, 2014 WL 309192 at \*10 (argument that claims of conspiracy are implausible because some meetings alleged

DEFS.' MOT. TO DISMISS DIRECT PURCHASER
PLS.' CONSOLIDATED AM. CLASS ACTION COMPL.

CASE NO. 3:15-cv-03820-JD

involved no more than an exchange or price information "would have more force . . . in a context where certain defendants had not pleaded guilty to such activities.").

Nor can DPPs bolster their Complaint by citing to wholly unrelated government investigations and civil lawsuits involving products outside of the resistors industry that involved a Defendant or an affiliate of a Defendant. As such investigations and charges have nothing to do with resistors, they have absolutely no relevance here. As a matter of law, such allegations about government antitrust investigations "carr[y] *no weight* in pleading an antitrust conspiracy claim." *GPU*, 527 F. Supp. 2d at 1024 (emphasis added); *see also In re Static Random Access Memory Antitrust Litig.*, 580 F. Supp. 2d 896, 903 (N.D. Cal. 2008) (agreeing that the existence of a grand jury investigation does not support plaintiffs' antitrust conspiracy claims); *In re Travel Agent Comm'n Antitrust Litig.*, No. 1:03 CV 30000, 2007 WL 3171675, at *11-12 (N.D. Ohio Oct. 29, 2007) ("*Travel Agent Comm'n I*") (dismissing complaint and finding references to current government investigations to be irrelevant).

## III. PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF PLEADING FRAUDULENT CONCEALMENT WITH THE REQUIRED PARTICULARITY

DPPs' attempt to save their time-barred claims with conclusory statements about fraudulent concealment falls far short of the relevant pleading standard. *See* DPP-CAC ¶¶ 160-75. To toll the statute of limitations through fraudulent concealment, DPPs must allege *both* that (1) DPPs had neither actual nor constructive knowledge of the facts underlying their claims despite exercising due diligence to discover those facts, and (2) Defendants affirmatively misled DPPs regarding the existence of actions giving rise to their claims. *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 249-50 (9th Cir. 1978); *In re Transpac. Passenger Air Transp. Antitrust Litig.*, No. C 07-05634 CRB, 2011 WL 1753738, at *19-20 (N.D. Cal. May 9, 2011). Moreover, under Rule 9(b), DPPs must plead with particularity facts sufficient to establish both of these required elements of fraudulent concealment. *See* Fed. R. Civ. P. 9(b); *Rutledge*, 576 F.2d at 249-50 (circumstances of concealment and facts supporting due diligence must be pled with particularity). This requires DPPs to specify the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *In re Transpac. Passenger Air Transp. Antitrust Litig.*,

DEFS.' MOT. TO DISMISS DIRECT PURCHASER
PLS.' CONSOLIDATED AM. CLASS ACTION COMPL.

CASE NO. 3:15-cv-03820-JD

2011 WL 1753738, at *19-20 (quoting *Schwartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)). Conclusory statements are insufficient. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). As recent cases from this District make clear, allegations such as those in the Complaint are not sufficient to satisfy either required element of fraudulent concealment, and DPPs' claims must be dismissed. *See Garrison v. Oracle Corp.*, No. 14-CV-04592-LHK, 2016 WL 393527, at *19-26 (N.D. Cal. Feb. 2, 2016) (holding that plaintiffs failed to adequately plead fraudulent concealment and granting motion to dismiss); *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 886-90 (N.D. Cal. 2015) (N.D. Cal. Nov. 23, 2015) (same); *In re Transpac. Passenger Air Transp. Antitrust Litig.*, 2011 WL 1753738, at *19-21 (same).

### A. Plaintiffs Fail to Sufficiently Plead "Due Diligence"

There can be no question that DPPs fail to plead facts establishing the requisite due diligence to uncover their claims despite the numerous allegations indicating that Plaintiffs should, in fact, have been on notice of them. *See In re Transpac. Passenger Air Transp. Antitrust Litig.*, 2011 WL 1753738, at *19-20. DPPs plead *no facts* establishing *any* investigative effort prior to July 2015, when reports of a government investigation into resistors were made public. DPP-CAC ¶¶ 160-75. Indeed, DPPs *admit* that they performed no due diligence and instead rely on the conclusory assertion that they could not have discovered the alleged conspiracy by exercise of due diligence because of Defendants' purported efforts to avoid detection of the alleged conspiracy. DPP-CAC ¶ 170.

