CROWELL & MORING LLP
Jason C. Murray (CSB No. 169806; jmurray@crowell.com)
Emily T. Kuwahara (CSB No. 252411; ekuwahara@crowell.com)
Robert McNary (CSB No. 253745; rmcnary@crowell.com)
Jordan Ludwig (CSB No. 277952; jludwig@crowell.com)
515 South Flower St., 40th Floor
Los Angeles, CA  90071
Telephone: 213.622.4750
Facsimile: 213.622.2690

CROWELL & MORING LLP
Daniel Zelenko (Admitted *Pro Hac Vice*; dzelenko@crowell.com)
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone: 212.223.4000
Facsimile: 212.223.4134

CROWELL & MORING LLP
Katie Yablonka (CSB No. 295015; kyablonka@crowell.com)
275 Battery Street, 23rd Floor
San Francisco, CA  94111
Telephone: 415.986.2800
Facsimile: 415.986.2827

*Attorneys for Defendants KOA Corporation and KOA Speer Electronics, Inc.*

[Counsel for other moving Defendants listed on signature page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: RESISTORS ANTITRUST LITIGATION | **Master Case No. 3:15-cv-03820-JD** |
| | |
| **This Document Relates To:** | **DEFENDANTS' JOINT MOTION TO DISMISS THE INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT** |
| | **ORAL ARGUMENT REQUESTED** |
| ALL INDIRECT PURCHASER ACTIONS | Date:  October 27, 2016 |
| | Time:  1:30 PM |
| | Judge:  Hon. James Donato |
| | Location:  Courtroom 11 |

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DEFS.' JOINT MOT. TO DISMISS INDIRECT PURCHASER
PLS.' CONSOLIDATED CLASS ACTION COMPL.

CASE NO. 3:15-CV-03820-JD

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .................................................................................. 1

RELIEF REQUESTED ......................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

INTRODUCTION ................................................................................................................. 2

SUMMARY OF ALLEGATIONS ...................................................................................... 3

    A.    IPPs' Conspiracy Allegations Fall Outside the Applicable Statutes of Limitations. ............................................................................................... 3

    B.    IPPs' Allegations of a Conspiracy During the Applicable Statute of Limitations Period Are Wholly Conclusory. .................................................. 5

    C.    IPPs' Remaining Allegations About Industry Structure and Government Investigations During the Limitations Period Are Insufficient. ................... 6

    D.    IPPs' Allegations that Defendants Fraudulently Concealed an Alleged Conspiracy, and that IPPs Acted with Due Diligence, Lack Particularity and Are Wholly Conclusory .............................................................................. 7

ARGUMENT ......................................................................................................................... 8

I.    IPPS' ANTITRUST AND CONSUMER PROTECTION ALLEGATIONS REGARDING CONDUCT FROM JULY 2003 TO AUGUST 2011 ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS. ...................... 8

II.    IPPS FAIL TO ALLEGE FACTS TO PLAUSIBLY SUPPORT ANY CONSPIRACY CLAIMS WITHIN THE LIMITATIONS PERIOD ...................... 11

    A.    IPPs Fail to Allege Sufficient Facts in Support of Their Conspiracy Claims Within the Limitations Period. ..................................................................... 11

    B.    IPPs Cannot Plausibly Allege a Conspiracy During the Limitations Periods by Referring to the Existence of Government Investigations. ..................... 13

III.    IPPs have Failed to Meet their Burden of Pleading Fraudulent Concealment or DELAYED DISCOVERY WITH THE Required Particularity.. ....................... 14

    A.    IPPs Fail to Sufficiently Plead "Due Diligence." ..................................... 16

    B.    IPPs Fail to Sufficiently Plead "Affirmative Concealment." ................... 17

    C.    IPPs Have Also Failed to Invoke the "Discovery Rule." ......................... 20

IV.    IPPS FAIL TO STATE VIOLATIONS OF STATE CONSUMER PROTECTION AND UNFAIR COMPETITION LAWS ..................................................................... 21

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DEFS.' JOINT MOT. TO DISMISS INDIRECT PURCHASER
PLS.' CONSOLIDATED CLASS ACTION COMPL.

-i-

CASE NO. 3:15-CV-03820-JD

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3        A.    IPPs Fail to State a Claim under California's Unfair Competition Law................ 21

4        B.    IPPs Fail to State a Claim under New York's Deceptive Acts and Practices Law....................................................................................................................... 22

5

6        C.    IPPs Fail to State a Claim under Florida's Deceptive and Unfair Trade Practices Act............................................................................................................ 23

7    CONCLUSION .................................................................................................................... 24

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DEFS.' JOINT MOT. TO DISMISS INDIRECT PURCHASER
PLS.' CONSOLIDATED CLASS ACTION COMPL.

-ii-

CASE NO. 3:15-CV-03820-JD

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2P Commercial Agency S.R.O. v. SRT USA, Inc.*,
  2013 WL 246650 (M.D. Fla. Jan. 23, 2013)................................................................23

*Airweld, Inc. v. Airco, Inc.*,
  742 F.2d 11284 (9th Cir. 1984).............................................................................9

*In re Animation Workers Antitrust Litig.*,
  87 F. Supp. 3d 1195, 1215-17 (N.D. Cal. 2015) ...........................................18, 20

*In re Animation Workers Litig.*,
  123 F. Supp. 3d .................................................................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................11

*Aurora Enters., Inc. v. Nat'l Broad. Co.*,
  688 F.2d 689 (9th Cir. 1982)............................................................................9, 10

*In re Automotive Refinishing Paint Antitrust Litig.*,
  515 F. Supp. 2d. 544 (E.D. Pa. 2007) ...............................................................22

*In re Baby Food Antitrust Litig.*,
  166 F.3d 112 (3d Cir. 1999)...............................................................................12

*Baez v. Root*,
  No. 13-81158-CIV, 2014 WL 1414433 (S.D. Fla. Apr. 11, 2014) .........................15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................1, 11, 19

*In re Capacitors Antitrust Litig.*,
  106 F. Supp. 3d 1051, 1064 (N.D. Cal. 2015) .........................................6, 13, 14

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  738 F. Supp. 2d 1011 (N.D. Cal. 2010) ..............................................................14

*Christy v. Miulli*,
  692 N.W.2d 694 (Iowa 2005) .............................................................................15

*In re Citric Acid Litig.*,
  191 F.3d 1090 (1999)...........................................................................................9

*Conerly v. Westinghouse Elec. Corp.*,
  623 F.2d 117 (9th Cir. 1980)...............................................................................17

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DEFS.' JOINT MOT. TO DISMISS INDIRECT PURCHASER
PLS.' CONSOLIDATED CLASS ACTION COMPL.

-iii-

CASE NO. 3:15-CV-03820-JD

*Contreras v. Grower Shipper Vegetable Ass'n of Cent. Cal.*,
No. C-70, AJZ, 1971 WL 535, (N.D. Cal. Apr. 8, 1971).............................................................12

*Coppinger-Martin v. Solis*,
627 F.3d 745 (9th Cir. 2010)........................................................................................................18

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
2015 WL 3988488 (N.D. Ill. June 29, 2015) ...............................................................................23

*Davies v. West Pub. Co.*,
622 N.W.2d 836 (Ct. App. Minn. 2001) ........................................................................................9

*Dobard v. S.F. Bay Area Rapid Transit Dist.*,
No. C-92-3565-DLJ, 1993 WL 372256 (N.D. Cal. Sept. 7, 1993).................................................9

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
516 F. Supp. 2d 1072 (N.D. Cal. 2007) ......................................................................................22

*Electroglas, Inc.v. Dynatex Corp.*,
497 F. Supp. 97 (N.D. Cal. 1980) .................................................................................................9

*Five for Entm't S.A. v. Rodriguez*,
877 F. Supp. 2d 1321 (S.D. Fla. 2012) ....................................................................................2, 23

*In re Fl. Cement & Concrete Antitrust Litig.*,
746 F. Supp. 2d 1291 (S.D. Fla. 2010) ..................................................................................13, 24

*Fuller v. First Franklin Fin. Corp.*,
216 Cal. App. 4th 955 (2013).....................................................................................................21

*Garrison v. Oracle Corp.*,
No. 14-CV-04592-LHK, 2016 WL 393527 (N.D. Cal. Feb. 2, 2016)..................................... 18, 19

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2000) ..........................................................................10, 12, 13, 14

*Hanna Mining Co. v. InterNorth, Inc.*,
379 N.W.2d 663 (Minn. Ct. App. 1986) .....................................................................................15

*In re Hawaiian & Guamanian Cabotage Antitrust Litig.*,
647 F. Supp. 2d 1250 (W.D. Wash. 2009)...................................................................................10

*Hesse v. Vinatieri*,
302 P.2d 699 (Cal. Dist. Ct. App. 1956) ....................................................................................15

*In re Intelligroup Sec. Litig.*,
527 F. Supp. 2d 262 (D.N.J. 2007) ...............................................................................................6

*Jablon v. Dean Witter & Co.*,
614 F.2d 677 (9th Cir. 1980).................................................................................................8, 10

DEFS.' JOINT MOT. TO DISMISS INDIRECT PURCHASER
PLS.' CONSOLIDATED CLASS ACTION COMPL.

