# BARNES & THORNBURG LLP

Kendall Millard
(317) 231-7461
kmillard@btlaw.com

11 South Meridian Street
Indianapolis, IN 46204-3535 U.S.A.
(317) 236-1313
Fax (317) 231-7433

www.btlaw.com

April 25, 2017

*Via ECF*

Hon. James Donato
United States District Court (N.D. Cal.)
San Francisco Division
Courtroom 11 – 19th Floor
450 Golden Gate Avenue
San Francisco, CA  94102

      Re:    *In re Resistors Antitrust Litigation*, No. 3:15-cv-03820-JD (N.D. Cal.)
             <u>Response to Plaintiffs' Letter Concerning HDK Defendants' Search Terms</u>

    We are writing on behalf of Hokuriku Electric Industry Co., Ltd and HDK America Inc. (together "HDK Defendants") in response to Plaintiffs' letter dated April 18, 2017 and as directed by the Court (ECF No. 295). The HDK Defendants ask the Court to deny Plaintiffs' motion for an order compelling use of certain additional search terms, and instead allow the parties to continue their productive negotiations.

    The HDK Defendants and Plaintiffs have agreed on the vast majority of search terms, including using a Resistor Limiter for most of them, and are continuing to meet and confer on the remaining 27 or so search strings that were the subject of the Plaintiffs' letter. While our analysis suggests that most or all of the additional documents captured without the Resistor Limiter on these strings would be non-responsive or duplicative of the significant production the HDK Defendants have already made, we agree to run additional searches if limitations to those strings could be made so that they would not impose a burden disproportionate to the needs of the case. This issue is therefore premature, as noted in the Joint Case Management Conference Statement filed April 27, 2017 (ECF No. 296).

    Continuing to meet and confer with Plaintiffs has not and would not cause any delay in our productions or in the case schedule.  We are concurrently and timely producing documents based on agreed-upon search terms that we believe are more than sufficient to identify potentially responsive documents. The HDK Defendants have already produced 364,000  pages of emails and other electronically stored information ("ESI"), including over, 280,000 pages of ESI from priority custodians by April 17, 2017, and continue to work with Plaintiffs seeking to further limit and refine the search strings at issue.

**Background on Search Term Negotiations and Need for Resistor Limiters**

The search terms Plaintiffs' initially proposed were grossly over broad, resulting in a hit rate of more than 90% when applied to HDK Defendants' ESI. That is, if we accepted Plaintiffs' proposed search strings, the value of search terms to limit the documents to be reviewed would be lost. As noted in the submission by ROHM concerning the red-line comparison (ECF 279), comparing the Plaintiffs' search term proposal to Defendants to the terms agreed upon in *In re Capacitors Antitrust Litigation* ("*Capacitors*") No. 14-cv-03264-JD (N.D. Cal.), Plaintiffs' added many substantive search strings and terms that were not present in *Capacitors*. Most Defendants, including the HDK Defendants, therefore used the *Capacitors* terms,[1] with modifications to (1) replace capacitor terms with resistor terms and (2) include resistor defendants and other resistor manufacturers. The majority of the *Capacitors* search terms as we received them included product limiters, and we mirrored those limiters for resistors.

The search term list the HDK Defendants used to identify potentially responsive documents is already massive, and the result of months of meet and confers, analysis of test batches to identify terms potentially causing false hits, and compromises on certain terms. Attached as **Exhibit A** is a 34-page "hit report" showing the set of search strings and terms as applied to the HDK Defendants' custodians with the number of documents (including attachments) that were "hits" based on that string. These terms include 371 separate search strings, where each string contains potentially dozens of separate terms. Some of the strings are unlimited (e.g., long list of separate terms separated by an "OR," so that any document or family members containing that term would be a "hit"), while others contain some sort of limiter (e.g., two long sets of terms separated by a "within 10" limiter, such that if any term in the first set exists within 10 words of any term in the second set, the document would be a "hit").

Because most of the search strings are extremely broad and contain terms commonly used even in irrelevant contexts, most also contain a "Resistor Limiter," a set of more than 90 broad resistor terms, in an attempt to at least limit those strings to where the discussion concerns resistors.[2] Plaintiffs did not object to having a Resistor Limiter for most search strings, and the terms in the Resistor Limiter were negotiated and agreed with Plaintiffs.

---

[1] As the HDK Defendants are not involved in *Capacitors*, we used the terms negotiated by ROHM in *Capacitors* as the base set of terms. The vast majority of the search strings in that set included a capacitors limiter. Although some Plaintiffs' counsel are also involved in *Capacitors*, and had access to the terms agreed-to in that case, they did not provide the *Capacitors* terms to us. We understand Panasonic is in a different position in the *Capacitors* case, and negotiated a separate set of terms for the resistors, including a resistor limiter on many terms.

