UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE RESISTORS ANTITRUST LITIGATION. | Master File No. 15-cv-03820-JD<br><br>**ORDER RE MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 202, 203, 204, 205 |

This consolidated antitrust class action alleges a price-fixing conspiracy for linear resistors, a tiny but essential component that is ubiquitous in electronic devices. Before the Court are four separate motions to dismiss. The Court grants them in part and denies them in part.

**BACKGROUND**

There are two classes of plaintiffs in this consolidated action: the direct purchaser plaintiffs ("DPPs") and indirect purchaser plaintiffs ("IPPs").[1] Each set of plaintiffs has filed their own operative complaint. *See* Dkt. Nos. 140 (DPP complaint); 141 (IPP complaint). Both complaints name the same five corporate families as defendants. *See* Dkt. No. 140 ¶¶ 13-28; Dkt. No. 141 ¶¶ 51-62.[2] And both complaints allege a price-fixing conspiracy in the linear resistor industry that began in 2003. Dkt. No. 140 ¶¶ 2, 53; Dkt. No. 141 ¶ 5. The DPPs assert a single legal claim against defendants for violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Dkt.

---

[1] While Schuten Electronics, Inc., is the only named direct purchaser plaintiff, the Court refers to DPPs in the plural to be consistent with the parties' terminology and because Schuten proposes a class of direct purchaser plaintiffs. *See* Dkt. No. 140 ¶¶ 12, 178.

[2] The Court notes that footnote 2 of IPPs' complaint states that the term "defendants" includes Murata Manufacturing Co., Ltd., Murata Electronics North America, Inc., Vishay Intertechnology, Inc., Yageo Corporation and Yageo America Corporation. Dkt. No. 141 at 6 n.2. This appears to be a mistake, which the Court anticipates will be fixed on amendment.

No. 140 ¶¶ 188-191. The IPPs assert three claims: violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (but seeking only injunctive relief); violations of the antitrust and restraint of trade laws of California, Iowa, Michigan, Minnesota, Nebraska and New York; and violations of the consumer protection and unfair competition laws of California, Florida, Nebraska and New York. Dkt. No. 141 ¶¶ 181-219.

Defendants have jointly moved to dismiss the DPP complaint and IPP complaint. Dkt. Nos. 204, 205. The U.S. subsidiary defendants have filed consolidated motions to be dismissed from both complaints. Dkt. Nos. 202, 203.

## DISCUSSION

## I. DIRECT PURCHASER PLAINTIFFS' COMPLAINT

### A. STATUTE OF LIMITATIONS

The main argument in defendants' joint motion to dismiss the DPPs' complaint is that it fails to state a claim within the limitations period. The parties agree, as they must, that the applicable statute of limitations is four years under 15 U.S.C. § 15b. Dkt. No. 204 at 9; Dkt. No. 218 at 18. Plaintiffs do not dispute that the outer boundary of the limitations period is August 24, 2011, for most defendants, and May 27, 2012, for defendants Kamaya and HDK. Dkt. No. 204 at 1, 4 n.4. Defendants say that the DPPs' allegations "do not give rise to a plausible 11-year conspiracy that falls within the limitations period," and that the complaint "fails to establish fraudulent concealment to toll the statute of limitations." Dkt. No. 228 at 1.

Neither contention is well taken. DPPs argue in opposition to defendants' motion that they have plausibly alleged a conspiracy "from at least as early as July 9, 2003 until August 1, 2014," in a manner that is consistent with the pleading standards set out by the United States Supreme Court in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007). Dkt. No. 218 at 1, 8-10. This is so. Defendants overlook the Court's determinations in the motion to dismiss order in *In re Capacitors Antitrust Litigation*, 106 F. Supp. 3d 1051 (N.D. Cal. 2015) ("*Capacitors I*"), a highly analogous case. As the Court made clear, in the motion to dismiss context, it must treat the plaintiff's allegations as true and draw all reasonable inferences in plaintiff's favor. *Id*. at 1060. The complaint in *Twombly* did not offer any "independent allegation of actual agreement" among

United States District Court
Northern District of California

defendants. *Id*. at 1061 (quoting *Twombly*, 550 U.S. at 564). A complaint passes muster under *Twombly*, however, if the allegations in it "rise above mere speculation, even if the Court has doubts about them," and in making this evaluation, the Court considers the complaint as a whole. *Id*. at 1063-64.

