Jeff D. Friedman (173886)
Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Kit A. Pierson (*pro hac vice*)
Daniel A. Small (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
kpierson@cohenmilstein.com
dsmall@cohenmilstein.com

*Co-Lead Counsel for Direct Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE RESISTORS ANTITRUST LITIGATION<br><br>This Documents Relates to:<br><br>DIRECT PURCHASER ACTIONS | Case No. 3:15-cv-03820-JD<br><br>DIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH HDK, KAMAYA, AND WALSIN, AND DISSEMINATION OF CLASS NOTICE<br><br>Date: September 20, 2018<br>Time:  10:00am<br>Dept:   Courtroom 11, 19th Floor<br>Judge:  Hon. James Donato |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on September 20, 2018, at 10:00 a.m. or as soon thereafter as the matter may be heard by the Honorable Judge James Donato of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Direct Purchaser Plaintiffs will and hereby do move the Court pursuant to Federal Rules of Civil Procedure 23 for an order:

(1)     preliminarily approving proposed class action settlements with Defendants HDK America, Inc. and Hokuriku Electric Industry Co. (collectively "HDK"); Defendants Kamaya Inc. and Kamaya Electric Co., Ltd. (collectively "Kamaya"); and Defendants Walsin Technology Corporation and Walsin Technology Corporation U.S.A. (collectively "Walsin");

(2)     certifying the settlement classes;

(3)     appointing Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll PLLC as Class Counsel; and

(4)     approving the manner and form of notice and proposed plan of allocation to class members.

This Motion is based on this Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlements with the HDK, Kamaya, and Walsin Defendants and Dissemination of Class Notice, the following memorandum of points and authorities, the accompanying settlement agreements, and the pleadings and the papers on file in this action.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. PROCEDURAL HISTORY ....................................................................................3

III. SUMMARY OF SETTLEMENT TERMS ............................................................5

    A. The DPP Settlement Class ..........................................................................5

    B. The Settlement Consideration and Release of Claims ...............................6

        1. The HDK Settlement .......................................................................6

        2. The Kamaya-Walsin Settlement .....................................................6

    C. Notice and Implementation of Settlement ..................................................7

    D. Plan of Distribution ....................................................................................8

IV. ARGUMENT ..........................................................................................................9

    A. The Standards and Procedure for Preliminarily Approving a Class Settlement ...................................................................................................9

        1. The Settlements Are The Result of Arm's-Length Negotiations .................................................................................10

        2. The Settlements Have No Obvious Deficiencies .........................10

        3. The Settlements Do Not Provide Preferential Treatment for Segments of the Class or the Class Representative ......................11

        4. The Settlements Easily Fall Within the Range of Possible Approval ........................................................................................13

    B. The Proposed Settlement Class Satisfies Rule 23 ...................................15

        1. Rule 23(a): Numerosity ................................................................15

        2. Rule 23(a): The Case Involves Questions of Law or Fact Common to the Class...................................................................16

        3. Rule 23(a): Plaintiff's Claims Are Typical of the Claims of the Class..........................................................................................16

        4. Rule 23(a): The Plaintiff Will Fairly and Adequately Represent the Interests of the Class....................................................17

        5. Rule 23(b)(3): Common Questions of Fact or Law Predominate ..................................................................................18

6.      A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Case ............................................ 19

C.      The Court Should Reaffirm the Appointment of Class Counsel .............................. 20

D.      The Proposed Class Notice and Plan for Dissemination Meet the Strictures of Rule 23 ................................................................................ 20

E.      Proposed Schedule for Dissemination of Notice and Final Approval .................................................................................................. 22

V.      CONCLUSION ................................................................................................... 23

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

### **FEDERAL CASES**

4

*Amchem Prods., Inc. v. Windsor,*
5
  521 U.S. 591 (1997) ............................................................................................ 18, 19

6

*Bellows v. NCO Fin. Sys. Inc.,*
  2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) ............................................................ 10
7

8

*Carnegie v. Household Int'l, Inc.,*
  376 F.3d 656 (7th Cir. 2004) ...................................................................................... 19

9

*Churchill Vill., LLC v. Gen. Elec.,*
10
  361 F.3d 566 (9th Cir. 2004) ...................................................................................... 21

11

*The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.,*
  2016 WL 314400 (N.D. Cal. Jan. 25, 2016) ................................................................. 9
12

13

*Collins v. Cargill Meat Sols. Corp.,*
  274 F.R.D. 294 (E.D. Cal. 2011) .................................................................................. 9

14

*Farley v. Baird, Patrick & Co., Inc.,*
15
  1992 WL 321632 (S.D.N.Y. Oct. 28, 1992) ............................................................... 20

16

*Four in One Co. v. S.K. Foods, L.P.,*
  2014 U.S. Dist. LEXIS 602 (N.D. Cal. Jan. 2, 2014) ................................................. 13
17

18

*Fraley v. Facebook, Inc.,*
  2012 U.S. Dist. LEXIS 116526 (N.D. Cal. Aug. 17, 2012) ..................................... 9, 13

19

*Gaudin v. Saxon Mortg. Servs., Inc.,*
20
  2015 U.S. Dist. LEXIS 159020 (N.D. Cal. Nov. 23, 2015) ........................................ 11

21

*Haley v. Medtronic, Inc.,*
  169 F.R.D. 643 (C.D. Cal. 1996) ................................................................................ 16
22

23

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) .......................................................................... 16, 17, 20

24

*Harrington v. City of Albuquerque,*
  222 F.R.D. 505 (D.N.M. 2004) ................................................................................... 20
25

26

*In re Auto. Refinishing Paint Antitrust Litig.,*
  617 F. Supp. 2d 336 (E.D. Pa. 2007) ..................................................................... 13, 14

27

*In re Bluetooth Headset Prods. Liability Litig.,*
28
  654 F.3d 935 (9th Cir. 2011) ................................................................................. 10, 11

*In re Catfish Antitrust Litig.*,
   826 F. Supp. 1019 (N.D. Miss. 1993) ................................................................. 17

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
   2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) ...................................................... 14

*In re Citric Acid Antitrust Litig.*,
   145 F. Supp. 2d 1152 (N.D. Cal. 2001) ................................................................ 11

*In re Citric Acid Antitrust Litig.*,
   1996 WL 655791 (N.D. Cal. Oct. 2, 1996) ........................................................... 17

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   2006 WL 1530166 (N.D. Cal. June 5, 2006) ........................................................ 16

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ...................................................... 10

*In re High-Tech Emp. Antitrust Litig.*,
   2015 U.S. Dist. LEXIS 118051 (N.D. Cal. Sept. 2, 2015) .................................... 12

*In re Initial Public Offering Secs. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) ......................................................................... 19

*In re Linerboard Antitrust Litig.*,
   321 F.Supp.2d 619 (E.D. Pa. 2004) ..................................................................... 13

*In re NVIDIA Corp. Derivative Litig.*,
   2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ...................................................... 13

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. Cal. 2015) ........................................................................ 12

*In re Relafen Antitrust Litig.*,
   231 F.R.D. 52 (D. Mass. 2005) ............................................................................ 19

*In re Rubber Chems. Antitrust Litig.*,
   232 F.R.D. 346 (N.D. Cal. 2005) ............................................................. 15, 16, 18

*In re Static Random Access (SRAM) Antitrust Litig.*,
   2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) ..................................................... 19

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................ 9, 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   267 F.R.D. 291, 300 (N.D. Cal. 2010) ...................................................... 16, 18, 19

