Jeff D. Friedman (173886)
Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Kit A. Pierson (*pro hac vice*)
Daniel A. Small (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
kpierson@cohenmilstein.com
dsmall@cohenmilstein.com

*Co-Lead Counsel for Direct Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE RESISTORS ANTITRUST LITIGATION<br><br>This Documents Relates to:<br><br>DIRECT PURCHASER ACTIONS | Case No. 3:15-cv-03820-JD<br><br>DIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH HDK, KAMAYA/WALSIN, PANASONIC, AND ROHM DEFENDANTS AND DISSEMINATION OF CLASS NOTICE<br><br>Date:   December 13, 2018<br>Time:   10:00am<br>Dept:   Courtroom 11, 19th Floor<br>Judge:  Hon. James Donato |

1

**NOTICE OF MOTION AND MOTION**

2

PLEASE TAKE NOTICE that on December 13, 2018, at 10:00 a.m. or as soon thereafter as

3

the matter may be heard by the Honorable Judge James Donato of the United States District Court

4

for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue,

5

San Francisco, CA 94102, Direct Purchaser Plaintiffs will and hereby do move the Court pursuant to

6

Federal Rules of Civil Procedure 23 for an order:

7

      (1)     preliminarily approving proposed class action settlements with Defendants HDK America, Inc. and Hokuriku Electric Industry Co. (collectively "HDK");

8

              Defendants Kamaya Inc. and Kamaya Electric Co., Ltd. (collectively "Kamaya"); Defendants Walsin Technology Corporation and Walsin

9

              Technology Corporation U.S.A. (collectively "Walsin"); Defendant Panasonic

10

              Corporation ("Panasonic"); and Defendants ROHM Co., Ltd. and ROHM Semiconductor U.S.A., LLC ("ROHM");

11

      (2)     certifying the settlement classes;

12

      (3)     appointing Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers &

13

              Toll PLLC as Class Counsel; and

14

      (4)     approving the manner and form of notice and proposed plan of allocation to

15

              class members.

16

This Motion is based on this Notice of Motion and Unopposed Motion for Preliminary

17

Approval of Class Action Settlements with the HDK, Kamaya, Walsin, Panasonic, and ROHM

18

Defendants and Dissemination of Class Notice, the following memorandum of points and authorities,

19

the accompanying settlement agreements, and the pleadings and papers on file in this action.

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................1

II.    PROCEDURAL HISTORY .................................................................................3

III.   SUMMARY OF SETTLEMENT TERMS ..........................................................6

       A.    The DPP Settlement Class ......................................................................6

       B.    The Settlement Consideration and Release of Claims ...........................7

             1.    The HDK Settlement ...................................................................7

             2.    The Kamaya-Walsin Settlement ..................................................7

             3.    The Panasonic Settlement............................................................8

             4.    The ROHM Settlement .................................................................8

             5.    KOA Remains Jointly and Severally Liable for the Entire
                   Amount of DPPs' Remaining Damages .......................................9

       C.    Notice and Implementation of Settlement...............................................9

       D.    Plan of Distribution ..............................................................................10

IV.    ARGUMENT ....................................................................................................10

       A.    The Standards and Procedure for Preliminarily Approving a Class
             Settlement .............................................................................................10

             1.    The Settlements Are the Result of Arm's-Length
                   Negotiations...............................................................................11

             2.    The Settlements Have No Obvious Deficiencies ........................12

             3.    The Settlements Do Not Provide Preferential Treatment for
                   Segments of the Class or the Class Representative ....................13

             4.    The Settlements Easily Fall Within the Range of Possible
                   Approval ....................................................................................14

       B.    The Proposed Settlement Class Satisfies Rule 23 .................................17

             1.    Rule 23(a): Numerosity ..............................................................18

             2.    Rule 23(a): The Case Involves Questions of Law or Fact
                   Common to the Class..................................................................18

             3.    Rule 23(a): Plaintiff's Claims Are Typical of the Claims of
                   the Class.....................................................................................19

4.     Rule 23(a): The Plaintiff Will Fairly and Adequately
       Represent the Interests of the Class.................................................19

5.     Rule 23(b)(3): Common Questions of Fact or Law
       Predominate........................................................................................20

6.     A Class Action Is Superior to Other Available Methods for
       the Fair and Efficient Adjudication of this Case ...........................21

C.     The Court Should Reaffirm the Appointment of Class Counsel.............................22

D.     The Proposed Class Notice and Plan for Dissemination Meet the
       Strictures of Rule 23 ........................................................................................23

E.     Information Required by Updated Northern District of California
       Procedural Guidance for Class Action Settlements.......................................24

F.     Proposed Schedule for Dissemination of Notice and Final
       Approval ............................................................................................................26

V.     CONCLUSION ...................................................................................................26

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**FEDERAL CASES**

4

5

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ....................................................................................................... 21, 22

6

7

*In re Auto. Refinishing Paint Antitrust Litig.,*
    617 F. Supp. 2d 336 (E.D. Pa. 2007).............................................................................. 15, 17

8

*Bellows v. NCO Fin. Sys. Inc.,*
    2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) .................................................................... 12

9

10

*In re Bluetooth Headset Prods. Liability Litig.,*
    654 F.3d 935 (9th Cir. 2011) ....................................................................................... 12, 13

11

*Carnegie v. Household Int'l, Inc.,*
    376 F.3d 656 (7th Cir. 2004) ............................................................................................. 22

12

13

*In re Catfish Antitrust Litig.,*
    826 F. Supp. 1019 (N.D. Miss. 1993) ............................................................................... 20

14

15

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
    2016 WL 3648478 (N.D. Cal. July 7, 2016) ..................................................................... 16

16

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
    2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) .................................................................. 16

17

18

*Churchill Vill., LLC v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) ............................................................................................. 24

19

20

*In re Citric Acid Antitrust Litig.,*
    145 F. Supp. 2d 1152 (N.D. Cal. 2001).............................................................................. 13

21

*In re Citric Acid Antitrust Litig.,*
    1996 WL 655791 (N.D. Cal. Oct. 2, 1996) ....................................................................... 20

22

23

*Collins v. Cargill Meat Sols. Corp.,*
    274 F.R.D. 294 (E.D. Cal. 2011)........................................................................................ 11

24

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
    2006 WL 1530166 (N.D. Cal. June 5, 2006) .................................................................... 19

25

26

*Farley v. Baird, Patrick & Co., Inc.,*
    1992 WL 321632 (S.D.N.Y. Oct. 28, 1992) ..................................................................... 23

27

28

*Four in One Co. v. S.K. Foods, L.P.,*
    2014 WL 28808 (N.D. Cal. Jan. 2, 2014).......................................................................... 15

*Fraley v. Facebook, Inc.*,
   2012 U.S. Dist. LEXIS 116526 (N.D. Cal. Aug. 17, 2012) .................................................. 11, 15

*Gaudin v. Saxon Mortg. Servs., Inc.*,
   2015 U.S. Dist. LEXIS 159020 (N.D. Cal. Nov. 23, 2015) ....................................................... 13

*Haley v. Medtronic, Inc.*,
   169 F.R.D. 643 (C.D. Cal. 1996).............................................................................................. 19

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................................... 19, 20, 22

*Harrington v. City of Albuquerque*,
   222 F.R.D. 505 (D.N.M. 2004) ................................................................................................ 23

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ......................................................................... 12

*In re High-Tech Emp. Antitrust Litig.*,
   2015 U.S. Dist. LEXIS 118051 (N.D. Cal. Sept. 2, 2015) ....................................................... 13

*In re Initial Public Offering Secs. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005).............................................................................................. 22

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ................................................................................................... 20

*In re Linerboard Antitrust Litig.*,
   321 F. Supp. 2d 619 (E.D. Pa. 2004)....................................................................................... 15

*Meijer, Inc. v. 3M*,
   2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) .......................................................................... 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004).............................................................................................. 12

*Noll v. eBay, Inc.*,
   2015 U.S. Dist. LEXIS 123147 (N.D. Cal. Sept. 15, 2015) ..................................................... 13

*In re NVIDIA Corp. Derivative Litig.*,
   2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ......................................................................... 15

*Officers for Justice v. Civ. Serv. Comm'n of the City and Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) .............................................................................................. 11, 12

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. Cal. 2015) ........................................................................................... 14

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) ................................................................................................. 13

*In re Relafen Antitrust Litig.*,
   231 F.R.D. 52 (D. Mass. 2005) .......................................................................... 22

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ..................................................................... 11, 17

*In re Rubber Chems. Antitrust Litig.*,
   232 F.R.D. 346 (N.D. Cal. 2005) ........................................................ 18, 19, 21

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000)........................................................................ 19

*In re Static Random Access (SRAM) Antitrust Litig.*,
   2008 WL 4447592 (N.D. Cal. Sept. 29, 2008).................................................. 22

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) .............................................................................. 21

