Jeff D. Friedman (173886)
Shana E. Scarlett (217895)
Benjamin J. Siegel (256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com
bens@hbsslaw.com

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

Kit A. Pierson (*pro hac vice*)
Daniel A. Small (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
kpierson@cohenmilstein.com
dsmall@cohenmilstein.com

*Co-Lead Counsel for Direct Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE RESISTORS ANTITRUST LITIGATION<br><br>This Documents Relates to:<br><br>DIRECT PURCHASER ACTIONS | Case No. 3:15-cv-03820-JD<br><br>DECLARATION OF JEFF D. FRIEDMAN IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH HDK, KAMAYA/WALSIN, PANASONIC, AND ROHM DEFENDANTS AND DISSEMINATION OF CLASS NOTICE<br><br>Date:  December 13, 2018<br>Time:  10:00am<br>Dept:  Courtroom 11, 19th Floor<br>Judge: Hon. James Donato |

010554-11 1045559 V1

I, Jeff D. Friedman, declare as follows:

1. I am an attorney duly licensed to practice before all of the courts of the State of California in the above-titled litigation. I am a partner with the law firm of Hagens Berman Sobol Shapiro LLP, counsel of record, alongside Cohen Milstein Sellers & Toll PLLC, for the Direct Purchaser Plaintiffs ("DPPs") in the above-titled action. Based on personal knowledge or discussions with counsel in my firm and the other counsel of record in this case of the matters stated herein, if called upon, I could and would competently testify thereto.

2. This case involves federal antitrust claims brought by direct purchasers of linear resistors. Linear resistors are known as "passive electronic components" and are a fundamental part of electrical circuits. Linear resistors are ubiquitous – present in myriad electronic devices including automobiles, televisions, cell phones, computers, and kitchen equipment. DPPs allege in this action that defendants conspired to fix the prices of linear resistors from July 9, 2003 through August 1, 2014. DPPs allege that the conspiracy was carried out through agreements to fix prices and restrict output and was facilitated in a variety of ways, including via face-to-face meetings, electronic communications, phone calls, and the use of trade associations.

3. On July 6, 2018, DPPs and defendants HDK America, Inc. and Hokuriku Electric Industry Co. ("HDK" or the "HDK defendant family") executed a settlement agreement. As described more fully in the settlement agreement, DPPs agreed to release all of their claims against HDK in exchange for cash payments totaling $2,000,0000 and other valuable consideration. Execution of the settlement agreement followed months of informal negotiations and a full-day mediation in Chicago with mediator Gerald G. Saltarelli. This was the first proposed DPP settlement in the case.

4. On July 11, 2018, DPPs and defendants Kamaya Electric Co., Ltd., Kamaya Inc., Walsin Technology Corporation, and Walsin Technology Corporation U.S.A. ("Kamaya-Walsin" or the "Kamaya-Walsin defendant family") executed a settlement agreement. As described more fully in the settlement agreement, DPPs agreed to release all of their claims against Kamaya-Walsin in exchange for cash payments totaling $5,250,0000 and other valuable consideration. Execution of the

1    settlement agreement followed months of informal negotiations. Kamaya Electric Co., Ltd. (a
2    Japanese corporation), Kamaya Inc. (a U.S. corporation), and Walsin Technology Corporation
3    U.S.A. (a U.S. corporation) are all subsidiaries of a Tawainese corporation, Walsin Technology
4    Corporation.They are represented by the same defense counsel. Discovery has shown that during the
5    Class Period, nearly all of Kamaya-Walsin's direct sales of linear resistors in the U.S. were sold
6    through defendant Kamaya Inc.

7    5.    On September 3, 2018, DPPs and defendant Panasonic Corporation ("Panasonic" or
8    the "Panasonic defendant family") executed a settlement agreement. As described more fully in the
9    settlement agreement, DPPs agreed to release all of their claims against Panasonic in exchange for
10   cash payments totaling $12,000,0000 and other valuable consideration. Defendant Panasonic
11   Corporation of North America was not a party to the DPP settlement agreement with Panasonic
12   Corporation, but it is included in the settlement agreement's release. Execution of the settlement
13   agreement followed months of informal negotiations.

14   6.    On October 29, 2018, DPPs and defendants ROHM Co., Ltd. and ROHM
15   Semiconductor U.S.A., LLC ("ROHM" or the "ROHM defendant family") executed a settlement
16   agreement. As described more fully in the settlement agreement, DPPs agreed to release all of their
17   claims against ROHM in exchange for cash payments totaling $6,500,0000 and other valuable
18   consideration. Execution of the settlement agreement followed months of informal negotiations.

19   7.    The class representative has reviewed the terms of the settlements with HDK,
20   Kamaya-Walsin, Panasonic, and ROHM, and has given approval.

21   8.    The KOA defendant family remains in the DPPs' case. KOA is the largest defendant
22   family by market share. Claims against KOA are not released by DPPs' settlements with HDK,
23   Kamaya-Walsin, Panasonic, and ROHM. All of the settlements with these defendants preserve
24   DPPs' ability to pursue their claims against the KOA defendants for the entire amount of DPPs'
25   remaining damages.

