1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE RESISTORS ANTITRUST LITIGATION | Case No. 3:15-cv-03820-JD |
| This Document Relates to: | **UPDATED DECLARATION OF JENNIFER M. KEOUGH REGARDING PROPOSED NOTICE PROGRAM** |
| DIRECT PURCHASER ACTIONS | |

I, JENNIFER M. KEOUGH, declare as follows:

**<u>INTRODUCTION</u>**

1.      I am the Chief Executive Officer of JND Legal Administration LLC ("JND").   This Declaration is based on my personal knowledge, as well as upon information provided to me by experienced JND employees and Counsel for Direct Purchaser Plaintiffs ("Counsel"), and if called up to do so, I could and would testify competently thereto.

2.      I have more than 20 years of legal experience creating and supervising multiple Notice and Claims Administration programs and have personally overseen well over 500 matters. A comprehensive description of my experience is attached hereto as <u>Exhibit A</u>.

3.      JND is a legal administration services provider with its headquarters located in Seattle, Washington.  JND has extensive experience with all aspects of legal administration and has administered settlements in hundreds of class action cases.  JND was chosen as the Settlement Administrator[1] in this case after going through a competitive bidding process.

---

[1] Capitalized terms used and not otherwise defined in this Declaration shall have the meanings given such terms in the Settlement Agreements with HDK, Kamaya-Walsin, Panasonic, and ROHM, as well as the
*Footnote continued on next page*

4.      As CEO of JND, I am involved in all facets of our Company's operation.  Among my responsibilities is to monitor the implementation of our Notice and Claim Administration programs.

5.      Plaintiffs allege that the HDK, Kamaya-Walsin, Panasonic, and ROHM entities, as well as other defendants, conspired to fix the prices of linear resistors from July 9, 2003 through August 1, 2014, in violation of Section 1 of the Sherman Act.  The proposed Settlement Class is defined as "all persons in the United States who purchased linear resistors (including through controlled subsidiaries, agents, affiliates or joint ventures) directly from any of the Defendants, their subsidiaries, agents, affiliates or joint ventures from July 9, 2003 through August 1, 2014" (the "Class Period").

6.      I submit this Declaration at the request of Counsel in the above-referenced litigation to describe the proposed program for providing notice to the Settlement Class.  On August 16, 2018, I submitted the Declaration of Jennifer M. Keough Regarding Proposed Notice Program, ECF No. 474-5, in connection with Plaintiffs' motion for preliminary approval of the settlements with the HDK and Kamaya-Walsin Defendants.  I submit this Updated Declaration of Jennifer M. Keough Regarding Proposed Notice Program, following the additional settlements with the Panasonic and ROHM Defendants.  I understand that Plaintiffs are now seeking preliminary approval of the settlements with all four defendant families, and the program described in this declaration is for providing notice to the Settlement Class about these four settlements.

**<u>EXPERIENCE RELEVANT TO THIS CASE</u>**

7.      JND is one of the leading legal administration firms in the country.  JND's class action division provides all services necessary for the effective implementation of class action settlements including: (1) all facets of legal notice, such as outbound mailing, email notification, and the design and implementation of media programs, including through digital and social media platforms; (2) website design and deployment, including on-line claim filing capabilities; (3) call

---

Declaration of Jennifer M. Keough Regarding Proposed Notice Program dated August 16, 2018.  "HDK" refers to HDK America, Inc. and Hokuriku Electric Industry Co. "Kamaya-Walsin" refers to Kamaya Electric Co., Ltd., Kamaya Inc., Walsin Technology Corporation, and Walsin Technology Corporation U.S.A.  "Panasonic" refers to Panasonic Corporation.  "ROHM" refers to ROHM Co., Ltd. and ROHM Semiconductor U.S.A., LLC.

center and other contact support; (4) secure class member data management; (5) paper and electronic claims processing; (6) calculation design and programming; (7) payment disbursements through check, wire, PayPal, merchandise credits, and other means; (8) qualified settlement fund tax reporting; (9) banking services and reporting; and (10) all other functions related to the secure and accurate administration of class action settlements. Our systems, policies, and procedures have been recognized by various publications, including the National Law Journal and the Legal Times, and most recently, the New York Law Journal, for excellence in class action administration.

8.      The principals of JND, including myself, collectively have over 75 years of experience in class action legal and administrative fields.   We have personally overseen administration for some of the most complex antitrust settlements, including: *Maplevale Farms, Inc. v. Koch Foods, Inc. et al. (In re Broiler Chicken Antitrust Litigation)*, No. 16-cv-8637 (N.D. Ill.); *In re Wholesale Grocery Products Antitrust Litigation*, No. 09-md-2090 (D. Minn.); *In re Visa Check/Mastermoney Antitrust Litigation*, No. 96-cv-5238 (E.D.N.Y.); *In re Auction Houses Antitrust Litigation*, No. 00-648 (S.D.N.Y.); *In re Polyurethane Foam Antitrust Litigation*, No. 10-md-02196 (N.D. Ohio); *In re Air Cargo Shipping Services Antitrust Litigation*, No. 06-md-1775 (E.D.N.Y.); *In re Processed Egg Products Antitrust Litigation*, No. 08-md-2002 (E.D. Pa.); *In re Automotive Parts Antitrust Litigation*, No. 12-md-2311 (E.D. Mich.); and *In re Refrigerant Compressor Antitrust Litigation*, No. 09-md-02042 (E.D. Mich.).

9.      JND's Legal Notice team, which operates under my direct supervision, researches, designs, develops, and implements a wide array of legal notice programs to meet the due process requirements of Rule 23 of the Federal Rules of Civil Procedure and relevant state court rules. Our notice campaigns, which are regularly approved by courts throughout the United States, use a wide variety of media including: newspapers, press releases, magazines, trade journals, radio, television, social media and the internet. The media used depends on the circumstances and allegations of the case; the demographics of the class; and the habits of its members, as reported by various research and analytics tools.   During my career, I have submitted several hundred affidavits to courts throughout the country attesting to our role in the creation and launch of various media programs.

JENNIFER M. KEOUGH DECLARATION
CASE NO. 3:15-CV-03820-JD

## NOTICE PROGRAM OVERVIEW

10.    The objective of the notice program (the "Notice Program") is to provide the best notice practicable, consistent with the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure and all applicable court rules.  The methods and tools used in developing this Notice Program have been employed in many other court-approved notice programs.

11.    The Notice Program described and detailed below has been designed to reach the Settlement Class through direct mail and a supplemental media program.  Specifically, the proposed Notice Program includes the following components:

- • Direct mail notice, in the form of a long form notice (the "Long Form Notice," attached hereto as Exhibit B), including a pre-printed claim form and access code (together, the "Notice Package") by first class U.S. mail to potential Class Members who can be identified through reasonable effort.  The proposed Notice Package envelope is attached hereto as Exhibit C.

- • Third-party direct mail outreach notice to potential alternate addresses, such as stores belonging to potential Class Members whose mailing addresses are not listed and cannot otherwise be located;

- • A press release of a shortened summary notice (the "Summary Notice," attached hereto as Exhibit D) distributed over PR Newswire's US1 Newsline;

- • A digital banner campaign targeting various electronic component and manufacturing industry websites, as well as a leading publication eNewsletter;

- • An informational and interactive case-specific website on which the notices and other important Court documents are posted, and that allows for electronic Claim Form submission; and

- • A toll-free information line that the Settlement Class can call 24/7 for more information about the Action.

