Adam J. Zapala (State Bar No. 245748)
Elizabeth T. Castillo (State Bar No. 280502)
Mark F. Ram (State Bar No. 294050)
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
mram@cpmlegal.com

*Interim Lead Counsel for Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE RESISTORS ANTITRUST LITIGATION** | **Case No. 3:15-cv-03820-JD** |
| **This Document Relates to:**<br><br>**All Indirect Purchaser Actions** | **INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH ALL DEFENDANTS AND THE PLAN OF ALLOCATION AND FOR APPROVAL OF CLASS NOTICE PROGRAM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**Date:** January 24, 2019<br>**Time:** 10:00 a.m.<br>**Place:** Courtroom 11, 19th Floor |

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Settlements with All Defendants and of the Plan of Allocation and Notice Program; Case No. 3:15-cv-03820-JD

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE THAT**, on January 24, 2019, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable James Donato, United States District Judge for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the Indirect Purchaser Plaintiffs ("IPPs") will and hereby do move for entry of an order granting preliminary approval of proposed settlements with Defendants: (1) Panasonic Corporation and Panasonic Corporation of North America (together, "Panasonic"); (2) KOA Corporation and KOA Speer Electronics, Inc. (together, "KOA"); (3) ROHM Co. Ltd. and ROHM Semiconductor U.S.A., LLC (together, "ROHM"); (4) Kamaya Electric Co., Ltd. and Kamaya Inc. (together, "Kamaya"); and (5) Hokuriku Electric Industry Co. and HDK America, Inc. (together, "HDK") (collectively, "Settling Defendants"). This motion is brought pursuant to Federal Rule of Civil Procedure ("Rule") 23 and the Northern District of California's Procedural Guidance for Class Action Settlements. The grounds for this motion are that the settlements with the Settling Defendants easily fall within the range of possible final approval, contain no obvious deficiencies, and are the result of serious, informed, and non-collusive negotiations.

IPPs also seek preliminary approval of their plan of allocation. IPPs' proposed plan of allocation is fair, reasonable, and adequate. IPPs propose that allocation of the settlement funds be on a *pro rata* basis based on the type and extent of injury suffered by each class member based on damage claims from the Indirect Purchaser States. This is the same plan of allocation this Court has previously approved in connection with settlements in *In re Capacitors Antitrust Litigation*, Case No. 14-cv-3264 (N.D. Cal) ("*Capacitors*").

In addition, IPPs move for approval of their class notice program to provide notice of the proposed settlements to the Class. As discussed more fully *infra*, IPPs' proposed class notice program satisfies Rule 23, complies with due process, and is virtually the same notice program that this Court previously approved in *Capacitors*, Dkt. 1457 (N.D. Cal. Jan. 30, 2017) (order approving notice program for Round 1 settlements), Dkt. 2152, MDL Dkt. 227 (May 25, 2018)

(order approving notice program for Round 2 settlements). Plaintiffs' class notice program constitutes "the best notice practicable under the circumstances . . . ." Rule 23(c)(2)(B). Plaintiffs' plan provides direct mail notice to class members whose contact information is available from records provided by non-party distributors produced during the course of discovery in this litigation. The direct mail notice plan is supplemented by a robust publication program and social media plan. Taken together, the plan exceeds the requirements of Rule 23, satisfies any due process concerns, and will fairly apprise putative Settlement Class Members of the existence of the settlement and their options under it.

This motion is based upon this Notice; the Memorandum of Points and Authorities in Support; the Declaration of Adam J. Zapala and the attached exhibits, which include the settlement agreements with the Settling Defendants; the Declaration of IPPs' Notice Program Expert, Eric Schachter from A.B. Data, Inc., and attached exhibits, along with the proposed notices themselves, and any further papers filed in support of this motion, as well as arguments of counsel and all records on file in this matter.

Dated: December 14, 2018          Respectfully Submitted,

                                  **COTCHETT, PITRE & McCARTHY, LLP.**

                                  By: /s/ *Adam J. Zapala*
                                        Adam J. Zapala
                                        Elizabeth T. Castillo
                                        Mark F. Ram
                                        840 Malcolm Road, Suite 200
                                        Burlingame, CA 94010
                                        Telephone: (650) 697-6000
                                        Facsimile: (650) 697-0577
                                        azapala@cpmlegal.com
                                        ecastillo@cpmlegal.com
                                        mram@cpmlegal.com

                                        *Interim Lead Class Counsel for the Indirect*
                                        *Purchaser Plaintiffs*

Law Offices
COTCHETT, PITRE &
McCARTHY, LLP

# TABLE OF CONTENTS

Page(s)

STATEMENT OF THE ISSUES TO BE PRESENTED.................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

I.  INTRODUCTION ................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND.........................................3

    A.  Settlement Efforts with the Settling Defendants .........................................3

    B.  Settlement Class Definitions ........................................................................4

    C.  Settlement Consideration ..............................................................................4

        1.  KOA ...................................................................................................4

        2.  Panasonic ..........................................................................................4

        3.  ROHM ...............................................................................................5

        4.  Kamaya .............................................................................................5

        5.  HDK ..................................................................................................6

    D.  Information on the Settlements – Northern District of California Guidance ............6

        1.  Differences Between Settlement Class and Class Defined in Complaint ............6

        2.  Differences Between Claims Released and Claims in Complaint ................6

        3.  Settlement Recovery Versus Potential Trial Recovery ........................7

        4.  Fairness of the Allocation of the Settlement Funds ............................8

        5.  Attorneys' Fees and Reimbursement of Litigation Expenses ............8

        6.  Incentive Awards ...........................................................................9

        7.  Claim Forms ...................................................................................9

        8.  Reversions .......................................................................................9

        9.  Settlement Administration..............................................................10

        10. Class Action Fairness Act ............................................................10

        11. Comparable Class Settlements ......................................................11

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

III.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE
      SETTLEMENTS ..................................................................................................11

      A. Legal Standard for Preliminay Approval of Class Action Settlements ...................11

      B. The Settlements Meet the Standards for Preliminary Approval of Class Action
         Settlements ...................................................................................................11

         1.  The Settlements Are the Result of Serious, Informed, and Non-Collusive
             Negotiations.............................................................................................12

         2.  There Are No Obvious Deficiencies in the Settlements.....................................12

         3.  There is No Preferential Treatment ............................................................12

         4.  The Proposed Settlements Fall Within the Range of Possible Approval ...........13

      C. The Proposed Settlement Classes Satisfy Rule 23 ..............................................13

         1.  Rule 23(a)(1) – Numerosity .....................................................................13

         2.  Rule 23(a)(2) – Commonality ...................................................................13

         3.  Rule 23(a)(3) – Typicality .......................................................................14

         4.  Rule 23(a)(4) – Fair and Adequate Class Representation ................................15

         5.  The Requirements of Rule 23(b) Are Met In This Case ...................................15

      D. This Court Should Appoint Interim Class Counsel as Settlement Class Counsel.....17

IV.   THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE AND
      ADEQUATE AND SHOULD BE APPROVED .........................................................17

V.    THE COURT SHOULD APPROVE IPPS' NOTICE PLAN ........................................19

      A. Notice Program Elements...............................................................................19

         1.  Direct Mail Component............................................................................19

         2.  Publication Notice Plan ...........................................................................20

         3.  Dedicated Settlement Website...................................................................21

         4.  Toll-Free Number ...................................................................................21

         5.  The Proposed Forms of Notice Comply with Rule 23 and Due Process ...........22

      B. Legal Standard for Notice ..............................................................................22

      C. IPPs' Proposed Notice Program Comports with the Requirements of Rule 23 and
         Due Process ..................................................................................................22

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

D.  The Court Should Establish a Schedule for the Notice Program and Final Approval of the Settlements ........................................................................................24

VI.     CONCLUSION ...................................................................................................25

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
818 F.2d 145 (2d Cir. 1987)........................................................................................23

