Adam J. Zapala (State Bar No. 245748)
Elizabeth T. Castillo (State Bar No. 280502)
Mark F. Ram (State Bar No. 294050)
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
mram@cpmlegal.com

*Interim Lead Counsel for Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE RESISTORS ANTITRUST LITIGATION <br><br> **This Document Relates to:** <br><br> All Indirect Purchaser Actions | Case No. 3:15-cv-03820-JD <br><br> **DECLARATION OF ADAM J. ZAPALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH ALL DEFENDANTS AND OF THE PLAN OF ALLOCATION AND FOR APPROVAL OF CLASS NOTICE PROGRAM** <br><br> **Date:** January 24, 2019 <br> **Time:** 10:00 a.m. <br> **Place:** Courtroom 11, 19th Floor |

I, Adam J. Zapala, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California and admitted to practice in this Court. I am a partner with the law firm of Cotchett, Pitre & McCarthy, LLP ("CPM") and Interim Lead Counsel for Indirect Purchaser Plaintiffs ("IPPs") in this litigation. The matters described herein are based on my personal knowledge, and if called as a witness, I could and would testify competently thereto. I make this declaration pursuant to 28 U.S.C. § 1746.

2. I make this Declaration in support of IPPs' motion for preliminary approval of settlements with Defendants: (1) Panasonic Corporation and Panasonic Corporation of North America (together, "Panasonic"); (2) KOA Corporation and KOA Speer Electronics, Inc. (together, "KOA"); (3) ROHM Co. Ltd. and ROHM Semiconductor U.S.A., LLC (together, "ROHM"); (4) Kamaya Electric Co., Ltd. and Kamaya Inc. (together, "Kamaya"); and (5) Hokuriku Electric Industry Co. and HDK America, Inc. (together, "HDK") (collectively, "Settling Defendants").

3. The settlements subject to this Motion were reached after hard-fought litigation and significant discovery, are the result of arms-length negotiations, and counsel for IPPs believe the settlements are in the best interests of the proposed classes.

4. A true and correct copy of the proposed KOA settlement agreement is attached hereto as **Exhibit 1**.

5. A true and correct copy of the proposed Panasonic settlement agreement is attached hereto as **Exhibit 2**.

6. A true and correct copy of the proposed ROHM settlement agreement is attached hereto as **Exhibit 3**.

7. A true and correct copy of the proposed Kamaya settlement agreement is attached hereto as **Exhibit 4**.

8. A true and correct copy of the proposed HDK settlement agreement is attached hereto as **Exhibit 5**.

Declaration of Adam J. Zapala in Support of IPPs' Motion for Preliminary Approval of Settlements with All Defendants and of the Plan of Allocation; Case No. 15-cv-03820-JD

1

9. This case arises from an alleged conspiracy by the Defendants to fix, raise, maintain and/or stabilize the price of linear resistors sold in the United States. This case has been heavily litigated, with multiple rounds of motions to dismiss. There have been significant discovery challenges faced by IPPs, not only in regards to obtaining documents and information from Defendants but also with respect to obtaining documents and information from non-party resistor distributors to successfully prosecute this case.

10. IPPs engaged in extensive settlement negotiations with the Settling Defendants after significant discovery in this litigation. As described more fully below, the parties held multiple in-person and telephonic meetings, as well as exchanged information and settlement proposals. The proposed settlements were arrived at only after both sides had the opportunity to be fully informed of the relative strengths and weaknesses of their positions, litigation risks, and issues involving ability to pay.

11. IPPs and the five Settling Defendants are represented by highly-skilled antitrust counsel who are knowledgeable of the law and have extensive experience with complex antitrust lawsuits. As the Court knows, IPPs and Defendants have been heavily litigating this case for more than three years.

12. Document discovery was largely closed when the settlements were reached. Defendants had produced roughly 2,752,883 documents to IPPs, comprised of 10,563,206 pages. This information was in IPPs' possession and had largely been analyzed prior to reaching these settlements.

13. At the time of reaching these settlements, therefore, IPPs and the Settling Defendants were well-informed about the facts, damages, and defenses relevant to this action.

14. Moreover, throughout this litigation, Settling Defendants have vigorously contested this case, challenging IPPs' legal theories of liability, whether the facts support Defendants' level of involvement in such a conspiracy, and the damages for which each Defendant may be liable.

Declaration of Adam J. Zapala in Support of IPPs' Motion for Preliminary Approval of Settlements with All Defendants and of the Plan of Allocation; Case No. 15-cv-03820-JD

2

15. The settlements with each of the Defendants cover the time period from January 1, 2003 through August 20, 2015. August 20, 2015 is when the underlying complaints were filed and also is in or around the time that IPPs' experts believe the anticompetitive effects of the alleged cartel ceased.

16. The settlements reflect a very favorable percentage of the overall affected commerce of the Settling Defendants. Based on the data provided to IPPs, the settlement with KOA represents approximately 8.5% of their overall affected commerce (approximately $217.5 million in sales to distributors) during the relevant class period.