But it is not enough for DPPs to make the wholly conclusory claim that due diligence would have failed. Rather, DPPs must specify *the steps taken by DPPs* to investigate their claims, particularly as the Complaint claims that facts existed which would have put DPPs on notice about the possible existence of the alleged conspiracy. *See Rutledge*, 576 F.2d at 250.

Specifically, DPPs allege awareness of facts—which the Complaint relies upon to support allegations of conspiracy—that were publicly available during the limitations period and would have provided inquiry notice of the purported conspiracy to direct purchasers of linear resistors. *See, e.g.*, DPP-CAC ¶¶ 67-68 (discussing public reports of the struggling resistor industry in the face of

stabilized or increased prices of resistors). DPPs, in fact, allege that "publicly available information" showed price "stabilization or apparent elevation around 2002-2003 . . . and a significant increase after 2006," and, further, that information was "consistent with the time period of Defendants' collusion alleged" in the Complaint. *Id.* ¶ 124. Indeed, the Complaint is replete with allegations that Defendants' alleged collusion was purportedly apparent from numerous industry facts. *See id.* ¶¶ 125-53. DPPs claim, for example, that "demand for resistors has steadily declined since the early 2000s" but "[d]espite these demand conditions, prices for resistors have remained relatively stable since 2003." *Id.* ¶ 146.

Despite these alleged "publicly available" facts, the Complaint makes it clear that no direct purchaser of resistors chose to perform any diligence into this purported price stabilization of products it was purchasing from Defendants. In light of this information that DPPs claim evidences conspiracy—which DPPs concede was publicly available at the time of the purported conspiracy, *see* DPP-CAC ¶ 124—DPPs cannot avoid their obligation to plead due diligence with particularity simply by asserting that due diligence would have been futile. *See Rutledge*, 576 F.2d at 250. The failure to plead any efforts at due diligence in these circumstances is fatal to any claim of fraudulent concealment tolling. *See, e.g.*, *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120-21 (9th Cir. 1980).

## B.    Plaintiffs Fail to Sufficiently Plead "Affirmative Concealment"

In addition, DPPs fail to sufficiently plead that Defendants made actual misrepresentations to purported class members or took other affirmative steps to fraudulently conceal the alleged conspiracy, let alone that such misrepresentations were sufficient to plausibly toll the statute of limitations. Although DPPs plead allegations over a twelve-year period involving nine Defendants and eight co-conspirators, DPPs point to only a small handful of scattered instances of what they coin affirmative acts to conceal the conspiracy, all of which allegedly occurred prior to August 2011, involved only **one** of the nine Defendants, and are, on their face, insufficient to support a claim of fraudulent concealment with the required particularity and plausibility. *See* DPP-CAC ¶¶ 161-66; *Lee v. Wells Fargo Bank*, No. 5:12-cv-02820 EJD, 2013 WL 1117866, at *3 (N.D. Cal. Mar. 18,

DEFS.' MOT. TO DISMISS DIRECT PURCHASER
PLS.' CONSOLIDATED AM. CLASS ACTION COMPL.

CASE NO. 3:15-cv-03820-JD

2013).

As discussed above, DPPs merely allege that Defendants (1) held trade association meetings in private; (2) in a few scattered instances, employees of one Defendant warned each other to treat discussions and information exchanges with care; and (3) on two occasions, the same Defendant used a purported "code name" to refer to another competitor. DPP-CAC ¶¶ 161-65. There are legitimate reasons that trade association meetings would not be open to the general public, and that one company might refer to another by an obvious abbreviation. Such thin and ambiguous allegations simply do not come close to meeting the pleading standards for fraudulent concealment under Rule 9(b), particularly where, as here, DPPs had access to over one hundred thousand documents from Defendants' DOJ productions in the resistors investigation. *See Thorman v. Am. Seafoods Co.*, 421 F.3d 1090, 1094-96 (9th Cir. 2005); *see also In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1215-17 (N.D. Cal. 2015) (allegations that "Defendants attempted to avoid memorializing" and held "secret meetings" alone are insufficient to show "affirmative steps to mislead").