-iv-

CASE NO. 3:15-CV-03820-JD

*The Jeanery, Inc. v. James Jeans, Inc.*,
   849 F.2d 1148 (9th Cir. 1988)................................................................................................11

*Keegan v. Am. Honda Motor Co., Inc.*,
   284 F.R.D. 504 (C.D. Cal. 2012) ..........................................................................................20

*Klehr v. A.O. Smith Corp.*,
   521 U.S. 179 (1997)..............................................................................................................10

*Klein v. Chevron U.S.A., Inc.*,
   202 Cal. App. 4th 1342 (2012)..............................................................................................21

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005)...............................................................................................4

*Lauter v. Anoufrieva*,
   642 F. Supp. 2d 1060 (C.D. Cal. 2009).................................................................................21

*Lee v. Wells Fargo Bank*,
   No. 5:12-cv-02820 EJD, 2013 WL 1117866 (N.D. Cal. Mar. 18, 2013)...............................17

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-2420-YGR, 2014 WL 309192 (N.D. Cal. Jan. 21, 2014) ..............................14, 19

*Lombardo v. Johnson & Johnson Consumer Cos., Inc.*,
   124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) ....................................................................2, 23

*Mack v. Bristol–Myers Squibb Co.*,
   673 So.2d 100 (Fla. Dist. Ct. App. 1996) .........................................................................23, 24

*McNaughton v. Rockford State Bank*,
   246 N.W. 84 (Mich. 1933)....................................................................................................15

*Montgomery v. New Piper Aircraft Inc.*,
   209 F.R.D. 221 (S.D. Fla. 2002)...........................................................................................23

*Napier v. United States*,
   No. 1:12-CV-1308 AWI DLB, 2012 WL 5499629 (E.D. Cal. Nov. 13, 2012).........................6

*In re NationsRent Rental Fee Litig.*,
   2009 WL 636188 (S.D. Fla. Feb. 24, 2009)..........................................................................23

*New York v. Daicel Chem. Indus., Ltd.*,
   42 A.D.3d 301 (N.Y. App. Div. 2007)................................................................................3, 22

*In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*,
   997 F. Supp. 2d 526 (N.D. Tex. 2014).................................................................................14

*In re Optical Disk Drive Antitrust Litig.*,
   No. 3:10-md-2143 RS, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011).........................12, 13, 14

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DEFS.' JOINT MOT. TO DISMISS INDIRECT PURCHASER
PLS.' CONSOLIDATED CLASS ACTION COMPL.

–v–

CASE NO. 3:15-CV-03820-JD

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  647 N.E.2d 741 (N.Y. 1995) ....................................................................................22

*Pahlad v. Brustman*,
  33 A.D.3d 518 (N.Y. App. Div. 2006) .....................................................................15

*Paltre v. Gen. Motors Corp.*,
  26 A.D.3d 481 (N.Y. App. Div. 2006) .....................................................................22

*Paltre v. Gen. Motors Corp.*,
  810 N.Y.S.2d 496 (N.Y. App. Div. 2006) ..................................................................2

*QSGI, Inc. v. IBM Global Financing*,
  2012 WL 1150402 (S.D. Fl. March 14, 2012) .........................................................24

*R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*,
  566 F. Supp. 1104 (N.D. Cal. 1983) ........................................................................12

*Ralph C. Wilson Indus., Inc. v. Chronicle Broad. Co.*,
  794 F.2d 1359 (9th Cir. 1986)............................................................................11, 12

*Rambus Inc. v. Samsung Elecs. Co., Ltd.*,
  No. C-05-02298 RMW, 2007 WL 39374 (N.D. Cal. Jan. 4, 2007) ..........................19

*Rutledge v. Boston Woven Hose & Rubber Co.*,
  576 F.2d 248 (9th Cir. 1978)........................................................................15, 16, 17, 19

*Ryan v. Microsoft Corp.*,
  147 F. Supp. 3d 868, 890 (N.D. Cal. 2015) .......................................................18, 19

*Snapp & Assocs. Ins. Servs. Inc. v. Robertson*,
  96 Cal. App. 4th 884 (Cal. Ct. App. 2002) ..............................................................15

*Sperry v. Crompton Corp.*,
  No. 17872/02 (N.Y. Sup. Ct. 2003), *aff'd*, 26 A.D.3d 488 (N.Y. App. Div.
  2006) .......................................................................................................................22

*St. Patrick's Home for the Aged & Infirm v. Laticrete Int'l*,
  264 A.D.2d 652 (N.Y. App. Div. 1999)....................................................................22

*State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*,
  572 N.W.2d 321 (Minn. Ct. App. 1997) ..................................................................15

*In re Static Random Access Memory Antitrust Litig.*,
  580 F. Supp. 2d 896 (N.D. Cal. 2008) .....................................................................14

*Superior Offshore Int'l, Inc. v. Bristow Grp.*,
  738 F. Supp. 2d 505 (D. Del. 2010) ..........................................................10, 12, 13

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DEFS.' JOINT MOT. TO DISMISS INDIRECT PURCHASER
PLS.' CONSOLIDATED CLASS ACTION COMPL.

-vi-

CASE NO. 3:15-CV-03820-JD

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    Nos. M 07-1827 SI, C 09-4997 SI, 2010 WL 2609434 (N.D. Cal. Jun. 28,
    2010) ...........................................................................................................................14

*Thorman v. Am. Seafoods Co.*,
    421 F.3d 1090 (9th Cir. 2005)...............................................................................18, 19

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ................................................................................................21

*In re Transpac. Passenger Air Transp. Antitrust Litig.*,
    No. C 07-05634 CRB, 2011 WL 1753738 (N.D. Cal. May 9, 2011) ...............................15, 16

*In re Travel Agent Comm'n Antitrust Litig.*,
    583 F.3d 896 (6th Cir. 2009)................................................................................11, 12

*In re Travel Agent Comm'n Antitrust Litig.*,
    No. 1:03 CV 30000, 2007 WL 3171675 (N.D. Ohio Oct. 29, 2007).........................14

*TwoRivers v. Lewis*,
    174 F.3d 987 (9th Cir. 1999)......................................................................................15

*United States v. Container Corp. of Am.*,
    393 U.S. 333 (1969) .....................................................................................................9

*Upah v. Ancona Bros. Co.*,
    521 N.W.2d 895 (Neb. 1994)......................................................................................15

*Volk v. D.A. Davidson & Co.*,
    816 F.2d 1406 (9th Cir. 1987).....................................................................................18

*Wade v. Danek Med., Inc.*,
    182 F.3d 281 (4th Cir. 1999)......................................................................................15

*Western Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981)......................................................................................15

*Williamson Oil Co. v. Philip Morris USA*,
    346 F.3d 1287 (11th Cir. 2003)..................................................................................12

*Wolf v. Travolta*,
    No. CV 14-00938-CAS-PJW, 2016 WL 911469 (C.D. Cal. Mar. 4, 2016) ...............9

*Zenith Radio Corp. v. Hazeltine Research*,
    401 U.S. 321 (1971).....................................................................................................9

*Zoe G. v. Frederick F. G.*,
    208 A.D.2d 675 (N.Y. App. Div. 1994).....................................................................15

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DEFS.' JOINT MOT. TO DISMISS INDIRECT PURCHASER    -vii-    CASE NO. 3:15-CV-03820-JD
PLS.' CONSOLIDATED CLASS ACTION COMPL.

1

**Statutes**

2

15 U.S.C. § 1 ..............................................................................................................11

3

15 U.S.C. § 12 ............................................................................................................20

4

15 U.S.C. § 15(b) ......................................................................................................8, 9

5

Cal. Bus. & Prof. Code § 16700 ................................................................................20

6

Cal. Bus. & Prof. Code § 16750.1 ..............................................................................8

7

Cal. Bus. & Prof. Code § 17200 ....................................................................9, 20, 21

8

Cal. Bus. & Prof. Code § 17208 ..........................................................................8, 21

9

Fed. R. Civ. P. 9(b) ..............................................................................15, 18, 19, 24

10

Fed. R. Civ. P. 12(b)(1) ..............................................................................................6

11

Fed. R. Civ. P. 12(b)(6) ..............................................................................................8

12

Fla. Stat. 95.051(2) ....................................................................................................15

13

Fla. Stat. § 95.11(3)(f) ................................................................................................8

14

Iowa Code § 553.12, 553.2 ......................................................................................20

15

Iowa Code § 553.16 ....................................................................................................8

16

Mich. Comp. Laws §§ 445.778, 445.784 ................................................................20

17

Mich. Comp. Laws § 445.781 ....................................................................................8

18

Minn. Stat. § 325D.57 ..............................................................................................20

19

Minn. Stat. § 325D.64(1) ............................................................................................8

20

N.Y. Civ. Prac. Law § 214 ..........................................................................................8

21

N.Y. Gen. Bus. Law § 340(5) ................................................................................8, 20

22

Neb. Rev. Stat. §§ 59-821, 829 ................................................................................20

23

Neb. Rev. Stat. § 59-1612 ..........................................................................................8

24

**Other Authorities**

25

AREEDA & HOVENKAMP, ANTITRUST LAW § 320c6 (4th ed. 2015) ........................10, 11

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DEFS.' JOINT MOT. TO DISMISS INDIRECT PURCHASER
PLS.' CONSOLIDATED CLASS ACTION COMPL.

-viii-

CASE NO. 3:15-CV-03820-JD

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 27, 2016, at 1:30 p.m., or as soon thereafter as the matter may be heard, the undersigned Defendants will and hereby do move the Court, pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing the Indirect Purchaser Plaintiffs' Consolidated Class Action Complaint ("IPP-CAC") for failure to state a claim upon which relief can be granted.  This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Notice of Motion for an order dismissing the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint and accompanying Memorandum of Points and Authorities, the complete files and records in these consolidated actions, oral argument of counsel and such other and further matters as the Court may consider.

**RELIEF REQUESTED**

Defendants request that the Court dismiss the IPP-CAC for failure to state a claim within the relevant statute of limitations, and failure to allege facts that would toll the applicable statutes of limitations for fraudulent concealment.  Defendants also request that the Court dismiss the IPPs' claims under the California, New York, and Florida consumer protection statutes.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the applicable statute of limitations bars IPPs' claims for damages accruing before either three or four years prior to complaint filing (August 20, 2011 or August 20, 2012) where IPPs' factual allegations do not plausibly suggest the existence of a single continuing conspiracy to fix prices of linear resistors extending into the limitations period.

2. Whether IPPs' factual allegations fail to state a claim for relief under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), within the applicable statutory limitations period (August 20, 2011 or August 20, 2012 through August 2015).

3. Whether IPPs have pled facts alleging fraudulent concealment or tolling under the applicable state laws with the particularity necessary to toll the statute of limitations

which bars claims accruing before four years prior to complaint filing (August 20, 2011 or August 20, 2012).

4. Whether IPPs' claims under California's Unfair Competition Law must be dismissed because they have failed to allege an unfair, unlawful, or fraudulent act.

5. Whether IPPs' claims under the New York consumer protection statute must be dismissed for failure to allege misrepresentations or deceptive conduct targeted at consumers. *See Paltre v. Gen. Motors Corp.*, 810 N.Y.S.2d 496, at *1-2 (N.Y. App. Div. 2006).