[2] The Resistor Limiter negotiated and agreed with Plaintiffs includes commonly used terms used in reference to resistors, resistor characteristics, or resistor products, in both English and Japanese, and include the following, any one of which would result in a document being a hit if the rest of the string would be a hit: "and (resistor or レジスタ or 抵抗器 or レジスタ or "抵抗" or "チップ" or resist* or "R Chip*" or "Chip R*" or "Chip-R*" or "R-chip*" or "CR" or RC*" or "Res.*" or "carbon film*" or "fixed carbon*" or "fixed chip*" or "metal-plate*" or "metal plate*" or "thin film*" or "thin-film*" or "thick film" or "thick-film*" or "metal film*" or "metal glaze film" or "carbon comp*" or "ceramic chip*" or "metal oxide*" or "lead free*" or "pb free*" or Trimmable* or Array* or Kohm* or Sulfur* or Anti-sulfur* or Ohm* or Lead(Pb)* or "R value*" or "R-value*" or Array* or Potentiometer* or Pots* or 01005* or 03015* or 0201* or 0402* or 0603* or 0805* or 1206* or 1210* or 2512* or 0402* or 0603* or 1005* or

Hon. James Donato
April 25, 2017
Page 3

In addition, the HDK Defendants have agreed to run more than 90 of the search strings without any Resistor Limiter. Contrary to Plaintiffs' assertion, these include search strings that would capture communications with other Defendants or other resistor manufacturers. For example, emails sent to or received from one of the other Defendants' email addresses, including any such emails forwarded internally, would be captured by the following search string, run without any resistor limiter (see Exhibit A, line 89, resulting in over 8,700 documents).

> @koaspeer.com OR  @koanet.co.jp OR @kamaya.co.jp OR @passivecomponent.com OR @walsin-usa.com OR @kamaya.com OR @kamaya.com.my OR @wtc-japan.com OR @hk.panasonic.com OR @us.panasonic.com OR @my.panasonic.com OR @tw.panasonic.com OR @medem.panasonic.com.my OR  @jp.panasonic.com OR @rohm.com OR @rohm.com.sg OR @sal.rohm.co.jp OR @mnf.rohm.co.jp OR @rohmelectronics.com OR @RohmElectronics.com OR @rohm.co.jp OR @mnf.rohm.co.jp

The HDK Defendants also agreed to run the trade association terms for JEITA (Exhibit A, lines 41 and 43) and dozens of other search strings without any limiters. The search terms in Exhibit A are more than sufficient to capture potentially responsive documents.

**Ongoing Meet and Confers with Plaintiffs and Complexity of Issue**

The HDK Defendants and Plaintiffs have recently reached agreement on several additional search strings, including one containing various iterations of the names of other Defendants and resistor manufacturers. The analysis and negotiation of this single search string epitomizes the complexity of using and negotiating reasonable search terms.

We had already agreed to run Defendant and other resistor manufacturer terms with the Resistor Limiter, which resulted in more than 117,000 documents (see Exhibit A, line 4). We also had agreed to use these terms as limiters to other broad search strings, capturing additional documents (see, e.g., Exhibit A, lines 34, 96, 102, 192, 200, 220, 221, 251, 261, and 271). Running the string without the Resistor Limiter, as Plaintiffs requested, would have resulted in an additional 44,000 documents. On April 23, the HDK Defendants offered a compromise: remove terms related to one of the company names Plaintiffs included called Midori. Midori means "green" in Japanese. Midori the company is not a Defendant, nor even an alleged "co-conspirator" in the IPP complaint, and does not appear to have been a significant resistor manufacturer during the relevant period, so an unlimited search for those terms are unlikely to result in non-duplicative documents. Although we do not believe running an unlimited search on

---

1608* or 3216* or 3225* or 5025* or 6332* or WCR* or WLCR* or WEC* or ACR* or NCR* or PCR* or LPZ* or LPS* or ECR* or LPU* or LP32* or LCR* or JAXA* or CRES* or CRS* or LCRS* or NCRES* or ACRES* or SCR* or HCR* or FCR* or MOSC* or RNM* or RTL* or HGS* or HMGL* or HVL* or NAT or VG* or VZ* or VG* or NVZ* or NVG*)"

BARNES & THORNBURG LLP

the remaining terms would result in a meaningful number of non-duplicative responsive documents in any event, we offered to resolve Plaintiffs' stated concerns by running the Defendant and other resistor manufacturer names without a limiter if the "Midori" terms were removed as well. (See **Exhibit B** at 1). Plaintiffs agreed to remove the existing Midori terms, if we replaced them with the full names of the Midori companies. We agreed.