Under this guidance, the Court has no difficulty finding that DPPs have plausibly alleged a price-fixing conspiracy among defendants beginning in July 2003 and reaching into the limitations period. The DPP complaint alleges that on July 9, 2003, defendants ROHM, Panasonic, HDK and KOA attended a meeting of the Passive Components Business Committee of the Japan Electronics and Information Technology Industries Association ("JEITA"). Dkt. No. 140 ¶ 73. At that meeting, the "participants agreed on a procedure for facilitating coordination of industry behavior in their subsequent meetings," including the type of information to be exchanged, *e.g.*, "current sales and changes in production of resistors" and "your company's estimated forecast and outlook." *Id*. The complaint also specifically alleges that "[s]eeking to salvage their profitability admid a collapse in prices brought on by elimination of tariff barriers and a global recession, defendants at least as early as July 2003 agreed to work together -- i.e. conspired -- to artificially stabilize and increase resistor prices and preserve their position in global resistor markets." *Id*. ¶ 2.

The complaint includes detailed examples of meetings that were held throughout the next decade plus, where the defendants are alleged to have done just that within and outside the context of JEITA meetings. *See*, *e.g.*, *id*. ¶¶ 74 (minutes of meetings in 2003 and 2004 in which "participants facilitated their common scheme to reduce competition through this procedure"); 75 (summer 2006 meeting where defendants "met and exchanged monthly resistor sales information . . . in order to coordinate their market behavior"); 76 (internal 2006 Panasonic email reporting that a contact at ROHM had stated, "We plan to raise prices to Nokia for the 1005 type [resistor.]"); 78 (plans to "share competitive information" at a May 2007 Passive Components Committee Meeting); 80 (notes of late 2007 meeting among defendants reflecting discussion of capacity and price); 86 (2008 Panasonic-HDK correspondence re pricing to specific customers and efforts to coordinate pricing strategies); 89 (2010 JEITA meeting in which "all companies

1    presented competitively sensitive sales information"); 93 (2011 JEITA Resistors Working Group
2    meeting in which participants exchanged sales percentages and other internal financial
3    information); 95 ("detailed discussions of each company's sales information" during an August
4    2011 JEITA Passive Components Committee meeting); 98 (2013 JEITA meeting in which sales
5    performance was shared). These are only a sampling of plaintiffs' detailed allegations that go
6    through the years. *See id*. ¶¶ 70-101. DPPs end their chronological narrative with the allegation
7    that in June 2014, a manager of KOA acknowledged to KOA's board of directors that the
8    antitrust-related risk "has already materialized," and a director added, "I realize the situation is
9    becoming serious, and we cannot get away by saying '[w]e did not know.' Business practices we
10   are so accustomed to may no longer be deemed legitimate activities." *Id*. ¶ 100. And in July
11   2014, JEITA itself is alleged to have announced "an internal investigation into creating an antitrust
12   compliance structure," with the Electronic Components Working Group announcing plans to
13   "look into current antitrust compliance issues arising from its activities." *Id*. ¶ 101.
14   It might be that some of these allegations, if viewed in isolation or as only a part of a
15   subset of the allegations here, would not have been enough to cross the *Twombly* bar. But
16   complaints are not reviewed in paper thin slices. As held in *Capacitors I*, the Court evaluates all
17   of the allegations as a whole, and when viewed in that way, DPPs have plausibly stated a
18   conspiracy beginning in 2003 and extending into the limitations period. It is important to keep in
19   mind that the *Twombly* standard "does not impose a probability requirement at the pleading stage;
20   it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence
21   of illegal agreement." 550 U.S. at 556. And the fact that the allegations might get a little thinner
22   toward the end of the time period alleged does not necessarily lessen the plausibility of the
23   allegations for that later time period. While it does appear that there are fewer direct allegations of
24   price fixing here than there were in *Capacitors*, DPPs have met the Rule 8 / *Twombly* bar.
25   In addition, DPPs are not barred as a matter of law from seeking damages for the pre-
26   limitations period conduct because DPPs have sufficiently alleged fraudulent concealment, which
27   tolls the statute of limitations. Defendants try to make much of the fact that DPPs have "fail[ed] to
28   sufficiently plead 'due diligence.'" Dkt. No. 204 at 16. But our circuit has made clear that "[t]he

4

requirement of diligence is only meaningful . . . when facts exist that would excite the inquiry of a reasonable person." *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 504 (9th Cir. 1988) (citations omitted). In *Conmar*, the circuit concluded that "no due diligence need be demonstrated for Conmar to survive summary judgment" because there was a "genuine issue of material fact whether the facts publicly available were sufficient to excite Conmar's inquiry." *Id*. at 504-05. That conclusion applies with force here, where the earlier stage of the proceedings calls for an even more plaintiff-friendly view of the facts. DPPs have alleged facts in their complaint that plausibly show that they did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the alleged conspiracy until July 2015 at the earliest, when the competition authorities' investigations first began to be made public. *See*, *e.g.*, Dkt. No. 140 ¶¶ 160-174.