*In re Zynga Inc. Secs. Litig.*,
   2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .................................................. 10, 11

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507 (9th Cir. 1978) ............................................................................ 17

*Meijer, Inc. v. 3M*,
    2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) ................................................... 13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................................... 10

*Noll v. eBay, Inc.*,
    2015 U.S. Dist. LEXIS 123147 (N.D. Cal. Sept. 15, 2015) ............................ 12

*Officers for Justice v. Civ. Serv. Comm'n of the City and Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ..................................................................... 9, 10

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ........................................................................ 11

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..................................................................... 10, 14

*Slaven v. BP Am., Inc.*,
    190 F.R.D. 649 (C.D. Cal. 2000) ................................................................... 16

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ........................................................................... 18

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*,
    209 F.R.D. 159 (C.D. Cal. 2002) ................................................................... 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................................. 14

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ............................................................................ 9

*Zepeda v. Paypal, Inc.*,
    2015 U.S. Dist. LEXIS 150577 (N.D. Cal. Nov. 5, 2015) ........................ 9, 11, 13

## FEDERAL RULES

Federal Rule of Civil Procedure 23 ............................................................... *passim*

## SECONDARY AUTHORITIES

Alba Conte & Herbert B. Newberg,
    4 Newberg on Class Actions § 18:4 (4th ed. 2002)......................................... 15

Manual for Complex Litigation (Fourth) § 21.632, 320-21 (2004) ...................... 9

U.S. Sentencing Guidelines Manual § 2R.1(d)(1) (2016). .................................................................... 14

1

## I.    INTRODUCTION

2

Pursuant to Federal Rule of Civil Procedure 23(e), Direct Purchaser Plaintiffs ("DPPs")

3

request that the Court preliminarily approve settlements with the HDK defendant family and the

4

Kamaya-Walsin defendant family (collectively, the "Settling Defendants").[1] DPPs have reached a

5

settlement with HDK for $2 million and a settlement with Kamaya-Walsin for $5.25 million –

6

creating an all-in cash fund of $7.25 million for the benefit of the DPP Settlement Class. The

7

settlements also require that HDK and Kamaya-Walsin assist DPPs in the prosecution of their claims

8

against the remaining defendants.[2]

9

These are the first settlements in the case and represent an outstanding recovery for the

10

Settlement Class. The Kamaya-Walsin settlement is equivalent to approximately 8% of their direct

11

sales to the Settlement Class, and the HDK settlement is equivalent to approximately 18.5% of their

12

direct sales to the Settlement Class. These percentages exceed those approved in similar settlement

13

class actions. And both settlements preserve DPPs' rights to pursue their claims against the

14

remaining defendants for the entire remaining amount of DPPs' damages because defendants are

15

jointly and severally liable for antitrust damages incurred as a result of the alleged conspiracy.

16

At this juncture, in considering whether to grant preliminary approval, the Court need only

17

determine whether the settlements are within the range of possible approval. These settlements

18

clearly satisfy this standard. The proposed settlements were reached through arm's length

19

negotiations between experienced and informed counsel following more than two years of litigation.

20

The HDK settlement also benefitted from a mediation conducted by Gerald G. Saltarelli, Esq.

21

Consideration of these facts demonstrate that preliminary approval should be granted.

22

---

23

[1] "HDK" or the "HDK defendant family" refers to HDK America, Inc. and Hokuriku Electric

24

Industry Co. "Kamaya-Walsin" or the "Kamaya-Walsin defendant family" refers to Kamaya Electric Co., Ltd., Kamaya Inc., Walsin Technology Corporation, and Walsin Technology Corporation U.S.A.  The Kamaya-Walsin defendants are referred to as a single family because Kamaya Electric

25

Co., Ltd., Kamaya Inc., and Walsin Technology Corporation U.S.A. are all subsidiaries of Walsin Technology Corporation. DPPs reached a settlement agreement collectively with these four

26

defendants, which are represented by the same counsel.

27

[2] *See* Declaration of Jeff D. Friedman in Support of Motion for Preliminary Approval of Settlement with LG Chem ("Friedman Decl."), Ex. A (HDK Settlement Agreement), ¶¶ 17, 25-27,

28

Ex. B (Kamaya-Walsin Settlement Agreement), ¶¶ 20, 42-45, concurrently filed herewith.

1    DPPs propose a comprehensive notice program designed by an experienced Settlement

2  Administrator – JND Legal Administration LLC. Direct notice will include individualized notice

3  mailed to the class members for whom DPPs currently have names and contact information (more

4  than 90% of class members weighted by purchase volume), plus those class members for whom the

5  Settlement Administrator is able to identify contact information.[3] Those class members will receive

6  pre-printed claim forms identifying the class member's purchases.[4] The notice package will instruct

7  class members that they will automatically receive a benefit if they do not take further action, and

8  will provide opportunities by mail or online to submit additional information if class members wish

9  to challenge their purchase amount.[5]  The direct notice campaign will be supplemented by a robust

10  digital campaign and press release to ensure that all potential settlement class members receive

11  notice.[6] Self-identified class members will have the ability to submit an electronic claim on the

12  settlement website or download a paper version of the claim form to complete and mail to the

13  Settlement Administrator.[7] The proposed notices are written in plain English and include all of the

14  required information.

15    DPPs propose that distribution of the $7.25 million be held pending additional settlements.

16  HDK and Kamaya-Walsin are the two smallest defendant families in terms of sales of linear resistors

17  during the Class Period (July 9, 2003 through August 1, 2014).  The three remaining defendant

18  families are KOA, Panasonic, and ROHM.[8]  Claims against these other defendants are not released

19  by the instant settlements. Given the expense associated with distribution, DPPs believe that it is in

20  the Class's best interests to defer distribution until a later time.

---

[3] Friedman Decl., ¶ 16; Declaration of Jennifer M. Keough Regarding Proposed Notice Program ("Keough Decl."), ¶¶ 11, 13-15, concurrently filed herewith.

[4] Keough Decl., ¶¶ 11, 17.

[5] Id., ¶¶ 11,16-17, 24.

[6] Id., ¶ 19-26.

[7] Id., ¶ 24.

[8] Specifically, these other defendants are: KOA Corporation; KOA Speer Electronics, Inc.; ROHM Co., Ltd.; ROHM Semiconductor U.S.A., LLC; Panasonic Corporation; and Panasonic Corporation of North America.

1    Accordingly, DPPs respectfully request an order: (1) preliminarily approving the proposed

2  class action settlements with HDK and Kamaya-Walsin; (2) certifying the settlement class;

3  (3) appointing Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll PLLC as DPP

4  Class Counsel; and (4) approving the manner and form of notice and proposed plan of allocation to

5  class members.

6                          **II.    PROCEDURAL HISTORY**

7    This case involves federal antitrust claims brought by direct purchasers of linear resistors.

8  Linear resistors are known as "passive electronic components" and are a fundamental part of

9  electrical circuits.  Linear resisters are ubiquitous – present in myriad electronic devices including

10  automobiles, televisions, cell phones, computers, and kitchen equipment.[9]

11    DPPs allege that Defendants conspired to fix the prices of linear resistors from July 9, 2003

12  through August 1, 2014.  DPPs allege that the conspiracy was carried out through agreements to fix

13  prices and restrict output and was facilitated in a variety of ways, including via face-to-face

14  meetings, electronic communications, phone calls, and the use of trade associations.[10]

15    DPP class representative Schuten Electronics, Inc. filed a complaint on October 23, 2015. On

16  May 27, 2016, DPPs filed their Consolidated Amended Class Action Complaint.  Defendants filed a

17  joint motion to dismiss on August 24, 2016, and on the same day, the U.S. subsidiary defendants

18  filed a separate motion to dismiss. Following briefing on these motions, the Court denied the joint

19  motion to dismiss and granted the U.S. subsidiary defendants' motions to dismiss.[11]

20    DPPs filed their Second Consolidated Amended Class Action Complaint ("Complaint") on

21  October 26, 2017. The Complaint expounded on the allegations against the U.S. subsidiary

22  defendants and added Walsin Technology Corporation and Walsin Technology Corporation U.S.A.