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007).................................................... 11, 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   686 F.3d 741 (9th Cir. 2012) .................................................... 18, 19, 21, 22

*The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*,
   2016 WL 314400 (N.D. Cal. Jan. 25, 2016).................................................... 11

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*,
   209 F.R.D. 159 (C.D. Cal. 2002) ...................................................................... 21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................................ 17

*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983) ............................................................................ 11

*Zepeda v. Paypal, Inc.*,
   2015 U.S. Dist. LEXIS 150577 (N.D. Cal. Nov. 5, 2015) ...................... 11, 13, 15

*In re Zynga Inc. Secs. Litig.*,
   2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .................................... 12, 13, 16

**FEDERAL STATUTES**

Sherman Act Section 1 .......................................................................................... 19

**FEDERAL RULES**

Federal Rule of Civil Procedure 23 ................................................................. *passim*

MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENTS WITH HDK, KAMAYA, WALSIN,
PANASONIC & ROHM DEFS. – No.: 15-cv-03820-JD
010554-11 1078523 V1

- vi -

Federal Rule of Civil Procedure 30(b)(1)..............................................................................4

Federal Rule of Civil Procedure 30(b)(6)....................................................................4, 5, 14

1

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e), Direct Purchaser Plaintiffs ("DPPs") seek preliminary approval of settlements with Defendants HDK, Kamaya-Walsin, Panasonic, and ROHM (collectively, the "Settling Defendants").[1] DPPs have reached a settlement with HDK for $2 million, a settlement with Kamaya-Walsin for $5.25 million, a settlement with Panasonic for $12 million, and a settlement with ROHM for $6.5 million – creating an ***all-in cash fund of $25.75 million*** for the benefit of the DPP Settlement Class. The settlements require Settling Defendants to assist DPPs in the prosecution of their claims against the sole remaining defendant family – KOA.[2]

On August 16, 2018, DPPs moved for preliminary approval of the settlements with HDK and Kamaya-Walsin. *See* ECF No. 474.  Following the filing of that motion, on September 3, 2018 DPPs reached an agreement to settle with Panasonic.  At the September 13 Status Conference, DPPs informed the Court of the settlement with Panasonic and further informed the Court that DPPs had reached a settlement in principle with another defendant. The Court postponed the originally-noticed preliminary approval hearing date so that DPPs could finalize and move for preliminary approval of the four settlements in a single motion, facilitating the use of a single notice program. *See* ECF No. 487 (Minute Order explaining that DPPs would file an amended motion at a later time). DPPs finalized a settlement agreement with ROHM on October 29, 2018. Accordingly, this motion address all four settlements.

---

[1] "HDK" or the "HDK defendant family" refers to HDK America, Inc. and Hokuriku Electric Industry Co. "Kamaya-Walsin" or the "Kamaya-Walsin defendant family" refers to Kamaya Electric Co., Ltd., Kamaya Inc., Walsin Technology Corporation, and Walsin Technology Corporation U.S.A.  The Kamaya-Walsin defendants are referred to as a single family because Kamaya Electric Co., Ltd., Kamaya Inc., and Walsin Technology Corporation U.S.A. are all subsidiaries of Walsin Technology Corporation. DPPs reached a settlement agreement with these four Kamaya-Walsin defendants, which are represented by the same counsel. "Panasonic" or "Panasonic defendant family" refers to Panasonic Corporation. Defendant Panasonic Corporation of North America is not a party to the DPP settlement with Panasonic, but it is included in the release. "ROHM" or "ROHM defendant family" refers to ROHM Co., Ltd. and ROHM Semiconductor U.S.A., LLC.

[2] *See* Declaration of Jeff D. Friedman in Support of DPPs' Motion for Preliminary Approval of Settlements with HDK, Kamaya/Walsin, Panasonic and ROHM and Dissemination of Class Notice ("Friedman Decl."), Ex. A (HDK Settlement Agreement), ¶¶ 17, 25-27, Ex. B (Kamaya-Walsin Settlement Agreement), ¶¶ 20, 42-45, Ex. C (Panasonic Settlement Agreement), ¶¶ 19, 40-42, Ex. D (ROHM Settlement Agreement), ¶¶ 21, 43-45, concurrently filed herewith. "KOA" or "KOA defendant family" refers to KOA Corporation and KOA Speer Electronics, Inc.

The four settlements at issue in this motion represent an outstanding recovery for the Settlement Class. The settlements are approximately equivalent to the following percentages of direct sales by each defendant to the Settlement Class: HDK (18.3% of direct sales); Kamaya-Walsin (7.9% of direct sales); Panasonic (5.5% of direct sales); and ROHM (6.5% of direct sales). The $25.75 million total figure amounts to approximately 6.5% of Settling Defendants' ***total sales*** to the Settlement Class. These percentages exceed those approved in similar class actions. Additionally, because defendants are jointly and severally liable for antitrust damages incurred as a result of the alleged conspiracy, these settlements preserve DPPs' right to recover the entire remaining amount of DPPs' damages against the remaining defendant, KOA.

In considering whether to grant preliminary approval, the Court need only determine whether the settlements are within the range of possible approval. These four settlements clearly satisfy this standard. The proposed settlements were reached through arm's-length negotiations between experienced and informed counsel following more than three years of litigation. The HDK settlement also benefitted from a mediation conducted by Gerald G. Saltarelli, Esq. All four settlements also contain cooperation provisions to aid in the prosecution of the case, including declarations from key participants in the alleged conspiracy. Consideration of these facts demonstrates that preliminary approval should be granted.

DPPs propose a comprehensive notice program designed by an experienced Settlement Administrator – JND Legal Administration LLC. Direct notice will include individualized notice mailed to the class members for whom DPPs currently have names and contact information (***more than 90% of class members weighted by purchase volume***), plus those other class members for whom the Administrator is able to identify contact information.[3] Those class members will receive pre-printed claim forms identifying the class member's purchases.[4] The notice package will instruct class members that they will automatically receive a benefit if they do not take further action, and will provide opportunities for class members to submit additional information regarding their

---

[3] Friedman Decl., ¶ 22; Updated Declaration of Jennifer M. Keough Regarding Proposed Notice Program ("Keough Decl."), ¶¶ 11, 13-15, concurrently filed herewith.

[4] Keough Decl., ¶¶ 11, 17.

purchases by mail or online.[5] The direct notice campaign will be supplemented by a digital campaign and press release designed to provide notice to potential settlement class members for whom DPPs have not received direct contact information.[6] Self-identified class members will be able to submit an electronic claim on the settlement website, or download a paper version of the claim form to complete and mail to the Settlement Administrator.[7] The proposed notices are written in plain English and include all of the required information.

DPPs propose that the distribution of the net settlement fund be held pending additional settlements. Claims against the KOA defendant family – which is the largest defendant by market share – are not released by the instant settlements. Given the expense associated with distribution, DPPs believe that it is in the Class's best interests to defer distribution of the settlement amounts until a later time.

Accordingly, DPPs respectfully request an order: (1) preliminarily approving the proposed class action settlements with HDK, Kamaya-Walsin, Panasonic, and ROHM; (2) certifying the settlement class; (3) appointing Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll PLLC as DPP Class Counsel; and (4) approving the manner and form of notice and proposed plan of allocation to class members.

## II.   PROCEDURAL HISTORY

This case involves federal antitrust claims brought by direct purchasers of linear resistors. Linear resistors are known as "passive electronic components" and are a fundamental part of electrical circuits.  Linear resisters are ubiquitous – present in myriad electronic devices including automobiles, televisions, cell phones, computers, and kitchen equipment.[8]

DPPs allege that defendants conspired to fix the prices of linear resistors from July 9, 2003 through August 1, 2014. DPPs allege that the conspiracy was carried out through agreements to fix prices and restrict output and was facilitated in a variety of ways, including via face-to-face

---

[5] *Id.*, ¶¶ 11,16-17, 24.

[6] *Id.*, ¶¶ 19-26.

[7] *Id.*, ¶ 24.

[8] Friedman Decl., ¶ 2.

MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENTS WITH HDK, KAMAYA, WALSIN,
PANASOINC & ROHM DEFS. - No.: 15-cv-03820-JD          - 3 -
010554-11 1078523 V1

meetings, electronic communications, phone calls, and the use of trade associations.[9]

DPP class representative Schuten Electronics, Inc. filed a complaint on October 23, 2015. On May 27, 2016, DPPs filed their Consolidated Amended Class Action Complaint. Defendants filed a joint motion to dismiss on August 24, 2016, and on the same day, the U.S. subsidiary defendants filed a separate motion to dismiss. Following briefing on these motions, the Court denied the joint motion to dismiss and granted the U.S. subsidiary defendants' motion to dismiss.[10]

DPPs filed the operative Second Consolidated Amended Class Action Complaint ("Complaint") on October 26, 2017. The Complaint included new allegations pertaining to the U.S. subsidiary defendants and added Walsin Technology Corporation and Walsin Technology Corporation U.S.A. as defendants. The U.S. subsidiary defendants again moved to dismiss, and the two Walsin defendants filed separate motions to dismiss. The Court denied all three motions.[11]

DPPs have engaged in substantial discovery against the defendants. For example, DPPs have propounded more than 30 document requests, in multiple sets of requests, on each of the Settling Defendants. DPPs have served a similar number of requests on KOA, as well as sought discovery from relevant third parties. Over 10 million pages of documents have been produced in this case, with Settling Defendants alone producing more than 1.27 million documents (over 5.5 million pages). DPPs have devoted substantial resources to reviewing these documents and have a well-developed understanding of the strengths and weaknesses of the documentary evidence against the Settling Defendants (and KOA). DPPs also have served multiple sets of interrogatories.[12]

To date, DPPs have taken eighteen depositions, including individual Rule 30(b)(1) depositions and corporate Rule 30(b)(6) depositions. Additionally, DPPs defended the deposition of their class representative in a Rule 30(b)(6) deposition. From this discovery and other investigative methods, DPPs have a firm grip on the strength of the evidence against the Settling Defendants and DPPs' liability case generally, as well as DPPs' case for class certification. DPPs, alone or in

---

[9] *Id.*

[10] *See* Order re Motions to Dismiss, Sept. 9, 2017, ECF No. 326.

[11] *See* Minute Entry, Jan. 22, 2018, ECF No. 384; Minute Entry, April 5, 2018, ECF No. 418.

[12] Friedman Decl., ¶ 9.

MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENTS WITH HDK, KAMAYA, WALSIN,
PANASONIC & ROHM DEFS. - No.: 15-cv-03820-JD
010554-11 1078523 V1

- 4 -

conjunction with the indirect purchaser plaintiffs ("IPPs"), have brought several discovery motions before this Court. DPPs have also retained industry experts and economists from the outset of the litigation for consultation and to analyze the market, to determine the impact of the price-fixing conspiracy on DPPs, to measure damages, and for related work.[13]

Defendants have produced transactional data and documents from which DPPs, with the assistance of their retained economists, have been able to estimate the dollar value of each defendant's direct sales of linear resistors during the Class Period. The Rule 30(b)(6) depositions taken by DPPs and extensive meet and confer communications (including detailed questions about defendants' transactional data productions) have further developed DPPs' understanding of the data. Armed with this discovery, DPPs entered into the instant settlement negotiations with extensive knowledge of the evidence demonstrating impact and measuring damages.[14]

After informal settlement negotiations between the parties, DPPs and HDK had a full-day mediation in Chicago with mediator Gerald G. Saltarelli.[15] On July 6, 2018, DPPs and HDK executed a settlement agreement resolving all of the claims of the DPP Settlement Class.[16] As described in further detail in Part III, *infra*, DPPs agreed to release their claims against HDK in exchange for cash payments totaling $2,000,0000 and other valuable consideration.[17] This was the first proposed DPP settlement in the case.[18]

Following settlement negotiations lasting several months, on July 11, 2018, DPPs and Kamaya-Walsin executed a settlement agreement resolving DPPs' claims against Kamaya-Walsin.[19] As described in further detail in Part III, *infra*, DPPs agreed to release all of their claims in exchange for cash payments totaling $5,250,0000 and other valuable consideration.[20]

---

[13] *Id.*, ¶ 10.

[14] *Id.*, ¶ 11.

[15] *Id.*, ¶ 3.

[16] Friedman Decl., Ex. A, at 1.

[17] *Id.*, ¶¶ 14-17, 25-26.

[18] Friedman Decl., ¶ 3.

[19] *Id.*, ¶ 4, Ex. B, at 1.

[20] Friedman Decl., Ex. B, ¶¶ 30-33, 42-45.

MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENTS WITH HDK, KAMAYA, WALSIN,
PANASOINC & ROHM DEFS. - No.: 15-cv-03820-JD
010554-11 1078523 V1

- 5 -

On August 16, 2018, DPPs moved for preliminary approval of the settlements with HDK and Kamaya-Walsin.[21] Both before and after that motion, DPPs engaged in extensive settlement negotiations with Panasonic and ROHM. On September 3, 2018, DPPs and Panasonic executed a settlement agreement resolving DPPs' claims against the Panasonic defendant family.[22] As described in further detail in Part III, *infra*, DPPs agreed to release all of their claims against Panasonic in exchange for cash payments totaling $12,000,0000 and other valuable consideration.[23]

On October 29, 2018, DPPs and ROHM executed an agreement resolving DPPs' claims against ROHM.[24] As described in detail in Part III, *infra*, DPPs agreed to release their claims against ROHM in exchange for cash payments totaling $6,500,0000 and other valuable consideration.[25]

## III.    SUMMARY OF SETTLEMENT TERMS

### A.    The DPP Settlement Class

The proposed settlement class for each of the four settlements is identical to the class proposed in DPPs' Complaint:

> All persons in the United States who purchased linear resistors (including through controlled subsidiaries, agents, affiliates or joint ventures) directly from any of the Defendants, their subsidiaries, agents, affiliates or joint ventures from July 9, 2003 through August 1, 2014 (the "Class Period").[26]

Thus, "Class Member" means any person or entity that falls within the definition of the "DPP Settlement Class" and does not timely and validly elect to be excluded from the Settlement Class.[27]

---

[21] *See* ECF No. 474.

[22] Friedman Decl., ¶ 5, Ex. C, at 1.

[23] Friedman Decl., Ex. C, ¶¶ 28-31, 40-42.

[24] Friedman Decl., ¶ 6, Ex. D, at 1.

[25] Friedman Decl, Ex. D, ¶¶ 31-34, 43-46.

[26] Friedman Decl., Ex. A, ¶ 1, Ex. B, ¶ 21, Ex. C, ¶ 20, Ex. D, ¶ 22.

[27] Friedman Decl., Ex. A, ¶ 4, Ex. B, ¶ 4, Ex. C, ¶ 4, Ex. D, ¶ 4.

**B.     The Settlement Consideration and Release of Claims**

**1.     The HDK Settlement**

The HDK settlement releases defendants Hokuriku Electric Industry Co., and its U.S. subsidiary, HDK America, Inc., in exchange for $2,000,000 and other consideration. This amount represents approximately 18.3% of HDK's direct sales to the Settlement Class during the Class Period. The settlement also requires HDK to provide "employee declarations or affidavits relating to authentication or admissibility of documents and data (or employee testimony if an affidavit or declaration is insufficient), if reasonably requested by the plaintiffs in connection with the Action."[28] The HDK Settlement releases the DPP Settlement Class's claims against HDK that were or could have been asserted in the Complaint.[29]

**2.     The Kamaya-Walsin Settlement**

The settlement with Kamaya-Walsin – which refers to Taiwanese corporation, Walsin Technology Corporation, its Japanese subsidiary, Kamaya Electric Co., Ltd., and its U.S. subsidiaries, Kamaya Inc. and Walsin Technology Corporation U.S.A. – totals $5,250,000. Discovery has revealed that during the Class Period, all or nearly all of Kamaya-Walsin's direct sales of linear resistors in the U.S. were sold through defendant Kamaya Inc. The Kamaya-Walsin settlement amount represents approximately 7.9% of Kamaya-Walsin's direct sales to the Settlement Class during the Class Period.[30]

The settlement also requires Kamaya-Walsin to provide "employee declarations or affidavits relating to authentication or admissibility of documents and data (or employee testimony if an affidavit or declaration is insufficient). . . ."[31] Kamaya-Walsin will provide other cooperation to DPPs to assist their case, including a declaration from Hideyuki Miura of Kamaya Electric, based on

---

[28] Friedman Decl., Ex. A, ¶¶ 25-26.

[29] *Id.*, ¶¶ 14-16.

[30] Friedman Decl., ¶¶ 4, 13.

[31] Friedman Decl., Ex. B, ¶ 43.

MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENTS WITH HDK, KAMAYA, WALSIN,
PANASOINC & ROHM DEFS. - No.: 15-cv-03820-JD
010554-11 1078523 V1

- 7 -

his personal knowledge, in support of DPPs' case against the other defendants.[32] Like the HDK Settlement, the Kamaya-Walsin Settlement releases the DPP Settlement Class's claims against Kamaya-Walsin that were or could have been asserted in the Complaint.[33]

### 3.     The Panasonic Settlement

The settlement with Panasonic totals $12,000,000. The settlement amount represents approximately 5.5% of Panasonic's direct sales to the Settlement Class during the Class Period.[34]

The settlement also requires Panasonic to provide "employee declarations or affidavits relating to authentication or admissibility of documents and data produced by Panasonic," and if necessary, "one witness who will authenticate to the best of his or her ability and lay the foundation for admission into evidence any Documents or data produced by the Panasonic Defendants."[35] Panasonic will provide other cooperation to DPPs to assist their case, including a declaration from Yoshinori Hourai of Panasonic Corporation, based on his personal knowledge, in support of DPPs' case against the other defendants.[36] The Panasonic Settlement releases the DPP Settlement Class's claims against Panasonic that were or could have been asserted in the Complaint.[37]

### 4.     The ROHM Settlement

The settlement with ROHM totals $6,500,000. The settlement amount represents approximately 6.5% of ROHM's direct sales to the Settlement Class during the Class Period.[38]

The settlement also requires ROHM to provide "employee declarations or affidavits relating to authentication or admissibility of documents and data (or employee testimony if an affidavit or declaration is insufficient) . . . ."[39] ROHM will provide other cooperation to DPPs, including a

---

[32] *Id.*, ¶ 42. To the extent DPPs and Kamaya-Walsin are unable to reach agreement regarding the scope of Mr. Miura's declaration, DPPs have retained their right to depose him. *Id.*

[33] *Id.*, ¶¶ 30-32.

[34] Friedman Decl., ¶ 14.

[35] Friedman Decl., Ex. C, ¶ 41.

[36] *Id.*, ¶ 40.

[37] *Id.*, ¶¶ 28-30.

[38] Friedman Decl., ¶ 15.

[39] Friedman Decl., Ex. D, ¶ 44.

declaration from Hidekazu Katsuno of ROHM Co., based on his personal knowledge, in support of DPPs' case against the other defendants.[40] The ROHM Settlement releases the DPP Settlement Class's claims against ROHM that were or could have been asserted in the Complaint.[41]

### 5. KOA Remains Jointly and Severally Liable for the Entire Amount of DPPs' Remaining Damages

All four settlements preserve DPPs' ability to pursue claims against KOA for the entire amount of DPPs' remaining damages, as KOA is jointly and severally liable for DPPs' damages.[42]

## C. Notice and Implementation of Settlement

DPPs have attached hereto proposed class notices and propose the following plan for the dissemination of those notices.[43] The Settlement Administrator, JND Legal Administration LLC, will direct notice by mail to the class members, using data and documents obtained in discovery where DPPs have identified nearly all of the class members and obtained contact information for more than 90% of class members weighted by purchase volume.[44] Additionally, prior to mailing the proposed notices, the Settlement Administrator will update all addresses using the United States Postal Services' National Change of Address database, employ advanced address search methods to update and complete the mailing list where DPPs have not already identified addresses for class members, and mail notices to potential alternate addresses such as stores belonging to class members.[45]

DPPs have substantial data reflecting class members' purchases during the Class Period.[46] Thus, individual notices will include pre-printed claim forms identifying each class member's purchases, which will be sent directly to the substantial majority of the class for whom DPPs have names and contact information. The notice package will instruct class members that they will

---

[40] *Id.*, ¶ 40. To the extent DPPs and ROHM are unable to reach agreement regarding the scope of Mr. Katsuno's declaration, DPPs have retained their right to depose him. *Id.*

[41] *Id.*, ¶¶ 31-33.

[42] Friedman Decl., Ex. A, ¶ 32, Ex. B, ¶ 51, Ex. C, ¶ 48, Ex. D, ¶ 52.

[43] *See* Keough Decl., ¶ 11, Exs. B, D.

[44] Friedman Decl., ¶ 22; Kough Decl., ¶¶ 11, 13-15.

[45] Keough Decl., ¶¶ 13-15.

[46] Friedman Decl., ¶ 11.

MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENTS WITH HDK, KAMAYA, WALSIN,
PANASOINC & ROHM DEFS. - No.: 15-cv-03820-JD
010554-11 1078523 V1

- 9 -

automatically receive a benefit if they do not take further action. Class members who wish to challenge their purchase amount will be able to submit a revised claim form on the settlement website or via mail and provide the Administrator with additional information for review.[47]

The direct notice campaign will be supplemented with a robust digital campaign and a press release distributed over PR Newswire's US1 Newsline, to ensure that all potential settlement class members receive notice. Self-identified class members will have the ability to submit an electronic claim through the settlement website or download a paper version of the claim form to complete and mail to the Settlement Administrator.[48] Settling Defendants will permit use of a portion of the settlement funds toward notice and administration costs, with costs to be split among the Settling Defendants and prorated based on the amount of each's respective contribution.[49]

**D.    Plan of Distribution**

DPPs propose to distribute the settlement funds *pro rata* to class members based on the dollar value of approved purchases of linear resistors per class member during the settlement class period.[50] There will be no reversion of unclaimed funds to the Settling Defendants.

## IV.    ARGUMENT

**A.    The Standards and Procedure for Preliminarily Approving a Class Settlement**

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement of class action claims. Settlement approval is a multi-step process, beginning with preliminary approval, which allows notice to be given to the class and objections to be filed, after which there is a motion for final approval and a fairness hearing.[51] Preliminary approval is thus not a dispositive assessment of the fairness of the proposed settlement; rather, preliminary approval assesses only whether the proposed settlement falls within the "range of possible approval."[52] Preliminary approval establishes

---

[47] Keough Decl., ¶¶ 11, 17, 24.

[48] *Id.*, ¶¶ 11, 19-22, 24.

[49] Friedman Decl., Ex. A, ¶¶ 10, 20, Ex. B, ¶¶ 26, 37, Ex. C, ¶¶ 24, 35, Ex. D, ¶¶ 27, 38.

[50] Friedman Decl., ¶ 23.

[51] *See* Manual for Complex Litigation (Fourth) § 21.632, 320-21 (2004). All internal citations and quotation marks omitted and all emphases added, unless otherwise indicated.

[52] *Id.*; *see also Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 301-02 (E.D. Cal. 2011).

an "initial presumption" of fairness,[53] such that notice may be given to the class and the class may have a "full and fair opportunity to consider the proposed [settlement] and develop a response."[54]

Preliminary approval of a settlement and notice to the proposed class is appropriate if: "(1) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls with[in] the range of possible approval."[55] The "initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."[56] All of the requirements for preliminary approval are met here.

### 1.    The Settlements Are the Result of Arm's-Length Negotiations

Weighing in favor of preliminary approval, these settlements arise out of informed, arm's-length negotiations among experienced counsel for the parties. The parties reached agreements after more than three years of litigation, discovery, and investigation, and multiple settlement conferences among counsel.[57] The HDK settlement also benefitted from a full-day mediation session by an experienced mediator, which further supports granting preliminary approval.[58]

It is also significant that the settlements were negotiated by experienced counsel with

---

[53] *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

[54] *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).

[55] *The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, No. 15-CV-0224-YGR, 2016 WL 314400, at *11 (N.D. Cal. Jan. 25, 2016); *see Zepeda v. Paypal, Inc.*, No. C 10-2500 SBA, 2015 U.S. Dist. LEXIS 150577, at *14 (N.D. Cal. Nov. 5, 2015) (same); *Fraley v. Facebook, Inc.*, No. C 11-1726 RS, 2012 U.S. Dist. LEXIS 116526, at *4 n.1 (N.D. Cal. Aug. 17, 2012) (same); *Tableware*, 484 F. Supp. 2d at 1079 (same). Certain amendments to Federal Rule of Civil Procedure 23 will go into effect on December 1, 2018. To the extent these amendments involve the process for evaluating proposed class settlements, they simply codify the standard for approval established in Ninth Circuit case law and provided above. As explained further herein, the standard for preliminary approval articulated in the Ninth Circuit and included in the upcoming amendments to Rule 23 is met here.

[56] *Officers for Justice v. Civ. Serv. Comm'n of the City and Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

[57] *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

[58] *See In re Zynga Inc. Secs. Litig.*, No. 12-cv-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (use of mediator and fact that some discovery had been completed "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement").

extensive expertise and success in large antitrust class actions.[59] Counsel have worked on this case for more than three years and understand the potential risks and upside to this type of litigation generally, as well as in this case specifically. Counsel's judgment that the settlements are fair and reasonable therefore should be accorded significant weight.[60] These settlements are entitled to a presumption of fairness.

### 2.      The Settlements Have No Obvious Deficiencies

The proposed settlements have no obvious deficiencies. The Ninth Circuit in *In re Bluetooth Headset Prods. Liability Litig.*[61] identified three signs as troubling and potentially indicative that a proposed settlement is not in the class's interests: (a) when class counsel receive a disproportionate distribution of the settlement; (b) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds; or (c) when the parties arrange for fees not awarded to plaintiffs' counsel to revert to defendants rather than the class.[62]

None of these potential deficiencies exist here. The proposed settlements create a common fund, with no possibility of reversion. The funds will be used to cover costs and fees and compensate the class based on a *pro rata* formula. There is no "clear sailing" provision, no payment of fees separate and apart from the class funds, and no "kicker" provision like the one in *Bluetooth*, which would allow unawarded monies to revert to the Settling Defendants. The proposed class notices inform class members that class counsel will make a request for attorneys' fees of 20 percent of the settlement fund, as well as for reimbursement of certain costs counsel has advanced to date.[63]

---

[59] Friedman Decl., ¶¶ 18-19; *see In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("'The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.'" (quoting *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig. v. Baumer*, MDL No. 726, 1989 WL 73211, at *1, *2 (C.D. Cal. March 9, 1989)).