26   9.    The decision to settle is based on a thorough understanding of the strengths and
27   weaknesses of DPPs' case. For example, DPPs have propounded 32 document requests on the HDK
28

defendants (in three separate sets of requests), 32 document requests on the Kamaya defendants (in three separate sets of requests), 38 documents requests on the Walsin defendants, 33 document requests on the Panasonic defendants (in four separate sets of requests), and 32 document requests on the ROHM defendants (in three separate sets of requests). DPPs have served a similar number of requests on KOA, as well as seeking discovery from relevant third parties. Over 10 million pages of documents have been produced in this case, with Settling Defendants alone producing more than 1.27 million documents (over 5.5 million pages). DPPs have devoted substantial resources in reviewing these documents, and have a well-developed understanding of the strengths and weaknesses of the documentary evidence against the Settling Defendants (and KOA). DPPs also have served multiple sets of interrogatories.

10. To date, DPPs have taken eighteen depositions, including individual Rule 30(b)(1) depositions and corporate Rule 30(b)(6) depositions. Additionally, DPPs defended the deposition of the class representative in a Rule 30(b)(6) deposition. From this substantial discovery and other investigative methods, DPPs have a firm grip on the strength of the evidence against the Settling Defendants and DPPs' liability case generally, as well as DPPs' case for class certification. DPPs, alone or in conjunction with the indirect purchaser plaintiffs ("IPPs"), have brought several discovery motions before this Court. DPPs also have retained industry experts and economists from the outset of the litigation for consultation and to analyze the market, to determine the impact of the price-fixing conspiracy on DPPs, to measure damages, and for related work. The discovery conducted thus far has shown that there is significant documentary and testimonial evidence that employees of defendants participated in meetings discussing the pricing for and production capacity of linear resistors.

11. The defendants have produced transactional data and documents from which DPPs, with the assistance of our retained economists, have been able to estimate the dollar value of each defendant's direct sales of linear resistors during the Class Period. The Rule 30(b)(6) depositions taken by DPPs and extensive meet and confer communications (including detailed questions about defendants' transactional data productions) have further developed our understanding of the data.

Armed with this discovery, DPPs entered into the instant settlement negotiations with extensive knowledge of the evidence demonstrating impact and measuring damages.

12. Based on the preliminary estimates of DPPs' economic experts, the HDK settlement amount of $2,000,000 represents approximately 18.3% of the HDK defendant family's direct sales to the Settlement Class during the Class Period.

13. Based on the preliminary estimates of DPPs' economic experts, the Kamaya-Walsin settlement amount of $5,250,000 represents approximately 7.9% of the Kamaya-Walsin defendant family's direct sales to the Settlement Class during the Class Period.

14. Based on the preliminary estimates of DPPs' economic experts, the Panasonic settlement amount of $12,000,000 represents approximately 5.5% of the Panasonic defendant family's direct sales to the Settlement Class during the Class Period.

15. Based on the preliminary estimates of DPPs' economic experts, the ROHM settlement amount of $6,500,000 represents approximately 6.5% of the ROHM defendant family's direct sales to the Settlement Class during the Class Period.

16. Based on the preliminary estimates of DPPs' economic experts, the total value of the settlements with the Settling Defendants of $25,750,000 represents approximately 6.5% of the Settling Defendants' total sales to the Settlement Class during the Class Period.

17. Based on the detailed transactional records defendants produced, DPPs' preliminary estimate of the total sales commerce on which to model potential overcharge damages in this litigation is approximately $1.1 billion. Assuming a 10% overcharge for guidance purposes is applied to these sales figures, single damages would equal approximately $110 million.

18. These settlements were negotiated by experienced counsel – Hagens Berman and Cohen Milstein – with extensive experience and success in large antitrust class actions. Hagens Berman is among the most experienced and skilled practitioners in the complex litigation field, and has long and successful track records in such cases. Hagens Berman is a nationally-recognized law firm, with offices in Berkeley, Seattle, Boston, Chicago, Los Angeles, New York, Phoenix, San Diego, and Washington D.C. The firm is rated by the National Law Journal in the top ten of

plaintiffs' firms in the country. Hagens Berman has extensive experience litigating complex class actions asserting claims of securities, investment fraud, product liability, tort, antitrust, consumer fraud, employment, environmental, and ERISA cases. Cohen Milstein, a nearly 100-lawyer firm based in Washington, D.C. with offices in six other cities, has been recognized as one of the nation's leading plaintiffs' class action firms for almost fifty years. The Trial Lawyer has named Cohen Milstein as one of "America's 25 Most Influential Law Firms"; the firm has been ranked by Legal 500 as a "Leading Plaintiff Class Action Antitrust Firm" for the past ten years; and the National Law Journal selected Cohen Milstein as Elite Trial Lawyers. Law360 has also repeatedly named Cohen Milstein one of the "Most Feared Plaintiffs Firms." Cohen Milstein's antitrust practice group is recognized for its experience in complex litigation challenging price-fixing, market allocation, and other anticompetitive behavior, with expertise spanning numerous industries, including agriculture, automotive parts, chemicals, financial services, health care, high tech, media and entertainment, pharmaceuticals, and many others.