## DIRECT NOTICE

12.    An adequate Notice Program needs to satisfy "due process" when trying to reach a class.  The United States Supreme Court, in the seminal case of *Eisen v. Carlisle & Jacqueline*, 417

U.S. 156 (1974), clearly stated that direct notice (when possible) is the preferred method for reaching a class. For this matter, JND will send the Notice Package via direct mail to each potential Class Member where contact information is available.

13. Upon receipt of the class list data, JND will promptly load the information into a unique database for these Settlements. A unique ID is assigned to each potential Class Member for purposes of identifying throughout the administration process. To increase deliverability, JND will review the data provided to identify any bad mailing addresses and duplicate records based on names and addresses.

14. Prior to mailing the Notice Package, JND will update all addresses using the United States Postal Services' National Change of Address database.[2] In addition, JND will employ sophisticated advanced address search methods to attempt to update and complete the mailing list where addresses are not currently available. JND will also promptly re-mail Notices that are returned with a forwarding address and conduct additional research on any notices that are returned as undeliverable without a forwarding address and re-mail any notices for which an alternative address is located, as needed.

15. Where addresses are not available, JND will conduct additional advanced address research to identify contact information and provide direct notice accordingly.

**NOTICE DESIGN AND CONTENT**

16. JND has designed the Notice Package to attract the attention of the recipient so they will be encouraged to read the contents and act if needed. The Notice Package will include bolded language to indicate that important Court Ordered information is enclosed. Each Notice Package contains plain and easy-to-read summaries of the Settlements and the options available. Additionally, each Notice Package provides instructions on how to obtain more information about the Settlements. Additionally, each Notice Package includes "call-outs" on the front and back of the envelope to encourage the recipient to open and read the notice.

---

[2] The NCOA database is the official United States Postal Service ("USPS") technology product which makes change of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mail stream. This product is an effective tool to update address changes when a person has completed a change of address form with the USPS. The address information is maintained on the database for 48 months.

JENNIFER M. KEOUGH DECLARATION
CASE NO. 3:15-CV-03820-JD

17.     The Notice Package will include a pre-printed claim form, which will clearly display the potential Class Member's identified purchases (which will be used to determine the allocated award amount).  The Notice Package will also include an access code that recipients can use to review their purchase information on the Settlement Website.  The Notice Package will instruct the potential Class Members that they will automatically receive a benefit if they do not take any further action.  Those who wish to challenge their purchase amount will be able to submit the Claim Form and provide JND with additional information for review.

18.     Notice documents must be in plain language and comply with the requirements of Rule 23 of the Federal Rules of Civil Procedure.  I have reviewed the documents and believe they comply with these requirements, as well as with the Procedural Guidance for Class Action Settlements in the District Court for the Northern District of California.

## DIGITAL MEDIA CAMPAIGN

19.     To bolster the direct mail campaign described above, JND will implement a targeted digital media plan to ensure all potential Class Members receive notice.  JND recommends distributing a press release over PR Newswire, as well as a digital banner campaign in a leading publication eNewsletter and placed on industry websites.

20.     JND recommends a press release of the Summary Notice to be distributed over PR Newswire's US1 Newsline, as well as distribution to over 300 journalists with an industry focus on *Electronics Supply and Manufacturing*, and *Process, Manufacturing, and Industrial Controls*.

21.     JND also recommends a digital banner campaign to run on various electronic component and manufacturing industry websites to target potential Class Members for a period of four (4) weeks.  The banners will run across mobile, tablet and desktop devices.  The exact websites will be determined upon availability at the time of placement.  The proposed banners are attached hereto as Exhibit E.

22.     The *Electronic Components News* eNewsletter offers subscribers a variety of information on electronic design products and processes for application in computers, communication equipment, consumer electronics, and industrial systems.  Topics include circuit boards, active and passive devices, signal conditioning components, and interconnect devices to

solve practical problems.  The markets served include Automotive, Aerospace and Defense, Communications, Consumer Products and Electronics, and Computers.  JND recommends publishing the digital banner ads in the eNewsletter for five (5) consecutive days (Monday through Friday).  The eNewsletter has approximately 50,000 subscribers.

### DEDICATED CASE WEBSITE AND TOLL-FREE NUMBER

23.     An informational, interactive Settlement Website dedicated to the case will be developed to enable potential Class Members to get information about the litigation.  The Settlement Website will have an easy-to-navigate design and will be formatted to emphasize important information and deadlines.  Other available features will include an email contact form, frequently asked questions page, and links to downloadable copies of the Long Form Notice and other important documents.

24.     Visitors to the Settlement Website will have the ability to enter their access code to review their purchase information.  They will also have the ability to submit a Claim Form electronically if they challenge their purchase amount and would like to provide additional information.  Self-identified potential Class Members will have the ability to submit an electronic claim on-line or download a paper version of the Claim Form from the Website to complete and mail to JND.

25.     The Settlement Website will be optimized for mobile visitors so that information loads quickly on mobile devices and will also be designed to maximize search engine optimization through Google and other search engines.  Key words and natural language search terms will be included in the site's metadata to maximize search engine rankings.

26.     JND will make available its scalable call center resources to develop and manage the incoming telephone calls received in response to the Notice Program.  JND will establish and maintain a 24-hour, toll-free telephone line where callers may obtain information about the case, with call center associates available to answer questions during business hours.

### NOTICE AND ADMINISTRATION COSTS

27.     JND's estimated noticing and settlement administration costs for this matter are $204,614.  This amount is reasonable in relation to the value of the Settlements because of the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

number of Settling Defendants, the complexity of the transaction history data, the development of online filing capabilities to allow potential Class Members to dispute their purchase amount electronically, the time required to review and validate supporting documentation submitted by potential Class Members, and the anticipated volume of calls and emails requiring assistance or additional information.

### <u>CONCLUSION</u>

28.     JND believes that the Notice Program as described herein, and the Long-Form Notice and Summary Notice attached as exhibits hereto, will provide the best notice practicable under the circumstances, are consistent with the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure and all applicable court rules, and are consistent with, and indeed exceed, other similar court-approved best notice practicable notice programs.  The Program is designed to reach as many potential Class Members as possible and provide them with the opportunity to review a plain language notice with the ability to easily take the next step and learn more.


I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed November 7, 2018, at Seattle, Washington.

Jennifer M. Keough

JENNIFER M. KEOUGH DECLARATION
CASE NO. 3:15-CV-03820-JD

# **EXHIBIT A**

# JENNIFER KEOUGH

## CHIEF EXECUTIVE OFFICER AND CO-FOUNDER





# I. INTRODUCTION

Jennifer Keough is Chief Executive Officer and a Founder of JND Legal Administration ("JND"). JND specializes in the administration of class action, mass tort, corporate restructuring, government services and eDiscovery matters. With offices in Seattle, Denver, Minneapolis, Los Angeles, Washington DC, and New York, JND is the fastest growing company in the legal administration space.