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...................................................................................................17

*Bellinghausen v. Tractor Supply Co.*,
303 F.R.D. 611 (N.D. Cal. 2014)...........................................................................13, 17

*Bissonette v. Enter. Leasing Companywest*,
No. 10-CV-00326-LRH-WGC, 2014 U.S. Dist. LEXIS 132634 (D. Nev. 2014) .................24

*In re Capacitors Antitrust Litig.*,
No. 14-cv-3264 (N.D. Cal.) ...............................................................................*passim*

*In re Catfish Antitrust Litig.*,
826 F. Supp. 1019 (N.D. Miss. 1993)...........................................................................15

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2015 U.S. Dist. LEXIS 170525 (N.D. Cal. Dec. 17, 2015) .......................................18

*Churchill Vill., L.L.C. v. GE*,
361 F.3d 566 (9th Cir. 2004) .................................................................................23

*In re Citric Acid Antitrust Litig.*,
145 F. Supp. 2d 1152 (N.D. Cal. 2001) ...........................................................8, 18, 19

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
2006 WL 1530166 (N.D. Cal. June 5, 2006) ...........................................................14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
No. M-02-1486 PJH, Dkt. No. 2093 (Oct. 27, 2010) ...............................................18

*Fair v. Archdiocese of San Francisco*,
No. CGC-15-549563 (S.F. Superior Court).............................................................10

*G.F. v. Contra Costa County*,
2015 WL 4606078 (N.D. Cal. July 30, 2015).......................................................2, 11

*In re High-Tech Emp. Antitrust Litig.*,
985 F. Supp. 2d 1167 (N.D. Cal. 2013) .................................................................16

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

*In re Lithium Ion Batteries Antitrust Litigation*,
   No. 4:13-md-2420-YGR (N.D. Cal.) ...................................................................10

*In re Lloyds' Am. Trust Fund Litig.*,
   No. 96 Civ.1262 RWS, 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002)...............18

*Mangione v. First USA Bank*,
   206 F.R.D. 222 (S.D. Ill. 2001) .......................................................................23

*Mendoza v. United States*,
   623 F.2d 1338 (9th Cir. 1980) .........................................................................23

*In re Omnivision Technologies, Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................18

*In re Optical Disk Drive Antitrust Litig.*,
   2016 WL 467444 (N.D. Cal. Feb. 8, 2016) .......................................................14

*Petrovic v. AMOCO Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) .........................................................................23

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   177 F.R.D. 216 (D.N.J. 1997) .........................................................................23

*In re Qualcomm Antitrust Litigation*,
   No. 5:17-md-2773-LHK (N.D. Cal.) ................................................................10

*Ross v. Trex Co.*,
   2013 U.S. Dist. LEXIS 29081 (N.D. Cal. Mar. 4, 2013)......................................23

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) ...........................................................................23

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .............................................................................9

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................11

*In re TFT-LCD Antitrust Litig.*,
   267 F.R.D. 291 (N.D. Cal. 2010)......................................................................16

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) .............................................................................23

*UAW v. GMC*,
   497 F.3d 615 (6th Cir. 2007) ...........................................................................23

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

*In re Vitamins Antitrust Litig.*,
　No. 99-197 TFH, 2000 U.S. Dist. LEXIS 8931 (D.D.C. Mar. 31, 2000) .............................18

*In re: Vizio Consumer Privacy Litigation*,
　No. 8:16-ml-02693-JLS-KES (C.D. Cal.) ...............................................................10

*Walsh v. CorerPower Yoga LLC*,
　No. 16-cv-05610-MEJ, 2017 U.S. Dist. LEXIS 20974 (N.D. Cal. Feb. 14, 2017) ...............22

**Statutes**

28 U.S.C. § 1712 ...................................................................................................10

28 U.S.C. § 1713 ...................................................................................................11

28 U.S.C. § 1714 ...................................................................................................11

28 U.S.C § 1715 ....................................................................................................10

**Rules**

Fed. Rule Civ. P. 23 ........................................................................................*passim*

Law Offices
Cotchett, Pitre & McCarthy, LLP

**STATEMENT OF THE ISSUES TO BE PRESENTED**

1.    Whether this Court should grant preliminary approval of IPPs' settlements with the Settling Defendants;

2.    Whether the Court should preliminarily approve IPPs' plan of allocation for the settlements; and

3.    Whether the Court should approve the proposed class notice program and establish a schedule for final approval of IPP's proposed settlements.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Indirect Purchaser Plaintiffs ("IPPs") move for an order preliminarily approving proposed settlements with Defendants (1) Panasonic Corporation and Panasonic Corporation of North America (together, "Panasonic"); (2) KOA Corporation and KOA Speer Electronics, Inc. (together, "KOA"); (3) ROHM Co. Ltd. and ROHM Semiconductor U.S.A., LLC (together, "ROHM"); (4) Kamaya Electric Co., Ltd. and Kamaya Inc. (together, "Kamaya"); and (5) Hokuriku Electric Industry Co. and HDK America, Inc. (together, "HDK") (collectively, "Settling Defendants").  The settlements were reached after more than three years of hard-fought litigation and significant discovery, are the result of arms-length negotiations, and IPPs believe the settlements are in the best interests of the proposed classes.  *See* Declaration of Adam J. Zapala ("Zapala Decl.") ¶ 3.

The cumulative settlement fund established by these five settlements is $33,400,000.00 ($33.4 million), which represents an excellent recovery for the Class in light of the facts of the case and Defendants' affected revenue, as more fully described herein.  Specifically, the settlement with Panasonic provides a cash payment to IPPs totaling $10,000,000; the KOA settlement provides a cash payment of $18,500,000.00; the settlement with ROHM provides for a payment totaling $2,000,000.00; the Kamaya settlement provides the IPP class with $2,000,000.00; and the HDK settlement is for $900,000.00.  These settlements—if finally approved—will bring an end to this litigation and put significant money into the hands of the victims of this alleged cartel.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Settlements with All Defendants and of the Plan of Allocation; Case No. 3:15-cv-03820-JD                1

At the preliminary approval stage, the Court is not asked to make a final determination as to whether or not to approve the settlements. *G.F. v. Contra Costa County*, 2015 WL 4606078, at *8–9 (N.D. Cal. July 30, 2015). Instead, the Court is tasked with determining if the settlements fall within the range of possible approval and appear to be the product of serious, informed, and non-collusive negotiations. *Id*. These settlements easily meet the standard for preliminary approval and for that reason should be approved.

Additionally, IPPs seek preliminary approval of their plan of allocation. As described below, IPPs propose that allocation of the settlement funds be on a *pro rata* basis and will provide cash payments based on the extent of injury suffered by each class member in those states which permit indirect purchaser claims. Such *pro rata* plans of allocation are routinely approved in antitrust litigation, and have previously been approved by this Court in *Capacitors*.

IPPs' proposed notice program should also be approved. The proposed notice program is a robust, multifaceted program that delivers plain and easy to understand information about the settlements. IPPs have retained a recognized national expert, A.B. Data, Inc., that has designed a notice program that addresses the specific nature of the settlements and settlement classes at issue in this litigation. Specifically, A.B. Data, Inc. is the court-approved notice provider and claims administrator in *Capacitors*, and has proposed class notice programs in that litigation that this Court has previously approved. The notice program here, like those approved by this Court in *Capacitors*, includes (1) direct mail notice, (2) publication notice, (3) internet and email notice, (4) an earned media plan, (5) e-newsletter notice/banner ads, (6) a case-specific website, and (7) a case-specific toll-free number. This comprehensive, multipronged approach provides the Classes with the best notice practicable under the circumstances and satisfies Rule 23 and due process. IPPs' notice program will fairly apprise potential class members of the existence of the above-referenced settlements and their options in relation to those settlements. Accordingly, the Court should approve dissemination of class notice and establish a schedule for a final approval hearing on the settlements.