17. Based on the data provided to IPPs, IPPs have calculated that the settlement with Panasonic represents approximately 6.2% of Panasonic's affected commerce (approximately $161.2 million in affected sales to distributors during the class period).

18. Based on the data provided to IPPs, the settlement with ROHM represents approximately 8.8% of ROHM's affected commerce during the relevant class period (approximately $22.6 million in sales to distributors during the class period).

19. Based on the transactional data provided to IPPs during the course of litigation, IPPs have calculated that Kamaya's relevant commerce (affected sales to distributors in the United States during the class period) was approximately $13.7 million. Accordingly, the settlement with Kamaya represents approximately 14.6% of Kamaya's affected commerce during the relevant class period.

20. Based on the data provided to IPPs, the settlement with HDK represents more than 300% of HDK's affected commerce during the relevant class period (approximately $279,000 million in sales to distributors during the class period).

21. The foregoing settlements are truly excellent recoveries for the classes in the view of Class Counsel.

22. The Settlements were reached after hard-fought litigation, are the result of arms-length negotiations, and Interim Class Counsel believes that the settlements are in the best interests of the Class.

Declaration of Adam J. Zapala in Support of IPPs' Motion for Preliminary Approval of Settlements with All Defendants and of the Plan of Allocation; Case No. 15-cv-03820-JD

3

23. IPPs engaged in settlement negotiations with Defendant KOA for many months. These negotiations included assistance from a nationally renowned mediator and the exchange of confidential information reflecting the parties' respective views of liability and damages. The case did not settle at the mediation, despite the substantial efforts of the parties and the mediator. With the continued assistance of the mediator, the parties engaged in several additional discussions and negotiations regarding an appropriate settlement in the weeks following the mediation. These negotiations were hard fought. The proposed settlement was only agreed upon after the exchange of information, continued dialogue between the parties, and negotiation concerning appropriate financial consideration.

24. Negotiations with Panasonic followed a similar, although not identical, process as negotiations with KOA. The parties held in-person meetings, telephonic meetings, exchanged information, and exchanged settlement proposals. The proposed settlement was arrived at only after both sides had the opportunity to be fully informed of the relative strengths and weaknesses of their positions, and litigation risks. As with the other settlements, the settlement with Panasonic was only reached after substantial discovery in this action.

25. Negotiations with Kamaya occurred over approximately one year. The parties held in-person meetings, telephonic meetings, exchanged information, and exchanged settlement proposals. The proposed settlement was arrived at only after both sides had the opportunity to be fully informed of the relative strengths and weaknesses of their positions, litigation risks, and issues involving ability to pay.

26. IPPs reached settlement with HDK before any other Defendant. Negotiations with HDK occurred over many months. The parties held in-person meetings, telephonic meetings, exchanged information, and exchanged settlement proposals. Settlement was reached during a mediation session in Chicago. The proposed settlement was arrived at late in the evening at the end of the day, and only after both sides had the opportunity to be fully informed of the relative strengths and weaknesses of their positions, and litigation risks.

Declaration of Adam J. Zapala in Support of IPPs' Motion for Preliminary Approval of Settlements with All Defendants and of the Plan of Allocation; Case No. 15-cv-03820-JD

4

27. Negotiations with ROHM occurred over approximately one year. The parties held in-person meetings, telephonic meetings, exchanged information, and exchanged settlement proposals. The proposed settlement was arrived at only after both sides had the opportunity to be fully informed of the relative strengths and weaknesses of their positions, litigation risks, and issues involving ability to pay.

28. IPPs settled with the defendants that had smaller volumes of commerce first: HDK, Kamaya, and ROHM, respectively.

29. The cooperation provisions in the HDK, Kamaya, and ROHM settlements provided IPPs with significant leverage in negotiations with Panasonic and KOA—the two defendants with the largest volume of commerce.

30. Settling Defendants' cumulative commerce to distributors during the class period is approximately $415.3 million on a joint and several basis. The cumulative settlement fund established by these three settlements is $33,400,000.00 ($33.4 million), which represents an excellent recovery for the Classes.

31. CPM is Interim Class Counsel and Settlement Class Counsel for Indirect Purchaser Plaintiff in *In re Capacitors Antitrust Litig.*, No. 14-cv-3264 (N.D. Cal.) ("*Capacitors*"). *Capacitors* is also pending before this Court and is similar to this case in that it involves a Japan-based conspiracy to fix the price of passive electronic components. My experience in *Capacitors* and reaching settlements with defendants in that case has informed my judgment about the reasonableness of the settlements in this case. I believe that the foregoing settlements represent excellent recoveries for the class, are fair, reasonable, and adequate, and merit approval by this Court.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed on December 14, 2018 in Burlingame, California.

/s/ Adam J. Zapala
ADAM J. ZAPALA

Declaration of Adam J. Zapala in Support of IPPs' Motion for Preliminary Approval of Settlements with All Defendants and of the Plan of Allocation; Case No. 15-cv-03820-JD

5