Specifically, the Complaint allegations that JEITA held meetings in private do not amount to "affirmative concealment." As the Ninth Circuit has repeatedly held, "the plaintiff must point to some . . . active conduct by the defendant *above and beyond* the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Coppinger-Martin v. Solis*, 627 F.3d 745, 751 (9th Cir. 2010) (emphasis in original; internal quotation and citation omitted). Courts have specifically held that allegations that Defendants met and communicated in secret are insufficient to establish affirmative concealment. DPP-CAC ¶ 161; *see, e.g.*, *In re Animation Workers*, 87 F. Supp. 3d at 1215-17 (concluding that plaintiffs failed to adequately allege affirmative acts that extended beyond the conspiracy itself, as allegations of self-concealing conduct in furtherance of the conspiracy are not enough to establish fraudulent concealment); *see also id.* at 1216 ("If the mere fact of a secret conspiracy were sufficient to toll the statute of limitations under the fraudulent concealment doctrine, there would be little point in imposing a period of limitation in the first instance."); *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987) ("[S]ilence

DEFS.' MOT. TO DISMISS DIRECT PURCHASER
PLS.' CONSOLIDATED AM. CLASS ACTION COMPL.

CASE NO. 3:15-cv-03820-JD

or passive conduct does not constitute fraudulent concealment."). For the same reasons, the allegation that Defendants did not make public minutes of the JEITA meetings is also to no avail, as courts have regularly held that limiting distribution of a written memorialization of a purported competitor meeting or agreement is not sufficient to allege fraudulent concealment. *See, e.g.*, *Ryan*, 147 F. Supp. 3d 868, 890 (N.D. Cal. 2015) ("Plaintiffs' conclusory allegation that Microsoft 'took active measures to keep the Secret Agreements secret by . . . ensuring that any written memorialization of the Secret Agreements was not widely disseminated' is belied by Plaintiffs' numerous allegations of emails that Microsoft did not try to keep secret."); *Garrison*, 2016 WL 393527, at *21-22.

Further, with respect to the only *two* specific allegations over *twelve years* regarding the use of so-called "code names" by one Defendant, Panasonic Corporation, for one other company (simply abbreviating ROHM Co., Ltd. as "R. Co."), or the three documents asking recipients to "handle with care" certain competitor information, such conduct, which could have legitimate motivations involving the normal use of corporate abbreviations and legitimate concerns about business confidentiality, is also insufficient to show "affirmative concealment." *See* DPP-CAC ¶¶ 162-65. These thin and ambiguous allegations do not pass the Rule 9(b) test for showing fraudulent concealment. Indeed, they would not even show fraudulent concealment under the more relaxed *Twombly* pleading standard. This follows from the fact that merely requesting that information be handled with care or using an obvious initial to abbreviate another company's name is, at worst, ambiguous behavior, which plausibly has legitimate explanations and thus does not support a fraudulent concealment claim with the required particularity.[12] *See, e.g.*, *Garrison*, 2016 WL

---

[12] Although courts in some instances have held that allegations of the use of code names coupled with other conduct satisfied the affirmative misconduct prong of the fraudulent concealment test, Plaintiffs in those cases alleged numerous examples of the use of such code names and specific facts that all of the defendants involved in the conspiracy engaged in such conduct to mislead plaintiffs and others, along with other types of affirmative concealment. *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 309192, at *16 ("The complaints allege public, putatively false statements by various defendants affirming their compliance with applicable antitrust laws" and describe with particularity a "variety of mechanisms" by which defendants kept their allegedly collusive meetings secret); *In re Animation Workers Litig.*, 123 F. Supp. 3d 1175, 1200 (N.D. Cal. 2015) ("Here, the court finds that Plaintiffs' allegations of pretextual statements regarding compensation, in combination with Plaintiffs' allegations that Defendants actively concealed and ensured the secrecy of the conspiracy, are sufficient to allege 'affirmative acts.'"). No such allegations are made here.

DEFS.' MOT. TO DISMISS DIRECT PURCHASER PLS.' CONSOLIDATED AM. CLASS ACTION COMPL.

CASE NO. 3:15-cv-03820-JD

393527, at *21-22 (finding that notation on e-mails not to forward to others does not rise to evidence of fraudulent concealment).

As this Circuit makes clear, affirmative misleading requires more than "[m]erely keeping someone in the dark[.]" *Thorman*, 421 F.3d at 1095. Silent or passive conduct does not constitute fraudulent concealment absent a special relationship between the parties sufficient to impose upon the defendant a duty of disclosure. *Rutledge*, 576 F.2d at 250; *Ryan*, 147 F. Supp. 3d at 886 ("Passive concealment of information is not enough to toll the statute of limitations unless the defendant had a fiduciary duty to disclose information to the plaintiff.") (omitting citations). Here, DPPs make no claim that Defendants owed any special duty of disclosure to DPPs or anyone else. Even were Defendants to have a such a duty to DPPs, the conduct alleged still does not rise to an affirmative act of concealment and, indeed, does not relate to any concealment from DPPs or putative class members at all. *See, e.g.*, *Rambus Inc. v. Samsung Elecs. Co., Ltd.*, No. C-05-02298 RMW, 2007 WL 39374, at *6-7 (N.D. Cal. Jan. 4, 2007); *see also Garrison*, 2016 WL 393527 at *19-23.