6. Whether IPPs' claims under the Florida consumer protection statute must be dismissed because IPPs do not allege conduct occurring within the state of Florida, *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1330-31 (S.D. Fla. 2012), and because their claimed injuries are too "remote or speculative" to satisfy the statute's causation requirements. *Lombardo v. Johnson & Johnson Consumer Cos., Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015).

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Without any plausible support for a conspiracy agreement within the statutory limitations period, Indirect Purchaser Plaintiffs' Consolidated Amended Complaint should be dismissed. Although they had access to hundreds of thousands of documents prior to filing their Complaint, the IPPs have completely failed to allege any facts supporting an illegal agreement during the relevant period.[1]  The allegation of a single 2013 industry meeting where no agreement was even alleged to have been reached does not save IPPs' bare allegations of a wide-reaching multi-year conspiracy. Nor do IPPs' allegations support the application of any exception to the statutes of limitations because IPPs have failed to allege any particularized facts supporting fraudulent concealment, or that they conducted any type of investigation as required to invoke any other exception.  Ultimately, IPPs

---

[1] The Direct Purchaser Plaintiffs' complaint suffers from the same infirmity, and Defendants hereby incorporate by reference Defendants' Joint Motion to Dismiss the Direct Purchaser Consolidated Class Action Complaint and the arguments made therein.

have alleged no set of facts sufficient to plead a plausible antitrust conspiracy that is not barred by the applicable statutes of limitations.

Certain of IPPs' state law unfair competition claims also fail to allege critical elements. For <u>California</u>, IPPs have failed to allege an unfair, unlawful, or fraudulent act, as required by the state's Unfair Competition Law. For <u>New York</u>, IPPs fail to allege misrepresentations or deceptive conduct targeted at consumers, a required element of the state's consumer protection statute. For <u>Florida</u>, IPPs do not allege conduct occurring within the state of Florida, or plausibly causing injury, both necessary allegations for pleading a violation of the Florida consumer protection law. Even if IPPs could plead a plausible conspiracy within the relevant time frame, these various state law claims should be dismissed.

For all of these reasons, IPPs have not stated a cognizable claim.

## SUMMARY OF ALLEGATIONS

### A.     IPPs' Conspiracy Allegations Fall Outside the Applicable Statutes of Limitations.

Despite having the benefit of over 339,000 documents submitted to the DOJ in its resistors investigation,[2] IPPs are unable to allege a conspiracy to fix the prices of resistors that falls within the applicable four-year (and one three-year) statute of limitations periods. The very latest alleged conduct that is even arguably conspiratorial occurred in September 2009—approximately two years prior to the longest applicable statute of limitations period. Further, in the period prior to September 2009, there are no plausible allegations of a long-term conspiracy that was agreed upon or entered into that extended into the limitations period, which commenced in 2011.[3] Instead, the vast majority of IPPs' allegations about competitor meetings during the period up through September 2009 concern regularly-scheduled Japan Electronics and Information Technology Industries Association ("JEITA") meetings, where no short- or long-term conspiratorial agreements were even alleged to have been reached. IPP-CAC ¶¶ 94-105, 124-40.

---

[2]  In addition to Defendants ROHM Corp., KOA Corp., and Panasonic Corp., IPPs received documents produced by Yageo America Corporation.

[3]  Defendants Kamaya and HDK were first named in the amended complaint filed on May 27, 2016. Therefore, for those Defendants, the four-year limitations period dates back to May 27, 2012.

JEITA is a widely known trade association for companies that participate in the electronic and information technology industries in Japan, the lawful objective of which is to "promote the healthy manufacturing, international trade and consumption of electronics products and components in order to contribute to the overall development of the electronics and information (IT) technology industries." *See* JEITA, http://www.jeita.or.jp/english/about/what/index.htm (last visited July 22, 2016).[4] JEITA also actively promotes "environmental preservation countermeasures, including those to combat global warming." *Id.* JEITA maintains (and has maintained throughout the purported class period) a public website listing its members, and regularly publishes industry statistics and other reports. *See* JEITA – JEITA Members, http://www.jeita.or.jp/cgi-bin/member/list.cgi?l=en&k=0 (last visited July 22, 2016); *see also* JEITA – Publications, http://www.jeita.or.jp/english/public_standard/ (last visited July 22, 2016).

In total, IPPs allege eight JEITA meetings or related "trade association events" that occurred between July 2003 and September 2009. IPP-CAC ¶¶ 94, 124 (July 2003); 96, 125 (May 2007); 126 (November 2007); 97, 127 (November 30, 2007); 98-99 (August 27, 2008); 105, 137 (October 2008); 105 (November 2008); 138 (December 2008). While IPPs allege short-term discussions of current production capacity and a few instances of current pricing information at these trade association meetings, there is no allegation that Defendants reached an agreement to fix prices for resistors at any of these meetings, let alone a long-term price-fixing agreement extending into the limitations period. *See, e.g.*, *id.* ¶¶ 96 (participants met and "discussed pricing strategies"); 126 ("conspirators explicitly discussed production capacity and pricing"); 100 ("competitors exchanged pricing information and discussed pricing"); 105 ("competitors further discussed pricing"). The closest IPPs come to alleging an agreement during any of these pre-September 2009 meetings is the claim that half of the resistors manufacturers attending an August 27, 2008 JEITA meeting discussed their activities to try to raise resistor prices or stop prices from falling. *Id.* ¶¶ 98-99; 131. However, even considered in the light most favorable to IPPs, this single allegation that a subset of meeting

---

[4] The Court may take judicial notice of JEITA's website. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (granting motion to dismiss after taking judicial notice of the contents of web pages); *see, e.g.*, IPP-CAC ¶¶ 96-100; 105; 128-140.

attendees discussed short-term parallel pricing conduct more than two years prior to the beginning of the limitations period cannot plausibly support a claim that there was a 15-year price-fixing conspiracy agreed to that extended into the limitations period.

Apart from these few trade association meetings, IPPs allege just a scattering of bilateral meetings and communications—all before the end of September 2009—during which different pairs of Defendants purportedly exchanged sales and production information.  No agreements are alleged to have been reached or entered into at these few meetings, let alone a long-term price-fixing agreement extending into the limitations period.  *See, e.g.*, *id.* ¶¶ 128 (April 2008); 135 (September 2008); 140 (September 2009).  Nor do IPPs allege any facts to plausibly support a claim that these bilateral meetings and communications were part of any broader price-fixing conspiracy with respect to resistors spanning from July 2003 into the limitations period.

**B.      IPPs' Allegations of a Conspiracy During the Applicable Statute of Limitations Period Are Wholly Conclusory.**

Although IPPs make the conclusory assertion of a massive conspiracy to fix prices for resistors spanning from July 2003 to the present, *see, e.g.*, IPP-CAC ¶ 5, IPPs allege only a ***single*** paragraph regarding alleged competitor meetings *after* August 20, 2011—i.e., within the limitations period, *see id.* ¶ 107.  Although this paragraph states that Defendants continued to attend JEITA meetings in 2013, only one specific meeting is alleged, where Defendants purportedly shared information, and two Defendants allegedly discussed limiting production capacity, but no allegations of any agreement.[5]  *Id.* ¶ 107 ("[N]otes from JEITA meetings in or around 2013 show that Defendants' discussions of resistors' pricing strategies continued.  Panasonic's notes indicate a meeting with Defendant Kamaya wherein the parties discussed limiting production capacity.").  The entirety of IPPs' allegations regarding competitor meetings occurring after September 2009 rest on this one assertion—the thinnest possible reed—that cannot plausibly support a conspiracy claim during the limitations period.  *Id.*

---

[5]While IPPs also include a vague and conclusory allegation that competitors discussed a potential price increase during a 2007 meeting to be implemented for the 2012 model year, IPP-CAC ¶ 126, IPPs do not set forth any further allegations that such a price increase was ever implemented, agreed to, or even discussed during the five-year interim.

### C.     IPPs' Remaining Allegations About Industry Structure and Government Investigations During the Limitations Period Are Insufficient.

IPPs attempt to bolster their allegations about the limitations period by including allegations regarding the DOJ's now-closed investigation into the resistors industry, other antitrust investigations, and general allegations about the structure of the linear resistor industry.  *See* IPP-CAC ¶¶ 7-15, 66-87, 113, 175-80; *see also* Aug. 4, 2016 Ltr. from the United States to the Court, ECF No. 181.[6]   None of these allegations, however, plausibly support the existence of any conspiracy during the limitations period.

As an initial matter, allegations regarding the DOJ's investigation into industries unrelated to resistors, even if they involved one or more of the Defendants, have no relevance here.  IPP-CAC ¶¶ 8-9, 113, 175-80.  These assertions have nothing to do with resistors.

The only investigation that may arguably have any bearing on the instant action was a DOJ investigation into Japanese resistor suppliers.  *Id.* ¶¶ 7-11.  However, that investigation has been closed by the DOJ and resulted in no indictments or guilty pleas by any company.  *See* ECF No. 181 ("the United States has very recently ended the last of its criminal antitrust investigations that are impacted by this civil litigation, and corporate subjects have been notified.").   Contrary to IPPs' insinuations and speculations, there is no open investigation by the DOJ into the resistors business involving any of Defendants or their related companies, and thus this case is entirely different from *In re Capacitors Antitrust Litigation*, to which IPPs attempt to draw a false connection.  *See* IPP-CAC ¶¶ 8-9.  Indeed, in contrast to *Capacitors*, there is no allegation that any government agency around the world has filed any charge or claim involving the resistor industry.

IPPs additionally fill in their Complaint with general allegations concerning the structure of the linear resistors industry.  IPP-CAC ¶¶ 66-87.  For example, IPPs allege in boiler-plate fashion that collusion is "more plausible" in industries, like the resistors market, where "(1) high barriers to

---

[6] The Court may take judicial notice of the DOJ letter to the Court.  *Napier v. United States*, No. 1:12-CV-1308 AWI DLB, 2012 WL 5499629, at *1 (E.D. Cal. Nov. 13, 2012) (granting judicial notice of letter from DOJ stating that it had received a tort claim form from the plaintiff under Rule 12(b)(1)); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 273-74 (D.N.J. 2007) (taking judicial notice of an SEC no-action letter for the fact that the SEC investigation was terminated without any enforcement action).

entry exist; (2) demand is inelastic; (3) the market is highly concentrated; (4) the products are homogenous; (5) there are ample opportunities to conspire; (6) purchasers lack buying power; and (7) there is a history of collusive behavior." *Id.* ¶ 66. None of these allegations, however, provide any specific facts to support a claim of conspiracy inside or outside of the limitations period.