The HDK Defendants have conducted spot checks of the additional documents that would be captured by removing the Resistor Limiter and did not find a single responsive document that would not have been collected by one of the existing search strings. Plaintiffs conducted their own spot check of documents in HDK-America's production that did not have the Resistor Limiter in an attempt to support their argument that responsive documents are being missed. The list of purportedly responsive documents, however, either (1) contained other terms that would have caused them to be captured by other search strings, or (2) were not responsive or at best marginally relevant. And aside from any random spot searches, all the documents Plaintiffs have identified to date as reflecting competitor communications or information obtained from competitors would have been "hits" under the HDK Defendants' search terms, and produced to Plaintiffs. (See Exhibit B and email exchanges at 5-9).

As Plaintiffs have not shown that expanding the existing search terms would lead to relevant evidence, and has not shown that the burdens of production would be minimal or proportional to the needs of the case, the Court should reject Plaintiffs' request to order additional searches, review, and production with broader search terms. *See Kaseberg v. Conaco, LLC*, 2016 WL 5405558, at *2 (S.D. Cal. Sept. 28, 2016) ("As Plaintiff has not made a specific showing that the burdens of production would be minimal, proportional to the needs of the case, and that the requested documents would lead to relevant evidence, the Court denies Plaintiff's motion to compel responses … beyond what Conaco has already agreed to produce."); *Gilead Scis., Inc. v. Merck & Co, Inc.*, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) ("No longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence. In fact, the old language to that effect is gone. Instead, a party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case.); *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987) (affirming district court's denial of a motion to compel documents where the requests were unnecessarily burdensome and overly broad and there was no "specific showing that the burdens of production would be minimal and that the requested documents would lead to relevant evidence"); *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.,* 981 F.2d 429, 438-39 (9th Cir. 1992) (same); *see also* Fed. R. Civ. P. 26(b)(1).

Concerning the **overall percentage of hits**, Plaintiffs' suggestion that the HDK Defendants chose an arbitrary percentage is incorrect. The percentage of overall hits is a relevant measure in assessing whether the terms are appropriately limiting hits to a set most likely to contain responsive documents without imposing a burden disproportionate to the needs of the case. Search terms that would capture 90% of all documents, for example, are not appropriately limited. After multiple rounds of testing and negotiations on search terms, the proposal the HDK Defendants' believed would be likely to capture any potentially responsive documents happened

Hon. James Donato
April 25, 2017
Page 5

to capture about 33% of the custodial files. The terms as they existed at that time were already over broad in our assessment, but we were willing to accept a degree of overbreadth and false hits to reach a resolution. We were also negotiating at that time on the number and identity of custodians beyond the six priority custodians. Ultimately we agreed to the number and identity of additional custodians, noting that our agreement was conditioned on our ability to maintain roughly the same hit rate percentage. (See Exhibit B at 22) ("We will continue to meet and confer to tweak the searches to target and hopefully reduce [the current hit rate of 33%] even further, but **our current proposal on custodians is dependent on keeping the hit rate so that it captures no more than about 30% of a custodian's documents**.") (emphasis added). In other words, the HDK Defendants' insistence on modifying search terms to keep a consistent hit rate was not an arbitrary determination, but one based on analysis of the existing custodial files and negotiation and compromise with Plaintiffs on related issues.

Finally, Plaintiffs' suggestion that the existence of some lingering **capacitors terms** in the search strings has caused them harm is a red herring. The HDK Defendants are not parties to the *Capacitors* case, and agreed to remove, and have removed, any search strings Plaintiffs identified as applicable only to that case. The issue is largely moot, however, as those terms the Plaintiffs most recently identified for the first time as related only to capacitors were included in strings that also contained resistor terms, and are not expected to have independently resulted in a meaningful number of additional documents to review.

Accordingly, the HDK Defendants request that Plaintiffs' motion be denied, or at least permit the parties to continue to meet and confer on the issue.

Sincerely,

/s/  Kendall Millard

Kendall Millard
Bradley R. Love
Alicia Barrs
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, IN 46204-3535
Telephone:  (317) 236-1313
Facsimile:  (317) 231-7433
Kendall.Millard@Btlaw.com
Blove@Btlaw.com
Alicia.Barrs@btlaw.com

*Counsel for Hokuriku Electric Industry Co. and HDK America, Inc.*