Despite not having to plead at this stage every step of their due diligence, plaintiffs are required to plead affirmative concealment by defendants, with more than just conclusory statements. *Conmar*, 858 F.2d at 502, 505. They have done so. DPPs' allegations in that regard are similar to those the Court already found sufficient in *Capacitors I*, 106 F. Supp. 3d at 1065, 1074. Here, too, DPPs allege, for example, that after reporting on a collusive pricing conversation with an individual from ROHM, a Panasonic employee "attempted to conceal it by warning recipients not to forward his email." Dkt. No. 140 ¶ 4. Defendants are alleged to have "frequently warned each other not to forward records of collusive exchanges outside of the conspiracy"; "used code words to refer to fellow conspirators and customers who were affected by the conspiracy"; and "ensured the minutes of their meetings were not distributed publicly." *Id*. ¶ 9; *see also*, *e.g.*, ¶¶ 76 (email using code name "R Co." for ROHM, and warning recipients not to forward); 80 (email labeled "Same Industry Information (Confidential)," and instructing recipients to "handle with care"); 86 (using code name "A Co." for Apple, Inc.). As was the case in *Capacitors*, these allegations are sufficiently particularized to support the allegation of fraudulent concealment at this stage.

### B. INDIVIDUAL DEFENDANTS' ARGUMENTS

In addition to defendants' joint motion to dismiss the DPP complaint, the U.S. subsidiaries

of all five defendant families have separately filed a consolidated motion collecting the arguments each of them is making on an individual basis. Dkt. No. 202. These U.S. subsidiary defendants are: HDK America, Inc., Kamaya, Inc., ROHM Semiconductor U.S.A., KOA Speer Electronics, Inc., and Panasonic Corporation of North America. All make the same argument: not enough is alleged about the involvement of any of them in the alleged conspiracy. *Id*. at 4.

This, too, is an issue the Court previously addressed in the *Capacitors* case, and there the Court set the baseline proposition. Detailed defendant-by-defendant allegations are not necessary, but at the same time, an antitrust complaint "must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." *Capacitors*, 106 F. Supp. 3d at 1066 (quoting *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008)).

Here, the Court finds as an initial matter that defendants HDK America, Inc., KOA Speer and Kamaya, Inc. should be dismissed with leave to amend for a more basic reason. These defendants are not included in DPPs' definitions of "HDK," "KOA," and "Kamaya," respectively, in the complaint. "HDK" is expressly defined to mean only defendant "Hokuriku Electric Industry Co." Dkt. No. 140 ¶ 13. Similarly, the terms "KOA" and "Kamaya" are expressly defined to point only to the parent companies of their respective corporate families, *i.e.*, defendants KOA Corporation and Kamaya Electric Co., Ltd. *Id*. ¶¶ 16, 27. Despite these express allegations, DPPs make the rather casuistic argument that a "plain reading" shows that "references to generic family names subsequently in the complaint are to all of the companies in a corporate family, parents and subsidiaries." Dkt. No. 216 at 6. This is needlessly and unacceptably ambiguous, and DPPs may not proceed on that basis.

Dismissal is also warranted for PNA and ROHM USA. For those subsidiary defendants, the complaint does allege that "[d]efendants Panasonic Corp., PCNA, PIDS, SANYO Co., and SANYO NA are together referred to herein as 'Panasonic,'" and "[d]efendants ROHM Co. and ROHM USA are together referred to herein as 'ROHM.'" Dkt. No. 140 ¶¶ 23, 26. But as the Court has previously explained, those kinds of bare allegations alone do not change the picture in

6

any meaningful way, as that kind of indiscriminate and generalized lumping together of defendants does not make for a sound pleading approach. *Capacitors I*, 106 F. Supp. 3d at 1068. In addition, the complaint here does not contain the kinds of express, additional allegations that this and other courts have required before accepting allegations that are made on a corporate family basis as being enough to state a claim against a subsidiary member of the family. *See id.*; *In re Capacitors Antitrust Litigation*, 154 F. Supp. 3d 918, 928-29 (N.D. Cal. 2015) ("*Capacitors II*"). As one example, in *Capacitors II*, the Court noted that there was an allegation in the complaint that "'the individual participants in the conspiratorial meetings and discussions did not distinguish between entities within a particular corporate family,' and '[i]ndeed, the employees from defendants appear to have attended the conspiratorial meetings on behalf of their entire corporate families, including their respective U.S. subsidiaries.'" *Id.* at 929. DPPs do not dispute that those kinds of allegations do not exist in their complaint, but they nevertheless ask the Court to find those allegations by implication based on their allegation that defendants "repeatedly refer[red] to each defendant family using its generic family name as 'Panasonic,' 'R. Co.' or 'ROHM,' 'Kamaya,' 'KOA,' and 'HDK.'" Dkt. No. 216 at 13. DPPs assert that this use of generic corporate family names could only have been references to the entire family. *Id.* But the Court declines the invitation to find allegations by implication and after-the-fact argument. DPPs have represented that they can add express and more direct allegations on this point, so they will be given an opportunity to do so.