23  as Defendants. The U.S. subsidiary defendants again moved to dismiss, and each of the two Walsin

24  defendants filed separate motions to dismiss.  The Court denied these motions.[12]

25

26    [9] Friedman Decl., ¶ 2.

    [10] *Id.*

27  [11] *See* Order re Motions to Dismiss, Sept. 9, 2017, ECF No. 326.

28  [12] *See* Minute Entry, Jan. 22, 2018, ECF No. 384; Minute Entry, April 5, 2018, ECF No. 418.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DPPs have engaged in substantial discovery against the Defendants. For example, DPPs have propounded 32 document requests on the HDK defendants (in three separate sets of requests), 32 document requests on the Kamaya defendants (in three separate sets of requests), and 38 documents requests on the Walsin defendants. DPPs have served a similar number of requests on the other defendants. Over 10 million pages of documents have been produced in this case, with Settling Defendants alone producing more than 580,000 documents (over 2.24 million pages). DPPs have devoted substantial resources to reviewing these documents, and have a well-developed understanding of the strengths and weaknesses of the documentary evidence against the Settling Defendants (and other defendants). DPPs also served multiple sets of interrogatories.[13]

To date, DPPs have taken sixteen depositions, including individual Rule 30(b)(1) depositions and corporate Rule 30(b)(6) depositions. Additionally, DPPs defended the deposition of our class representative in a Rule 30(b)(6) deposition. From this substantial discovery and other investigative methods, DPPs have a firm grip on the strength of the evidence against the Settling Defendants and DPPs' liability case generally, as well as DPPs' case for class certification. DPPs, alone or in conjunction with the indirect purchaser plaintiffs ("IPPs"), have brought several discovery motions before this Court. DPPs also have retained economists from the outset of the litigation for consultation and to analyze the market, the impact of the price-fixing conspiracy on DPPs, to measure damages, and for related work.[14]

The Defendants have produced transactional data and documents from which DPPs, with the assistance of our retained economists, have been able to estimate the dollar value of each defendant's direct sales of linear resistors during the Class Period. The Rule 30(b)(6) depositions taken by DPPs and extensive meet and confer communications (including detailed questions about Defendants' transactional data productions) have further developed our understanding of the data. That ensures that DPPs entered into the instant settlement negotiations with an in-depth knowledge of the

---

[13] Friedman Decl., ¶ 7.

[14] *Id.*, ¶ 8.

1   evidence demonstrating impact and measuring damages.[15]

2       After informal settlements negotiations between the parties, DPPs and HDK had a full-day

3   mediation in Chicago with mediator Gerald G. Saltarelli.[16] On July 6, 2018, DPPs and HDK

4   executed a settlement agreement resolving all of the claims of the DPP Settlement Class.[17] As

5   described in further detail in Part III, *infra*, DPPs agreed to release all of their claims against HDK in

6   exchange for cash payments totaling $2,000,0000 and other valuable consideration.[18] This is the first

7   proposed DPP settlement in the case.[19]

8       Following settlement negotiations lasting several months, on July 11, 2018, DPPs and

9   Kamaya-Walsin executed a settlement agreement resolving DPPs' claims against the Kamaya-

10   Walsin defendant family.[20] As described in further detail in Part III, *infra*, DPPs agreed to release all

11   of their claims against Kamaya-Walsin in exchange for cash payments totaling $5,250,0000 and

12   other valuable consideration.[21]

13   III.    SUMMARY OF SETTLEMENT TERMS

14   A.    The DPP Settlement Class

15       The proposed settlement class for each of the two settlements at issue here is identical to the

16   class proposed in DPPs' Complaint:

17       All persons in the United States who purchased linear resistors
        (including through controlled subsidiaries, agents, affiliates or joint
18       ventures) directly from any of the Defendants, their subsidiaries,
        agents, affiliates or joint ventures from July 9, 2003 through August 1,
19       2014 (the "Class Period").[22]

20   Thus, "Class Member" means any person or entity that falls within the definition of the "DPP

21

22   _____

23   [15] *Id.*, ¶ 9.

    [16] *Id.*, ¶ 3.

24   [17] Friedman Decl., Ex. A, at 1.

25   [18] *Id.*, ¶¶ 14-17, 25-26.

    [19] Friedman Decl., ¶ 4.

26   [20] Friedman Decl., Ex. B, at 1.

27   [21] *Id.*, ¶¶ 30-33, 42-45.

28   [22] Friedman Decl., Ex. A, ¶ 1, Ex. B, ¶ 21.

1    Settlement Class" and does not timely and validly elect to be excluded from the Settlement Class.[23]

2    **B.      The Settlement Consideration and Release of Claims**

3          These are the first two settlements in the DPP case.[24] Both settlements preserve DPPs' ability

4    to pursue their claims against the other defendants for the entire amount of DPPs' remaining

5    damages, as these defendants remain jointly and severally liable.[25]

6          **1.      The HDK Settlement**

7          The HDK settlement releases Defendants Hokuriku Electric Industry Co., and its U.S.

8    subsidiary, HDK America, Inc., in exchange for $2,000,000 and other consideration. This amount

9    represents approximately 18.5% of HDK's direct sales to the Settlement Class during the Class

10   Period. The settlement also requires HDK to provide "employee declarations or affidavits relating to

11   authentication or admissibility of documents and data (or employee testimony if an affidavit or

12   declaration is insufficient), if reasonably requested by the Plaintiffs in connection with the Action."[26]

13   The HDK Settlement releases the DPP Settlement Class's claims against HDK that were or could

14   have been asserted in the Complaint.[27]

15         **2.      The Kamaya-Walsin Settlement**

16         The settlement with Kamaya-Walsin – which refers to Taiwanese corporation, Walsin

17   Technology Corporation, its Japanese subsidiary, Kamaya Electric Co., Ltd., and its U.S.

18   subsidiaries, Kamaya Inc. and Walsin Technology Corporation U.S.A.[28] – totals $5,250,000.

19   Discovery has revealed that during the Class Period, all or nearly all of Kamaya-Walsin's direct sales

20   of linear resistors in the U.S. were sold through Defendant Kamaya Inc.[29] The Kamaya-Walsin

21   Settlement amount represents approximately 8% of Kamaya-Walsin's direct sales to the Settlement

22

23   ─────────────────────
     [23] Friedman Decl., Ex. A, ¶ 4, Ex. B, ¶ 4.

24   [24] Friedman Decl., ¶ 3-4.

25   [25] Friedman Decl., Ex. A, ¶ 32, Ex. B, ¶ 51.

26   [26] Friedman Decl., Ex. A , ¶¶ 25-26.

     [27] *Id.*, ¶¶ 14-16.

27   [28] Friedman Decl., ¶ 4.