[60] *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *accord Bellows v. NCO Fin. Sys. Inc.*, No. 3:07-cv-01413-W-AJB, 2008 WL 5458986, at *6-*7 (S.D. Cal. Dec. 10, 2008); *see also Officers for Justice*, 688 F.2d at 625.

[61] *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 947-48 (9th Cir. 2011).

[62] *Id.* at 947.

[63] Keough Decl., Ex. B, ¶ 17.

Notably, the 20 percent that will be requested for attorneys' fees is lower than the Ninth Circuit benchmark of 25 percent (using the "percentage-of-the fund" method accepted in this circuit).[64] The absence of these warning signs is a further indication of the settlements' fairness.[65]

### 3. The Settlements Do Not Provide Preferential Treatment for Segments of the Class or the Class Representative

The third factor to be considered by this Court in determining whether the settlements should be preliminarily approved is whether the settlements grant preferential treatment to class representatives or subsets of the class.[66] This factor also favors approving these settlements.

#### a. All Class Members Will Recover Their *Pro Rata* Share of the Settlement

A plan of distribution of class settlement funds is subject to the "fair, reasonable and adequate" standard that applies to approval of class settlements.[67] A plan of distribution that compensates class members based on the type and extent of their injuries (including on a *pro-rata* basis) is generally considered reasonable.[68]

DPPs propose to distribute the settlement funds *pro rata* to class members based on the dollar value of approved purchases per class member of linear resistors during the settlement class period.[69] There will be no reversion of unclaimed funds to the Settling Defendants.

#### b. The Requested Service Award for the Class Representative Reflects Its Efforts on Behalf of the Class

DPPs will request a service award for the class representative, Schuten Electronics, Inc., in

---

[64] *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

[65] *Zynga*, 2015 WL 6471171, at *9.

[66] *Zepeda*, 2015 U.S. Dist. LEXIS 150577, at *14.

[67] *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).

[68] *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663-JST, 2015 U.S. Dist. LEXIS 159020, at *23 (N.D. Cal. Nov. 23, 2015) ("Such a plan 'fairly treats class members by awarding a *pro rata* share' to the class members based on the extent of their injuries."); *Noll v. eBay, Inc.*, No. 5:11-cv-04585-EJD, 2015 U.S. Dist. LEXIS 123147, at *10, *50 (N.D. Cal. Sept. 15, 2015) (approving *pro-rata* distribution as fair and reasonable); *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118051, at *29-*30 (N.D. Cal. Sept. 2, 2015) (approving *pro-rata* distribution of fractional share based upon class member's total base salary as fair and reasonable).

[69] Friedman Decl., ¶ 23.

the amount of $25,000.[70] As the Ninth Circuit has recognized, service awards "that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'"[71] Although DPPs will request this award alongside final approval of the settlements, DPPs will defer the payment until the distribution of funds to the whole Settlement Class.

The representative of the DPP class, Schuten Electronics, has been actively involved in the litigation of this case and, indeed, without its willingness to come forward and prosecute the action when neither the government nor any other direct purchaser would, the Settlement Class members would have received nothing for their injuries and the defendants would have beeen left to pursue their illegal conduct unfettered. Schuten assisted Class Counsel in investigating and prosecuting this action, responded to detailed interrogatories, and searched for and produced documents responsive to fifty-four document requests, and considered and weighed the benefits of the settlements. Defendants also deposed a representative of Schuten Electronics in a Rule 30(b)(6) deposition, after identifying eight broad subject areas in the deposition notice, each with several sub-parts. This required Schuten to spend a significant amount of time preparing for the deposition.[72] In the face of this service and perseverance, an award of $25,000 is reasonable.

### 4.   The Settlements Easily Fall Within the Range of Possible Approval

To grant preliminary approval, this Court must decide that the settlements fall within the range of possible approval.[73] In making this determination, courts evaluate the settlements to ensure they are "'fair, reasonable, and adequate'" and "'not the product of fraud or overreaching by, or collusion between, the negotiating parties.'"[74]

Here, the all-in cash fund recovery of $25.75 million for the DPP Settlement Class breaks down as follows: $2 million from HDK, or approximately 18.3% of their direct sales to the

---

[70] *Id.*, ¶ 20.

[71] *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. Cal. 2015).

[72] Friedman Decl., ¶ 20.

[73] *See Zepeda*, 2015 U.S. Dist. LEXIS 150577, at *14; *Fraley*, 2012 U.S. Dist. LEXIS 116526, at *4 n.1; *Tableware*, 484 F. Supp. 2d at 1079.

[74] *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA(JCS), 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008) (quoting *Officers for Justice*, 688 F.2d at 625).

1    Settlement Class; $5.25 million from Kamaya-Walsin, or approximately 7.9% of their direct sales to

2    the Settlement Class; $12 million from Panasonic, or approximately 5.5% of their direct sales to the

3    Settlement Class; and $6.5 million from ROHM, or approximately 6.5% of their direct sales to the

4    Settlement Class. The $25.75 million total is approximately 6.5% of the Settling Defendants' sales to

5    the Settlement Class.[75] These amounts and percentages easily fall within the range of possible

6    approval. In similar direct purchaser antitrust cases, courts have approved settlements equating to

7    significantly lower percentages of defendants' sales. Indeed, decisions have approved of settlements

8    where the recovery was roughly equivalent to 1% of defendants' relevant commerce.[76]

9         Additionally, based on the detailed transactional records defendants produced, DPPs'

10   preliminary estimate of the total sales commerce on which to model potential overcharge damages in

11   this litigation is approximately $1.1 billion. Assuming a 10% overcharge for guidance purposes is

12   applied to these sales figures, single damages would equal approximately $110 million.[77] This metric

13   would track to a current total recovery from the settlements of approximately 23.4% of total damages

14   that the class suffered, with the defendant accounting for the largest share of commerce (KOA) still

15   remaining in the case. DPPs' current recovery compares very favorably with analogous cases.[78]

---

[75] Friedman Decl., ¶ 16.

[76] *See Four in One Co. v. S.K. Foods, L.P.*, No. 2:08-cv-3017 KJM EFB, 2014 WL 28808, at *11 (N.D. Cal. Jan. 2, 2014) (settlements amounting to 1% of defendants' U.S. sales of tomatoes "compares favorably with antitrust class action settlements ultimately approved by other courts"); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 344 (E.D. Pa. 2007) (granting final approval to settlements representing 1.5% of settling defendants' sales of the relevant product for the four years during the class period in which they had their highest sales totals); *Meijer, Inc. v. 3M*, No. 04-cv-5871, 2006 WL 2382718, at *16, 2006 (E.D. Pa. Aug. 14, 2006) (approving settlement fund equal to approximately 2% of defendant 3M's sales to the settlement class); *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 627 (E.D. Pa. 2004) (approving settlement equal to 1.62% of the settling defendants' sales). The percentages cited in the text do not account for any potential class members who may exclude themselves from these opt-out settlements. Because the size of the settlement fund is not reduced if class members opt out, the percentages may increase.

[77] Friedman Decl., ¶ 17. By way of comparison to a closely related industry (and conspiracy), in the *Capacitors* case before this Court, DPPs at class certification calculated "that the collusion inflated the prices for aluminum capacitors by 9.8%, tantalum capacitors by 7.5%, and film capacitors by 7.2%." DPPs' Motion for Class Certification, and Memo. of Law in Support at 15, *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264-JD (N.D. Cal. June 15, 2017), ECF No. 1886-4.

[78] *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-05944, 2016 WL 3648478, at *7 n.19 (N.D. Cal. July 7, 2016) (citing survey of 71 settled cartel cases which showed that the weighted mean – weighting settlement according to their sales – was 19% of single damages recovery; and

1    Also favoring preliminary approval of these settlements is that they all (a) preserve DPPs'

2    ability to pursue their claims against the remaining KOA defendants for all of DPPs' damages, and

3    (b) require Settling Defendants to provide cooperation to DPPs in the litigation. Thus, the settlements

4    not only represent a substantial recovery for DPPs, they also do not reduce DPPs' potential total

5    recovery. A recent district court decision explained why this is important: "this settlement provides

6    increased value in another pending class action suit in this case by creating added incentive for the

7    remaining defendants to settle or allowing greater recovery for the Plaintiffs at trial."[79]

8    The cooperation provisions in the settlement agreements also will assist the case against

9    KOA. For example, the Kamaya-Walsin settlement agreement provides for a declaration by a key

10   participant in the conspiracy, Mr. Miura.  Similarly, the Panasonic and ROHM settlement

11   agreements provide for declarations by other participants in the conspiracy, Mr. Hourai and Mr.