19. Hagens Berman and Cohen Milstein have recovered billions of dollars in damages for injured plaintiffs, including as lead or co-lead class counsel in the following recent antitrust matters: *In re Electronic Books Antitrust Litigation*, No. 11-md-02293 (DLC) (S.D.N.Y.) (recovering $560 million) and *Nitsch v. Dreamworks Animation SKG, Inc.*, No. 14-cv- 04062 LHK (N.D. Cal.) (recovering $168.5 million). The fact that Hagens Berman and Cohen Milstein have demonstrated a willingness and ability to prosecute complex cases such as this was undoubtedly a factor that encouraged the Settling Defendants to engage in settlement discussions, and added valuable leverage in the negotiations, ultimately resulting in the recovery for the Settlement Class.

20. DPPs will request a service award for the class representative, Schuten Electronics, Inc., in the amount of $25,000. Schuten has been actively involved in the litigation of this case and, indeed, without its willingness to come forward and prosecute the action when neither the government nor any other direct purchaser would, the Settlement Class members would have received nothing for their injuries and the defendants would be left to pursue their illegal conduct unfettered. Schuten assisted Class Counsel in investigating and prosecuting this action, responded to

FRIEDMAN DECL. ISO MOT. FOR PRELIM. APPROVAL OF
CLASS ACTION SETTLEMENTS WITH HDK, KAMAYA,
WALSIN, PANASONIC & ROHM DEFS. - No.: 15-cv-03820-JD
010554-11 1045559 V1

-5-

1  detailed interrogatories, and searched for and produced documents responsive to fifty-four
2  document requests, and considered and weighed the benefits of the settlements. Defendants also
3  deposed a representative of Schuten Electronics in a Rule 30(b)(6) deposition, after identifying eight
4  broad subject areas in the deposition notice, each with several sub-parts.

5   21.  The DPP Settlement Class is geographically dispersed and is estimated to have
6  hundreds of members.

7   22.  From data and documents obtained in discovery, DPPs already have identified nearly
8  all of the class members and obtained contact information for more than 90% of class members
9  weighted by purchase volume.

10  23.  DPPs propose to distribute the settlement funds *pro rata* to class members based on
11  the dollar value of approved purchases per class member of linear resistors during the settlement
12  class period.

13  24.  Prior to engaging JND Legal Administration LLC as the notice and claims
14  administrator, interim co-lead counsel sent a Request for Proposal to four different and reputable
15  administrators. The Request for Proposal included a carefully drafted template for them to complete
16  that was designed to ensure that each firm was making the same key assumptions about the notice
17  and administration of the settlements, and to ensure an apples-to-apples comparison. All four
18  administrators responded with the completed template, as well as additional information explaining
19  their proposal. It was only after this competitive bidding process that counsel chose JND as
20  providing the best value for the Settlement Class. All four administrators proposed direct notice
21  through US mail and email, as well indirect notice, predominantly through a variety of online digital
22  media methods. The claims payment methods proposed included checks sent through U.S. Mail or
23  Federal Express, as well as electronic payment transfers. In the last two years, JND has worked
24  with Cohen Milstein Sellers & Toll PLLC on four cases, and JND has worked with Hagens Berman
25  Sobol Shapiro LLP on one case.

26  25.  DPPs' expenses and costs to date are approximately $1,708,455. This includes, for
27  example, over $1 million invested in expert work. DPPs' costs will increase between now and the

final approval hearing, proposed for April 11, 2019. DPPs' economic experts, for example, estimate that between now and April 11, 2019, they will bill for work costing approximately $528,750, preparing, *inter alia*, DPPs' class certification expert report and DPPs' rebuttal class certification expert report.

26. Through October 31, 2018, DPPs have invested $7,509,302.25 in attorneys' fees in this litigation, with the total number of hours billed to date, 20,645.2. DPPs will invest substantial additional attorney resources in this litigation between now and the proposed final approval hearing date.

27. Attached hereto are true and correct copy of the following exhibits:

Exhibit A:   Direct Purchaser Plaintiffs and HDK Defendants' Settlement Agreement;

Exhibit B:   Direct Purchaser Plaintiffs and Kamaya-Walsin Defendants' Settlement Agreement.

Exhibit C:   Direct Purchaser Plaintiffs and Panasonic Defendants' Settlement Agreement; and

Exhibit D:   Direct Purchaser Plaintiffs and ROHM Defendants' Settlement Agreement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 8th day of November, 2018 at Berkeley, California.

                                                    s/ Jeff D. Friedman
                                                    JEFF D. FRIEDMAN