Ms. Keough is recognized by practitioners on both sides of the aisle as an expert in all facets of class action administration, from notice through distribution. She is often called upon to consult with parties prior to settlement because of her experience in all phases of administration, not just notice. Ms. Keough has more than 20 years of legal experience. During her career in legal administration she has handled some of our country's largest, most high-profile engagements, including the BP Deepwater Horizon Settlement, Cobell Indian Trust Settlement, Engle Smokers Trust Fund, Gulf Coast Claims Facility, Stryker Modular Hip Settlement, and Verizon Wireless FTC Litigation. In 2015 and 2017, she was named a "Woman Worth Watching" by Profiles in Diversity Journal. She is frequently invited to speak on class action issues and has written numerous articles in her areas of expertise. In 2017, she was also named a female entrepreneur of the year in the 14th annual Stevie Awards for Women in Business.

As the CEO of JND Legal Administration, Ms. Keough has a hand in all facets of the business, from day-to-day processes to high-level strategy. She oversees all aspects of JND's class action division including noticing, claims processing, Systems and IT work, call center, data analytics, recovery calculations, check distribution and reporting. But Ms. Keough also provides her expertise and knowledge to all other divisions

1

of JND as well, including mass tort, corporate restructuring, government services, and eDiscovery.

Prior to forming JND, Ms. Keough was Chief Operating Officer and Executive Vice President for one of the then largest administration firms in the United States. In her former role, Ms. Keough oversaw operations in several offices across the country and was responsible for overseeing all of their large, important projects. Prior to that position, Ms. Keough worked as a class action business analyst at Perkins Coie, one of the country's premier defense firms, responsible for managing complex class action settlements and remediation programs, including the selection, retention, and supervision of legal administration firms.

While at Perkins, Ms. Keough was responsible for all administration efforts related to the Weyerhaeuser siding case, one of the largest building product class action settlements ever. She not only oversaw the outside administration firm selected by the parties, but she worked closely with plaintiffs' counsel, Lieff Cabraser, and developed a reputation of fairness in being able to see both sides of a settlement program.

Ms. Keough has played a role in a number of landmark cases including the BP Deepwater Horizon class action, which arose out of the largest oil spill in our nation's history and the Cobell American Indian $3.2 billion settlement, the largest government class action settlement in history. In connection with that settlement, Ms. Keough was called upon to testify before the Senate Committee for Indian Affairs, where Senator Jon Tester of Montana praised her work in connection with Notice efforts to the American Indian community stating "Oh, wow. Okay... the administrator has done a good job, as your testimony has indicated, [discovering] 80 percent of the whereabouts of the unknown class members."

Ms. Keough has created and supervised multiple notice plans. In fact, since forming JND in 2016, her notice programs have been approved in several cases, including but not limited to the following: *In re: Wholesale Grocery Prods. Antitrust Litig.*, No. 09-md-02090 (D. Minn.); *Chester v. The TJX Cos., Inc., et al.*, No. 15-cv-01437 (C.D. Cal.); *Linneman, et al., v. Vita-Mix Corp., et al.*, No. 15-cv-748 (S.D. Ohio); *Dover, et al., v. British Airways, PLC (UK)*, No. 12-cv-5567 (E.D.N.Y.); *Delkener v. Cottage Health Sys.*, No. 30-2016-00847934 (Sup. Ct. Cal); and *Health Republic Ins. Co. v. United States*, No. 16-cv-00259 (Fed. Cl.). With her experience, she is able to create a comprehensive notice and administration program that is unique to each client's needs.

Ms. Keough earned her J.D. from Seattle University. She graduated from Seattle University with a B.A. and M.S.F. with honors.



# II. LARGE CASE EXPERIENCE

Jennifer Keough has the distinction of personally overseeing more large class action settlement programs than any other notice expert. In her 20-year career she has managed and directly overseen hundreds of projects from notice through distribution of settlement awards. Some of the largest engagements are as follows:

### 1. In re Air Cargo Shipping Services Antitrust Litigation
No. 06-md-1775 (JG) (VVP) (E.D.N.Y.)

This Antitrust Settlement involved five separate settlements. As many Class Members were affected by more than one of the Settlements, Ms. Keough constructed the notice and claims programs for each settlement in a manner which allowed for the comparison of claims data. Each claims administration program included claims processing, review of supporting evidence, and a deficiency notification process. The deficiency notification process included mailing of deficiency letters, making follow up phone calls, and sending emails to class members in order to help them complete their claim. To ensure accuracy throughout the claims process for each of the Settlements, Ms. Keough created an audit process which audited many of the claims that were eligible for payment.

### 2. Allagas v. BP Solar Int'l, Inc.
No. 14-cv-00560 (N.D. Cal.)

Ms. Keough was appointed by the United States District Court for the Northern District of California as the Independent Claims Administrator ("ICA") supervising the notice and administration of this complex settlement involving inspection, remediation and replacement of solar panels on homes and businesses throughout California and other parts of the United States. Ms. Keough and her team devised the administration protocol and built a network of inspectors and contractors to perform the various inspections and other work needed to assist claimants. She also built a program that included a team of operators to answer claimant questions, a fully interactive dedicated website with on-line claim filing capability, and a team trained in the very complex intricacies of solar panel mechanisms. In her role as ICA, Ms. Keough regularly reports to the parties and the Court as to the

progress of the administration. In addition to her role as ICA, Ms. Keough also acts as mediator for those claimants who have opted out of the settlement and wish to pursue their claims individually against BP.

### 3.   Careathers vs. Red Bull North America, Inc.

No. 13-cv-00369 (KPF) (S.D.N.Y.)

Due to the nature of this case, direct notice was impossible. Therefore, Ms. Keough assisted in the design of a publication notice and claims administration program intended to reach the greatest amount of affected individuals as possible. Due to the successful notice program, the informational website designed by Ms. Keough as part of the Notice Program received an unprecedented 67 million hits in less than 24 hours. The Claims Administration program received over 2 million claim forms submitted through the three available filing options: online, mail, and email. The Court approved the notice program finding:

> ...that the Notice to the Settlement Class... was collectively the best notice practicable under the circumstances of these proceedings of the matters set forth therein, and fully satisfies the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure, due process, and any other applicable laws.

### 4.   Chester v. The TJX Cos., Inc., et al.

No. 15-cv-01437 (C.D. Cal.)

As the notice expert, Ms. Keough created a multi-faceted Notice plan designed to reach over eight million known and unknown class members. Where class member information was available, the notice plan provided for direct notice via email, and via postcard when an email was returned as undeliverable or for which there was no email address provided. Additionally, to reach the unknown class members, Ms. Keough's plan included a summary publication in eight newspapers or magazines directed toward the California class and a tear-away notice posted in all TJ Maxx locations in California. The Notice plan also includes an informational and interactive website with online claim filing and a toll-free number to provide information to class members 24 hours a day. Additionally, associates are available to answer class member questions in both English and Spanish during business hours.

## 5.   In re Classmates.com

### No. C09-45RAJ (W.D. Wash.)

Ms. Keough managed a team that provided email notice to over 50 million users with an estimated success rate of 89%. When an email was returned as undeliverable, it was resent up to three times in an attempt to provide notice to the entire class. Additionally, Ms. Keough implemented a claims administration program which received over 699,000 claim forms and maintained three email addresses in which to receive objections, exclusions, and claim form requests. The Court approved the program when it stated:

> The Court finds that the form of electronic notice... together with the published notice in the Wall Street Journal, was the best practicable notice under the circumstances and was as likely as any other form of notice to apprise potential Settlement Class members of the Settlement Agreement and their rights to opt out and to object. The Court further finds that such notice was reasonable, that it constitutes adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of Due Process....