Law Offices
Cotchett, Pitre &
McCarthy, LLP

Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Settlements with All
Defendants and of the Plan of Allocation; Case No. 3:15-cv-03820-JD          2

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from an alleged conspiracy by the Settling Defendants to fix, raise, maintain and/or stabilize the price of linear resistors sold in the United States. Zapala Decl. ¶ 9. This case has been heavily litigated, with IPPs surviving multiple motions to dismiss. *Id.* There have been significant discovery challenges faced by IPPs, not only with respect to obtaining documents and information from Defendants, but also in regard to obtaining documents and information from non-party resistor distributors in order to successfully prosecute the case. *Id.*

Document discovery was largely closed when the settlements were reached. Zapala Decl. ¶ 12. Defendants had produced roughly 2,752,883 documents to IPPs, comprised of 10,563,206 pages. *Id.* This information was in IPPs' possession and had largely been analyzed prior to reaching these settlements. *Id.* At the time of reaching these settlements, therefore, IPPs and the Settling Defendants were well-informed about the facts, damages, and defenses relevant to this litigation. *Id.* ¶ 13.

IPPs have successfully navigated many factual and legal challenges in prosecuting this case, but there is still much work to be done should these settlements not be approved. Had the parties not settled, IPPs would have had to engage in extensive and expensive expert work in connection with formal class certification and summary judgment proceedings. And there are no guarantees at trial: trying a complex class action such as this one would be particularly lengthy and costly. Indeed, there should be no dispute that the proposed settlements are the result of a fair evaluation of the merits of the case after years of extensive litigation.

### A. Settlement Efforts with the Settling Defendants

IPPs engaged in extensive settlement negotiations with each of the Settling Defendants. Zapala Decl. ¶¶ 23-27. The parties held in-person and telephonic meetings as well as exchanged information, including affected revenue figures, and settlement proposals. *Id.* Two of the settlements were reached with the aid of a mediator. *Id.* ¶¶ 23, 26. The proposed settlements were arrived at only after both sides had the opportunity to be fully informed of litigation risks and the relative strengths and weaknesses of their positions. *Id.* ¶¶ 23-27. Additionally, as noted, these settlements were only reached after substantial discovery in this case.

Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Settlements with All Defendants and of the Plan of Allocation; Case No. 3:15-cv-03820-JD

3

**B. Settlement Class Definitions**

The class definition for these settlements are substantially identical to each other: "All persons and entities in the United States who purchased one or more Linear Resistor(s), from a resistor distributor not for resale which Defendants, or their current or former subsidiaries, or any of their co-conspirators manufactured, between January 1, 2003 and August 20, 2015." *See* Zapala Decl., Ex. 1, KOA Settlement Agreement, ¶ 1(f); Zapala Decl., Ex. 2, Panasonic Settlement Agreement, ¶ 1(e); Zapala Decl., Ex. 3, ROHM Settlement Agreement, ¶ 1(f); Zapala Decl., Ex. 4, Kamaya Settlement Agreement, ¶ 1(f); Zapala Decl., Ex. 5, HDK Settlement Agreement, ¶ 1(f).

**C. Settlement Consideration**

**1. KOA**

With the assistance of a nationally-renowned mediator, KOA has paid $18,500,000 to settle IPPs' claims. *See* Zapala Decl., Ex. 1, KOA Settlement Agreement ¶1(cc). KOA has also agreed to prospective injunctive relief. *Id*. ¶15. In addition, KOA has agreed to provide substantial cooperation to the IPPs in the event any of the settlements are not finally approved and the IPPs have to return to litigating against any of the currently Settling Defendants. This agreed-to cooperation includes providing IPPs with business documents related to the alleged conspiracy and making current employees available for interviews, depositions, and trial testimony. *Id*. at ¶¶ 32–35. Based on IPPs' analysis of KOA's affected revenue numbers, this settlement represents approximately 8.5% of KOA's affected commerce (approximately $217.5 million in affected sales to distributors during the proposed class period). *Id*. ¶ 16.

**2. Panasonic**

IPPs' settlement with Panasonic requires it to pay $10,000,000. *See* Zapala Decl., Ex. 2, Panasonic Settlement ¶1(cc). Panasonic has also agreed to prospective injunctive relief. *Id*. ¶ 14. In addition, Panasonic has agreed to provide cooperation to IPPs in further prosecuting this action against other Defendants should IPPs remain litigating with any defendant. *Id*. ¶¶ 28-30. IPPs calculate that this settlement represents approximately 6.2% of Panasonic's sales to distributors (approximately $161.2 million) during the relevant period. *Id*. ¶ 17.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

### 3. ROHM

ROHM has agreed to pay $2,000,000 to settle IPPs' claims. *See* Zapala Decl., Ex. 3, ROHM Settlement Agreement ¶1(dd). IPPs calculate that this settlement represents approximately 8.8% of ROHM's affected commerce (approximately $22.6 million in sales to distributors during the class period). Zapala Decl. ¶ 18. In addition, ROHM agreed to provide IPPs with evidence to demonstrate the existence of a conspiracy, including producing documents related to communications and meetings utilized by Defendants to conspire, fix, raise, maintain and/or stabilize the prices of resistors, as well as making current or former employees available for interviews, depositions, and testimony at trial. Zapala Decl., Ex. 3, ROHM Settlement Agreement ¶¶ 32-35. This cooperation provision provided IPPs' leverage in negotiations with the Panasonic and KOA defendants and enabled IPPs to achieve the excellent results they obtained. Zapala Decl. ¶¶ 28-29.

### 4. Kamaya

Kamaya will pay $2,000,000 to settle IPPs' claims. *See* Zapala Decl., Ex. 4, Kamaya Settlement Agreement ¶1(dd). Kamaya has also agreed to prospective injunctive relief. *Id.* ¶15. Like ROHM, Kamaya agreed to a settlement in principle at an earlier litigation juncture than Panasonic and KOA, and agreed to provide substantial cooperation to the IPPs. *Id.* at ¶¶ 32–36; Zapala Decl. ¶28. Kamaya's agreement to provide cooperation to IPPs similarly provided settlement leverage with Panasonic and KOA. Zapala Decl. ¶29. Based on transactional data produced to IPPs during the course of litigation, IPPs have calculated that Kamaya's relevant commerce (affected sales to distributors in the United States during the class period) was approximately $13.7 million. *Id.* ¶ 19. Accordingly, this settlement represents 14.6% of Kamaya's affected commerce as calculated by IPPs.[1] *Id.*

---

[1] Kamaya itself is unable to verify IPPs' calculation regarding the percentage of its volume of commerce that the settlement represents. Verification of Kamaya's "relevant commerce" by Kamaya itself would require an extensive independent review of its transactional data, which IPPs' experts have performed. If anything, Kamaya believes that IPPs have overestimated Kamaya's total volume of commerce, which, if true, would only increase the percentage that IPPs recovered.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

### 5. HDK

With the assistance of a mediator, HDK has agreed to pay $900,000 to settle IPPs' claims. *See* Zapala Decl., Ex. 5, HDK Settlement Agreement ¶1(cc). Like other Settling Defendants, HDK has agreed to prospective injunctive relief. *Id.* ¶15. IPPs settled their claims with HDK before any other defendant and HDK agreed to provide substantial cooperation to the IPPs in addition to the cash settlement. *Id.* at ¶¶ 32–35; Zapala Decl. ¶ 26. HDK's agreement to provide cooperation provided IPPs with substantial settlement leverage with other Settling Defendants. Zapala Decl. ¶¶ 29. Based on IPPs' expert calculation, this settlement represents more than 300% of HDK's affected commerce (approximately $279,000 in affected sales to distributors during the class period). *Id.* ¶ 20.