## CONCLUSION

For all of the reasons set forth above, Defendants respectfully request that the Court dismiss DPPs' Consolidated Amended Class Action Complaint in its entirety for alleging claims that are either barred by the statute of limitations or insufficient to state a claim within the four-year limitations period.

Dated: August 24, 2016

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: /s/ *Jeffrey L. Kessler*

Jeffrey L. Kessler (*pro hac vice*)
jkessler@winston.com
Eva W. Cole (*pro hac vice*)
ewcole@winston.com
Erica C. Smilevski (*pro hac vice*)
esmilevski@winston.com
200 Park Avenue
New York, NY 10166-4193

Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Ian L. Papendick (SBN 275648)
ipapendick@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Brandon W. Duke (*pro hac vice*)
bduke@winston.com
WINSTON & STRAWN LLP
1111 Louisiana Street, 25th Floor
Houston, TX 77002
Telephone: (713) 651-2636
Facsimile: (713) 651-2700


*Counsel for Defendants Panasonic Corporation and Panasonic Corporation of North America.*


**CROWELL & MORING LLP**


By: /s/ *Jason C. Murray*


Jason C. Murray (CSB No. 169806)
jmurray@crowell.com
Emily T. Kuwahara (CSN No. 252411)
ekuwahara@crowell.com
Robert McNary (CSB No. 253745)
rmcnary@crowell.com
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: 213.622.4750
Facsimile: 213.622.2690

Daniel Zelenko (admitted *pro hac vice*)
dzelenko@crowell.com
590 Madison Avenue, 20th Floor
New York, NY 10022
Telephone: 212.223.4000
Facsimile: 212.223.4134

*Counsel for KOA Corp. and KOA Speer Electronics, Inc.*

**O'MELVENY & MYERS LLP**


By: /s/  Michael F. Tubach

Michael Frederick Tubach
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3305
Telephone:  (415) 984-8700
Facsimile:  (415) 984-8701
mtubach@omm.com

Kenneth Ryan O'Rourke
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone:  (213) 430-6000
Facsimile:  (213) 430-6407
korourke@omm.com

*Counsel for Rohm Co. Ltd. and Rohm Semiconductor U.S.A., LLC*


**BARNES & THORNBURG LLP**


By: /s/  Kendall Millard

Kendall Millard
Todd Dixon
Bradley R. Love
11 South Meridian Street
Indianapolis, IN 46204-3535
Telephone:  (317) 236-1313
Facsimile:  (317) 231-7433
Kendall.Millard@Btlaw.com
Tdixon@Btlaw.com
Blove@Btlaw.com

*Counsel for Hokuriku Electric Industry Co. and HDK America, Inc.*

**LATHAM & WATKINS LLP**

By: /s/  *Belinda S Lee*

Belinda S Lee
Ashley M. Bauer
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone:  (415) 395-8138
Belinda.Lee@lw.com
Ashley.Bauer@lw.com

*Counsel for Kamaya, Inc. and Kamaya Electric Co., Ltd.*

*Pursuant to N.D. Cal. L.R. 5-1(i)(3), the filer attests that concurrence in filing of this document has been obtained from the above signatories.*

23

DEFS.' MOT. TO DISMISS DIRECT PURCHASER
PLS.' CONSOLIDATED AM. CLASS ACTION COMPL.

CASE NO. 3:15-cv-03820-JD

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2016, I electronically filed with the Clerk of Court via the CM/ECF system the following document:

**DEFENDANTS' MOTION TO DISMISS THE DIRECT PURCHASER PLAINTIFFS'**

**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Notice of this filing will be sent by email to all parties with an email address of record by operation of the Court's electronic filing system. Parties may access the filing through the Court's CM/ECF system.

Dated: August 24, 2016

       _/s/ Brandon W. Duke_
       Brandon W. Duke (*pro hac vice*)
       bduke@winston.com
       WINSTON & STRAWN LLP
       1111 Louisiana Street, 25th Floor
       Houston, TX 77002
       Telephone: (713) 651-2636
       Facsimile: (713) 651-2700