### D. IPPs' Allegations that Defendants Fraudulently Concealed an Alleged Conspiracy, and that IPPs Acted with Due Diligence, Lack Particularity and Are Wholly Conclusory.

IPPs make the conclusory assertion that they had no knowledge of the alleged conspiracy prior to June 2015, when reports of a government antitrust investigation of the resistors industry were publicly disseminated.[7] IPP-CAC ¶ 16. IPPs further allege that they had no means to discover the alleged conspiracy before this time because they purchased resistors through distributors rather than directly from Defendants and therefore had no contact or interaction with Defendants, and no information was allegedly available in the public domain. *Id.* ¶¶ 17-18.

IPPs also make the conclusory assertion that Defendants fraudulently concealed their alleged conspiratorial conduct. *Id.* ¶¶ 23-25. In support of this assertion, IPPs state in conclusory fashion that (1) the affirmative acts of Defendants—"including acts in furtherance of the conspiracy"—concealed the alleged conspiracy and (2) IPPs could not have discovered the alleged conspiracy at an earlier date through the exercise of due diligence on account of Defendants' alleged acts to conceal the conspiracy. *Id.* ¶¶ 23-25, 28.

Most significantly, however, despite having access to hundreds of thousands of documents submitted to the DOJ, IPPs allege only a handful of purported instances regarding Defendants' purported affirmative acts to engage in fraudulent concealment and no specific facts of IPPs' due diligence. Instead, IPPs merely set forth conclusory allegations that Defendants' conspiracy was "inherently self-concealing" and that "Defendants used mechanisms designed to conceal their collusion, such as covert meetings, use of code words or terms to refer to competitors and/or customers, use of pretexts to mask the true purpose of collusive communications, use of non-

---

[7] As set forth above, the DOJ has "ended the last of its criminal antitrust investigations that are impacted by this civil litigation." *See* ECF. No. 181.

1   company phones, and instructions to destroy emails evidencing collusive activities." *Id.* ¶¶ 26-27.

2        Moreover, IPPs offer no specific allegations about any due diligence they purportedly

3   engaged in to discover any alleged conspiracy.  Despite alleging that "[t]he pricing of linear resistors

4   as a whole has experienced a dramatic rise since 2002," *id.* ¶ 74, IPPs do not allege any steps that

5   they, as purchasers of linear resistors, took to inquire as to why prices were increasing.  Indeed, IPPs

6   concede that they chose not to undertake "the exercise of reasonable diligence."  *See id.* ¶ 28.

7                                      **ARGUMENT**

8   **I.   IPPS' ANTITRUST AND CONSUMER PROTECTION ALLEGATIONS
        REGARDING CONDUCT FROM JULY 2003 TO AUGUST 2011 ARE BARRED BY
9       THE APPLICABLE STATUTES OF LIMITATIONS.**

10       IPPs' state law damages claims based on conduct alleged to have occurred more than four

11  years before the filing of their initial complaint on August 20, 2015 are barred by the three- or four-

12  year statutes of limitations which apply to these claims.[8]  Pursuant to Rule 12(b)(6), time-barred

13  claims are ripe for dismissal where the running of the statute of limitations is apparent on the

14  complaint's face.  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  IPPs have not

15  pled (and cannot plausibly plead) any facts to support an exception to the statute of limitations, and

16  therefore their claims relating to any alleged conspiratorial conduct from July 2003 to August 20,

17  2011[9] are time barred.[10]

18       Despite having access to hundreds of thousands of documents produced during the DOJ's

19  now-closed investigation of Japanese resistors manufacturers, IPPs allege a total of only eight JEITA

---

[8] The statutes of limitations applicable to each of IPPs' state antitrust claims are four years.  *See* 15 U.S.C. § 15b; Cal. Bus. & Prof. Code § 16750.1; Iowa Code § 553.16; Mich. Comp. Laws § 445.781; Minn. Stat. § 325D.64(1); Neb. Rev. Stat. § 59-1612; N.Y. Gen. Bus. Law § 340(5).  The statutes of limitations applicable to IPPs' consumer protection claims are generally four years.  *See* Cal. Bus. & Prof. Code § 17208; Fla. Stat. § 95.11(3)(f); Neb. Rev. Stat. § 59-1612.  However, IPPs' claim under New York's consumer protection law is limited by a three-year statute of limitations.  *See* N.Y. Civ. Prac. Law § 214.

[9] As noted above, the four-year statutes of limitations bar any claims against Defendants Kamaya and HDK relating to any alleged conspiratorial conduct prior to May 27, 2012.  The three-year statute of limitations imposed by New York's consumer protection statute bars claims relating to conduct prior to May 27, 2013.

[10] As IPPs' claims under New York's consumer protection statute are subject to the three-year limitations period, claims relating to conduct prior to August 20, 2012 are time-barred.

meetings or related "trade association events" and three bi-lateral meetings during the period prior to the end of September 2009—and absolutely no meetings between September 2009 and the start of the limitations period in August 2011—in which they claim a resistors price-fixing conspiracy purportedly took place.[11]  IPP-CAC ¶¶ 88-110, 124-43.  Moreover, none of the allegations about these meetings provide any plausible basis to contend that this alleged conspiracy extended into the limitations period.  The claims are thus time barred.  IPPs **cannot** avoid the applicable statute of limitations bar by merely characterizing their claims as part of a broad conspiracy that continues into the limitations period, in the absence of alleged facts to indicate that the purported conspiracy actually did extend into the limitations period.  *See, e.g.*, *Dobard v. S.F. Bay Area Rapid Transit Dist.*, No. C-92-3565-DLJ, 1993 WL 372256, at *6-7 (N.D. Cal. Sept. 7, 1993); *see also Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 338 (1971).

To state a continuing violation of the antitrust laws as an exception to the statute of limitations, a plaintiff must allege facts that plausibly show that during the limitations period the defendants completed an overt act in furtherance of the allegedly continuing conspiracy that meets two criteria:  (1) it must be a new and independent act that is not merely a reaffirmation of a previous act, and (2) that inflicted new and accumulating antitrust injury on the plaintiffs.  *See* 15 U.S.C. § 15(b); *Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184, 1190 (9th Cir. 1984).[12]  Indeed, "not every act by an antitrust defendant is sufficient to restart the statute of limitations."  *Aurora Enters., Inc. v. Nat'l Broad. Co.*, 688 F.2d 689, 694 (9th Cir. 1982).  Rather, the court must determine whether the

---

[11] Moreover, IPPs' allegations regarding the July 2003 meeting amount, at most, to an agreement to exchange information at some point in the future.  *See* IPP-CAC ¶ 124.  Such an agreement to exchange information—as opposed to an agreement to fix prices, which IPPs do not allege—does not rise to a claim of a *per se* antitrust violation, and should this case proceed past the motion to dismiss stage, IPPs will have the burden to prove that the alleged agreement to exchange information unreasonably restrained trade in the relevant market.  *See United States v. Container Corp. of Am.*, 393 U.S. 333, 336-37 (1969); *see also In re Citric Acid Litig.*, 191 F.3d 1090, 1106 (1999).

[12] The case law in the relevant states provides for essentially the same continuing violation exception standard as the federal exception.  *See., e.g.*, **California** (*see, e.g.*, *Wolf v. Travolta*, No. CV 14-00938-CAS-PJW, 2016 WL 911469 (C.D. Cal. Mar. 4, 2016) (applying continuing violation doctrine to Bus. & Prof. Code § 17200 claims)); **Minnesota** (*see, e.g.*, *Davies v. West Pub. Co.*, 622 N.W.2d 836 (Ct. App. Minn. 2001) (applying continuing violation doctrine)).  As there is no case law providing for a continuing violation exception in Florida, Iowa, Michigan, Nebraska, or New York, IPPs cannot try to invoke this doctrine for their damages claims under these states' statutes.

purported act renews the antitrust injury.  *Id.*; *see also Electroglas, Inc.v. Dynatex Corp.*, 497 F. Supp. 97, 105 (N.D. Cal. 1980).

IPPs have not pled any facts to plausibly support a continuing conspiracy claim into the limitations period.  As discussed in Section II, *infra*, the only specific conduct alleged prior to September 2009 involved either general trade association information exchanges that are "presumed legitimate," *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2000) ("*GPU*"), or, at best, a narrow, short-term agreement prior to the end of September 2009 (almost two years before the longest relevant statute of limitations periods began) with no factual claims to plausibly support the existence of a broader conspiracy extending into the limitations period.  *See Superior Offshore Int'l, Inc. v. Bristow Grp.*, 738 F. Supp. 2d 505, 512-17 (D. Del. 2010); *In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 647 F. Supp. 2d 1250, 1256-62 (W.D. Wash. 2009).

Even if IPPs plausibly alleged that Defendants did commit a separate, new overt act in furtherance of a continuing conspiracy during the limitations period—which they did not—the commission of a new act, as part of an alleged continuing antitrust violation, ***would still not*** permit a plaintiff to recover for an injury caused by old overt acts outside the limitations period.  *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997).  Such a post-2011 overt act would only allow for the recovery of damages during the limitations period.  *Id.*; *see also* 2 AREEDA & HOVENKAMP, ANTITRUST LAW § 320c6 (4th ed. 2015).[13]  But since no such overt act has been plausibly alleged, the statute of limitations bars even post 2011 claims by IPPs.

Simply put, IPPs have failed to allege any facts prior to 2011 sufficient either to support the conclusory allegation of a continuing conspiracy from 2003 into the limitations period, or to seek any damages for alleged conspiratorial conduct occurring prior the start of the limitations period in 2011.  *See Aurora Enters.*, 688 F.2d at 694; *Jablon*, 614 F.2d at 682.

---

[13] For Defendants Kamaya and HDK, such a recovery require a post-2012 overt act, and damages would be limited to post-May 2012.