## II. INDIRECT PURCHASER PLAINTIFFS' COMPLAINT

### A. STATUTE OF LIMITATIONS

As in the joint motion to dismiss the DPP complaint, defendants' primary joint dismissal argument for the IPP complaint is based on the statute of limitations. Dkt. No. 205 at 1. IPPs accept that a four-year limitations period applies to these claims. Dkt. No. 219 at 5 ("The statute of limitations applicable to IPPs' claims is four years.").[3]

---

[3] Defendants say that the statute of limitations that applies to IPPs' claim under New York's consumer protection law is three years. Dkt. No. 205 at 8 n.8. IPPs do not appear to dispute this, but in any event, this asserted 1-year difference is not material to the Court's resolution of this motion.

7

For the IPPs' complaint, defendants' joint motion is granted with leave to amend. Many of the IPPs' allegations are in fact more directly on point, and point more strongly toward price fixing among defendants, than those in the DPPs' complaint. *See*, *e.g.*, Dkt. No. 141 ¶¶ 126 (at JEITA subcommittee meeting in late 2007, "for model year 2012 and over, the competitors discussed that a price rise would be implemented"); 128 (2008 email indicating Panasonic-KOA discussions re "pricing strategies and that there would be continued activities to raise prices as to overseas customers"); 132 (2008 meeting where "specific manufacturers of resistors discussed their pricing strategies for raising or maintaining prices"); 136 (minutes from JEITA meetings presumably in 2008 reflecting "that KOA and others were starting a 7% price increase").

But defendants properly observe on the IPP side that there is a gap in the allegations between 2009 and 2013. *See* Dkt. No. 230 at 2; Dkt. No. 141 ¶¶ 140-144. Because of this gap, the only factual allegation in the IPP complaint that directly alleges defendants' collusion and falls in the limitations period (whether that period is three years or four), is paragraph 144. That paragraph alleges that "notes from JEITA meetings in or around 2013 show that defendants' discussing of resistors' pricing strategies continued. Panasonic's notes indicate a meeting with defendant Kamaya wherein the parties discussed limiting production capacity." Dkt. No. 141 ¶ 144. This single paragraph is not enough to meet the burden of pleading a plausible price-fixing conspiracy under *Twombly*, and because of the gap between the years 2009 and 2013, the Court does not have a plausible basis to infer that the conspiracy that was alleged for years 2003 to 2009 continued into the limitations period. The Court consequently grants defendants' joint motion and dismisses the IPPs' complaint on that basis, but the IPPs will be given an opportunity to amend.

Defendants have made additional arguments attacking the sufficiency of IPPs' state consumer protection and unfair competition claims under the laws of California, New York and Florida, *see* Dkt. No. 205 at 21-24, but the Court declines to address those arguments at this time given that the failure to meet the *Twombly* plausibility bar calls for the dismissal of the entire complaint. Defendants may renew those arguments in response to the IPPs' amended complaint as appropriate.

### B. INDIVIDUAL DEFENDANTS' ARGUMENTS

The same U.S. subsidiary defendants have brought a consolidated motion to be dismissed from the IPPs' complaint for the same reason -- that it does not say enough about each of the U.S. subsidiary defendants to tie them to a conspiracy. Dkt. No. 203. Because the Court is dismissing the IPP complaint in its entirety for the reasons set out above, the Court declines to go through the U.S. subsidiary defendants' arguments in detail at this time.

IPPs would be well-advised to review the Court's ruling on the U.S. subsidiary defendants' motion to dismiss the DPP complaint in this order, as the reasoning behind those rulings apply with equal force on the IPP side. For the IPPs' further guidance, the Court notes its preliminary view that it most likely would have granted the U.S. subsidiary defendants' motion to be dismissed from the IPPs' complaint as well. The IPPs should keep that in mind in crafting a further amended complaint.

## CONCLUSION

The defendants' joint motion to dismiss the DPP complaint is denied. Dkt. No. 204. The U.S. subsidiary defendants' motion to dismiss the DPP complaint is granted. Dkt. No. 202. The DPPs may file an amended complaint by **October 3, 2017**. Any amendments may relate only to fixing the deficiencies identified by the Court above for DPPs' allegations against the U.S. subsidiary defendants.

The defendants' joint motion to dismiss the IPP complaint is granted. Dkt. No. 205. The U.S. subsidiary defendants' motion to dismiss the IPP complaint is terminated as moot. Dkt. No. 203. The IPPs may file an amended complaint by **October 3, 2017**, that seeks to address the deficiencies identified by the Court in this order.

**IT IS SO ORDERED.**

Dated: September 5, 2017

JAMES DONATO
United States District Judge