28   [29] *Id.*

1   Class during the Class Period.

2           The settlement also requires Kamaya-Walsin to provide "employee declarations or affidavits

3   relating to authentication or admissibility of documents and data (or employee testimony if an

4   affidavit or declaration is insufficient), if reasonably requested by the Plaintiffs in connection with

5   the Action."[30] Kamaya-Walsin will provide other cooperation to DPPs to assist their case against the

6   remaining defendants, including a declaration from Hideyuki Miura of Kamaya Electric, based on

7   his personal knowledge, in support of DPPs' case against the other defendants.[31]

8           Like the HDK Settlement, the Kamaya-Walsin Settlement releases the DPP Settlement

9   Class's claims against Kamaya-Walsin that were or could have been asserted in the Complaint.[32] The

10  release does not preclude DPPs from pursuing their claims against the other defendants.[33]

11  **C.     Notice and Implementation of Settlement**

12          DPPs have attached hereto proposed class notices and propose the following plan for the

13  dissemination of notice.[34] The Settlement Administrator, JND Legal Administration LLC, will direct

14  notice by mail to the class members, using data and documents obtained in discovery where DPPs

15  have identified nearly all of the class members and obtained contact information for more than 90%

16  of class members weighted by purchase volume.[35] Additionally, prior to mailing the proposed

17  notices, the Settlement Administrator will update all addresses using the United States Postal

18  Services' National Change of Address database, employ advanced address search methods in an

19  attempt to update and complete the mailing list where we have not already identified addresses for

20  class members, and mail notices to potential alternate addresses such as stores belonging to class

21  members.[36]

22

23          [30] Friedman Decl., Ex. B, ¶ 43.

24          [31] *Id.*, ¶ 42. To the extent DPPs and Kamaya-Walsin are unable to reach agreement regarding the
        scope of Mr. Miura's declaration, DPPs have retained their right to depose him. *Id.*

25          [32] *Id.*, ¶¶ 30-32.

26          [33] *Id.*, ¶ 51.

        [34] *See* Keough Decl., ¶ 11, Exs. B, D.

27          [35] Friedman Decl., ¶ 16.

28          [36] Keough Decl., ¶¶ 13-15.

1    DPPs have substantial data reflecting class members' respective purchases during the Class

2    Period.[37] Thus, individual notices will include pre-printed claim forms identifying each class

3    member's purchases, which will be sent directly to the significant portion of the class for whom

4    DPPs have names and contact information.[38] The notice package will instruct class members that

5    they will automatically receive a benefit if they do not take further action. Class members who wish

6    to challenge their purchase amount will be able to submit a revised claim form on the settlement

7    website or via mail and provide the Settlement Administrator with additional information for

8    review.[39]

9        The direct notice campaign will be supplemented with a robust digital campaign and a press

10   release distributed over PR Newswire's US1 Newsline, to ensure that all potential settlement class

11   members receive notice.[40] Self-identified class members will have the ability to submit an electronic

12   claim through the settlement website or download a paper version of the claim form to complete and

13   mail to the Settlement Administrator.[41] HDK and Kamaya-Walsin will permit use of a portion of the

14   settlement funds toward notice and administration costs, with costs to be split between the Settling

15   Defendants and prorated based on the amount of each's respective contribution.[42]

16   **D.      Plan of Distribution**

17       DPPs propose to distribute the settlement funds *pro rata* to class members based on the dollar

18   value of approved purchases of linear resistors per class member during the settlement class period.[43]

19   There will be no reversion of unclaimed funds to the Settling Defendants.

20

21

22

23        [37] Friedman Decl., ¶ 9.

24        [38] Keough Decl., ¶¶ 11, 17.

25        [39] *Id.*, ¶¶ 17, 24.

26        [40] *Id.*, ¶¶ 11, 19-22.

     [41] *Id.*, ¶ 24.

27        [42] Friedman Decl., Ex. A, ¶¶ 10, 20, Ex. B, ¶¶ 26, 37.

28        [43] Friedman Decl., ¶ 17.

1

## IV.    ARGUMENT

2

### A.    The Standards and Procedure for Preliminarily Approving a Class Settlement

3

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise or

4

settlement of class action claims. Approval of a settlement is a multi-step process, beginning with

5

preliminary approval, which then allows notice to be given to the class and objections to be filed,

6

after which there is a motion for final approval and a fairness hearing.[44] Preliminary approval is thus

7

not a dispositive assessment of the fairness of the proposed settlement; rather, preliminary approval

8

assesses only whether the proposed settlement falls within the "range of possible approval."[45]

9

Preliminary approval establishes an "initial presumption" of fairness,[46] such that notice may be given

10

to the class and the class may have a "full and fair opportunity to consider the proposed [settlement]

11

and develop a response."[47]

12

Preliminary approval of a settlement and notice to the proposed class is appropriate if: "(1)

13

the proposed settlement appears to be the product of serious, informed, non-collusive negotiations;

14

(2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class

15

representatives or segments of the class; and (4) falls with[in] the range of possible approval."[48] The

16

"initial decision to approve or reject a settlement proposal is committed to the sound discretion of the

17

trial judge."[49]  All of these requirements are met here.

18

19

20

21

[44] *See* Manual for Complex Litigation (Fourth) § 21.632, 320-21 (2004). All internal citations and quotation marks omitted and all emphases added, unless otherwise indicated.

22

[45] *Id.*; *see also Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 301-02 (E.D. Cal. 2011).

23

[46] *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

[47] *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).

24

[48] *The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, No. 15-CV-0224-YGR, 2016 WL

25

314400, at *11 (N.D. Cal. Jan. 25, 2016); *see Zepeda v. Paypal, Inc.*, No. C 10-2500 SBA, 2015 U.S. Dist. LEXIS 150577, at *14 (N.D. Cal. Nov. 5, 2015) (same); *Fraley v. Facebook, Inc.*, No. C 11-

26

1726 RS, 2012 U.S. Dist. LEXIS 116526, at *4 n.1 (N.D. Cal. Aug. 17, 2012) (same); *Tableware*, 484 F. Supp. 2d at 1079 (same).

27

[49] *Officers for Justice v. Civ. Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615,

28

625 (9th Cir. 1982).

1

### 1.    The Settlements Are the Result of Arm's-Length Negotiations

2

Weighing in favor of preliminary approval, these settlements arise out of informed, arm's-

3

length negotiations among counsel for the parties. The parties reached agreements after more than

4

two years of litigation, discovery, and investigation, and multiple settlement conferences among

5

counsel.[50]  The HDK settlement also benefitted from a full-day mediation session by an experienced

6

mediator, which further supports granting preliminary approval.[51]

7

It is also significant that the settlements were negotiated by experienced counsel with

8

extensive experience and success in large antitrust class actions.[52] Counsel have worked on this case

9

for more than two years and understand the risks and upside to this type of litigation generally, as

10

well as this case specifically.  Counsel's judgment that the settlements are fair and reasonable is

11

therefore entitled to significant weight.[53] These settlements are entitled to a presumption of fairness.

12

### 2.    The Settlements Have No Obvious Deficiencies

13

The proposed settlements have no obvious deficiencies. In its opinion in *In re Bluetooth*

14

*Headset Prods. Liability Litig.*,[54] the Ninth Circuit pointed to three factors as troubling signs of a

15

potential disregard for the class's interests during the course of negotiation: (a) when class counsel

16

receive a disproportionate distribution of the settlement; (b) when the parties negotiate a "clear

17

sailing" arrangement that provides for the payment of attorneys' fees separate and apart from class

18

19

20

[50] *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

21

[51] *See In re Zynga Inc. Secs. Litig.*, No. 12-cv-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (use of mediator and fact that some discovery had been completed "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement" ).