12   Katsuno, respectively. All of the settlement agreements require the Settling Defendants to assist

13   DPPs in establishing the authenticity and admissibility of documents and data.

14   Additionally, while DPPs believe their case is strong, the difficulties and risks in litigating

15   this class action weigh in favor of preliminarily approving the settlements.[80] DPPs bear the burden of

16   establishing liability, impact, and damages.[81] Proving liability may be more challenging than in other

17   antitrust cases in which the cartel has been found criminally liable, including the *Capacitors* case

18   _____

19   approving of settlements equal to 20% of potential single damages after settlements with *all*
      defendants); *see also* Order Granting Settlement Class Certification and Preliminary Approval of
20   Class Action Settlement with Sony Defendants, *In re Lithium Ion Battery Antitrust Litig.*, No. 13-
      md-02420 YRG (N.D. Cal. March 25, 2016), ECF No. 1182 (granting preliminary approval of
21   settlement representing approximately 10% of the overcharge on Sony's U.S. sales, as estimated by
      the DPPs on page six of their preliminary approval motion (ECF No. 1090)); *Zynga*, 2015 WL
22   6471171, at *11 (approving settlement of 14% of estimated damages in securities class action
      because, *inter alia*, it substantially exceeded average recovery in securities actions).

23   [79] *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2015 WL 9266493, at *5
      n.9, *6 (N.D. Cal. Dec. 17, 2015).

24   [80] *See Rodriguez*, 563 F.3d at 966 (summarizing risks of litigating class actions).

25   [81] *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("'Indeed, the
      history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on
26   liability, but recovered no damages, or only negligible damages, at trial, or on appeal.'" (quoting *In
      re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998))); *Auto.
27   Refinishing*, 617 F. Supp. 2d at 341 (approving settlements in part because the "antitrust class action
      is arguably the most complex action to prosecute[;] [t]he legal and factual issues involved are always
28   numerous and uncertain in outcome").

1    before this Court. As this Court knows, DPPs have been proceeding after the Department of Justice

2    ended its investigation without issuing any indictments.[82]

3        Yet, DPPs' initial settlement amounts still compare favorably to cases with the strength of

4    evidence to support criminal prosecutions. Pursuant to the U.S. Sentencing Guidelines Manual, "[i]n

5    lieu of the pecuniary loss" under the Guidelines' Base Fine provision, an organization's base fine for

6    price-fixing agreements among competitors should be calculated as "20 percent of the volume of

7    affected commerce."[83] These guidelines are applicable to criminal prosecutions with a heightened

8    burden of proof, underscoring why the percentages of commerce reflected in these civil settlements

9    indicate excellent recoveries.

10       Defendants also have argued that, even assuming liability, proving impact and damages will

11   be difficult because of the relatively small margins in the resistors' industry. Finally, certifying a

12   litigation class and defending one's experts in antitrust cases is inherently risky (not to mention

13   expensive for the class).  Ensuring that DPPs receive damages now hedges these risks in a manner

14   that inures to the class's benefit.

15       Regardless of the risks, however, $25.75 million represents an outstanding recovery and

16   result by any measure, easily falling within the range of "fair, reasonable, and adequate."

17   **B.    The Proposed Settlement Class Satisfies Rule 23**

18       Certification is appropriate where the proposed class and the proposed class representative

19   meet the four prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequacy of

20   representation. In addition, certification of a class action for damages requires a showing that

21   "questions of law or fact common to class members predominate over any questions affecting only

22   individual members, and that a class action is superior to other available methods for fairly and

23

24       [82] *See Auto. Refinishing*, 617 F. Supp. 2d at 344-45 (fact that Department of Justice, like here,
     terminated its investigation without issuing any indictments, favored approval of settlements because

25   this indicated that establishing liability "would not be a foregone conclusion" and thus the
     settlements were reasonable "considering the risks of litigation and considering the Government's

26   reluctance to prosecute"); *Cf. Rodriguez*, 563 F.3d at 966 (in favor of affirming approval of class
     action settlement, the Ninth Circuit explained that "[t]he class in this case does not have the benefit,

27   like some other antitrust classes, of previous litigation between the defendants and the government").

28       [83] U.S. Sentencing Guidelines Manual § 2R.1(d)(1) (2016).

1    efficiently adjudicating the controversy."[84] The proposed settlement class (the same for each

2    settlement) satisfies all of the elements.

3         **1.    Rule 23(a): Numerosity**

4         The first requirement for maintaining a class action is that its members are so numerous that

5    joinder would be "impracticable."[85] No minimum number has been established, but courts generally

6    find numerosity where class members exceed forty.[86] Geographic dispersal of plaintiffs also supports

7    a finding that joinder is impracticable.[87] In this case, the DPP Settlement Class is geographically

8    dispersed and has hundreds of members.[88] Accordingly, the numerosity requirement is satisfied.

9         **2.    Rule 23(a): The Case Involves Questions of Law or Fact Common to the Class**

10        The second requirement of Rule 23 is the existence of common questions of law or fact.[89]

11   This requirement is to be "construed permissively,"[90] and a single issue has been held sufficient to

12   satisfy the commonality requirement.[91] Here, numerous questions of law and fact are common to the

13   class. These common questions include the overriding issue of whether defendants engaged in a

14   price-fixing agreement that injured the class, as well as:

15        (1)    Whether the alleged conspiracy violated Section 1 of the Sherman Act;

16        (2)    The duration and extent of the conspiracy;

17        (3)    Whether defendants' conduct caused prices of linear resistors to be set at artificially
             high and non-competitive levels; and

18
19        (4)    Whether defendants' conduct injured the members of the class and, if so, the
             appropriate class-wide measure of damages.

20

21        [84] Fed. R. Civ. P. 23(b)(3).

22        [85] Fed. R. Civ. P. 23(a)(1).

23        [86] Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 18:4 (4th ed. 2002).

24        [87] *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal. 2005); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 300 (N.D. Cal. 2010), *abrogated on other grounds by In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012).

25        [88] Friedman Decl., ¶ 21.

26        [89] Fed. R. Civ. P. 23(a)(2).

27        [90] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

28        [91] *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996).

Similar common questions have been routinely found to satisfy the commonality requirement in other antitrust class actions.[92]

### 3.   Rule 23(a): Plaintiff's Claims Are Typical of the Claims of the Class

The "claims . . . of the representative parties [must be] typical of the claims . . . of the class."[93] "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."[94] Typicality is easily satisfied in cases involving allegations of horizontal price-fixing because "in instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members."[95] In this case, the claims of the representative plaintiff are typical of the claims of the class members because they all directly purchased – at inflated prices – linear resistors sold by defendants.

### 4.   Rule 23(a): The Plaintiff Will Fairly and Adequately Represent the Interests of the Class

The final requirement of Rule 23(a) is that the representative plaintiff will fairly and adequately represent the interests of the class. This consists of two separate inquiries. *First*, this requires that class representatives do not have interests that are antagonistic to or in conflict with the interests of the class. *Second*, plaintiffs must be represented by counsel of sufficient diligence and competence to fully litigate the case.[96]

Here, the class representative has been actively involved in the litigation of this case. Schuten has responded to interrogatories and document requests, prepared for and testified at a deposition,

---

[92] *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *3 (N.D. Cal. June 5, 2006) ("the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist"); *accord Rubber Chems.*, 232 F.R.D. at 351; *TFT-LCD*, 267 F.R.D. at 300.

[93] Fed. R. Civ. P. 23(a)(3).

[94] *Hanlon*, 150 F.3d at 1020.

[95] *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993); *In re Citric Acid Antitrust Litig.*, No. 95-1092, 1996 WL 655791, at *3 (N.D. Cal. Oct. 2, 1996).

[96] *Hanlon*, 150 F.3d at 1020; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

and assisted with the investigation and prosecution of this case.[97] The interests of the named plaintiff and class members are aligned because they all suffered similar injury in the form of inflated linear resistor prices due to the conspiracy, and all class members seek the same relief. By proving its own claims, Schuten will necessarily be proving the claims of its fellow class members.

Plaintiffs also have retained highly capable and well-recognized counsel with extensive experience in antitrust cases. Plaintiffs' interim co-lead counsel, Hagens Berman Sobol Shapiro LLP, and Cohen Milstein Sellers & Toll PLLC, were appointed by the Court as DPPs' interim Class Counsel on December 21, 2015. They have undertaken the responsibilities assigned to them by the Court and vigorously prosecuted this action. Each of DPPs' counsel has successfully prosecuted numerous antitrust class actions on behalf of injured purchasers throughout the United States. DPPs' counsel are capable of, and committed to, prosecuting this action on behalf of the class. DPP counsel's prosecution of this case, and indeed, the settlements themselves, demonstrate their diligence and competence. Rule 23(a)(4)'s requirements have been met.