## 6.   Cobell v. Salazar

### No. 1:96 CV 01285 (TFH) (D. D.C.)

As part of the largest government class action settlement in our nation's history, Ms. Keough worked with the U.S. Government to implement the administration program responsible for identifying and providing notice to the two distinct but overlapping settlement classes. As part of the notice outreach program, Ms. Keough participated in multiple town hall meetings held at Indian reservations located across the country. Due to the efforts of the outreach program, over 80% of all Class Members were provided notice. Additionally, Ms. Keough played a role in creating the processes for evaluating claims and ensuring the correct distributions were made. Under Ms. Keough's supervision, the processing team processed over 480,000 claims forms to determine eligibility. Less than one half of 1 percent of all claim determinations made by the processing team were appealed. Ms. Keough was called upon to testify before the Senate Committee for Indian Affairs, where Senator Jon Tester of Montana praised her work in connection with Notice efforts to the American Indian community when he stated: "Oh, wow. Okay... the

administrator has done a good job, as your testimony has indicated, [discovering] 80 percent of the whereabouts of the unknown class members." Additionally, when evaluating the Notice Program, the Court concluded:

> ...that adequate notice of the Settlement has been provided to members of the Historical Accounting Class and to members of the Trust Administration Class.... Notice met and in many cases exceeded the requirements of F.R.C.P. 23(c)(2) for classes certified under F.R.C.P. 23(b)(1), (b)(2) and (b)(3). The best notice practicable has been provided class members, including individual notice where members could be identified through reasonable effort. The contents of that notice are stated in plain, easily understood language and satisfy all requirements of F.R.C.P. 23(c)(2)(B).

## 7.   In re The Engle Trust Fund

### No. 94-08273 CA 22 (11th Jud. Cir. Ct., Miami-Dade County Ct.)

Ms. Keough played a key role in administering this $800 million landmark case against the country's five largest tobacco companies. Miles A. McGrane, III, Trustee to the Engle Trust Fund recognized Ms. Keough's role when he stated:

> The outstanding organizational and administrative skills of Jennifer Keough cannot be overstated. Jennifer was most valuable to me in handling numerous substantive issues in connection with the landmark Engle Trust Fund matter. And, in her communications with affected class members, Jennifer proved to be a caring expert at what she does.

## 8.   In Re General Motors LLC Ignition Switch Litigation

Ms. Keough oversaw the creation of a Claims Facility for the submission of injury claims allegedly resulting from the faulty ignition switch. The Claims Facility worked with experts when evaluating the claim forms submitted. First, the Claims Facility reviewed thousands of pages of police reports, medical documentation, and pictures to determine whether a claim met the threshold standards of an eligible claim for further review by the expert. Second, the Claims Facility would inform the expert that a claim was ready for its review. Ms. Keough constructed a database which allowed for a seamless transfer of claim forms and supporting documentation to the expert for further review.

## 9.  Gulf Coast Claims Facility (GCCF)

The GCCF was one of the largest claims processing facilities in U.S. history and was responsible for resolving the claims of both individuals and businesses relating to the Deepwater Horizon oil spill. The GCCF, which Ms. Keough helped develop, processed over one million claims and distributed more than $6 billion within its year-and-a-half existence. As part of the GCCF, Ms. Keough coordinated a large notice outreach program which included publication in multiple journals and magazines in the Gulf Coast area. She also established a call center staffed by individuals fluent in Spanish, Vietnamese, Laotian, Khmer, French and Croatian.

## 10. Linneman, et al., v. Vita-Mix Corp., et al.

### No. 15-cv-748 (S.D. Ohio)

Ms. Keough was hired by the plaintiff to design a notice program regarding this consumer settlement related to allegedly defective blenders. The Court approved Ms. Keough's plan and designated her as the notice expert for this case. As direct notice to the entire class was impracticable due to the nature of the case, Ms. Keough helped design a multi-faceted Notice Program. Direct notice was provided by mail or email to those purchasers identified through Vita-Mix's data and also obtained through third parties, such as retailers, dealers, distributors, or restaurant supply stores. To reach the unknown class members, Ms. Keough designed an extensive publication and media plan. The plan included publishing notice in Cooking Light, Good Housekeeping, and People magazine and advertising through Facebook/Instagram, Twitter, and Conversant, as well as a paid search campaign through Google and Bing. In addition, the program includes an informational and interactive website where class members may submit claims electronically, and a toll free number to provide information to class members 24 hours a day.

## 11. Loblaw Card Program

Jennifer Keough was selected by major Canadian retailer Loblaw and its counsel to act as Program Administrator in its voluntary remediation program as a result of a price-fixing scheme by some employees of the company involving bread products. The Program offered a $25 Card to all adults in Canada who purchased bread products in Loblaw stores between 2002 and 2015. Some 28 million Canadian residents are potential claimants in the Program. Ms. Keough and her team:

(1) built an interactive website that was capable of withstanding hundreds of millions of "hits" in a short period of time; (2) built, staffed and trained a call center with operators available to take calls twelve hours a day, six days a week; (3) oversee the vendor in charge of producing and distributing the cards; (4) are in charge of designing and overseeing fraud prevention procedures; and (5) handle myriad other tasks related to this high-profile and complex project.

## 12. New Orleans Tax Assessor Project

After Hurricane Katrina, the City of New Orleans began to reappraise properties in the area which caused property values to rise. Thousands of property owners appealed their new property values and the City Council did not have the capacity to handle all of the appeals in a timely manner. As a result of the large number of appeals, the City of New Orleans hired Ms. Keough to design a unique database to store each appellant's historical property documentation. Additionally, Ms. Keough designed a facility responsible for scheduling and coordinating meetings between the 5000 property owners who appealed their property values and real estate agents or appraisers. The database that Ms. Keough designed facilitated the meetings between the property owners and the property appraisers by allowing the property appraisers to review the property owner's documentation before and during the appointment with them.

## 13. In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010

No. 2179 (MDL) (E.D. La.)

Following the closure of the Gulf Coast Claims Facility, the Deepwater Horizon Settlement claims program was created. There were two separate legal settlements that provided for two claims administrations programs. One of the programs was for the submission of medical claims and the other was for the submission of economic and property damage claims. Ms. Keough played a key role in the formation of the claims program for the evaluation of economic and property damage claims. Additionally, Ms. Keough built and supervised the back-office mail and processing center in Hammond, Louisiana, which was the hub of the program. The Hammond center was visited several times by Claims Administrator Pat Juneau -- as well as by the District Court Judge and Magistrate -- who described it as a shining star of the program.

## 14. In re: Stryker Rejuvenate and ABG II Hip Implant Products Liability Litigation

MDL Docket No. 13-2441

Ms. Keough and her team were designated as the Escrow Agent and Claims Processor in this $1 billion+ Settlement designed to compensate eligible U.S. Patients who had surgery to replace their Rejuvenate Modular-Neck and/or ABG II Modular-Neck hip stems prior to November 3, 2014. As the Claims Processor, Ms. Keough designed internal procedures to ensure the accurate review of all medical documentation received, designed an interactive website which included online claim filing, and established a toll-free number to allow class members to receive information about the Settlement 24 hours a day. Additionally, she created a deficiency process to ensure Claimants were notified of their deficient submission and provided an opportunity to cure. The program also included an auditing procedure designed to detect fraudulent claims and a process for distributing initial and supplemental payments. Approximately 95% of the registered eligible patients enrolled in the Settlement Program.