### D. Information on the Settlements – Northern District of California Guidance

#### 1. Differences Between Settlement Class and Class Defined in Complaint

There are no material differences between the settlement classes and the classes alleged in the complaint. The Settling Defendants are alleged to have participated in the conspiracy from at least 2003 through such time as the anticompetitive effects of Defendants' conduct ceased. Zapala Decl. ¶ 30; *see also* IPPs' Second Amended Consolidated Complaint ("Complaint") ¶¶ 246, 248 (Dkt. 402). The end of the Settlement Class Period for each settlement is August 20, 2015, the date of the complaints being filed in this action. Zapala Decl. ¶ 30. IPPs' experts estimated that this is approximately the end of when the anticompetitive effects of Defendants' conspiracy would have been felt. *Id.* It is also worth noting that there are no material differences between the proposed *Resistors* settlement class, and those that have been preliminarily and finally approved in the *Capacitors* litigation.

#### 2. Differences Between Claims Released and Claims in Complaint

The settlements release IPPs' claims against KOA, Panasonic, ROHM, Kamaya, and HDK, that were or could have been asserted in the IPPs' Complaint based on the underlying facts of the case. *See* Zapala Decl., Ex. 1, KOA Settlement Agreement ¶ 1(y); Ex. 2, Panasonic Settlement Agreement, ¶ 1(y); Ex. 3, ROHM Settlement Agreement ¶ 1(z); Ex. 4, Kamaya Settlement Agreement ¶ 1(z); Ex. 5, HDK Settlement Agreement ¶ 1(y).

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Settlements with All Defendants and of the Plan of Allocation; Case No. 3:15-cv-03820-JD     6

IPPs have not released any claims against the Settling Defendants for product liability, breach of contract, breach of warranty or personal injury, or any other claim unrelated to the allegations in the Action. *See* Zapala Decl., Ex. 1, KOA Settlement Agreement ¶ 14; Ex. 2, Panasonic Settlement Agreement, ¶ 1(y); Ex. 3, ROHM Settlement Agreement ¶ 14; Ex. 4, Kamaya Settlement Agreement ¶ 14; Ex. 5, HDK Settlement Agreement ¶ 14. The releases in the foregoing settlement agreements are of the same type and scope as those that have previously been preliminarily and finally approved by this Court in *Capacitors*.[2]

### 3. Settlement Recovery Versus Potential Trial Recovery

As discussed above, the settlements represent a significant amount of Settling Defendants' relevant commerce during the class period. Zapala Decl. ¶ 16. IPPs have calculated that Settling Defendants' cumulative commerce to distributors during the class period is approximately $415.3 million on a joint and several basis. Zapala Decl. ¶ 31. The cumulative settlement of $33.4 million represents 8.04% of this cumulative commerce. In terms of damages, this would mean an 8.04% overcharge assuming 100% pass-through to the IPP classes. This is an excellent result for the class. This Court will recall that the overcharge percentages for damages in the IPPs' expert report in support of class certification in *Capacitors* included lower overcharge percentages than those recovered here.

Additionally, there is the potential that no classes are certified in this action, or are certified for a shorter period than would be proposed by IPPs. This Court has yet to rule on IPPs' motion for class certification in the *Capacitors* litigation. And while this Court did just recently certify the class of Direct Purchaser Plaintiffs' in *Capacitors*, these *Resistors* settlements were reached well before the Court's decision in *Capacitors*. There is also the very real potential in this case for certain Defendants to become insolvent during the pendency of this litigation; Defendants in this action operate on extremely slim margins. The foregoing represent just a few

---

[2] *See Capacitors*, Master File No. 3:14-cv-03264-JD, Dkt. 1456 (Jan. 30, 2017) (order preliminarily approving Round 1 settlements), Dkt. 1934 (Oct. 30, 2017) (order finally approving Round 1 settlements), Dkt. 2009 (Jan. 10, 2018) (order preliminarily approving Round 2 settlements), Dkt. 2151 (May 25, 2018) (same), Dkt. 2212 (Oct. 18, 2018) (order finally approving Round 2 settlements).

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Settlements with All Defendants and of the Plan of Allocation; Case No. 3:15-cv-03820-JD          7

of the risks to IPPs' success.  Even at this point, however, IPPs believe that the settlements reflect a fair and reasonable compromise in light of the potential trial recovery, the ongoing costs of this litigation which would be taken from the settlement funds, the attendant risks, and the delay in payment to the class.  Moreover, with respect to procedural fairness, these settlements come after substantial litigation and discovery in this action.

### 4. Fairness of the Allocation of the Settlement Funds

IPPs propose that allocation of the settlement funds will be on a *pro rata* basis, based on the type and extent of injury suffered by each class member in those states which permit indirect purchaser antitrust claims.  "A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable."  *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).  A similar plan of allocation has already been approved in substance by this Court.  *See, e.g.*, *In re Capacitors Antitrust Litig.*, No. 14-cv-3264, ECF No. 1934, ¶12 (N.D. Cal. Oct. 30, 2017).

### 5. Attorneys' Fees and Reimbursement of Litigation Expenses

IPPs propose to notify the class that they will not seek more than 30% of the cumulative settlement fund in attorneys' fees.  To date, IPP counsel's lodestar is approximately $12,716,451.00 based on 34,449.60 hours billed.  Thus, it is inevitable that any fee award will result in a negative multiplier, demonstrating the reasonableness of the fees sought.  IPP counsel reserves the right to further vet this attorney time, and to exercise additional billing judgment to eliminate any time Class Counsel believes was not of value to the class. Additionally, IPPs will seek reimbursement of litigation costs and expenses, including expert fees.  To date, IPP counsel have incurred approximately $1,326,570.30 in litigation costs and expenses.  IPPs reserve the right to seek less than the 30% amount and will submit their attorneys' fees and litigation expenses motion at least 35 days in advance of the opt-out and objection deadline.  The attorneys' fees and reimbursement of litigation expenses motion will also be posted on the IPP settlement website at least 35 days prior to the objection and opt-out deadline, as is customary in this type of litigation.  Additionally, IPPs will seek reimbursement of reasonable litigation expenses.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Settlements with All
Defendants and of the Plan of Allocation; Case No. 3:15-cv-03820-JD        8

### 6. Incentive Awards

The named Settlement Class Representatives will seek incentive awards in the amount of $2,500 each. These incentive awards are to compensate the class representatives for the substantial time and effort on behalf of the class spent participating in the litigation, searching for and collecting documents, and responding to interrogatories. As will be set forth in a subsequent motion, IPPs believe that this amount is reasonable in light of the excellent results achieved for the settlement classes, and this Court's decisions regarding class representative incentive awards. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

### 7. Claim Forms

Because these settlements completely resolve the IPP *Resistors* litigation, IPPs also propose beginning their claims process as soon as practicable after the settlements are preliminarily approved. Accordingly, in this regard, IPPs propose to use a claim form that contains some pre-populated data, to the extent it exists for a particular class member, obtained from resistors distributors during the course of litigation. Class members will also be invited to supplement the pre-populated portion of the claim forms. A copy of IPPs' proposed claim form can be found as Exhibit 3 to the Declaration of Eric Schachter. In Interim Class Counsel's view and experience—supplemented by advice from their notice expert, AB Data—pre-populating the claim forms with potential award amounts will have the effect of greatly increasing the rate at which putative class members submit claims. In Class Counsel's view, this is a very good thing.

IPPs' proposed claims administrator estimates that between 5 and 20% of class members will submit a claim form; this estimate is based on A.B. Data's experience administering similar class actions. Schachter Decl., ¶ 10.