## II.      IPPS FAIL TO ALLEGE FACTS TO PLAUSIBLY SUPPORT ANY CONSPIRACY CLAIMS WITHIN THE LIMITATIONS PERIOD.

### A.      IPPs Fail to Allege Sufficient Facts in Support of Their Conspiracy Claims Within the Limitations Period.

IPPs' *single* paragraph of alleged contact among Defendants within the statutory limitations period falls far short of what is required to state an antitrust conspiracy claim during the limitations period.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).  To plead an antitrust conspiracy, a complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made."  *Twombly*, 550 U.S. at 556.  This requires IPPs to allege the "specific time, place or person involved in the alleged conspiracies."  *Id.* at 565 n.10.

IPPs' Complaint cannot conceivably pass this standard with respect to any conspiracy alleged during the limitations period.  Notably, IPPs do not allege the specific time or place of *any* competitor meeting occurring after August 2011.  Nor do they allege any facts to plausibly support a claim that any price-fixing conspiracy was discussed, implemented, or entered into during any competitor meetings during the limitations period.  Rather, IPPs only allege a single JEITA meeting that purportedly occurred at some unidentified time in 2013, where participants exchanged industry information and defendants Panasonic Corporation and Kamaya allegedly "discussed limiting production capacity" with no facts of any actual *agreement* pled.  IPP-CAC ¶ 144.  These allegations are not sufficient to plausibly support a conspiracy claim within the limitations period.  Indeed, there are no facts alleged that even arguably support the existence of any agreements among any defendants after September of 2009.

What is necessary to state a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, are allegations of facts that plausibly show the Defendants agreed to a "common scheme" or had a "meeting of minds."  *The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1155, 1160 (9th Cir. 1988); *Ralph C. Wilson Indus., Inc. v. Chronicle Broad. Co.*, 794 F.2d 1359, 1365-66 (9th Cir. 1986); *see also In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009) ("*Travel Agent Comm'n II*").  There are simply no plausible factual allegations of any *agreements*

1   among the alleged co-conspirators during the limitations period after August 2011.  Merely alleging

2   that two competitors discussed the subject of a production limitation at a single trade association

3   meeting during this period, without any further allegations to support the existence of any

4   agreement, cannot plausibly support the almost fifteen-year conspiracy alleged, or any conspiracy at

5   all during the limitations period.[14]  *See Superior Offshore, Int'l*, 738 F. Supp. 2d at 513-14.

6          The naked claim that Defendants continued to attend JEITA meetings during the limitations

7   period—without identifying when such meetings occurred, who attended, or what was allegedly

8   discussed or said at these meetings that purportedly supported the existence of a conspiracy—simply

9   cannot support any alleged conspiracy claim during the limitations period.  Such trade association

10  meetings are presumed legitimate and the mere "opportunity to fix prices without any showing that

11  [defendants] *actually* conspired" is insufficient to plead an antitrust conspiracy during the limitations

12  period.  *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1319 (11th Cir. 2003) (emphasis

13  in original); *see also GPU*, 527 F. Supp. 2d at 1024-25.  Indeed, while IPPs' allegations of what

14  actually occurred at the JEITA meetings during the limitations period are strikingly threadbare, it is

15  well-established that information exchanges at such trade association meetings, even if they

16  occurred, are simply not enough to state an antitrust conspiracy claim.  *See Ralph C. Wilson Indus.*,

17  749 F.2d at 1365-66 (9th Cir. 1986); *Travel Agent Comm'n II*, 583 F.3d at 905; *In re Baby Food*

18  *Antitrust Litig.*, 166 F.3d 112, 126 (3d Cir. 1999).

19         Absent allegations of facts to plausibly support the existence of an actual anticompetitive

20  agreement among competitors during the limitations period, even the *regular* exchange of industry

21  information among competitors during this period—which is not pled here—would not be sufficient

22  to state an antitrust conspiracy claim during the limitations period.  *See, e.g., In re Optical Disk*

23

24

---

25  [14] *See, e.g., R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 566 F. Supp. 1104, 1108 (N.D. Cal.
    1983) (holding that plaintiff's attempt to allege price fixing in conjunction with the limitation of
26  production did not support a finding of *per se* violation as a matter of law); *Contreras v. Grower
    Shipper Vegetable Ass'n of Cent. Cal.*, No. C-70. 1891 AJZ, 1971 WL 535, at *1 (N.D. Cal. Apr. 8,
27  1971) (granting motions to dismiss where plaintiffs alleged that the purported conspiracy to raise
    prices was accomplished by reducing production and dividing total production between defendants).

28

*Drive Antitrust Litig.*, No. 3:10-md-2143 RS, 2011 WL 3894376, at *9 (N.D. Cal. Aug. 3, 2011) ("*ODD*"); *GPU*, 527 F. Supp. 2d at 1023; *Superior Offshore Int'l*, 738 F. Supp. at 513-14.

The additional allegations of industry structural characteristics that fill the Complaint do not cure IPPs' failure to allege plausible facts of unlawful agreements among the Defendants during the limitations period.  *See* IPP-CAC ¶¶ 66-87.  Indeed, allegations that collusion is "more plausible" in industries like the resistors market, where "(1) high barriers to entry exist; (2) demand is inelastic; (3) the market is highly concentrated; (4) the products are homogenous; (5) there are ample opportunities to conspire; (6) purchasers lack buying power; and (7) there is a history of collusive behavior" and other similar allegations of industry structure, have repeatedly been found insufficient to plausibly support the allegations of a price-fixing conspiracy.  *Id.*; *see ODD*, 2011 WL 3894376, at *3-4, 9; *see also Superior Offshore Int'l*, 738 F. Supp. 2d at 514; *In re Fl. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1317 (S.D. Fla. 2010) ("[N]one of these [alleged market] features make conspiracy a more plausible explanation than mere interdependence for the parallel conduct alleged by Plaintiffs.").  While industry structure allegations "may very well be necessary predicates to showing that defendants had the *power* to fix prices, [] they do not show that defendants in fact did so."  *ODD*, 2011 WL 3894376, at *9 (emphasis in original).  Allegations of facts plausibly showing an agreement among the Defendants to fix prices during the limitations period are necessary, and here there are simply no such facts alleged within the limitations period.

## B.   IPPs Cannot Plausibly Allege a Conspiracy During the Limitations Periods by Referring to the Existence of Government Investigations.

IPPs also rely on allegations regarding the existence of government investigations of resistors to support their conspiracy claims during the limitations period.  IPP-CAC ¶ 7-15.  But these assertions fail to advance the Complaint.  This is particularly true where, as here, it is undisputed that the DOJ has closed its investigation into Japanese resistors manufacturers and no antitrust indictments or plea agreements in the resistors industry have resulted with any company or person.  *See* ECF No. 181.

As *GPU* explained, even where "[i]t is unknown whether the investigation will result in

indictments or nothing at all[,]" "the scope of the investigation is pure speculation" and provides no support for otherwise failed conspiracy claims.  *GPU*, 527 F. Supp. 2d at 1024.  For this reason, the existence of a "*grand jury investigation is a non-factor.*"  *Id.* (emphasis added); *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d at 1064.  This conclusion applies, *a fortiori*, in this case, where the DOJ has notified the Court that its investigation of Defendants with respect to resistors has ended without any action at all being taken by the government.  This is thus a very different situation from recent cases such as *In re Capacitors Antitrust Litig*, 106 F. Supp. 3d at 1064; *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420-YGR, 2014 WL 309192 (N.D. Cal. Jan. 21, 2014); *ODD*, No. 3:10-MD-2143 RS, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011 (N.D. Cal. 2010); and *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07-1827 SI, C 09-4997 SI, 2010 WL 2609434 (N.D. Cal. Jun. 28, 2010), in which a DOJ investigation led to plea agreements which could plausibly support a conspiracy claim.

Here, the allegations about the mere existence of  government antitrust investigations, without any charges or plea agreements, simply "carr[y] *no weight* in pleading an antitrust conspiracy claim."  *GPU*, 527 F. Supp. 2d at 1024 (emphasis added); *see also In re Static Random Access Memory Antitrust Litig.,* 580 F. Supp. 2d 896, 903 (N.D. Cal. 2008); *In re Travel Agent Comm'n Antitrust Litig.*, No. 1:03 CV 30000, 2007 WL 3171675, at *11-12 (N.D. Ohio Oct. 29, 2007) ("*Travel Agent Comm'n I*").[15]

## III.   IPPS HAVE FAILED TO MEET THEIR BURDEN OF PLEADING FRAUDULENT CONCEALMENT OR DELAYED DISCOVERY WITH THE REQUIRED PARTICULARITY.

In view of these pleading deficiencies, the only possible way that IPPs could stave off dismissal of their Complaint pursuant to the statutes of limitations is by satisfying either the doctrine of fraudulent concealment or delayed discovery under applicable state laws.  But IPPs have utterly failed to make the necessary factual allegations, with particularity, to rely upon either of these

---

[15] Nor, can IPPs find any plausible support for their claims by citing government investigations or private antitrust litigations or pleas that have nothing to do with the resistor industry.  IPP-CAC ¶¶ 9, 175-80.  Such claims about different products, even involving some of Defendants, have no relevance at all.  *See, e.g.*, *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 540 (N.D. Tex. 2014).

1   limited exceptions to the statutes of limitations.  *See* IPP-CAC ¶¶ 22-30.