22

23

[52] Friedman Decl., ¶¶12-13; *see In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("'The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.'" (quoting *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig. v. Baumer*, MDL No. 726, 1989 WL 73211, at *1, *2 (C.D. Cal. March 9, 1989)).

24

25

[53] *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *accord Bellows v. NCO Fin. Sys. Inc.*, No. 3:07-cv-01413-W-AJB, 2008 WL 5458986, at *6-*7 (S.D. Cal. Dec. 10, 2008); *see also Officers for Justice*, 688 F.2d at 625.

26

27

28

[54] *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 947-48 (9th Cir. 2011).

1    funds; or (c) when the parties arrange for fees not awarded to plaintiffs' counsel to revert to the

2    defendants rather than the class.[55]

3          None of these deficiencies exist here. The proposed settlements create a common fund, with

4    no possibility of reversion. The funds will be used to cover costs and fees and compensate the class

5    based on a *pro rata* formula. There is no "clear sailing" provision, no payment of fees separate and

6    apart from the class funds, and no "kicker" provision like the one in *Bluetooth*, which would allow

7    unawarded monies to revert to the Settling Defendants. The proposed class notices inform class

8    members that class counsel will make a request for attorneys' fees up to 20 percent of the settlement

9    fund, as well as reimbursement of certain costs counsel has advanced to date.[56] Notably, the

10   percentage that will be requested for attorneys' fees is lower than the Ninth Circuit benchmark of 25

11   percent (using the "percentage-of-the fund" method accepted in this circuit).[57]  The absence of these

12   warning signs is a further indication of the settlements' fairness.[58]

13       **3.      The Settlements Do Not Provide Preferential Treatment for Segments of the Class or the Class Representative**

14

15         The third factor to be considered by this Court in determining whether the settlements should

16   be preliminarily approved is whether the settlements grant preferential treatment to class

17   representatives or subsets of the class.[59] This factor also favors approving these settlements.

             **a.      All Class Members Will Recover Their *Pro Rata* Share of the Settlement**

18
         A plan of distribution of class settlement funds is subject to the "fair, reasonable and
19
     adequate" standard that applies to approval of class settlements.[60] A plan of distribution that
20
     compensates class members based on the type and extent of their injuries (including on a *pro-rata*
21
     basis) is generally considered reasonable.[61]
22

23       _____

     [55] *Id.* at 947.

24       [56] Keough Decl., Ex. B, ¶ 17.

25       [57] *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

         [58] *Zynga*, 2015 WL 6471171, at *9.

26       [59] *Zepeda*, 2015 U.S. Dist. LEXIS 150577, at *14.

27       [60] *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).

         [61] *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663-JST, 2015 U.S. Dist. LEXIS 159020, at
28   *23 (N.D. Cal. Nov. 23, 2015) ("Such a plan 'fairly treats class members by awarding a pro rata

1    DPPs propose to distribute the settlement funds *pro rata* to class members based on the dollar

2    value of approved purchases per class member of linear resistors during the settlement class period.[62]

3    There will be no reversion of unclaimed funds to the Settling Defendants.

4          **b.**    **The Requested Service Award for the Class Representative Reflects Its Efforts on Behalf of the Class**

5

6    DPPs will request a service award for the class representative, Schuten Electronics, Inc., in

7    the amount of $25,000.[63] As the Ninth Circuit has recognized, service awards "that are intended to

8    compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class

9    action cases.'"[64] Although DPPs will request this award alongside final approval of the settlement,

10   DPPs will defer the payment until the distribution of funds to the whole Settlement Class.

11   The representative of the DPP class, Schuten Electronics, has been actively involved in the

12   litigation of this case and, indeed, without its willingness to come forward and prosecute the action

13   when neither the government nor any other direct purchaser would, the Settlement Class would

14   receive nothing for its injuries and the Defendants would be left to pursue their illegal conduct

15   unfettered. Schuten assisted Class Counsel in investigating and prosecuting this action, retained and

16   preserved its documents for years, responded to detailed interrogatories, and searched for and

17   produced documents responsive to fifty-four document requests.[65] Defendants also deposed a

18   representative of Schuten Electronics in a Rule 30(b)(6) deposition, identifying eight broad subject

19   areas in the deposition notice, each with several sub-parts.[66]  In the face of this service and

20   perseverance, an award of $25,000 is reasonable.

21

22   share' to the class members based on the extent of their injuries."); *Noll v. eBay, Inc.*, No. 5:11-cv-

23   04585-EJD, 2015 U.S. Dist. LEXIS 123147, at *10, *50 (N.D. Cal. Sept. 15, 2015) (approving *pro-rata* distribution as fair and reasonable); *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-

24   LHK, 2015 U.S. Dist. LEXIS 118051, at *29-*30 (N.D. Cal. Sept. 2, 2015) (approving *pro-rata* distribution of fractional share based upon class member's total base salary as fair and reasonable).

25   [62] Friedman Decl., ¶ 17.

26   [63] *Id.*,¶ 14.

27   [64] *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. Cal. 2015).

28   [65] Friedman Decl., ¶ 14.

    [66] *Id.*

1

### 4.     The Settlements Easily Fall Within the Range of Possible Approval

2      To grant preliminary approval, this Court must decide that the settlements fall within the

3 range of possible approval.[67] In making this determination, courts evaluate the settlements to ensure

4 they are "'fair, reasonable, and adequate'" and "'not the product of fraud or overreaching by, or

5 collusion between, the negotiating parties.'"[68]

6      Here, the recovery for the DPP Settlement Class – $2 million from HDK, representing

7 approximately 18.5% of their relevant U.S. sales and $5.25 million from Kamaya-Walsin,

8 representing approximately 8% of their relevant U.S. sales – easily falls within the range of possible

9 approval.  In similar direct purchaser antitrust cases, courts have approved settlements equating to

10 significantly lower percentages of defendants' sales.  Indeed, decisions have approved of settlements

11 where the recovery was roughly equivalent to 1% of defendants' relevant U.S. commerce.[69, 70]

12      Also favoring preliminary approval of these two settlements is that both settlements preserve

13 DPPs' ability to pursue their claims against the other defendants for all of DPPs' damages. Thus, not

14 only do the settlements represent a substantial recovery for DPPs, they also do not reduce DPPs'

15 potential total recovery. A recent district court decision explained why this is important: "this

16

17      [67] *See Zepeda*, 2015 U.S. Dist. LEXIS 150577, at *14; *Fraley*, 2012 U.S. Dist. LEXIS 116526, at *4 n.1; *Tableware*, 484 F. Supp. 2d at 1079.

18      [68] *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA(JCS), 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008) (quoting *Officers for Justice*, 688 F.2d at 625).