## 5.    Rule 23(b)(3): Common Questions of Fact or Law Predominate

Predominance, under Rule 23(b)(3), "is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."[98] The weight of authority holds that in horizontal price-fixing cases like this one, the predominance requirement is easily satisfied.[99] The existence of a conspiracy is the overriding issue common to all plaintiffs, sufficient to satisfy the Rule 23(b)(3) predominance requirement.[100]

---

[97] Friedman Decl., ¶ 20.

[98] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

[99] *See, e.g.*, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 300 (3d Cir. 2011); *TFT-LCD*, 267 F.R.D. at 310 (collecting cases and explaining: "Courts have frequently found that whether a price-fixing conspiracy exists is a common question that predominates over other issues because proof of an alleged conspiracy will focus on defendants' conduct and not on the conduct of individual class members.").

[100] *See, e.g.*, *TFT-LCD*, 267 F.R.D. at 310; *Rubber Chems.*, 232 F.R.D. at 352 ("[T]he great weight of authority suggests that the dominant issues in cases like this are whether the charged conspiracy existed and whether price-fixing occurred."); *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 167 (C.D. Cal. 2002) ("In price-fixing cases, courts repeatedly have held that the existence of the conspiracy is the predominant issue and warrants certification even where significant individual issues are present." (internal quotation marks and citation omitted)).

DPPs allege anticompetitive conduct – including by participation in meetings discussing pricing and production capacity of linear resistors – that is supported by common evidence to date.[101] Common issues relating to the existence of the alleged conspiracy and defendants' acts in furtherance of the alleged conspiracy predominate over any questions arguably affecting only individual class members because they are the central issue in the case and proof is identical for every member of the class. If separate actions were to be filed by each class member in the instant case, each would have to establish the existence of the same alleged conspiracy and would depend on identical evidence, and each would prove damages using identical "textbook" economic models. The evidence needed to prove how defendants implemented and enforced their alleged conspiracy to set the prices of linear resistors at supra-competitive levels will be common for all class members. These common questions of law and fact predominate.

### 6. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Case

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." If common questions are found to predominate in an antitrust action, courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied.[102] Here, it would be inefficient to litigate class members' claims in multiple individual proceedings. In addition, "[i]n antitrust cases such as this, the damages of individual direct purchasers are likely to be too small to justify litigation, but a class action would offer those with small claims the opportunity for meaningful redress."[103] The prosecution of separate actions would also create the risk of inconsistent rulings, and could result in prejudice to the named plaintiff and members of the proposed settlement class. Most members of the proposed settlement class would be effectively foreclosed from pursuing their claims absent class certification.[104]

---

[101] *See* Friedman Decl., ¶ 10; Complaint, ¶¶ 57-151.

[102] *TFT-LCD*, 267 F.R.D. at 314-15.

[103] *In re Static Random Access (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2008 WL 4447592, at *7 (N.D. Cal. Sept. 29, 2008).

[104] *Hanlon*, 150 F.3d at 1023 ("many claims [that] could not be successfully asserted individually . . . would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs").

1   Moreover, the Court need not concern itself with questions concerning the manageability of a

2   trial because the settlements dispose of the need for a trial as to HDK, Kamaya-Walsin, Panasonic,

3   and ROHM, along with any "thorny issues" that might arise. "Confronted with a request for

4   settlement-only class certification, a district court need not inquire whether the case, if tried, would

5   present intractable management problems . . . for the proposal is that there be no trial."[105] As Judge

6   Posner has explained, manageability concerns that might preclude certification of a litigated class

7   may be disregarded with a settlement class "because the settlement might eliminate all the thorny

8   issues that the court would have to resolve if the parties fought out the case."[106] The proposed

9   settlement class satisfies the requirements of Rule 23(b)(3).

10   **C.   The Court Should Reaffirm the Appointment of Class Counsel**

11   Federal Rule of Civil Procedure 23(c)(1)(B) states that "[a]n order certifying a class

12   action . . . must appoint class counsel under Rule 23(g)." Rule 23(g)(1) states that "[i]n appointing

13   class counsel, the court (A) must consider: (i) the work counsel has done in identifying or

14   investigating potential claims in the action; (ii) counsel's experience in handling class actions, other

15   complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the

16   applicable law; and (iv) the resources counsel will commit to representing the class."

17   In appointing Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll PLLC

18   as interim co-lead counsel for the direct purchaser class, the Court considered the submissions and

19   arguments of all the parties before it and deemed counsel best suited to protect the direct purchasers'

20   interests. Since that time, interim co-lead counsel has capably managed this complex antitrust class

21   action, and the settlements with HDK, Kamaya-Walsin, Panasonic, and ROHM are products of that

22   representation that will provide real and meaningful benefits to the class. The work interim co-lead

23   counsel has done to date supports the conclusion they should be appointed as Class Counsel for

24

25

26   [105] *Amchem*, 521 U.S. at 620 (discussing manageability); *see also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 68 (D. Mass. 2005).

27   [106] *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004); *see also In re Initial Public Offering Secs. Litig.*, 226 F.R.D. 186, 190, 195 (S.D.N.Y. 2005) (settlement class may be broader than litigated class because settlement resolves manageability/predominance concerns).

28

1    purposes of the settlements.[107] The firms easily satisfy the criteria of Rule 23(g)(1).[108]

2    **D.      The Proposed Class Notice and Plan for Dissemination Meet the Strictures of Rule 23**

3            Rule 23(e)(1) requires that a court approving a class action settlement must "direct notice in a

4    reasonable manner to all class members who would be bound by the proposal." In addition, for a

5    Rule 23(b)(3) class, the Rule requires the court to "direct to class members the best notice that is

6    practicable under the circumstances, including individual notice to all members who can be

7    identified through reasonable effort."[109] A class action settlement notice "is satisfactory if it

8    generally describes the terms of the settlement in sufficient detail to alert those with adverse

9    viewpoints to investigate and to come forward and be heard."[110]

10           The proposed notice plan is supported by an experienced notice and claims administrator –

11   JND Legal Administration, which has worked with counsel to develop the proposed plan of notice.

12   JND's Jennifer Keough submits a declaration in support of the proposed notice plan attesting to its

13   adequacy and constitutionality.[111] The notice forms provide all of the information required by Rule

14   23(c)(2)(B) to the settlement class, in language that is plain and easy to understand.[112] DPPs provide

15   proposed forms for the mailed long-form notice, summary notice, and online banner notices.[113]

16           The proposed plan of notice includes several components. The direct notice component will

17   include mailed notice to the class members for whom DPPs already have identified names and

18   contact information (more than 90% of class members weighted by purchase volume), plus those

19   class members for whom the Administrator will be able to identify contact information.[114] Those

---

21   [107] *See, e.g.*, *Harrington v. City of Albuquerque*, 222 F.R.D. 505, 520 (D.N.M. 2004).

22   [108] *Cf. Farley v. Baird, Patrick & Co., Inc.*, No. 90 Civ. 2168 (MBM), 1992 WL 321632, at *5
     (S.D.N.Y. Oct. 28, 1992) ("Class counsel's competency is presumed absent specific proof to the
23   contrary by defendants.").

     [109] Fed. R. Civ. P. 23(c)(2)(B).

24
     [110] *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also* Fed. R. Civ. P.
25   23(c)(2)(B) (describing specific information to be included in the notice).

26   [111] *See* Keough Decl., ¶¶ 1-10, 18, 28, Ex. A.

     [112] *See id.*, ¶¶ 9, 10, 16-18; Exs. B, D.
27
     [113] Keough Decl., ¶¶ 11, 21, Exs. B, D, E.

28   [114] Friedman Decl., ¶ 22; Keough Decl., ¶¶ 11-15.

1    class members will receive individualized notices with pre-printed claim forms identifying the class

2    member's purchases. The notice package will instruct class members they do not have to submit a

3    claim form and will automatically receive a benefit if they do not take further action – maximizing

4    the number of class members receiving compensation – and will provide opportunities by mail or

5    online to submit additional information if a class member wishes to challenge its purchase amount.[115]

6         The direct notice campaign will be supplemented by a robust digital campaign and press

7    release to ensure that all potential settlement class members receive notice.[116] There will be a press

8    release distributed over PR Newswire's US1 Newsline, as well as a digital banner campaign in a

9    leading public eNewsletter and placed on industry websites.[117] Self-identified class members will

10   have the ability to submit an electronic claim on the settlement website or download a paper version

11   of the claim form to complete and mail to the Settlement Administrator. DPPs will establish a

12   website where class members will be able to find additional, detailed information, including

13   "Frequently Asked Questions," important case documents, and contact information for both class

14   counsel and the Settlement Administrator. Class members visiting the settlement website will have

15   the ability to enter an access code to review their purchase information. A toll-free telephone number

16   will also be established to answer questions from class members.[118]

17        These notice provisions satisfy Rule 23's requirements. They will allow the class a full and

18   fair opportunity to review and respond to the proposed settlement.