## 15. In re Washington Mutual Inc., Securities

No. 2:08-md-1919 MJP (W.D. Wash.)

Ms. Keough supervised the Notice and Claims Administration for this securities class action which included three separate settlements with defendants totaling $208.5 million. In addition to mailing notice to over one million Class Members, Ms. Keough was in charge of the Claims Administration Program. The claims administration program included the review and processing of claims, notification of claim deficiencies, and distribution. In preparation for the processing of claims, she established a unique database to store the Proofs of Claim and supporting documentation, trained staff to the particulars of this settlement, created multiple computer programs for the entry of Class Member's unique information, and oversaw the development of a program to calculate the Recognized Loss Amounts pursuant to the Plan of Allocation. The program was designed to allow Proofs of Claim to be filed by mail or through an online portal. The deficiency process was established in order to reach out to Class Members who submitted incomplete Proof of Claims. It involved reaching out to claimants via letters, emails, and telephone calls.

# EXHIBIT B

# WHAT THIS CLASS NOTICE CONTAINS

### UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

## If you purchased linear resistors from 2003 to 2014, you may be eligible for benefits from a class action settlement.

*A federal court authorized this Notice.  This is not a solicitation from a lawyer.*

- Settlements have been reached with Settling Defendants (listed below) in a class action lawsuit where Plaintiffs alleged that the Defendants (listed below) participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of linear resistors at artificially high levels.

- The Settlements will provide $25,750,000 to persons in the United States who purchased linear resistors directly from any of the Defendants from July 9, 2003 through August 1, 2014.

- Kamaya, Inc., Kamaya Electric Co., Ltd., Walsin Technology Corporation, Walsin Technology Corporation USA, Hokuriku Electric Industry Co., Ltd., HDK America, Inc., Panasonic Corporation, Panasonic Corporation of North America, ROHM Co., Ltd., and ROHM Semiconductor U.S.A., LLC (collectively "Settling Defendants"), and KOA Corporation, and KOA Speer Electronics, Inc. (collectively "Non-Settling Defendants") ("Settling Defendants" and "Non-Settling Defendants" are collectively referred to as "Defendants") deny all charges of wrongdoing or liability against them.

- Your legal rights are affected whether you act or don't act.  This Notice includes information on the Settlements and the lawsuit.  Read this entire Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | |
|---|---|---|
| | | **DUE DATE** |
| **DO NOTHING** (IF YOU AGREE WITH THE PURCHASING INFORMATION PROVIDED IN THE ENCLOSED CLAIM FORM) | You will be included in the Settlements and receive a payment from the Settlements.  You will give up your rights to sue the Settling Defendants about all claims in these cases. | |
| **SUBMIT A CLAIM FORM** (IF YOU DISAGREE WITH THE PURCHASING INFORMATION PROVIDED IN THE ENCLOSED CLAIM FORM OR YOU DID NOT RECEIVE A CLAIM FORM AND BELIEVE YOU SHOULD BE INCLUDED IN THE SETTLEMENT CLASS) | If you submit a claim form and are confirmed to be a Class Member of the Settlements, you will be included in the Settlements and receive a payment from the Settlements.  You will give up your rights to sue the Settling Defendants about all claims in these cases. | March 18, 2019 |
| **EXCLUDE YOURSELF** | You will not be included in the Settlements.  You will receive no benefits from the Settlements if you exclude yourself but you will keep any rights you currently have to sue the Settling Defendants about the claims in the lawsuit. | February 15, 2019 |
| **OBJECT** | If you do not exclude yourself, you can write to the Court explaining why you disagree with the Settlements. | February 15, 2019 |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlements. | April 11, 2019 at 10:00 a.m. |

- These rights and options–**and the deadlines to exercise them**–are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlements.  Payments will be made if the Court approves the Settlements and after any appeals are resolved.  Please be patient.

### QUESTIONS?  CALL 1-888-337-8772 TOLL FREE OR VISIT WWW.RESISTORSSETTLEMENTS.COM

# WHAT THIS CLASS NOTICE CONTAINS

**BASIC INFORMATION.** ..............................................................................................................................**3**

    1.   Why did I get this Notice? ...............................................................................................3

    2.   What is this lawsuit about? ...............................................................................................3

    3.   Why is this a class action? ...............................................................................................3

    4.   Why are there Settlements? ...............................................................................................3

**WHO IS IN THE SETTLEMENTS?** .........................................................................................................**4**

    5.   How do I know if I am part of the Settlements? ..............................................................4

    6.   Are there exceptions to being included in the Settlements? ............................................4

    7.   I'm still not sure if I am included in the Settlements ......................................................4

**BENEFITS OF THE SETTLEMENTS – WHAT YOU GET** ....................................................................**4**

    8.   What do the Settlements provide? ....................................................................................4

    9.   How much will my payment from the Settlements be? ....................................................4

**HOW YOU GET A PAYMENT** .................................................................................................................**5**

    10. How can I get a payment from the Settlements? ..............................................................5

    11. When would I get my payment from the Settlements? .................................................5

    12. What am I giving up to get a payment and stay in the Settlements? ..............................6

**EXCLUDING YOURSELF FROM THE SETTLEMENTS** ....................................................................**6**

    13. How do I get out of the Settlements? ..............................................................................6

    14. If I don't exclude myself, can I sue the Settling Defendants for the same thing later? ...6

    15. If I exclude myself, can I get money from the Settlements? ...........................................7

**THE LAWYERS REPRESENTING YOU** ...............................................................................................**7**

    16. Do I have a lawyer in this case? ......................................................................................7

    17. How will the lawyers be paid? ........................................................................................7

**OBJECTING TO THE SETTLEMENTS** .................................................................................................**7**

    18. How do I tell the Court that I don't like the Settlements? ..............................................7

    19. What's the difference between objecting and excluding? ...............................................8

**THE COURT'S FAIRNESS HEARING** ..................................................................................................**8**

    20. When and where will the Court decide whether to approve the Settlements? ................8

    21. Do I have to come to the Fairness Hearing? ..................................................................8

    22. May I speak at the Fairness Hearing? ............................................................................8

**IF YOU DO NOTHING** ..............................................................................................................................**9**

    23. What happens if I do nothing at all? ...............................................................................9

**GETTING MORE INFORMATION** .........................................................................................................**9**

    24. How do I get more information? ......................................................................................9

# BASIC INFORMATION

| **1.   WHY DID I GET THIS NOTICE?** |
|---|

If you received a [Notice Package/e-mail or postcard] regarding the Settlements, records indicate you were a United States purchaser of linear resistors from July 9, 2003 through August 1, 2014 and may be a Class Member affected by the Settlements.  This Notice is to inform you about Settlements reached in this litigation before the Court decides whether to grant final approval.  This Notice explains the litigation, the Settlements, and your legal rights.