### 8. Reversions

The settlements are non-reversionary; there is no circumstance under which money originally designated for class recovery will revert to any defendant once the Court finally approves the Settlements.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**9. Settlement Administration**

A.B. Data is the proposed settlement notice and claims administrator. A.B. Data was chosen as the proposed settlement notice and claims administrator after an extensive competitive bidding process. Interim Class Counsel solicited and received notice and claims administration proposals from five nationally-recognized class action notice and claims administrators. The proposals that counsel received were consistent in that they included a direct notice program for those class members whose addresses are known through non-party data produced in the litigation, a targeted publication notice program, and a proposal to pay class members making claims via checks. A.B. Data was selected on the basis of the robustness of its proposed publication notice plan, as well as its cost efficiency. In addition to this case, Cotchett, Pitre, & McCarthy, LLP has engaged A.B. Data in five other matters over the last two years: *In re Capacitors Antitrust Litigation*, No. 3:14-cv-03264-JD (N.D. Cal.); *In re: Vizio Consumer Privacy Litigation*, No. 8:16-ml-02693-JLS-KES (C.D. Cal.); *In re Lithium Ion Batteries Antitrust Litigation*, No. 4:13-md-2420-YGR (N.D. Cal.); *In re Qualcomm Antitrust Litigation*, No. 5:17-md-2773-LHK (N.D. Cal.); and *Fair v. Archdiocese of San Francisco*, No. CGC-15-549563 (S.F. Superior Court).

It is anticipated that notice and claims administration will cost approximately between $500,000 and $750,000; this cost estimate is based on an estimated claims submission rate of 5 to 20%. Schachter Decl., ¶ 10. Notice and claims administration expenses will be paid from the Settlement Funds, as permitted by the Settlement Agreements.

**10. Class Action Fairness Act**

Pursuant to the terms of the Settlement Agreements and the requirements of the Class Action Fairness Act, 28 U.S.C § 1715, all notices required will be, or already have been, provided by the Settling Defendants. *See* KOA Settlement Agreement ¶ 59; Panasonic Settlement Agreement ¶ 53; ROHM Settlement Agreement ¶ 59; Kamaya Settlement Agreement ¶ 60; HDK Settlement Agreement ¶ 59.

The Settlements substantively comply with the Class Action Fairness Act. The Settlements do not include coupons. *See* 28 U.S.C. § 1712. No class member will be "obligated

to pay sums to class counsel that would result in a net loss to the class member[.]" *See* 28 U.S.C. § 1713. The Settlements do not provide "for the payment of greater sums to some class members than to others solely on the basis that the class members to whom the greater sums are to be paid are located in closer geographic proximity to the court." *See* 28 U.S.C. § 1714.

### 11. Comparable Class Settlements

Tables showing information regarding comparable settlements are included in **Appendix A** to this motion.

## III. THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE SETTLEMENTS

### A. Legal Standard for Preliminary Approval of Class Action Settlements

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *G.F. v. Contra Costa County*, 2015 WL 4606078, at *8 (N.D. Cal. July 20, 2015). Requesting preliminary approval is the first step in the settlement process. Newberg on Class Actions § 13:10 (5th ed.). When asked to grant preliminary approval of a class action settlement, courts determine whether proposed settlements: (1) appear to be the product of serious, informed, non-collusive negotiations; (2) have no obvious deficiencies; (3) do not improperly grant preferential treatment to class representatives or segments of the class; and (4) fall within the range of possible approval. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *see also* Manual for Complex Litigation, Fourth, § 21.632 ("The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.").

### B. The Settlements Meet the Standards for Preliminary Approval of Class Action Settlements

The settlements meet the standards for preliminary approval because they were the result of serious, informed, and non-collusive negotiations. There are also no obvious deficiencies in the settlements—the settlements do not grant preferential treatment to the class representatives or any subset of the classes, and the settlements fall within the range of possible approval. As

Law Offices
Cotchett, Pitre &
McCarthy, LLP

Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Settlements with All Defendants and of the Plan of Allocation; Case No. 3:15-cv-03820-JD      11

such, preliminary approval of the settlements is appropriate and warranted.

### 1. The Settlements Are the Result of Serious, Informed, and Non-Collusive Negotiations

IPPs and the five Settling Defendants are represented by highly-skilled antitrust counsel who are knowledgeable of the law and have extensive experience with complex antitrust lawsuits. Zapala Decl. ¶ 14. IPPs and the Settling Defendants have been heavily litigating this case for more than three years. *Id*. The settlements were reached after Defendants had produced millions of documents and the parties were engaged in depositions. At the time of reaching these settlements, therefore, IPPs and the Settling Defendants were well-informed about the facts, damages, and defenses relevant to this litigation.

Moreover, throughout this litigation, the Settling Defendants have vigorously contested this case, challenging IPPs' legal theories of liability, whether the facts support Defendants' level of involvement in such a conspiracy, and the damages for which each Defendant may be liable. Zapala Decl. ¶ 14. The settlements before the Court, therefore, are the result of serious and informed negotiations. Additionally, there has been no collusion between the settling parties. As a result of the foregoing procedural fairness, the settlements are entitled to a presumption of approval.

### 2. There Are No Obvious Deficiencies in the Settlements

As set forth above, the settlements were the result of serious analysis and consideration of the significant risks faced by both sides and there are no obvious deficiencies in the settlements. For example, the size of each individual settlement is commensurate with the respective market share of that Settling Defendant. The settlements were reached with full appreciation of the risks faced by both sides.

### 3. There is No Preferential Treatment

There is no preferential treatment of any class representative or any segment of the classes. All indirect purchasers of resistors with a right to recover will have an ability to submit a claim for a *pro rata* share of the settlement funds based on the resistors they purchased. The settlement agreements do not provide for any preferential treatment to them or to any segment

of the classes.  This element in favor of preliminary approval is met.

### 4. The Proposed Settlements Fall Within the Range of Possible Approval

For the reasons stated above, IPPs believe that the proposed Settlements fall within the range of possible approval and should be preliminarily approved.  Additionally, this case did not have the benefit of a government prosecution in parallel, and IPPs did not have the benefit of a cooperating ACPERA applicant who is obligated by the law to provide cooperation.  Moreover, Interim Class Counsel's experience in the *Capacitors* litigation has greatly informed its judgment about the reasonableness of the settlements in this case.  *See* Zapala Decl. ¶ 32. Class Counsel strongly believes that the proposed settlements are fair and reasonable.

### C.  The Proposed Settlement Classes Satisfy Rule 23

This action is appropriate for class treatment.  Class certification is appropriate when the proposed class and the proposed class representatives meet the four prerequisites of Rule 23(a): (1) numerosity; (2) common questions of law or fact; (3) typicality; and (4) fair and adequate class representation.  Rule 23(a).  Additionally, a class must satisfy one of the criteria in Rule 23(b).  Rule 23(b).  The Settlement Classes in these settlements meet all Rule 23 requirements.

### 1.  Rule 23(a)(1) – Numerosity

The first prerequisite for certifying a class is that "the class is so numerous that joinder of all members is impracticable."  Rule 23(a)(1).  In this case, IPPs seek to certify a class of all individuals or entities who purchased from a distributor one or more linear resistors manufactured by a Defendant.  There are hundreds of thousands of class members, such that joinder of all is impracticable.  "There is no exact class size that meets the numerosity requirement; rather, where the exact size of the class is unknown but general knowledge and common sense indicate that if it is large, the numerosity requirement is satisfied." *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 616 (N.D. Cal. 2014) (internal quotation marks omitted). Therefore, the first prerequisite of Rule 23(a) is met.

### 2. Rule 23(a)(2) – Commonality

The second prerequisite for certifying a class is that "there are questions or law or fact common to the class." Rule 23(a)(2).  In horizontal price-fixing antitrust cases, such as this one,

common questions of law and fact, and their predominance, are presumed because the core issue in such a case is whether or not there was a conspiracy amongst conspirators to fix, raise, maintain, and/or stabilize prices and whether such price-fixing occurred. Newberg on Class Actions § 20:23 (5th ed.). "Because the gravamen of a price-fixing claim is that the price in a given market is artificially high, there is a presumption that an illegal price-fixing scheme impacts upon all purchasers of a price-fixed product in a conspiratorially affected market." *Rubber Chems.*, 232 F.R.D. at 352 (internal quotation marks and citation omitted). Courts have consistently found that "[c]ommon issues predominate in proving an antitrust violation 'when the focus is on the defendants' conduct and not on the conduct of the individual class members.'" *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166, at *7 (N.D. Cal. June 5, 2006).