2        The standards for tolling the statute of limitations through fraudulent concealment in the

3   relevant state jurisdictions are essentially the same as the federal standard—IPPs must allege facts to

4   plausibly show both that (1) plaintiffs had neither actual nor constructive knowledge of the facts

5   underlying their claims despite exercising due diligence to discover those facts, and (2) Defendants

6   affirmatively misled plaintiffs regarding the existence of actions giving rise to their claims.[16]  *See*

7   *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 249-50 (9th Cir. 1978); *In re*

---

[16] Where a state statute of limitations applies, federal courts "borrow the forum state's tolling rules." *TwoRivers v. Lewis*, 174 F.3d 987, 992 (9th Cir. 1999); *see also Wade v. Danek Med., Inc.*, 182 F.3d 281, 289 (4th Cir. 1999).  The elements for pleading fraudulent concealment are generally consistent with federal law for the state jurisdictions that IPPs invoke and require both (1) plaintiffs' due diligence to discover and (2) defendants' affirmative acts to conceal.  *See, e.g.*, **California:** *Snapp & Assocs. Ins. Servs. Inc. v. Robertson*, 96 Cal. App. 4th 884, 890-91 (Cal. Ct. App. 2002) ("A plaintiff is under a ***duty to reasonably investigate*** . . . .") (emphasis added); *Hesse v. Vinatieri*, 302 P.2d 699, 702 (Cal. Dist. Ct. App. 1956) ("[T]here must be some ***affirmative act*** calculated to obscure the existence of a cause of action and it must be factually alleged.") (emphasis added); **Iowa:** *Christy v. Miulli*, 692 N.W.2d 694, 702 (Iowa 2005) (stating that "a party relying on the doctrine of fraudulent concealment must prove the defendant did some ***affirmative act to conceal*** the plaintiff['s] cause of action independent of and subsequent to the liability-producing conduct" and requiring the "***use of ordinary care and diligence***" to discover cause of action) (emphasis added); **Michigan:** *McNaughton v. Rockford State Bank*, 246 N.W. 84, 86 (Mich. 1933) ("To prevent the barring of an action, it must appear that the fraud not only was not discovered, but could not have been discovered with ***reasonable diligence***" and the "acts relied on must be of an ***affirmative character***") (emphasis added); **Minnesota:** *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 572 N.W.2d 321, 325 (Minn. Ct. App. 1997) (requiring "an ***affirmative act*** designed to and which does prevent the discovery of the cause of action") (emphasis added); *Hanna Mining Co. v. InterNorth, Inc.*, 379 N.W.2d 663, 667 (Minn. Ct. App. 1986) ("The party claiming fraudulent concealment has the burden of showing that the concealment could not have been discovered sooner by ***reasonable diligence*** on his part and was not the result of his own negligence.") (quoting *Wild v. Rarig*, 234 N.W.2d 775 (Minn. 1975)) (emphasis added); **Nebraska:** *Upah v. Ancona Bros. Co.*, 521 N.W.2d 895, 902 (Neb. 1994) ("Under the doctrine of fraudulent concealment, the plaintiff must show that he or she exercised ***due diligence*** to discover his or her cause of action before the statute of limitations expired and that the defendant committed some ***affirmative act*** of fraudulent concealment which prevented the plaintiff from discovering his or her cause of action.") (emphasis added); **New York:** *Pahlad v. Brustman*, 33 A.D.3d 518, 520 (N.Y. App. Div. 2006) (affirming dismissal where pleadings revealed lack of ***due diligence*** which is an "essential element" of equitable tolling) (emphasis added); *Zoe G. v. Frederick F. G.*, 208 A.D.2d 675, 675 (N.Y. App. Div. 1994) ("The application of the doctrine of equitable estoppel is triggered by ***some conduct on the part of the defendant*** after the initial wrongdoing; mere silence or failure to disclose the wrongdoing is insufficient") (emphasis added).

     Florida does not recognize the doctrine of fraudulent concealment at all, and therefore IPPs' time-barred claims are subject to dismissal under Florida law even if their Complaint had adequately alleged fraudulent concealment.  *See Baez v. Root,* No. 13-81158-CIV, 2014 WL 1414433, at *3 (S.D. Fla. Apr. 11, 2014) (holding that "Florida Statute 95.051(2) provides for an exclusive list of circumstances where the statute of limitations is tolled and expressly precludes use of any tolling provisions not listed[,]" which would include fraudulent concealment).

---

*Transpac. Passenger Air Transp. Antitrust Litig.*, No. C 07-05634 CRB, 2011 WL 1753738, at *19-20 (N.D. Cal. May 9, 2011) ("*In re Transpac. Passenger*"). Moreover, under Rule 9(b), IPPs must plead with particularity facts sufficient to establish both of these required elements of fraudulent concealment. *See* Fed. R. Civ. P. 9(b); *Rutledge*, 576 F.2d at 249-50; *In re Transpac. Passenger*, 2011 WL 1753738, at *19-20. Conclusory statements are insufficient. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

### A.      IPPs Fail to Sufficiently Plead "Due Diligence."

IPPs completely fail to plead facts establishing the requisite due diligence to uncover their claims despite the numerous complaint allegations which support the conclusion that IPPs should have been on notice of them. *See In re Transp. Passenger*, 2011 WL 1753738, at *19-20. Indeed, IPPs plead *no facts* establishing *any* investigative effort prior to June 2015, when reports of a government resistors investigation were made public. IPP-CAC ¶¶ 16-17, 22. Instead, IPPs make the wholly conclusory assertion that they could not have discovered the alleged conspiracy through the exercise of due diligence because of Defendants' purported efforts to avoid detection of the alleged conspiracy. *Id.* ¶¶ 22-23.

However, it is not enough for IPPs to make the conclusory claim that due diligence would have failed. Rather, IPPs must allege facts to specify *the steps taken by IPPs* to investigate their claims, particularly as the Complaint alleges that facts existed which would have put IPPs on notice about the possible existence of the alleged conspiracy many years before they filed their claims. *See Rutledge*, 576 F.2d at 250.

Specifically, according to the Complaint, IPPs—purchasers of standalone linear resistors—have known that "[t]he pricing of linear resistors as a whole has experienced a dramatic rise since 2002." IPP-CAC ¶ 74. The Complaint reproduces charts showing publicly-available price information going back to 2000 that IPPs claim support their allegations of a conspiracy. *Id.* Moreover, IPPs contend that "[m]arket concentration facilitates collusion," *id.* ¶ 75, and they allege that "[t]he resistors market was concentrated during the Class Period," *id.* ¶ 78, as supported by the publicly-known fact that the resistors market was "dominated by a few companies who control the

lion's share of the[] market[] . . . ." *Id.* ¶ 77.  IPPs further allege that "[m]arkets for commodity products are conducive to collusion," *id.* ¶ 87, and that "[r]esistors are . . . commodities because their characteristics and qualities are essentially uniform . . . ." *Id.* ¶ 79.  All of these alleged facts support the conclusion that IPPs were on sufficient notice of the possibility of price fixing in the resistors industry to have triggered their obligation to conduct a due diligence inquiry.

IPPs' claim that they lacked information sufficient to require them to exercise due diligence as a condition of claiming a fraudulent concealment exception to the statute of limitations is simply not legally valid given their alleged knowledge of a "dramatic rise" in resistor prices that has purportedly been evident in market prices for years, coupled with knowledge of market characteristics that allegedly "facilitate[] collusion."  *See id.* ¶¶ 74-75.  IPPs admit that they took no steps to investigate their claims, and they cannot avoid their obligation to plead due diligence to invoke an exception to the statute of limitations simply by making the conclusory assertion that due diligence would have been futile—an assertion that is defeated by the facts alleged elsewhere in the Complaint.  *See Rutledge*, 576 F.2d at 250.  The failure to plead any efforts at due diligence in these circumstances is fatal to a claim of fraudulent concealment tolling.  *See, e.g.*, *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120-21 (9th Cir. 1980).

## B.   IPPs Fail to Sufficiently Plead "Affirmative Concealment."

While IPPs' failure to allege facts to satisfy the "due diligence" element is alone sufficient to defeat their claim of fraudulent concealment, *Conerly*, 623 F.2d at 120-21, they have also not sufficiently plead the other element of a fraudulent concealment claim—namely Defendants' affirmative conduct to conceal.  IPPs have failed to plead with the required particularity facts that Defendants made any affirmative misrepresentations to purported IPP class members or took any affirmative steps to fraudulently conceal the alleged conspiracy, let alone conduct sufficient to toll the statutes of limitations.

Although IPPs plead allegations over a thirteen-year period involving twelve Defendants and alleged co-conspirators, IPPs point to a handful of purported instances of affirmative acts to conceal the purported conspiracy, and there are no allegations to support a claim of fraudulent concealment

1   with the required particularity and plausibility with respect to any Defendant.  *See Lee v. Wells*

2   *Fargo Bank*, No. 5:12-cv-02820 EJD, 2013 WL 1117866, at *3 (N.D. Cal. Mar. 18, 2013).  IPPs

3   merely make the conclusory assertions that Defendants generally (1) held "covert meetings," (2)

4   used purported "code words or terms[,]" (3) used "pretexts to mask the true purpose of collusive

5   communications," (4) used "non-company phones," and (5) exchanged "instructions to destroy email

6   . . . ."  IPP-CAC ¶ 26.  As set forth below, such conclusory allegations, without sufficient factual

7   support, simply do not come close to meeting the pleading standards of particularity for fraudulent

8   concealment under Rule 9(b), particularly where, as here, IPPs have had access to hundreds of

9   thousands of documents submitted to the DOJ.  *See Thorman v. Am. Seafoods Co.*, 421 F.3d 1090,

10  1094-6 (9th Cir. 2005); *see also In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195,

11  1215-17 (N.D. Cal. 2015).

12          IPPs include no specific allegations regarding any individual meeting being "covert" or

13  otherwise held secretly.  As the Ninth Circuit has repeatedly held, "the plaintiff must point to some .

14  . . active conduct by the defendant *above and beyond* the wrongdoing upon which the plaintiff's

15  claim is filed, to prevent the plaintiff from suing in time."  *Coppinger-Martin v. Solis*, 627 F.3d 745,

16  751 (9th Cir. 2010) (emphasis in original; internal quotation marks and citation omitted).  Further,

17  the courts have held that even specific allegations that defendants met and communicated in secret

18  are insufficient to establish fraudulent concealment.  *See, e.g.*, *In re Animation Workers*, 87 F. Supp.

19  3d at 1215-17; *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987).

20          For the same reasons, the non-specific allegation that certain minutes of JEITA meetings

21  were treated as "confidential" (IPP-CAC ¶ 97) is to no avail, as courts have held that limiting

22  distribution of meeting minutes is not sufficient to allege fraudulent concealment.  *See, e.g.*,

23  *Garrison v. Oracle Corp.*, No. 14-CV-04592-LHK, 2016 WL 393527, at *21-22 (N.D. Cal. Feb. 2,

24  2016); *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 890 (N.D. Cal. 2015).