19      [69] *See Four in One Co. v. S.K. Foods, L.P.*, No. 2:08-cv-3017 KJM EFB,2014 U.S. Dist. LEXIS 602 at *14 (N.D. Cal. Jan. 2, 2014) (settlement amounting to 1% of defendants' U.S. sales of tomatoes "compares favorably with antitrust class action settlements ultimately approved by other courts"); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 344 (E.D. Pa. 2007) (granting final approval to settlements representing 1.5% of settling defendants' sales of the relevant product for the four years during the class period in which they had their highest sales totals); *Meijer, Inc. v. 3M*, No. 04-cv-5871, 2006 WL 2382718, at *16, 2006 (E.D. Pa. Aug. 14, 2006) (approving settlement fund equal to approximately 2% of defendant 3M's sales to the settlement class); *In re Linerboard Antitrust Litig.*, 321 F.Supp.2d 619, 627 (E.D. Pa. 2004) (approving settlement equal to 1.62% of the settling defendants' sales); *cf.* Order Granting Settlement Class Certification and Preliminary Approval of Class Action Settlement with Sony Defendants, *In re Lithium Ion Battery Antitrust Litig.*, No. 13-md-02420 YRG (N.D. Cal. March 25, 2016), ECF No. 1182 (granting preliminary approval of settlement amount that represented approximately 10% of the **overcharge** on Sony's U.S. sales of lithium ion batteries, as estimated by the direct purchaser plaintiffs on page six of their motion for preliminary approval (ECF No. 1090)).

27      [70] These figures do not account for the potential class members who will exclude themselves from these opt-out settlements. Because certain class members may opt-out, the percentages identified in the text likely will increase.

28

1   settlement provides increased value in another pending class action suit in this case by creating

2   added incentive for the remaining defendants to settle or allowing greater recovery for the Plaintiffs

3   at trial."[71] Both settlements also have cooperation provisions that will assist the case against the

4   remaining defendants. For example, the Kamaya-Walsin settlement agreement provides for a

5   declaration by a key participant in the conspiracy, Mr. Miura.

6         Additionally, while DPPs believe their case is strong, the difficulties and risks in litigating

7   this class action weigh in favor of preliminarily approving the settlements.[72] DPPs bear the burden of

8   establishing liability, impact, and damages.[73] Proving liability will likely be more challenging than

9   many other antitrust cases in which the cartel has been found criminally liable, including the

10  *Capacitors* case before this Court. DPPs have been proceeding after the Department of Justice ended

11  its investigation without issuing any indictments.[74] And DPPs' initial settlement amounts still

12  compare favorably to cases with the strength of evidence to support criminal prosecutions.  Pursuant

13  to the U.S. Sentencing Guidelines Manual, "[i]n lieu of the pecuniary loss" under the Guidelines'

14  Base Fine provision, an organization's base fine for price-fixing agreements among competitors

15  should be calculated as "20 percent of the volume of affected commerce."[75] These guidelines are

16  applicable to criminal prosecutions with a heightened burden of proof, underscoring why the

17

18      [71] *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058 JST, 2015 WL 9266493, at
19  *6 (N.D. Cal. Dec. 17, 2015).

20      [72] *See Rodriguez*, 563 F.3d at 966 (summarizing risks of litigating class actions).

21      [73] *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("'Indeed, the
    history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on
    liability, but recovered no damages, or only negligible damages, at trial, or on appeal.'" (quoting *In
22  re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998))); *Auto.
    Refinishing*, 617 F. Supp. 2d at 341 (approving settlements in part because the "antitrust class action
23  is arguably the most complex action to prosecute[;] [t]he legal and factual issues involved are always
    numerous and uncertain in outcome").

24      [74] *See Auto. Refinishing*, 617 F. Supp. 2d at 344-45 (fact that Department of Justice, like here,
25  terminated its investigation without issuing any indictments, favored approval of settlements because
    it indicated that establishing liability "would not be a foregone conclusion" and thus the settlements
26  were reasonable "considering the risks of litigation and considering the Government's reluctance to
    prosecute"); *Cf. Rodriguez*, 563 F.3d at 966 (in favor of affirming approval of class action
27  settlement, the Ninth Circuit explained that "[t]he class in this case does not have the benefit, like
    some other antitrust classes, of previous litigation between the defendants and the government").

28      [75] U.S. Sentencing Guidelines Manual § 2R.1(d)(1) (2016).

MOTION FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENTS WITH HDK, KAMAYA & WALSIN DEFS.     - 14 -
- Case No.: 15-cv-03820-JD
010554-11 1057204 V1

1   percentages of commerce reflected in in these civil settlements indicate excellent recoveries.

2   Defendants also have argued that, even assuming liability, proving impact and damages will be

3   difficult to establish because of the relatively small margins in the resistors' industry. Finally,

4   certifying a litigation class and defending one's experts in antitrust cases is inherently risky (not to

5   mention expensive).  Ensuring that DPPs receive some damages now hedges these risks in a manner

6   that inures to the Class's benefit.

7       Regardless of the risks, however, $7.25 million represents an outstanding recovery and result

8   by any measure, easily falling within the range of "fair, reasonable, and adequate."

9   **B.     The Proposed Settlement Class Satisfies Rule 23**

10      Certification is appropriate where the proposed class and the proposed class representative

11  meet the four prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequacy of

12  representation. In addition, certification of a class action for damages requires a showing that

13  "questions of law or fact common to class members predominate over any questions affecting only

14  individual members, and that a class action is superior to other available methods for fairly and

15  efficiently adjudicating the controversy."[76] The proposed settlement class (the same for both

16  settlements) satisfies all of the elements.

17      **1.     Rule 23(a): Numerosity**

18      The first requirement for maintaining a class action is that its members are so numerous that

19  joinder would be "impracticable."[77] No minimum number has been established, but courts generally

20  find numerosity where class membership exceeds forty.[78] Geographic dispersal of plaintiffs also

21  supports a finding that joinder is impracticable.[79] In this case, the DPP Settlement Class is

22  geographically dispersed and is primarily estimated to have approximately nine hundred members.[80]

23

24      [76] Fed. R. Civ. P. 23(b)(3).

        [77] Fed. R. Civ. P. 23(a)(1).

25      [78] Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 18:4 (4th ed. 2002).

26      [79] *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal. 2005); *In re TFT-LCD
        (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 300 (N.D. Cal. 2010), *abrogated on other grounds by
        In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012)

27

28      [80] Friedman Decl., ¶ 15.

Accordingly, the numerosity requirement is satisfied.

### 2. Rule 23(a): The Case Involves Questions of Law or Fact Common to the Class

The second requirement of Rule 23 is the existence of common questions of law or fact.[81] This requirement is to be "construed permissively,"[82] and a single issue has been held sufficient to satisfy the commonality requirement.[83] Here, numerous questions of law and fact are common to the class. These common questions include the overriding issue of whether defendants engaged in a price-fixing agreement that injured the class as well as:

(1) Whether Defendants and their co-conspirators conspired to raise, fix, stabilize or maintain the prices of linear resistors sold in the United States;

(2) Whether the alleged conspiracy violated Section 1 of the Sherman Act;

(3) The duration and extent of the conspiracy;

(4) Whether defendants' conduct caused prices of linear resistors to be set at artificially high and non-competitive levels; and

(5) Whether defendants' conduct injured the members of the class and, if so, the appropriate class-wide measure of damages.

Similar common questions have been routinely found to satisfy the commonality requirement in other antitrust class actions.[84]

### 3. Rule 23(a): Plaintiff's Claims Are Typical of the Claims of the Class

The "claims . . . of the representative parties [must be] typical of the claims . . . of the class."[85] "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."[86] Typicality is easily satisfied in cases involving allegations of horizontal price-fixing

---

[81] Fed. R. Civ. P. 23(a)(2).

[82] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

[83] *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996).

[84] *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *3 (N.D. Cal. June 5, 2006) ("the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist"); *accord Rubber Chems.*, 232 F.R.D. at 351; *TFT-LCD*, 267 F.R.D. at 300.

[85] Fed. R. Civ. P. 23(a)(3).