19   **E.    Information Required by Updated Northern District of California Procedural Guidance for Class Action Settlements**

20        On November 1, 2018, the Northern District of California updated its Procedural Guidance

21   for Class Action Settlements to require certain new information at the preliminary approval stage.[119]

22

23

24   _____

      [115] Keough Decl., ¶¶ 11, 17, 24.

25   [116] *Id.*, ¶ 11, 19-22.

      [117] *Id.*, ¶¶ 19-22, Ex. E.

26   [118] *Id.*, ¶¶ 23-26.

27   [119] *See* Procedural Guidance for Class Action Settlements, U.S. District Court for the Northern
      District of California, http://www.cand.uscourts.gov/ClassActionSettlementGuidance (last visited
28   Nov. 8, 2018).

The new required information that applies to these settlements follows.

Prior to engaging JND as the notice and claims administrator, interim co-lead counsel sent a Request for Proposal to four different and reputable administrators. The Request for Proposal included a carefully drafted template for them to complete that was designed to ensure that each firm was making the same key assumptions about the notice and administration of the settlements, and to ensure an apples-to-apples comparison. All four administrators responded with the completed template, as well as additional information explaining its proposal. It was only after this competitive bidding process that counsel chose JND as providing the best value for the Settlement Class. All four administrators proposed direct notice through US mail and email, as well as indirect notice, predominantly through a variety of online digital media methods. The claims payment methods proposed included checks sent through U.S. Mail or Federal Express, as well as electronic payment transfers. In the last two years, JND has worked with Cohen Milstein Sellers & Toll PLLC on four cases, and JND has worked with Hagens Berman Sobol Shapiro LLP on one case. JND estimates total administration costs will be $204,614, or approximately .8% of the settlement fund.[120]

DPPs' expenses and costs to date are approximately $1,708,455. This includes, for example, over $1 million invested in expert work. DPPs' costs will increase between now and the final approval hearing, proposed for April 11, 2019. DPPs' economic experts, for example, estimate that between now and April 11, 2019, they will bill for work costing approximately $528,750, preparing, *inter alia*, DPPs' class certification expert report and DPPs' rebuttal class certification expert report.[121] Many unknowns make forecasting these future costs difficult, and thus they may be lower, or higher, than projected.

Through October 31, 2018, DPPs have invested $7,509,302.25 in attorneys' fees in this litigation. DPPs explain above that class counsel plan to make a request for attorneys' fees of 20 percent of the total settlement fund of $25.75 million, or $5.15 million. A $5.15 million attorneys' fee award would be approximately 68.58% of the attorneys fees' invested to date, and DPPs will

---

[120] Friedman Decl., ¶ 24; Keough Decl., ¶ 27.

[121] Friedman Decl., ¶ 25.

invest substantial additional attorney resources in this litigation between now and the final approval hearing.[122]

DPPs provide the required summary charts with information about comparable class action settlements in the Appendix to this Motion.

**F.     Proposed Schedule for Dissemination of Notice and Final Approval**

DPPs propose the following schedule for the dissemination of class notice and final approval:

| Event | Proposed Deadline |
|---|---|
| Notice campaign to begin, including website, mailing, and digital notice | December 17, 2018 |
| Last day for motion for attorneys' fees, costs, expenses, and service awards | January 11, 2019 (35 days before objection deadline) |
| Last day for objections and requests for exclusion from the class | February 15, 2019 (60 days from notice) |
| Last day for motion in support of final approval of settlements | March 4, 2019 (17 days after objection deadline) |
| Last day to submit claims | March 18, 2019 (91 days from notice) |
| Fairness Hearing | April 11, 2019 (38 days from motion for final approval), unless otherwise ordered by the Court. |

## V.     CONCLUSION

With these settlements, DPPs have guaranteed recovery of $25.75 million for the direct purchaser class. The settlements were reached only after intense negotiations that followed several years of hard-fought litigation, and they are easily within the range of possible approval. Respectfully, DPPs request that this Court enter an order: (1) preliminarily approving the proposed class action settlements with HDK, Kamaya-Walsin, Panasonic, and ROHM; (2) certifying the settlement class; (3) appointing Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll PLLC as DPP Class Counsel; and (4) approving the manner and form of notice and proposed plan of allocation to class members.

---

[122] Friedman Decl., ¶ 26.

1    DATED: November 8, 2018                HAGENS BERMAN SOBOL SHAPIRO LLP

2
                                           By _____s/ Jeff D. Friedman_____
3                                                   JEFF D. FRIEDMAN

4                                          Shana E. Scarlett (217895)
                                           Benjamin J. Siegel (256260)
5                                          715 Hearst Avenue, Suite 202
                                           Berkeley, CA 94710
6                                          Telephone: (510) 725-3000
                                           Facsimile:  (510) 725-3001
7                                          jefff@hbsslaw.com
                                           shanas@hbsslaw.com
8                                          bens@hbsslaw.com

9                                          Steve W. Berman (*pro hac vice*)
                                           HAGENS BERMAN SOBOL SHAPIRO LLP
10                                         1301 Second Avenue, Suite 2000
                                           Seattle, WA 98101
11                                         Telephone: (206) 623-7292
                                           Facsimile:  (206) 623-0594
12                                         steve@hbsslaw.com

13                                         Kit A. Pierson (*pro hac vice*)
                                           Daniel A. Small (*pro hac vice*)
14                                         Emmy L. Levens (*pro hac vice*)
                                           Robert A. Braun (*pro hac vice*)
15                                         Laura Alexander (255485)
                                           COHEN MILSTEIN SELLERS & TOLL PLLC
16                                         1100 New York Ave. NW, Suite 500, West Tower
                                           Washington, DC 20005
17                                         Telephone: (202) 408-4600
                                           kpierson@cohenmilstein.com
18                                         dsmall@cohenmilstein.com
                                           elevens@cohenmilstein.com
19                                         lalexander@cohenmilstein.com
                                           rbraun@cohenmilstein.com
20

21                                         *Co-Lead Counsel for Direct Purchaser Plaintiffs*

22

23

24

25

26

27

28

## APPENDIX

In this Appendix, DPPs provide the summary charts described in paragraph 11 of the November 1, 2018 update to the Northern District of California's Procedural Guidance for Class Action Settlements. Paragraph 11 instructs that lead class counsel should provide certain information "for at least one of their past comparable class settlements."  The first chart below is for *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 766 (E.D. Ill.), in which Cohen Milstein Sellers & Toll PLLC was co-lead counsel for the direct purchaser class plaintiffs.  The second chart below is for *Pecover, et al. v. Electronic Arts Inc.*, No 08-cv-02820-CW (N.D. Cal.), in which Hagens Berman Sobol Shapiro LLP was co-lead counsel for the indirect purchaser class plaintiffs in this antitrust action.

**In re Plasma-Derivative Protein Therapies DPP Antitrust Case**
*All figures are best estimates*

| | % Total Settlement |
|---|---|
| Settlement $128.0 million | 100% |
| Plaintiff Fund $80,326,720.46 | 63% |
| Claims* | |
| Class members 3,480 | |
| Notices Mailed 2,498 / 3,480** | |
| Approved Claims 697 / 709 | |
| Average recovery $114,322.17 | |
| Cy Pres $0 | 0% |
| Attorney fees awarded $42.67 million | 33.3% |
| Lodestar $37,754,512.26 | |
| Hours 94,266 | |
| Multiplier 1.13 | |
| Attorney Costs $4,431,850.31 | 3.46% |
| Administrative Costs $384,569.59 | 0.3% |

*This reflects information for two separate settlements. The average recovery reflects the average amount awarded to a claim that was eligible for awards from both settlements (the majority of approved claimants).

**This is the number of class members receiving direct notice; indirect notice campaigns through publication also occurred.

**Electronic Arts IPP Antitrust Case**
*All figures are best estimates*

| | % Total Settlement |
|---|---|
| Settlement  $27 million | 100% |
| Plaintiff Fund $16,782,988 | 62% |
| Claims paid $11,592,317 | 43% |
| Class members 27 million | |
| Class members sent notice 14.076 million | |
| Claims 143,775 (1.02%) | |
| Average recovery per claimant $80.63 | |
| Cy Pres $0 | 0% |
| Residual $5.033 million (escheated) | 18.64% |
| Attorney fees awarded $7.3 million | 27% |
| Lodestar $6,327,320 | |
| Hours 13,878 | |
| Multiplier 1.15 | |
| Attorney Costs $2 million | 7.4% |
| Administrative costs $1.170 million | 4.3% |

*This is the number of class members receiving direct notice; indirect notice campaigns through publication also occurred.