The Court in charge of the case is the United States District Court for the Northern District of California.  The lawsuit is known as *In re Resistors Antitrust Litigation*, No. 3:15-cv-03820-JD.  The company who sued is called the "Plaintiff."  The companies it sued are called the "Defendants."

| **2.   WHAT IS THIS LAWSUIT ABOUT?** |
|---|

Resistors are electrical components that limit or regulate the flow of electrical current in an electronic circuit.  Resistors can also be used to provide a specific voltage for an active device such as a transistor.  The resistance is the measure of opposition to the flow of current in a resistor.  More resistance means more opposition to current.  Resistors are a fundamental component of electrical circuits used in electronic devices such as televisions, cell phones, computers, and kitchen equipment.  Many such devices will contain multiple – sometimes hundreds – of resistors per device.

Linear resistors consist of fixed and variable resistors and can be created in a variety of ways including the carbon-composition resistor and thick and thin film resistors.  Many manufacturers manufacture multiple different types of linear resistors.  Generally, linear resistors are most commonly used in consumer electronics such as computers and audio/visual devices.

The Plaintiff alleged that Defendants participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of linear resistors at artificially high levels in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*  The Defendants deny the Plaintiff's allegations.  The Court has not decided who is right.

| **3.   WHY IS THIS A CLASS ACTION?** |
|---|

In a class action, one or more people called "Class Representatives" sue on behalf of themselves and other people with similar claims in the specific class action.  All of these people together are the "Class" or "Class Members."  In a class action, one court may resolve the issues for all Class Members except for those who exclude themselves from the Class.

| **4.   WHY ARE THERE SETTLEMENTS?** |
|---|

The Court has not decided in favor of the Plaintiff or Defendants.  Instead, both sides have agreed to Settlements to avoid the costs and risks of a lengthy trial and appeals process.  The Class Representative has concluded that the Settlements with the Settling Defendants are fair, reasonable, and adequate and in the best interests of the Class Members.

# WHO IS IN THE SETTLEMENTS?

To see if you will get money from these Settlements, you first have to decide if you are a Class Member.

## 5.  HOW DO I KNOW IF I AM PART OF THE SETTLEMENTS?

The Class for the Settlements has been defined as all persons in the United States who purchased linear resistors (including through controlled subsidiaries, agents, affiliates, or joint ventures) directly from any of the Defendants, their subsidiaries, agents, affiliates, or joint ventures from July 9, 2003 through August 1, 2014 (the "Class Period").

## 6.  ARE THERE EXCEPTIONS TO BEING INCLUDED IN THE SETTLEMENTS?

The Settlements do not include non-linear resistors.  A non-linear resistor is a resistor whose current does not change linearly with changes in applied voltage.  Also excluded are the Settling Defendants' past and present, direct and indirect parents, members, subsidiaries, and affiliates, and their respective past and present officers, directors, employees, managers, members, partners, agents, attorneys and legal representatives, assigns, servants, and representatives, and the predecessors, successors, heirs, executors, administrators, and assigns as well as all judges assigned to the litigation including their staff.

## 7.  I'M STILL NOT SURE IF I AM INCLUDED IN THE SETTLEMENTS.

More details regarding the Settlements are set forth in the Settlement Agreements available on the Settlement Website at www.resistorssettlements.com.  If you are still not sure whether you are a Class Member in the Settlements, you may contact the Settlement Administrator by phone toll-free at 1-888-337-8772.

# BENEFITS OF THE SETTLEMENTS — WHAT YOU GET

## 8.  WHAT DO THE SETTLEMENTS PROVIDE?

The combined Settlement Fund from the Settlements is $25,750,000.  After deduction of attorneys' fees and expenses, an incentive payment for the Class Representative in an amount up to $25,000, a maximum of $950,000 notice and Settlement administration costs, as approved by the Court, the remaining Settlement Fund will be available for distribution to Class Members of the Settlements who agree with the purchase information provided on the Claim Form Class Members receive by [mail/email] or who submit a timely and valid Claim Form and who also do not exclude themselves from the Settlements.

The Settlements also provide for certain cooperation from the Settling Defendants to Plaintiffs in the ongoing litigation with the Non-Settling Defendants.

More details about the Settlements are set forth in the Settlement Agreements available at www.resistorssettlements.com.

## 9.  HOW MUCH WILL MY PAYMENT FROM THE SETTLEMENTS BE?

At this time, it is unknown how much each Class Member who agrees with the purchase information provided on the Claim Form Class Members received by [email or mail] or who submit a timely and valid Claim Form will receive from the Settlements.  Payments from the Settlements will be based on a number of factors, including the number of Class Members who submit a timely and valid exclusion from the Settlements.  No matter how many

claims are filed, no money will be returned to the Settling Defendants once the Court grants final approval of the Settlements and certifies the Settlement Class.

Payments from the Settlements will only be made to Class Members:  (1) if the Court grants final approval of the Settlements and any objections and appeals are resolved; and (2) in accordance with the Settlement Agreements, the combined Settlement Fund, minus Court-approved attorneys' fees and expenses, any Class Representative Service Award approved by the Court, and Settlement Administration and notice expenses (the "Net Settlement Fund"), will be distributed to Class Members.  The distribution plan, as approved by the Court, will determine the amount, if any, that each Class Member will receive.  The proposed distribution plan for the Settlements is to make a *pro rata* distribution to each Class Member based on the dollar value of approved purchases of linear resistors per Class Member during the Settlement Class Period.

# HOW YOU GET A PAYMENT

| **10. HOW CAN I GET A PAYMENT FROM THE SETTLEMENTS?** |
|---|

If you agree with the purchase information provided on the pre-printed Claim Form Class Members received by [mail or email], you do not need to do anything to receive a payment from the Settlements.  Your payment will be automatically mailed to you using the most recent address information available from Defendants as well as other available sources of information if the Court grants final approval of the Settlements and any objections and appeals are resolved.

If you disagree with the purchase information provided on the pre-printed Claim Form, or if you did not receive a Settlement Notice packet but believe you are a Class Member, you must complete a Claim Form, available on the Settlement Website at www.resistorssettlements.com or you may request by phone at 1-888-337-8772, provide supporting documentation with the Claim Form (e.g., invoices, purchase records, etc.), and submit it to the Settlement Administrator online through the Settlement Website at www.resistorssettlements.com, or by mail to the following address:

Linear Resistors Settlements
c/o JND Legal Administration
P.O. Box 91309
Seattle, WA 98111

Please note, if you did not receive this Notice and pre-printed Claim Form by [mail or email] and believe you are a Class Member in the Settlements, you must complete a Claim Form, available on the Settlement Website at www.resistorssettlements.com or you may request by phone at 1-888-337-8772, provide supporting documentation with the Claim Form (e.g., invoices, purchase records, etc.), and submit it to the Settlement Administrator online through the Settlement Website at www.resistorssettlements.com or by mail at the address provided above.  The Settlement Administrator will review and verify your eligibility for the Settlements when it reviews your claim.

To be valid and timely, your Settlement Claim Form must be received online or postmarked by mail no later than **March 18, 2019** [91 days from Notice].

| **11. WHEN WOULD I GET MY PAYMENT FROM THE SETTLEMENTS?** |
|---|

Payments from the Settlements will not be distributed until the Court grants final approval of the Settlements and any objections or appeals are resolved.  It is uncertain whether and when any appeals will be resolved.  Settlement

updates will be provided on the Settlement Website at www.resistorssettlements.com or may be obtained by contacting the Settlement Administrator by phone toll-free at 1-888-337-8772.  Please be patient.