In this case, common questions of fact and law predominate over individual questions. IPPs allege that Defendants engaged in a conspiracy to fix, raise, maintain and/or stabilize the price of linear resistors. The common questions of fact or law facing the Court include whether the Defendants in fact entered into an illegal agreement to fix, raise, maintain and/or stabilize the price of resistors; whether the antitrust conspiracy did, in fact, result in the artificial inflation of the price of resistors; and whether those overcharges were passed on to the classes. The second prerequisite of Rule 23(a) is met.

### 3. Rule 23(a)(3) – Typicality

The third prerequisite for certifying a class is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3). "[T]ypicality results if the representative plaintiffs' claims arise[ ] from the same event, practice or course of conduct that gives rise to the claims of the absent class members and if their claims are based on the same legal or remedial theory." *In re Optical Disk Drive Antitrust Litig.*, 2016 WL 467444, at *11 (N.D. Cal. Feb. 8, 2016). Typicality is easily satisfied in cases involving horizontal price-fixing because "in instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *In re Catfish*

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Settlements with All     14
Defendants and of the Plan of Allocation; Case No. 3:15-cv-03820-JD

*Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993).

In this case, IPPs' theory is that Defendants illegally fixed, raised, maintained, and/or stabilized the price of resistors and that the artificially inflated prices charged by Defendants for their resistors affected the price paid by indirect purchasers of resistors. All class representatives purchased one or more resistors from a distributor that was manufactured by Defendants. The class representatives are seeking damages under the same legal theories as absent class members. Because the class representatives' claims are typical of the members of the class, the third prerequisite of Rule 23(a) is met.

### 4. Rule 23(a)(4) – Fair and Adequate Class Representation

The fourth prerequisite for certifying a class is that "the representative parties will fairly and adequately protect the interests of the class." Rule 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. The interests of the class representatives and their counsel are completely aligned with the interests of the absent class members. The class representatives suffered the same injury as the absent class members in that they paid artificially-inflated prices for resistors. IPPs' counsel also has the same interest in proving that Defendants engaged in an illegal antitrust conspiracy which resulted in artificial inflation of the price of resistors. The vigor with which the class representatives and their counsel have prosecuted this case is well documented in the docket of this case. IPPs have expended considerable time, energy, and resources in gathering evidence in support of their case and in contesting Defendants' efforts to dismiss or minimize their case, much of which is documented in the hundreds of docket entries in this case.

### 5. The Requirements of Rule 23(b) Are Met In This Case

Once the prerequisites of Rule 23(a) are met, a prospective class must satisfy only one of four Rule 23(b) requirements to continue as a class. Rule 23(b)(1) allows class actions when prosecuting separate actions by individual members would create a risk of either inconsistent or varying adjudication of claims, or adjudication with respect to individual class members would

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Settlements with All Defendants and of the Plan of Allocation; Case No. 3:15-cv-03820-JD          15

dispose of the claims of those with the class who are not part of the litigation or would substantially impair or impede their right to protect their interests. Rule 23(b)(1). Rule 23(b)(3) allows class actions when common questions of law or fact predominate such that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Rule 23(b)(3).

IPPs believe that the requirements of Rule 23(b) are met. IPPs have alleged a horizontal price-fixing conspiracy of resistors that is nationwide in scope. Multiple individual actions relating to the nature and scope of the Defendants' price-fixing conspiracy of resistors creates a high risk of inconsistent and varying adjudication of claims. Rule 23(b)(1). In addition, IPPs in this case allege that Defendants have engaged in actions that apply generally to the entire class in that Defendants have conspired to illegally fix, raise, maintain, and/or stabilize the price of resistors such that individuals and entities in the United States are paying an inflated price for such resistors.

Additionally, common questions of law or fact predominate in this case. "[I]f common questions are found to predominate in an antitrust action . . . courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied." *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 291, 314 (N.D. Cal. 2010). To determine whether or not a class action is the superior method of adjudication, courts look to the four factors from Rule 23(b)(3): "(1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action." *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1227 (N.D. Cal. 2013). Rule 23(b)(3)'s "predominance" requirement is relaxed in the settlement context. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

The alleged antitrust conspiracy in this case is appropriate for Rule 23(b)(3) resolution.

The damages of each individual class member are generally too small to warrant bringing an individual lawsuit but the total damages in aggregate for the class members are significant, which favors resolution by class action. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's . . . labor." *Amchem*, 521 U.S. at 617 (quotations omitted). Given the facts of this case, the class action is superior to alternative methods of adjudicating this controversy.

### D. This Court Should Appoint Interim Class Counsel as Settlement Class Counsel

Under Rule 23(g)(1), when certifying a class, including for settlement purposes, the Court should appoint class counsel. Rule 23(g)(1); *see also Bellinghausen*, 303 F.R.D. at 618. When appointing class counsel, the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Rule 23(g)(1)(A). Cotchett, Pitre & McCarthy, LLP ("CPM") is recognized as one of the top litigation firms in the United States, and its antitrust team is recognized as experts in the field. In this case, the skill and ability of CPM is not theoretical. This Court has had the opportunity to personally observe CPM's litigation skill and knowledge of antitrust law, as well as the resources that CPM has committed to this case. CPM respectfully believes that it meets and exceeds the requirements for appointment as Settlement Class Counsel for these settlements.

## IV. THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED

"Approval of a plan for the allocation of a class settlement fund is governed by the same legal standards that are applicable to approval of the settlement; the distribution plan must be 'fair, reasonable and adequate.'" *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (internal citations omitted). When allocating funds, "[i]t is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Settlements with All          17
Defendants and of the Plan of Allocation; Case No. 3:15-cv-03820-JD

of their claims on the merits." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1045-46 (N.D. Cal. 2008) (internal citations omitted) (approving securities class action settlement allocation on a "per-share basis").

Pro rata distribution has frequently been determined by courts to be fair, adequate, and reasonable. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 U.S. Dist. LEXIS 170525, at *198-200 (N.D. Cal. Dec. 17, 2015) (approving pro rata plan of allocation based upon proportional value of price-fixed component in finished product); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, Dkt. No. 2093, at *2 (Oct. 27, 2010) (Order Approving Pro Rata Distribution); *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 U.S. Dist. LEXIS 8931, at *32 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions funds according to the relative amount of damages suffered by class members have repeatedly been deemed fair and reasonable.") (citations omitted); *In re Lloyds' Am. Trust Fund Litig.*, No. 96 Civ.1262 RWS, 2002 U.S. Dist. LEXIS 22663, at *54 (S.D.N.Y. Nov. 26, 2002) ("Pro rata allocations provided in the Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating the settlement benefits.").

Here, allocation of the settlement funds will be on a *pro rata* basis based on the type and extent of injury suffered by each class member in those states which permit indirect purchaser antitrust claims. With respect to the *pro rata* distribution, the plan of allocation contemplates a *pro rata* distribution to each class member with damages claims from the indirect purchaser states based upon the number of approved purchases resistors purchases during settlement class period. This is a reasonable and fair way to compensate the classes. Thus, the recovery to individual class members is tied to the volume of their purchases, the number of other qualified class members making claims against the settlement fund, and the size of the overall fund. This plan of allocation is thus "fair, adequate, and reasonable" and merits approval by the Court. *See Citric Acid*, 145 F. Supp. at 1154. And all class members will also receive the benefit of the injunctive relief procured by the settlements. As noted, this plan of allocation has been approved by this Court in *Capacitors*.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

## V. THE COURT SHOULD APPROVE IPPS' NOTICE PLAN

IPPs' proposed notice provider in this case is A.B. Data, Inc. A.B. Data has been appointed as notice, claims, and/or settlement administrator in large consumer, civil rights, insurance, antitrust, ERISA, securities, and wage and hour cases, administering some of the largest and most complex class action settlements of all time. *See* Declaration of Eric Schachter ("Schachter Decl.") ¶¶ 3-4. A.B. Data is indirect purchaser plaintiffs' notice and claims administrator in *Capacitors*; other representative examples of A.B. Data's experience are set forth at Exhibit 1 to the Schachter Declaration filed in support of this motion.