25          In addition, the few allegations about the use of "code words" by Defendants are not

26  sufficient to support a fraudulent concealment claim.  IPPs point to only three alleged instances

27  where purported code words were used—(1) two emails from one Defendant referring to another

28

1    Defendant by a letter instead of its full name ("R Co."), and (2) an email chain referring to a single

2    meeting by a letter designation ("R Meeting").   IPP-CAC ¶¶ 95, 100, ,134.   In neither case is there

3    any allegation that these letter references were part of some effort to fraudulently conceal any

4    alleged conspiracy from class members or others outside of the alleged conspiracy.   *See id*.   In the

5    absence of any plausible allegations that these two uses of the initial "R" were part of an effort to

6    conceal—as opposed to being a self-evident abbreviation of a word used for convenience and short

7    hand, much like "cv" is used in the case number for this civil action—they are simply not plausible

8    support for a fraudulent concealment claim.   Given IPPs' access to over 339,000 documents

9    submitted to the DOJ as part of its now-closed resistors investigations, their meager allegations of

10   three instances of the use of an abbreviation, without more, are simply insufficient to plead

11   fraudulent concealment consistent with the requirements of Rule 9(b).

12   Nor can IPPs fill this gap by citing a single internal Panasonic document which indicated that

13   the recipients should "treat [it] as confidential" or a similar email by Panasonic that indicated that it

14   included information that was "confidential."   IPP-CAC ¶¶ 97, 127-28.   Again, such isolated

15   references to confidentiality in a document by a single defendant containing business information,

16   when it is at least equally plausible that there were normal, legitimate business reasons for asking for

17   such confidentiality, would not meet the less strict *Twombly* pleading standard—much less the Rule

18   9(b) standard for pleading fraudulent concealment with particularity.   *See, e.g.*, *Garrison*, 2016 WL

19   393527, at *21-22.

20   As precedent in this Circuit makes clear, pleading fraudulent concealment requires ***more*** than

21   "[m]erely keeping someone in the dark[.]"   *Thorman*, 421 F.3d at 1095.   Silent or passive conduct

22   does not constitute fraudulent concealment absent a special relationship between the parties

23   sufficient to impose upon the defendant a duty of disclosure.   *Rutledge*, 576 F.2d at 250; *Ryan*, 147

24   F. Supp. 3d at 886 (N.D. Cal. 2015).[17]

---

[17] Although courts in some instances have held that allegations of the use of code names with other
conduct satisfied the affirmative misconduct prong of the fraudulent concealment test, plaintiffs in
those cases alleged numerous examples of the use of such code names and specific facts that all of
the defendants involved in the conspiracy engaged in such conduct to mislead plaintiffs and others,
along with other types of affirmative concealment as well.   *See, e.g., In re Animation Workers Litig.*,
123 F. Supp. 3d at 1200; *In re Lithium Ion Batteries*, 2014 WL 309192, at *16.   Here, only two uses

1    Here, IPPs make no claim that Defendants owed any special duty of disclosure to IPPs or

2 anyone else.  Accordingly, the conduct alleged does not rise to an affirmative act of concealment and

3 the doctrine cannot be used as a defense to the applicable statute of limitations in this case.  *See, e.g.*,

4 *Rambus Inc. v. Samsung Elecs. Co., Ltd.*, No. C-05-02298 RMW, 2007 WL 39374 at *6-7 (N.D.

5 Cal. Jan. 4, 2007); *see also Garrison*, 2016 WL 393527, at *19-23.

6    **C.    IPPs Have Also Failed to Invoke the "Discovery Rule."**

7    IPPs also include allegations in the Complaint to try to invoke the "discovery rule" for statute

8 of limitations purposes.  *See* IPP-CAC ¶¶ 16-21.  However, all of IPPs' state law antitrust claims are

9 not subject to a discovery rule as their accrual rules are equivalent to the Clayton Act and have been

10 harmonized accordingly.  *See* 15 U.S.C. § 12; *In re Animation Workers*, 87 F. Supp. 3d at 1210

11 (concluding that "clear U.S. Supreme Court authority and the overwhelming majority of Circuits

12 have explicitly held that antitrust claims are subject to a pure injury rule, not a discovery rule"); *see*

13 *also, e.g.*, Cal. Bus. and Prof. Code § 16700; Iowa Code § 553.12, 553.2; Mich. Comp. Laws §§

14 445.778, 445.784; Minn. Stat. § 325D.57; Neb. Rev. Stat. §§ 59-821, 829; N.Y. Gen. Bus. Law §

15 340(5).

16    In addition, all but one of IPPs' state law consumer protection and unfair competition law

17 claims are similarly not subject to a discovery rule.  *See In re Animation Workers*, 87 F. Supp. 3d at

18 1210–11 (N.D. Cal. 2015) (holding that the discovery rule did not apply to claims related to

19 anticompetitive conduct under California's Unfair Competition Law); *Keegan v. Am. Honda Motor*

20 *Co., Inc.*, 284 F.R.D. 504, 544 (C.D. Cal. 2012) ("The delayed discovery rule does not apply to delay

21 commencement of the limitations period on Florida consumer protection claims.  The same is true of

22 New York's consumer protection statute.") (citations omitted).  To the extent a discovery rule may

23 apply with respect to IPPs' Nebraska consumer protection claim, Plaintiffs' conclusory allegations

24 that no information was available to them in the public domain—a claim which is contradicted by

25 other allegations in the Complaint—would be insufficient to invoke the discovery rule.  *See* Section

26 III.A, *supra*.

27

28

of purported code names by a single defendant in internal communications is identified—a meager
set of allegations that does not come close to meeting the fraudulent concealment pleading test.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.   IPPS FAIL TO STATE VIOLATIONS OF STATE CONSUMER PROTECTION AND UNFAIR COMPETITION LAWS.

### A.   IPPs Fail to State a Claim under California's Unfair Competition Law.

IPPs attempt to state a claim under California's UCL.  IPP-CAC ¶¶ 207-16.  This claim fails for the same reasons IPPs' Sherman Act and state antitrust law claims fail.  As IPPs allege, "Defendants committed acts of unfair competition, as defined by section 17200, *et seq.*, by engaging in a conspiracy to fix and stabilize the price of resistors as described above."  *Id.* ¶ 216(a).  Consequently, IPPs identify no independent basis for a UCL violation—their claim is exclusively predicated on the existence of an antitrust conspiracy.  But the same four-year statute of limitations that bars IPPs' antitrust claims, as discussed above, also applies to bar IPPs' UCL claim.  Cal. Bus. & Prof. § 17208.

IPPs attempt to plead equitable tolling to avoid the statute of limitations under California's fraudulent concealment doctrine.  But, as discussed above, IPPs have not pleaded facts sufficient to allege fraudulent concealment: "a plaintiff must allege the supporting facts—i.e., the date of discovery, the manner of discovery, and the justification for the failure to discover the fraud earlier—with the same particularity as with a cause of action for fraud."  *Fuller v. First Franklin Fin. Corp.*, 216 Cal. App. 4th 955, 962 (2013); *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1100 (C.D. Cal. 2009) (under California law, "[a] plaintiff alleging fraudulent concealment must establish that his failure to have notice of his claim was the result of the affirmative conduct by the defendant.").  For the reasons stated in Section III, *supra*, IPPs fall dramatically short of this heightened pleading burden.

IPPs' claim under the "fraudulent" prong of the UCL fails for independent reasons as well.  First, IPPs have not alleged a "fraudulent" act under the UCL.  A fraudulent act is one that is "likely to deceive the public."  *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1380 (2012).  An alleged "conspiracy to fix and stabilize the price of resistors," IPP-CAC ¶ 216(a), is not fraudulent conduct in the sense that it is used in the UCL.  *Klein*, 202 Cal. App. 4th at 1380.  Nor can IPPs avoid this pleading requirement with the bald allegation that "Defendants' acts or practices are

1    fraudulent or deceptive within the meaning of section 17200, *et seq.*"   IPP-CAC ¶ 216(d).   This is

2    nothing more than a simple legal conclusion that is not entitled to the presumption of truth.

3    Moreover, IPPs were required to plead facts plausibly to show actual reliance on the allegedly

4    deceptive or misleading statements.   *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009).   The

5    Complaint is bereft of any such allegations.

6    **B.**      **IPPs Fail to State a Claim under New York's Deceptive Acts and Practices Law.**

7           To state a claim under New York's Deceptive Acts and Practices Law ("DAPL"), a

8    complaint must allege three elements: (1) the act or practice was consumer-oriented, (2) the act or

9    practice was deceptive or misleading in a material respect, and (3) the plaintiff was injured as a

10   result of the deceptive or misleading act.   *See Oswego Laborers' Local 214 Pension Fund v. Marine*

11   *Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995); *In re Dynamic Random Access Memory*

12   *(DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1114 (N.D. Cal. 2007).   Here, IPPs have alleged that

13   Defendants engaged in a price-fixing conspiracy.   That is indisputably the central focus of their

14   claims.   They have not asserted any injuries resulting from any alleged "deception" by Defendants,

15   nor have they alleged that any deceptive statements by Defendants were material to any IPPs'

16   decisions to purchase resistors.   *See, e.g.*, IPP-CAC ¶¶ 4-5, 146-147.   Moreover, IPPs have not

17   alleged any statements or misstatements made by Defendants to consumers, as opposed to businesses

18   or direct purchasers, as the DAPL requires.   *See Sperry v. Crompton Corp.*, No. 17872/02 (N.Y. Sup.

19   Ct. 2003), *aff'd*, 26 A.D.3d 488 (N.Y. App. Div. 2006) (dismissing § 349 claim since defendants had

20   no contact with plaintiff or purported class of consumers, so the allegations could not be construed

21   as "consumer oriented"); *St. Patrick's Home for the Aged & Infirm v. Laticrete Int'l*, 264 A.D.2d

22   652, 655 (N.Y. App. Div. 1999) (dismissing DAPL claim because allegations "did not [include] any

23   direct solicitation by [defendant], which had no contact with the plaintiff, the ultimate consumer").

24   Defendants' conduct as alleged by IPPs therefore lacks the consumer-oriented, materially deceptive

25   character necessary for IPPs' claims to be actionable.   *See Paltre v. Gen. Motors Corp.*, 26 A.D.3d

26   481, 483 (N.Y. App. Div. 2006).   IPPs' claims under the DAPL must therefore be dismissed.   *Cf. In*

27   *re Automotive Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d. 544, 552-54 (E.D. Pa. 2007)

28

1   ("New York courts . . . have consistently held that when the conduct at issue is between two

2   companies and does not involve the ultimate consumer, it cannot be the basis of a claim under §

3   349."); *New York v. Daicel Chem. Indus., Ltd.*, 42 A.D.3d 301, 303 (N.Y. App. Div. 2007).