[86] *Hanlon*, 150 F.3d at 1020.

because "in instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members."[87] In this case, the claims of the representative plaintiff are typical of the claims of the class members because they all directly purchased – at inflated prices – linear resistors sold by defendants.

### 4. Rule 23(a): The Plaintiff Will Fairly and Adequately Represent the Interests of the Class

The final requirement of Rule 23(a) is that the representative plaintiff will fairly and adequately represent the interests of the class. This consists of two separate inquiries. *First*, this requires that class representatives do not have interests that are antagonistic to or in conflict with the interests of the class. *Second*, plaintiffs must be represented by counsel of sufficient diligence and competence to fully litigate the case.[88]

Here, the class representative has been actively involved in the litigation of this case. Schuten has responded to interrogatories and document requests, prepared for and testified at a deposition, and assisted with the investigation and prosecution of this case.[89] The interests of the named plaintiff and class members are aligned because they all suffered similar injury in the form of inflated linear resistor prices due to the conspiracy, and all class members seek the same relief. By proving its own claims, Schuten will necessarily be proving the claims of its fellow class members.

Plaintiffs also have retained highly capable and well-recognized counsel with extensive experience in antitrust cases. Plaintiffs' interim co-lead counsel, Hagens Berman Sobol & Shapiro, LLP, and Cohen Milstein Sellers & Toll PLLC, were appointed by the Court as DPPs' interim Class Counsel on December 21, 2015. They have undertaken the responsibilities assigned to them by the Court and vigorously prosecuted this action. Each of DPPs' counsel has successfully prosecuted numerous antitrust class actions on behalf of injured purchasers throughout the United States. DPPs'

---

[87] *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993); *In re Citric Acid Antitrust Litig.*, No. 95-1092, 1996 WL 655791, at *3 (N.D. Cal. Oct. 2, 1996).

[88] *Hanlon*, 150 F.3d at 1020; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

[89] Friedman Decl., ¶ 14.

1  counsel are capable of, and committed to, prosecuting this action on behalf of the class. DPP

2  counsel's prosecution of this case, and, indeed, the settlements, demonstrate their diligence and

3  competence. Rule 23(a)(4)'s requirements have been met.

4       **5.**      **Rule 23(b)(3): Common Questions of Fact or Law Predominate**

5       Predominance, under Rule 23(b)(3), "is a test readily met in certain cases alleging consumer

6  or securities fraud or violations of the antitrust laws."[90] The weight of authority holds that in

7  horizontal price-fixing cases like this one, the predominance requirement is easily satisfied.[91] The

8  existence of a conspiracy is the overriding issue common to all plaintiffs, sufficient to satisfy the

9  Rule 23(b)(3) predominance requirement.[92]

10      DPPs allege anticompetitive conduct – including by participation in meetings discussing

11 pricing and production capacity of linear resistors – that is supported by common evidence to date.[93]

12 Common issues relating to the existence of the alleged conspiracy and defendants' acts in

13 furtherance of the alleged conspiracy predominate over any questions arguably affecting only

14 individual class members because they are the central issue in the case and proof is identical for

15 every member of the class. If separate actions were to be filed by each class member in the instant

16 case, each would have to establish the existence of the same alleged conspiracy and would depend on

17 identical evidence, and each would prove damages using identical "textbook" economic models. The

18 evidence needed to prove how defendants implemented and enforced their alleged conspiracy to set

19 the prices of linear resistors at supra-competitive levels will be common for all class members. These

---

[90] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

[91] *See, e.g.*, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 300 (3d Cir. 2011); *TFT-LCD*, 267 F.R.D. at 310 (collecting cases and explaining: "Courts have frequently found that whether a price-fixing conspiracy exists is a common question that predominates over other issues because proof of an alleged conspiracy will focus on defendants' conduct and not on the conduct of individual class members.").

[92] *See, e.g.*, *TFT-LCD*, 267 F.R.D. at 310; *Rubber Chems.*, 232 F.R.D. at 352 ("[T]he great weight of authority suggests that the dominant issues in cases like this are whether the charged conspiracy existed and whether price-fixing occurred."); *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 167 (C.D. Cal. 2002) ("In price-fixing cases, courts repeatedly have held that the existence of the conspiracy is the predominant issue and warrants certification even where significant individual issues are present." (internal quotation marks omitted)).

[93] *See* Friedman Decl., ¶ 8; Complaint ¶¶ 57-151.

1    issues pose predominant common questions of law and fact.

2         Moreover, the Court need not concern itself with questions of the manageability of a trial

3    because the settlements dispose of the need for a trial as to HDK and Kamaya-Walsin, along with

4    any "thorny issues" that might arise. "Confronted with a request for settlement-only class

5    certification, a district court need not inquire whether the case, if tried, would present intractable

6    management problems . . . for the proposal is that there be no trial."[94] As Judge Posner has

7    explained, manageability concerns that might preclude certification of a litigated class may be

8    disregarded with a settlement class "because the settlement might eliminate all the thorny issues that

9    the court would have to resolve if the parties fought out the case."[95] Issues common to the class

10   predominate in this case.

11        **6.    A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Case**

12        Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly

13   and efficiently adjudicating the controversy." If common questions are found to predominate in an

14   antitrust action, courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is

15   satisfied.[96] Here, it would be very inefficient to litigate class members' claims in multiple individual

16   proceedings. In addition, "[i]n antitrust cases such as this, the damages of individual direct

17   purchasers are likely to be too small to justify litigation, but a class action would offer those with

18   small claims the opportunity for meaningful redress."[97] The prosecution of separate actions would

19   also create the risk of inconsistent rulings, and could result in prejudice to the named plaintiff and

20   members of the proposed settlement class. Most members of the proposed settlement class would be

21

22

23   _____

24        [94] *Amchem*, 521 U.S. at 620 (discussing manageability, which is a sub-part of Rule 23(b)(3) predominance); *see also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 68 (D. Mass. 2005).

25        [95] *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004); *see also In re Initial Public Offering Secs. Litig.*, 226 F.R.D. 186, 190, 195 (S.D.N.Y. 2005) (settlement class may be broader than litigated class because settlement resolves manageability/predominance concerns).

26        [96] *TFT-LCD*, 267 F.R.D. at 314-15.

27        [97] *In re Static Random Access (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2008 WL 4447592, at *7 (N.D. Cal. Sept. 29, 2008).

28

1    effectively foreclosed from pursuing their claims absent class certification.[98] The proposed

2    settlement class satisfies the requirements of Rule 23(b)(3).

3    **C.      The Court Should Reaffirm the Appointment of Class Counsel**

4          Federal Rule of Civil Procedure 23(c)(1)(B) states that "[a]n order certifying a class action . .

5    . must appoint class counsel under Rule 23(g)." Rule 23(g)(1)(C) states that "[i]n appointing class

6    counsel, the court (A) must consider: [i] the work counsel has done in identifying or investigating

7    potential claims in the action, [ii] counsel's experience in handling class actions, other complex

8    litigation, and claims of the type asserted in the action, [iii] counsel's knowledge of the applicable

9    law, and [iv] the resources counsel will commit to representing the class."