## 12. WHAT AM I GIVING UP TO GET A PAYMENT AND STAY IN THE SETTLEMENTS?

If you remain a Class Member in the Settlements, you will give up your right to sue the Settling Defendants on your own for the claims described in the Settlement Agreements unless you exclude yourself from the Settlement Class.  You will also be bound by any decisions by the Court relating to the Settlements.  In return for paying the Settlement Amounts and providing additional nonmonetary benefits, the Settling Defendants will be released from claims relating to the alleged conduct related to the linear resistors identified in the Settlement Agreements.

The Settlement Agreements describe the released claims in further detail.  Read the Settlement Agreements carefully since those releases will be binding on you as a Class Member if the Court grants final approval of the Settlements.  If you have any questions, you can talk with Class Counsel free of charge or you may talk with your own lawyer (at your own expense).  The Settlement Agreements and releases are available at www.resistorssettlements.com.

# EXCLUDING YOURSELF FROM THE SETTLEMENTS

If you don't want a payment from the Settlements, but you want to keep the right to sue or continue to sue the Settling Defendants, then you must take steps to  get out of the Settlement Class.  This is called asking to be excluded from or  "opting out" of the Settlement Class.

## 13. HOW DO I GET OUT OF THE SETTLEMENTS?

To exclude yourself from the Settlements, you must send a letter to the Settlement Administrator stating that you wish to be excluded from *In re Resistors Antitrust Litigation – Direct Purchaser Actions*, No. 3:15-cv-03820-JD.  Your written exclusion request must include the following:

- Your full business name, address, and telephone number;

- The following statement:

[Business entity] wants to be excluded from *In re Resistors Antitrust Litigation – Direct Purchaser Actions*, No. 3:15-cv-03820-JD and understands that by excluding itself it will not be able to get any money or benefits from the Settlements.

- Signature of Authorized Business Representative with title.

You must mail your written exclusion request, postmarked no later than February 15, 2019 [60 days from Notice] to:

Linear Resistors Settlements
c/o JND Legal Administration
P.O. Box 91309
Seattle, WA 98111

## 14. IF I DON'T EXCLUDE MYSELF, CAN I SUE THE SETTLING DEFENDANTS FOR THE SAME THING LATER?

No.  Unless you exclude yourself from the Settlements, you give up any right to sue the Settling Defendants for all claims being released in *In re Resistors Antitrust Litigation – Direct Purchaser Actions*, No. 3:15-cv-03820-JD.

If you have a pending lawsuit against any of the Defendants, speak to your lawyer in that lawsuit immediately, because you may need to exclude yourself from the Settlements to continue your own lawsuit.

## 15. IF I EXCLUDE MYSELF, CAN I GET MONEY FROM THE SETTLEMENTS?

No. If you exclude yourself from the Settlements, you will not receive a payment from the Settlements but you keep your legal rights to sue the Settling Defendants.

# THE LAWYERS REPRESENTING YOU

## 16. DO I HAVE A LAWYER IN THIS CASE?

The Court has appointed the following lawyers to represent Class Members of the Settlements:

| | |
|---|---|
| **HAGENS BERMAN SOBOL SHAPIRO LLP** | **COHEN MILSTEIN SELLERS & TOLL PLLC** |
| 715 Hearst Avenue, Suite 202 | 1100 New York Ave. NW, Suite 500, West Tower |
| Berkeley, CA 94710 | Washington, DC 20005 |
| Phone: | Phone: |
| Email: | Email: |

You will not be charged for contacting these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 17. HOW WILL THE LAWYERS BE PAID?

At the Fairness Hearing, Class Counsel will ask the Court for payment of attorneys' fees of 20% of the combined Settlement Fund based on their services in this litigation and may ask to be reimbursed for certain expenses already incurred on behalf of the Settlement Class. Any payment to the attorneys will be subject to Court approval and the Court may award less than the amount requested. Any attorneys' fees and expenses that the Court orders, plus the Settlement Administration and Notice costs as well as the Class Representative Service Award, will come out of the combined Settlement Fund.

When Class Counsel's motion for attorneys' fees and expenses is filed, it will be available at www.resistorssettlements.com. The motion will be posted on the website by January 11, 2019 [35 days before the deadline for objecting, commenting, or excluding from the Settlements]. You will have an opportunity to comment on this request.

# OBJECTING TO THE SETTLEMENTS

## 18. HOW DO I TELL THE COURT THAT I DON'T LIKE THE SETTLEMENTS?

If you have objections to any aspect of the Settlements, you may express your views to the Court. You can object to the Settlement(s) only if you do not exclude yourself from the Settlement Class.

You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a larger settlement; the Court can only approve or deny the settlement. If the Court denies approval, no payment from the Settlements will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

You may object to the proposed settlement in writing.  You may also appear at the Final Approval Hearing, either in person or through your own attorney.  If you appear through your own attorney, you are responsible for paying that attorney.  All written objections and supporting papers must:  (a) Specify your Business name, address, and telephone number; (b) clearly identify the case name and number (*In re Resistors Antitrust Litigation – Direct Purchaser Actions*, No. 3:15-cv-03820-JD); (c) be submitted to the Court either by mailing to the Class Action Clerk, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, or by filing them in person at any location of the United States District Court for the Northern District of California; and (d) be filed or postmarked on or before February 15, 2019 [60 days from Notice].

## 19. WHAT'S THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING?

If you exclude yourself from the Settlements, you are telling the Court that you do not want to participate in the Settlements.  Therefore, you will not be eligible to receive any benefits from the Settlements and you will not be able to object to the Settlements, as they will no longer apply to you.

By objecting to a Settlements, you are telling the Court that you do not like something about the Settlements. Objecting does not make you ineligible to receive a payment from the Settlements.

# THE COURT'S FAIRNESS HEARING

The Court will hold a Fairness Hearing to decide whether to approve the Settlements and any requests by Class Counsel for fees and expenses.  You may attend and you may ask to speak but you are not required to do so.

## 20. WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENTS?

The Court will hold a Fairness Hearing on April 11, 2019 at 10:00 a.m. at the United States District Court, Northern District of California, 450 Golden Gate Avenue, Courtroom 11, 19th Floor, San Francisco, CA 94102.

The hearing may be moved to a different date or time without additional notice.  You should check the Court's PACER site, http://cand.uscourts.gov/cm-ecf or check with the Settlement Administrator at www.resistorssettlements.com or 1-888-337-8772 to confirm that the date has not been changed.  At this hearing, the Court will consider whether the Settlements are fair, reasonable, and adequate.  If there are objections or comments, the Court will consider them at that time and may listen to people who have asked to speak at the hearing.  The Court may also decide how much to pay Class Counsel and whether to reimburse Class Counsel for certain expenses and whether to approve the Class Representative Service Award. The Court will decide whether to approve the Settlements at the hearing or sometime after.

## 21. DO I HAVE TO COME TO THE FAIRNESS HEARING?

No. Class Counsel will answer any questions the Court may have at the Fairness Hearing but you may attend at your own expense.  If you send an objection or comment to the Settlements you do not have to come to the hearing to talk about it. As long as you filed or mailed your written objection on time, the Court will consider it.  You may also hire your own lawyer at your own expense to attend on your behalf, but you are not required to do so.