The objective of the proposed notice program is to provide notice of the proposed settlements to potential class members that is consistent with Rule 23 and due process. Schachter Decl. ¶ 6. A.B. Data has researched data regarding the target audience's (*i.e.*, the proposed settlement classes) media consumption and based on this research has determined the most appropriate media vehicles that would best deliver notice to potential class members and provide them with the opportunity to see and respond to the notice. *Id*. ¶¶ 7, 10-14, 19. The notice program includes (1) direct mail notice, (2) publication notice, (3) internet and email notice, (4) an earned media plan, (5) e-newsletter notice/banner ads, (6) a case-specific website, and (7) a case-specific toll free number. As set forth in more detail below, IPPs' notice program will fairly apprise potential class members of the existence of the settlement agreements and their options in relation to the proposed settlements.

### A. Notice Program Elements

#### 1. Direct Mail Component

The Notice program includes direct mail notice to class members for whom mailing addresses are available through productions from non-party distributors. A.B. Data will process these addresses through the national change of address ("NCOA") database and, using any updated information available in the NCOA database, will send a long-form notice and claim forms directly to those potential class members. Schachter Decl., ¶ 9. (A copy of the proposed long-form notice is attached as Exhibit 2 to the Schachter Declaration; a copy of the claim form is attached as Exhibit 3 to the Schachter Declaration.) Further analysis will be done of any mail

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

returned non-deliverable after use of the NCOA database and follow up direct mail notice will be provided where appropriate.  Schachter Decl., ¶ 9.

### 2. Publication Notice Plan

As a means to supplement the direct notice program to reach class members who may not have received direct notice, IPPs have also proposed a publication notice program.  The publication plan includes paid media and earned media components.  The paid and earned media plan includes advertising in a national publication; "banner" ads on national trade publication websites; "banner" ads targeting consumers and businesses who are electronic hobbyists and enthusiasts; "banner" ads in national e-newsletters targeted to the settlement classes; a custom email "blast" to opt-in subscribers of certain targeted publications; and a news release disseminated via earned media.  *Id*. at ¶¶ 10-15.

Additionally, a print ad will be placed in *The Wall Street Journal* to reach professionals and executives of manufacturers and industrial businesses that purchase linear resistors.  *Id*. ¶ 10.

"Banner" advertisements will be run on the following national trade publication websites and/or e-newsletters targeting electronics hobbyists and professionals in the electronics and purchasing industries who are large-scale purchasers of linear resistors: Electronicdesign.com; Nutsvolts.com; Eetimes.com; Ebnonline.com; SourceToday.com; SourceESB.com; EPSNews.com; PlantEngineering.com; and Plantservices.com.  *Id*. ¶ 12.

In addition to the foregoing, "banner" ads will be placed via a variety of websites over 30 days to targeted business professionals within manufacturing industries and electronics hobbyists and enthusiasts who are technology savvy.  Key strategies of contextual, behavioral, and predictive modeling have been utilized to target the banner ads to potential class members.  A mix of mobile, laptop, and desktop devices will be targeted in this effort.  *Id*. ¶ 13.  A minimum of 15 million impressions will be delivered through the banner ads.  *Id*.

With respect to the earned media component, a news release regarding the case will be sent as an email "blast" to subscribers of the following publications: Penton Publications, Electronic Design, and EE Times.  *Id.* ¶ 14.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Settlements with All Defendants and of the Plan of Allocation; Case No. 3:15-cv-03820-JD                    20

In addition to the notice efforts involving print publications and digital media, A.B. Data will disseminate a news release via the PR Newswire distribution service to announce the notice of settlements. This news release will be distributed via PR Newswire to more than 10,000 newsrooms, including print, broadcast, and digital media, across the United States. It will also be distributed to trade publications relevant to the industries and fields concerned. *Id.* ¶ 15.

### 3. Dedicated Settlement Website

The case-specific settlement website will appear on both the Short Form and the Long Form notice and in all print and digital ads. *Id.* ¶ 17. The website will provide potential Class Members with the opportunity to get detailed information about the Settlements and relevant documents, including the notice documents, the Preliminary Approval Order, the Settlement Agreements, and other relevant filings and Court Orders. *Id.*

### 4. Toll-Free Number

The case-specific toll-free telephone number will appear on both the Short Form Notice and the Long Form Notice. *Id.* ¶ 18. The toll-free number will be setup with an automated interactive voice response system that will present callers with a series of choices to hear pre-recorded information about the Settlements. *Id.* If callers need further help, they will have an opportunity to speak with a live operator during business hours. *Id.*

As a notice program that primarily targets entities and consumers that have purchased linear resistors (a product used primarily in the manufacturing of products), data to quantify the reach of this program are not available through traditional media resources, such as MRI, that provide accredited media research. Based on the trade-media resources for the passive-component industry and the electronics, electrical, and purchasing fields, some of which state that they deliver, in the words of one such source, "90% coverage of all companies in the passive component supply chain," the proposed notice program satisfies Rule 23 requirements. *Id.* ¶ 19. Plaintiffs' notice expert has opined that the Program delivers a minimum reach of 70% to the Class and meets the requirements of Rule 23 and communicates information by complying "with the plain language requirement." *Id.* ¶ 20.

**5.    The Proposed Forms of Notice Comply with Rule 23 and Due Process**

Finally, the proposed Short Form Notice is attached to the Schachter Declaration as Exhibit 4.  The proposed Long Form Notice is attached to the Schachter Declaration as Exhibit 2.  As explained in the Schachter Declaration, these notices address each of Rule 23's requirements in a clear and easily understood manner.    Accordingly, the Notice Program and accompanying forms are reasonable and adequate under the circumstances, and are fairly calculated to apprise class members of their rights under the settlement.  *See id.*

**B.  Legal Standard for Notice**

Rule 23 requires that notice be given in a reasonable manner to all class members who would be bound by a proposed settlement.    *See* Rule 23.    "[T]he Court  must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Rule 23(c)(2)(B).  Notice of a proposed settlement is adequate and satisfies Rule 23 and due process if it  "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement  and of the options that are open to them in connection with the proceedings."  *Walsh v. CorerPower Yoga LLC,*  No. 16-cv-05610-MEJ, 2017 U.S. Dist. LEXIS 20974 (N.D. Cal. Feb. 14, 2017) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974).).  Class notice must afford potential Class Members the ability to "make an informed decision about their participation [in the  litigation]."  Manual For Complex Litigation, Fourth, § 21.311, at 289.

**C.  IPPs' Proposed Notice Program Comports with the Requirements of Rule 23 and Due Process**

In the context of Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances," and that notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion;

1  and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."   Rule
2  23(c)(2)(B).

3  While Rule 23 requires that reasonable efforts be made to reach all class members, it does
4  not require that each individual actually receive notice.  *Silber v. Mabon,* 18 F.3d 1449, 1454
5  (9th Cir. 1994).  A class settlement notice satisfies due process if it contains a summary sufficient
6  to "apprise interested parties of the pendency of the action and to afford them an opportunity to
7  present their objections."  *UAW v. GMC*, 497 F.3d 615, 629 (6th Cir. 2007) (*quoting Mullane v.
8  Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).  A settlement notice need only be
9  a summary, not a complete source of information.  *See, e.g., Petrovic v. AMOCO Oil Co.,* 200
10  F.3d 1140, 1153 (8th Cir. 1999); *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 145, 170 (2d
11  Cir. 1987); *Mangione v. First USA Bank,* 206 F.R.D. 222, 233 (S.D. Ill. 2001).  The Ninth Circuit
12  requires a general description of the proposed settlement.  *Churchill Vill., L.L.C. v. GE,* 361 F.3d
13  566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1374-75 (9th Cir.
14  1993); *Mendoza v. United States,* 623 F.2d 1338, 1351 (9th Cir. 1980).