4   **C.   IPPs Fail to State a Claim under Florida's Deceptive and Unfair Trade Practices
          Act.**

5

6       IPPs' claim under Florida's Deceptive and Unfair Trade Practices Act (DUTPA) should be

7   dismissed for several independent reasons as well.  First, Florida has made the policy decision to

8   apply its consumer protection laws only to conduct that occurs at least in part within the state.

9   Florida's DUTPA "applies only to actions that occurred within the state of Florida."  *Five for Entm't

10  S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1330 (S.D. Fla. 2012); *Montgomery v. New Piper Aircraft

11  Inc.*, 209 F.R.D. 221, 227 (S.D. Fla. 2002) (holding that the DUTPA does not apply when the

12  "alleged injuries did not take place 'entirely within [Florida].'").  This is because the DUTPA "seeks

13  to prohibit unfair, deceptive and/or unconscionable practices which have transpired within the

14  territorial boundaries of [Florida]," rather than reaching out to interstate conduct or conduct

15  occurring in any other state.  *In re NationsRent Rental Fee Litig.*, 2009 WL 636188, at *4 (S.D. Fla.

16  Feb. 24, 2009) (*quoting Millennium Comm. & Fulfillment, Inc. v. Office of the Attorney General*,

17  761 So.2d 1256, 1262 (Fla. 3d DCA 2000)).  Here, IPPs have alleged no conduct by Defendants that

18  would violate the DUTPA within the State of Florida.  They allege that Defendants reached

19  agreements to fix or maintain prices of resistors and that the prices of resistors were elevated in

20  Florida, but they do not allege (a) that Defendants reached any of these purported agreements in

21  Florida, or (b) even that Defendants submitted bids or otherwise sold their products at inflated prices

22  in Florida.  Accordingly, IPPs' DUTPA claim fails.

23      The DUTPA claim should also be dismissed for the additional reason that IPPs' allegations

24  regarding Defendants' alleged conspiracy are too remote and speculative to satisfy the DUTPA's

25  causation requirements.  Causation is a crucial element of the DUTPA, and it "must be direct, rather

26  than remote or speculative."  *Lombardo v. Johnson & Johnson Consumer Companies, Inc.*, 124 F.

27  Supp. 3d 1283, 1290 (S.D. Fla. 2015) (*quoting Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361

28

1   (S.D. Fla. 2012)); *accord 2P Commercial Agency S.R.O. v. SRT USA, Inc.*, 2013 WL 246650, at *4

2   (M.D. Fla. Jan. 23, 2013). The DUTPA's causation requirements prevent indirect purchasers with

3   claims of injury that are insufficiently connected to specific allegations of wrongdoing from merely

4   "repackaging" their antitrust claims (which are prohibited under Florida law, *Mack v. Bristol–Myers*

5   *Squibb Co.*, 673 So.2d 100, 102 (Fla. Dist. Ct. App. 1996)) to bring them under the consumer

6   protection law. *See In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL 3988488, at

7   *19 (N.D. Ill. June 29, 2015) (explaining that "[t]he contours of Florida's antitrust laws would be

8   rendered moot were the Court to allow Indirect Plaintiffs to repackage their dead-on-arrival antitrust

9   claims as [DUTPA] claims."); *QSGI, Inc. v. IBM Global Financing*, 2012 WL 1150402, at *4 (S.D.

10   Fl. March 14, 2012) (noting that a plaintiff's failure to show a violation of antitrust law establishes

11   that the plaintiff has also failed to state a claim under DUTPA). Although the DUTPA permits

12   indirect purchasers to bring claims, *Mack*, 673 So.2d at 110, such claims must satisfy the DUTPA's

13   foundational requirement of alleging direct causation.

14   IPPs' Complaint lacks any allegations that would tie AGS Devices Co., the named Florida

15   plaintiff, directly to the effects of any alleged conspiracy. The Complaint includes, at best, bare

16   allegations that AGS Devices Co. purchased unknown types of resistors from an unknown

17   distributor who, in turn, purchased from a Defendant. *See* IPP-CAC ¶ 47. At the same time, IPPs

18   explain that "different sub-types of resistors are not interchangeable," *id.* ¶ 79, and state that only

19   linear resistors are the subject of the Complaint. *Id.* ¶ 3. Such threadbare and contradictory

20   allegations are not sufficient to establish an inference that the alleged conspiracy caused any direct

21   injury in Florida to this plaintiff. *See In re Fl. Cement and Concrete Antitrust Litig.*, 746 F. Supp. 2d

22   at 1322.

23   **CONCLUSION**

24   For all of the above reasons, IPPs' claims should be dismissed. The IPPs simply have not,

25   and cannot, allege facts plausible to show a price-fixing conspiracy during the applicable limitations

26   period. Nor have they alleged any facts meeting the applicable pleading requirements of Rule 9(b)

27   to invoke the fraudulent concealment doctrine, the discovery rule or any other exception to the

28

statute of limitations, which bars all of their claims.  In addition, IPPs have failed to allege critical elements of certain state law claims and these claims should therefore be dismissed.

Dated:  August 24, 2016                     Respectfully Submitted,

                                            **CROWELL & MORING LLP**

                                            By:  */s/  Jason Murray*
                                                  Jason C.  Murray

                                            Jason C. Murray (CSB No. 169806)
                                            jmurray@crowell.com
                                            Emily T. Kuwahara (CSB No. 252411)
                                            ekuwahara@crowell.com
                                            Robert McNary (CSB No. 253745)
                                            rmcnary@crowell.com
                                            Jordan Ludwig (CSB No. 277952)
                                            jludwig@crowell.com
                                            515 South Flower St., 40th Floor
                                            Los Angeles, CA  90071
                                            Telephone: 213.622.4750
                                            Facsimile: 213.622.2690

                                            Daniel Zelenko (Admitted *Pro Hac Vice*)
                                            dzelenko@crowell.com
                                            590 Madison Avenue, 20th Floor
                                            New York, NY  10022
                                            Telephone: 212.223.4000
                                            Facsimile: 212.223.4134

                                            Katie Yablonka (CSB No. 295015)
                                            kyablonka@crowell.com
                                            275 Battery Street, 23rd Floor
                                            San Francisco, CA  94111
                                            Telephone: 415.986.2800
                                            Facsimile: 415.986.2827

                                            *Attorneys for Defendants*
                                            *KOA Corporation and KOA Speer Electronics, Inc.*

                                            **WINSTON & STRAWN LLP**

                                            By:  */s/  Jeffrey L. Kessler*
                                                  Jeffrey L. Kessler

                                            Jeffrey L. Kessler (*pro hac vice*)
                                            jkessler@winston.com
                                            Eva W. Cole (*pro hac vice*)
                                            ewcole@winston.com

1   Erica C. Smilevski (*pro hac vice*)
    esmilevski@winston.com
2   200 Park Avenue
    New York, NY 10166-4193
3   Telephone:  (212) 294-6700
    Facsimile:  (212) 294-4700
4
    Ian L. Papendick (SBN 275648)
5   ipapendick@winston.com
    WINSTON & STRAWN LLP
6   101 California Street
    San Francisco, CA 94111
7   Telephone:  (415) 591-1000
    Facsimile:  (415) 591-1400
8
    Brandon W. Duke (*pro hac vice*)
9   bduke@winston.com
    WINSTON & STRAWN LLP
10  1111 Louisiana Street, 25th Floor
    Houston, TX 77002
11  Telephone:  (713) 651-2636
    Facsimile:  (713) 651-2700
12
    *Counsel for Defendants Panasonic Corporation and*
13  *Panasonic Corporation of North America.*

14  **BARNES & THORNBURG LLP**

15
    By:   /s/  *Kendall Millard*
16         Kendall Millard

17  Kendall Millard (*pro hac vice*)
    Todd Dixon (*pro hac vice*)
18  Bradley R. Love (CSB 251691)
    11 South Meridian Street
19  Indianapolis, IN 46204-3535
    Telephone: (317) 236-1313
20  Facsimile: (317) 231-7433
    kmillard@btlaw.com
21  tdixon@btlaw.com
    blove@btlaw.com
22
    *Counsel for Hokuriku Electric Industry Co. and HDK*
23  *America, Inc.*

24
    **LATHAM & WATKINS LLP**
25

26  By:   /s/  *Belinda S Lee*
           Belinda S Lee
27
    Belinda S Lee
28

1

Ashley M. Bauer
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095
belinda.lee@lw.com
ashley.bauer@lw.com

2

3

4

5

*Counsel for Kamaya, Inc. and Kamaya Electric Co.,
Ltd.*

6

7

8

9

10

**O'MELVENY & MYERS LLP**

11

By:   __/s/ Michael Frederick Tubash__
        Michael Frederick Tubach

12

13

Two Embarcadero Center , 28th Floor
San Francisco, CA 94111-3305
Telephone: (415) 984-8700
Facsimile: (415) 984-8701
mtubach@omm.com

14

15

16

Kenneth Ryan O'Rourke
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
korourke@omm.com

17

18

19

*Counsel for Rohm Co. Ltd. and Rohm Semiconductor
U.S.A., LLC*

20

21

22

*Pursuant to N.D. Cal. L.R. 5-1(i)(3), the filer attests that concurrence
in filing of this document has been obtained from the above signatories.*

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2016, I filed electronically filed with the Clerk of Court via the CM/ECF system the following document:

**DEFENDANTS' JOINT MOTION TO DISMISS THE INDIRECT PURCHASER**

**PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

Notice of this filing will be sent by e-mail to all parties with an e-mail address of record by operation of the Court's electronic filing system.  Parties may access the filing through the Court's CM/ECF system.

Dated:  August 24, 2016          _/s/  Jason Murray_
                                Jason Murray
                                CROWELL & MORING LLP
                                515 South Flower St., 40th Floor
                                Los Angeles, CA  90071
                                Telephone: 213.622.4750
                                Facsimile: 213.622.2690