10         In appointing Hagens Berman Sobol & Shapiro, LLP and Cohen Milstein Sellers & Toll

11   PLLC as interim co-lead counsel for the direct purchaser class, the Court considered the submissions

12   and arguments of all the parties before it and deemed interim co-lead counsel best suited to protect

13   the direct purchasers' interests. Since that time, interim co-lead counsel has capably managed this

14   complex antitrust class action, and the settlements with HDK and Kamaya-Walsin are products of

15   that representation which will provide real and meaningful benefits to the class. The work they have

16   done to date supports the conclusion that they should be appointed as Class Counsel for purposes of

17   the settlements.[99] The firms meet the criteria of Rule 23(g)(1).[100]

18   **D.      The Proposed Class Notice and Plan for Dissemination Meet the Strictures of Rule 23**

19         Rule 23(e)(1) requires that a court approving a class action settlement must "direct notice in a

20   reasonable manner to all class members who would be bound by the proposal." In addition, for a

21   Rule 23(b)(3) class, the Rule requires the court to "direct to class members the best notice that is

22   practicable under the circumstances, including individual notice to all members who can be

23

24   _____

25         [98] *Hanlon*, 150 F.3d at 1023 ("many claims [that] could not be successfully asserted individually . . . would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs").

26         [99] *See, e.g.*, *Harrington v. City of Albuquerque*, 222 F.R.D. 505, 520 (D.N.M. 2004).

27         [100] *Cf. Farley v. Baird, Patrick & Co., Inc.*, No. 90 Civ. 2168 (MBM), 1992 WL 321632, at *5 (S.D.N.Y. Oct. 28, 1992) ("Class counsel's competency is presumed absent specific proof to the contrary by defendants.").

28

1    identified through reasonable effort."[101] A class action settlement notice "is satisfactory if it

2    generally describes the terms of the settlement in sufficient detail to alert those with adverse

3    viewpoints to investigate and to come forward and be heard."[102]

4         The proposed plan of notice is supported by an experienced notice and claims administrator –

5    JND Legal Administration – that has worked cooperatively with counsel to develop the proposed

6    plan of notice. JND's Jennifer Keough submits a declaration in support of the proposed notice plan

7    attesting to its adequacy and constitutionality.[103] The proposed forms of notice provides all of the

8    information required by Rule 23(c)(2)(B) to the settlement class, in language that is plain and easy to

9    understand.[104] DPPs have followed, as closely as possible, the language for settlements

10   recommended by this District's Procedural Guidance for Class Action Settlements.[105] With this

11   motion, DPPs provide proposed forms for the mailed long-form notice, summary notice, and online

12   banner notices.[106]

13        The proposed plan of notice includes several components. The direct notice component will

14   include mailed notice to the class members for whom DPPs already have identified names and

15   contact information (more than 90% of class members weighted by purchase volume), plus those

16   class members for whom the Settlement Administrator will be able to identify contact information.[107]

17   Those class members will receive individualized notices with pre-printed claim forms identifying the

18   class member's purchases.[108] The notice package will instruct class members that they will

19   automatically receive a benefit if they do not take further action, and will provide opportunities by

20

21        [101] Fed. R. Civ. P. 23(c)(2)(B).

22        [102] *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also* Fed. R. Civ. P.
         23(c)(2)(B) (describing specific information to be included in the notice).

23        [103] *See* Keough Decl., ¶¶ 1-10, 18, 27, Ex. A.

24        [104] *See id.*, ¶¶ 10, 17.

25        [105] *See* Procedural Guidance for Class Action Settlements, U.S. District Court for the Northern
         District of California, http://www.cand.uscourts.gov/ClassActionSettlementGuidance (last visited
         Aug. 16, 2018).

26        [106] Keough Decl., ¶¶ 11, 21, Exs. B, D, E.

27        [107] Friedman Decl., ¶ 16; Keough Decl., ¶¶ 11-15.

28        [108] Keough Decl., ¶ 17.

1  mail or online to submit additional information if a class member wishes to challenge its purchase

2  amount.[109]

3      The direct notice campaign will be supplemented by a robust digital campaign and press

4  release to ensure that all potential settlement class members receive notice.[110] There will be a press

5  release distributed over PR Newswire's US1 Newsline, as well as a digital banner campaign in a

6  leading public eNewsletter and placed on industry websites.[111] Self-identified class members will

7  have the ability to submit an electronic claim on the settlement website or download a paper version

8  of the claim form to complete and mail to the Settlement Administrator.[112] DPPs will establish a

9  website where class members will be able to find additional, detailed information, including

10 "Frequently Asked Questions," important case documents, and contact information for both class

11 counsel and the Settlement Administrator. Class members visiting the settlement website will have

12 the ability to enter an access code to review their purchase information. A toll-free telephone number

13 will also be established to answer questions from class members.[113]

14     These notice provisions meet the requirements of Rule 23. They will allow the class a full

15 and fair opportunity to review and respond to the proposed settlement.

16 **E.    Proposed Schedule for Dissemination of Notice and Final Approval**

17     DPPs propose the following schedule for the dissemination of class notice and final approval:

| Event | Proposed Deadline |
|---|---|
| Notice campaign to begin, including website, mailing, and digital notice | September 28, 2018 |
| Last day for motion for attorneys' fees, costs, expenses, and service awards | November 13, 2018 (14 days before objection deadline) |
| Last day for objections and requests for exclusion from the class | November 27, 2018 (60 days from notice) |
| Last day for motion in support of final approval of settlements | December 13, 2018 (16 days after objection deadline) |
| Last day to submit claims | December 27, 2018 |

[109] *Id.*, ¶¶ 11, 17, 24.

[110] *Id.*, ¶ 11, 19-22.

[111] *Id.*, ¶¶ 19-22, Ex. E.

[112] *Id.*, ¶ 24.

[113] *Id.*, ¶ 31.

| Event | Proposed Deadline |
|---|---|
| | (90 days from notice) |
| Fairness Hearing | January 17, 2019<br>(35 days from motion for final approval), unless otherwise ordered by the Court. |

## V.    CONCLUSION

With these settlements, DPPs have guaranteed recovery of $7.25 million for the direct purchaser class. The settlements were reached only after intense negotiations that followed several years of hard-fight litigation, and they are easily within the range of possible approval. Respectfully, DPPs request that this Court enter an order: (1) preliminarily approving the proposed class action settlements with HDK and Kamaya-Walsin; (2) certifying the settlement class; (3) appointing Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll PLLC as DPP Class Counsel; and (4) approving the manner and form of notice and proposed plan of allocation to class members.

DATED: August 16, 2018                    HAGENS BERMAN SOBOL SHAPIRO LLP

                                          By       s/ Jeff D. Friedman
                                                 JEFF D. FRIEDMAN

                                          Shana E. Scarlett (217895)
                                          Benjamin J. Siegel (256260)
                                          715 Hearst Avenue, Suite 202
                                          Berkeley, CA 94710
                                          Telephone: (510) 725-3000
                                          Facsimile:  (510) 725-3001
                                          jefff@hbsslaw.com
                                          shanas@hbsslaw.com
                                          bens@hbsslaw.com

                                          Steve W. Berman (*pro hac vice*)
                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                          1918 Eighth Avenue, Suite 3300
                                          Seattle, WA 98101
                                          Telephone: (206) 623-7292
                                          Facsimile:  (206) 623-0594
                                          steve@hbsslaw.com

                                          Kit A. Pierson (*pro hac vice*)
                                          Daniel A. Small (*pro hac vice*)
                                          Emmy L. Levens (*pro hac vice*)
                                          Robert A. Braun (*pro hac vice*)
                                          Laura Alexander (255485)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
kpierson@cohenmilstein.com
dsmall@cohenmilstein.com
elevens@cohenmilstein.com
lalexander@cohenmilstein.com
rbraun@cohenmilstein.com

*Co-Lead Counsel for Direct Purchaser Plaintiffs*