## 22. MAY I SPEAK AT THE FAIRNESS HEARING?

If you send an objection or comment on the Settlements, you may have the right to speak at the Fairness Hearing as determined by the Court.  You cannot speak at the Fairness Hearing if you exclude yourself from the Settlements.

# IF YOU DO NOTHING

### 23. WHAT HAPPENS IF I DO NOTHING AT ALL?

If you do nothing and the Settlements receive final approval from the Court, you will receive a payment from the Settlements if you agree with the purchase information provided on the pre-printed Claim Form and you will be bound by the Court's Final Judgment and release of claims detailed in the Settlement Agreements.

If you (1) disagree with the purchase information provided on the pre-printed Claim Form, or (2) did not receive this Notice and pre-printed Claim Form by [mail or email] and believe you are a Class Member in the Settlements, you must complete a Claim Form, available at www.resistorssettlements.com or by calling toll-free at 1-888-337-8772, provide supporting documentation (e.g., invoices, purchase records, etc.), and submit it to the Settlement Administrator at the address provided above in order to be eligible to receive a payment. The Settlement Administrator will review and verify your eligibility for the Settlements when it reviews your claim.

To be valid and timely, your Settlement Claim Form must be postmarked no later than **March 18, 2019** [91 days from Notice].

# GETTING MORE INFORMATION

### 24. HOW DO I GET MORE INFORMATION?

This Notice summarizes the Settlements. More details are provided in the Settlement Agreements. You can get copies of the Settlement Agreements and obtain more information about the Settlements on the Settlement Website at www.resistorssettlements.com. You also may write with questions to Linear Resistors Settlements, c/o JND Legal Administration, P.O. Box 91309, Seattle, WA 98111 or call toll-free 1-888-337-8772.

For a more detailed statement of the matters involved in the lawsuit or the Settlements, you may refer to the papers filed in this case during regular business hours at the office of the Clerk of the Court, United States District Court for the Northern District of California at the Phillip Burton Federal Building, 450 Golden Gate Avenue in San Francisco, California, File: In re Resistors Antitrust Litigation, Case No. 3:15-cv-03820, or by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THESE SETTLEMENTS OR THE CLAIM PROCESS.**

Dated: Month Day, Year                              By Order of the Court
                                                    United States District Court
                                                    Northern District of California

# EXHIBIT C

**Linear Resistor Settlements**
c/o JND Legal Administration
P.O. Box 91309
Seattle, WA 98111

NOTICE TO THOSE WHO PURCHASED
LINEAR RESISTORS FROM 2003 TO 2014

**If you purchased linear resistors from 2003 to 2014,**

**you may be eligible for benefits from a class action settlement.**

# **EXHIBIT D**

# If you purchased linear resistors from 2003 to 2014, you may be eligible for benefits from a class action settlement.

Class action lawsuit Settlements may affect you if you purchased linear resistors from Kamaya, Inc., Kamaya Electric Co., Ltd., Walsin Technology Corporation, Walsin Technology Corporation USA, Hokuriku Electric Industry Co., Ltd., HDK America, Inc., Panasonic Corporation, Panasonic Corporation of North America, ROHM Co., Ltd., and ROHM Semiconductor U.S.A., LLC, (collectively "Settling Defendants") and KOA Corporation, and KOA Speer Electronics, Inc., (collectively "Non-Settling Defendants") ("Settling Defendants" and "Non-Settling Defendants" are collectively referred to as "Defendants").

The lawsuit pending in the United States District Court for the Northern District of California is called *In re Resistors Antitrust Litigation*, Case No. 3:15-cv-03820. The Court will hold a Fairness Hearing to consider whether to approve the Settlements so that benefits may be paid. Class Members don't need to do anything to stay in the Settlements or may request exclusion or object to the Settlements.

**ARE YOU AFFECTED?** You are a "Class Member" if you were a United States purchaser of linear resistors directly from any of the Defendants, their subsidiaries, agents, affiliates, or joint ventures from July 9, 2003 through August 1, 2014 ("Settlement Class Period"). The Settlements do not include non-linear resistors.

**WHAT IS THIS LAWSUIT ABOUT?** The lawsuit alleges that the Defendants participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of linear resistors at artificially high levels. The Defendants deny the Plaintiff's allegations. The Court has not decided who is right. The Settlements avoid the costs and risks of a lengthy trial and appeals process.

**WHAT CAN YOU GET FROM THE SETTLEMENTS?** The combined Settlement Fund from the Settlements is $25,750,000. In accordance with the Settlement Agreements, the combined Settlement Fund, minus Court-approved attorneys' fees and expenses, any Class Representative Service Award approved by the Court, and Settlement Administration and notice expenses (the "Net Settlement Fund"), will be distributed to Class Members who do not request exclusion as a *pro rata* share based on the dollar value of approved purchases of linear resistors per Class Member during the Settlement Class Period.

**HOW CAN I GET A PAYMENT?** If you received a [Settlement Notice Packet/Email/Postcard] with a pre-printed Claim Form and agree with the purchase information included, you do not need to do anything to receive a payment from the Settlements. If you disagree with the pre-printed purchase information provided on the Claim Form, or if you did not receive Notice regarding the Settlements [by mail or email] but believe you are a Class Member, you must complete a Claim Form and provide supporting documentation (e.g. invoices, purchase records, etc.). The Claim Form is available on the Settlement Website at www.resistorssettlements.com or you may request by phone at 1-888-337-8772. You must submit your Claim Form and supporting documentation to the Settlement Administrator online or postmarked by mail no later than **March 18, 2019**.

**WHAT ARE YOUR OPTIONS?** If you don't want a payment and you don't want to be legally bound by the Settlements, you must exclude yourself by February 15, 2019 or you won't be able to sue, or continue to sue, the Settling Defendants about the legal claims in the lawsuit. If you exclude yourself, you can't get a payment from the Settlements. If you stay in the Class, you may object to the settlement by February 15, 2019. The detailed Notice of Settlements describes how to exclude yourself or object. The Court will hold a Fairness Hearing on April 11, 2019 at 10:00 a.m. to consider whether to approve the Settlements, attorneys' fees in an amount of 20% of the combined Settlement Fund and expenses, and the Class Representative Service Award. You may ask the Court to appear at the Fairness Hearing but you don't have to do so.

**HOW CAN YOU GET MORE INFORMATION?** This Notice summarizes the proposed Settlements. For the precise terms and conditions of the Settlements, please see the Settlement Agreements available at www.resistorssettlements.com, by contacting Class Counsel at [_____], by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays. You may also contact the Settlement Administrator toll-free at 1-888-337-8772, go to www.resistorssettlements.com, or write to Linear Resistors Settlements, c/o JND Legal Administration, P.O. Box 91309, Seattle, WA 98111. **Please do not telephone the Court or the Court Clerk's Office to inquire about these Settlements or the claim process.**

**QUESTIONS? CALL 1-888-337-8772 TOLL FREE OR VISIT WWW.RESISTORSSETTLEMENTS.COM**

# EXHIBIT E

-JD  Document 507-7  Filed 11/0



If you purchased a linear resistor, you may be eligible for benefits from a class action settlement.



LEGAL NOTICE

**If you purchased a linear resistor, you may be eligible for benefits from a class action settlement.**

LEGAL NOTICE

If you purchased a linear resistor, you may be eligible for benefits from a class action settlement.