15  IPPs' proposed notice program meets these standards.  The notice program begins by
16  providing direct mail notice for those class members for whom physical addresses were obtained
17  in non-parties' data that IPPs received in discovery.  While direct mail notice is typically
18  considered the best form of notice under Rule 23(c)(3), the proposed notice program adds many
19  additional components that make it a thorough, multilayered approach to notice designed to reach
20  as many members of the Settlement Classes as possible.  This approach is adequate and
21  reasonable under the circumstances. *Ross v. Trex Co.,* 2013 U.S. Dist. LEXIS 29081, * 6 (N.D.
22  Cal. Mar. 4, 2013) ("Courts have consistently recognized that due process does not require that
23  every class member receive actual notice . . . Due Process does not entitle a class member to
24  'actual notice,' but rather to the best notice practicable, reasonably calculated under the
25  circumstances to apprise him of the pendency of the class action and give him a chance to be
26  heard."); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 177 F.R.D. 216, 231
27  (D.N.J. 1997) ("Courts have consistently recognized that due process does not require that every
28  class member receive actual notice so long as the court reasonably selected a means likely to

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Settlements with All      23
Defendants and of the Plan of Allocation; Case No. 3:15-cv-03820-JD

apprise interested parties"); *Bissonette v. Enter. Leasing Companywest*, No. 10-CV-00326-LRH-WGC, 2014 U.S. Dist. LEXIS 132634 (D. Nev. 2014) ("Under this 'best notice practicable' standard, courts retain considerable discretion to tailor notice to the relevant circumstances ....").

Additionally, as the Schachter Declaration makes clear, the contents of the notices themselves meet the requirements of Rule 23(c)(2)(B) and are provided in plain language that is understandable to the classes. The proposed long form notice includes (1) the case name and case number; (2) a description of the case; (3) a description of the settlement classes; (4) a description of the settlement agreements, including the monetary consideration and cooperation to be provided to the settlement classes; (5) the name of Interim Lead Counsel for IPPs; (6) a description of the releases being provided; (7) the final approval hearing date; (8) information about the final approval hearing; (9) information about the deadline for filing objections to the settlement agreements; (10) information about the deadline for filing requests for exclusion from the settlement classes; (11) that a class member can enter an appearance through an attorney if the member so desires; (12) the consequences of exclusion or remaining in the settlement classes; and (13) and how to obtain further information about the proposed settlement agreements. Schachter Decl., Ex. 2. This includes all of the information required by Rule 23(c)(2)(B) and more.

### D. The Court Should Establish a Schedule for the Notice Program and Final Approval of the Settlements

If the Court grants preliminary approval of the settlements and grants this motion to approve a class notice program, a schedule should be established for the completion of the notice program, objections and requests for exclusion, and the briefing for attorneys' fees, reimbursement of reasonable litigation expenses, and for final approval. IPPs propose the following schedule:

| Event | Time |
|---|---|
| Mail Notice | 30 days after Order |
| Publication Begins | 45 days after Order |
| Publication Ends | 75 days after Order |

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

| Event | Time |
|---|---|
| IPPs' Motion for Attorneys' Fees and Reimbursement of Litigation Expenses | 60 days after Order and 35 days before Exclusion and Objection Deadline |
| Exclusion and Objection Deadline | 95 days after Order |
| Motion for Final Approval and Response to Objections (if any) | 145 days after Order and 35 days before Hearing |
| Deadline to Submit Claims | 150 days after Order |
| Reply in Support of Motion for Final Approval and Report on Claims | 160 days after Order and 10 days before Hearing |
| Final Approval Hearing | 180 days after Order |

## VI.    CONCLUSION

For the foregoing reasons, IPPs respectfully request that this Court enter an order: (1) preliminarily approving the proposed settlements with the Settling Defendants, (2) appointing CPM as Settlement Class Counsel, (3) approving the proposed plan of allocation, and (4) approving IPPs' class notice program.


Dated: December 14, 2018                 Respectfully Submitted:


                                          /s/ *Adam J. Zapala*
                                          Adam J. Zapala
                                          Elizabeth T. Castillo
                                          Mark F. Ram
                                          **COTCHETT, PITRE & McCARTHY, LLP**
                                          840 Malcolm Road, Suite 200
                                          Burlingame, CA 94010
                                          Telephone: (650) 697-6000
                                          Facsimile: (650) 697-0577
                                          azapala@cpmlegal.com
                                          ecastillo@cpmlegal.com
                                          mram@cpmlegal.com

                                          *Interim Lead Counsel for Indirect Purchaser Plaintiffs*

Law Offices
COTCHETT, PITRE &
McCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Settlements with All        25
Defendants and of the Plan of Allocation; Case No. 3:15-cv-03820-JD

**Appendix A**

In this Appendix, IPPs provide the summary charts described in paragraph 11 of the Northern District of California's Procedural Guidance for Class Action Settlements. Paragraph 11 instructs that lead class counsel should provide certain information "for at least one of their past comparable settlements." The first chart below is for *In re Static Random Access Memory (SRAM) Antitrust Litigation*, No. 4:07-md-01819-CW (N.D. Cal.), in which Cotchett, Pitre & McCarthy, LLP ("CPM") was lead counsel for the direct purchaser class plaintiffs. The second chart below is for *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, No. M 02-cv-01486-PJH (N.D. Cal.), in which CPM was chair of the discovery committee for the direct purchaser class plaintiffs.

## Postclaim Filing Audit
### In re SRAM DPP Antitrust Case
*All figures are estimates based on public filings*

|  | % Total Settlement |
|---|---|
| Settlement $76.9 million | 100% |
| Claims paid $50,362,242.73 | 66% |
| Class members sent notice 3,892* |  |
| Actual claims 64 (2%) |  |
| Opt-outs 46 (1%) |  |
| Average Recovery Per Claimant $812,294.24 |  |
| Residual n/a | n/a |
| Cy pres distribution n/a |  |
| Reversion n/a |  |
| Attorney fees awarded $25.6 million | 33.3% |
| Ratio to distributed fund 0.51 |  |
| Attorney Costs $3.6 million | 5% |
| Ratio to distributed fund 0.07 |  |
| Administrative costs $775,000** | 1% |

*This is the number of notices sent to directly to class members by first class mail that were not returned as undeliverable; indirect notice campaigns through publication also occurred.

**Estimated based on $735,000 initially authorized by the court and additional reserve of $40,000 authorized for incurred and future claims administration costs.

## Postclaim Filing Audit
### In re DRAM DPP Antitrust Case
*All figures are estimates based on public filings*

|  | % Total Settlement |
|---|---|
| Settlement $363.2 million | 100% |
| Claims paid $272,777,508.81 | 75% |
| Class members sent notice 1,017,868* |  |
| Actual claims 19,835 (2%) |  |
| Opt-outs 200 (0.02%)** |  |
| Average Recovery Per Claimant $13,752.33 |  |
| Residual $1.5 million | 0.4% |
| Cy pres distribution $1,510,133.96 |  |
| Reversion n/a |  |
| Attorney fees awarded $90.8 million | 25% |
| Ratio to distributed fund 0.33 |  |
| Attorney Costs $4.3 million | 1% |
| Ratio to distributed fund 0.02 |  |
| Administrative costs $746,893.93 | 0.2% |

*This is the number of notices sent to directly to class members by first class mail that were not returned as undeliverable; indirect notice campaigns through publication also occurred.

**Based on the opt-out information provided in connection with the last settlements in the litigation.